Fee Paid



1  Todd R. G. Hill
2  41459 Almond Avenue
3  Quartz Hill, Ca 93551
   +1 [626] 232-7608
4  toddryangregoryhill@gmail.com
5  *In Propria Persona*
6
7
8  **UNITED STATES DISTRICT COURT FOR**
9  **THE CENTRAL DISTRICT OF CALIFORNIA**
10      **WESTERN DIVISION**
11
12  TODD R. G. HILL ("HILL" or Plaintiff),   )   CASE NO. CV23-1298-JLS(PDx)
13            individually,                  )
14  and as attorney-in-fact *guardian ad litem*   )   **"IMMEDIATE RELIEF REQUESTED"**
15         to ROES 1-888,                    )   **PLAINTIFF DEMANDS TRIAL BY JURY**
16            Plaintiff,                      )   **FOLLOWS A COUNT BY COUNT OF**
17                                           )   **PLAINTIFF'S ALLEGATIONS:**
18              vs.                          )
19                                           )   **[COUNT I]** Violations: 18 U.S.C. § 1962:
20  **THE BOARD OF DIRECTORS,**              )
21  **OFFICERS AND AGENTS AND**              )   **Operation of RICO Enterprise:**
22  **INDIVIDUALS OF THE PEOPLES**           )   **Violations of 18 U.S.C. § 1962(c) Fraud and**
23  **COLLEGE OF LAW:**                      )   **Constructive Fraud;** by operating a scheme to
24                                           )   defraud law students subject to mandatory
25                                           )   participation in the First Year Law Students Exam
26
27  THE GUILD LAW SCHOOL DBA

28                          – 1 –
        COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

PEOPLE'S COLLEGE OF LAW ("PCL");
HECTOR CANDELARIO PEÑA RAMIREZ
aka HECTOR P. RAMIREZ, aka HECTOR C.
PEÑA, ("HCP"); CHRISTINA MARIN
GONZALEZ, ESQ., ("CMG"); ROBERT IRA
SPIRO, ESQ.,("SPIRO"); JUAN MANUEL
SARIÑANA, ESQ. ("JMS"); PREM SARIN,
("PRS", "SARIN"); DAVID TYLER
BOUFFARD, ("BFD", BOUFFARD);
JOSHUA GILLENS, ESQ., ("GLN");
CLEMENTE FRANCO, ESQ.; HECTOR
SANCHEZ, ESQ.; PASCUAL TORRES,
ESQ.("PST")[; CAROL DUPREE, ESQ.,
GARY SILBIGER, ESQ.; JESSICA
"CHUYITA" VIRAMONTES, ESQ., ("JCV");
EDITH POMPOSO, ("EPP"); ADRIANA
ZUÑIGA NUÑEZ

AND,

**THE STATE BAR OF CALIFORNIA AS
WELL AS THESE PERSONS UNDER THE
DOCTRINE OF AGENCY WHERE**

(FYLSX) by unlawfully awarding credits for its legal education services as overt act to facilitate the fleecing of the Federal Governments Title IV Student Aid Programs.

1. PCL for its own benefit and contrary to law offered fewer units – credit hours - as a practice designed to "trap" the student.

2. California STATE BAR implemented underground rules and charged arbitrary and "capricious"[1]fees while consistently failing to follow mandated administrative procedure to establish "due process" compliance under the APA and CAPA or other statutes.

3. When made constructively and expressly aware of conduct or rule with attached requirement for review under the APA, STATE BAR continued in the unlawful conduct in multiple areas of its daily operations, in violation of mandate and breach of duty clearly outside the threshold

---

[1] Plaintiff asserts failure of due process review or principled enforcement under the Administrative Procedures Act.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**APPLICABLE AND AS INDIVIDUALS:** )

LEAH WILSON, ESQ., ("WILSON"); )

SUZANNE CELIA GRANDT, ESQ.,
("GRANDT");; VANESSA HOLTON, ESQ., )

("HOLTON"); ELLIN DAVYTYAN, )

INDIVIDUALLY AND AS GENERAL )

COUNSEL, STATE BAR OF CALIFORNIA,
("DAVYTYAN"); LOUISA AYRAPETYAN; )

ALFREDO HERNANDEZ; JUAN DE LA )

CRUZ; NATALIE LEONARD,
ESQ.("LEONARD", "NLE"), DONNA )

HERSHKOWITZ, ESQ. ("HERSHKOWITZ");)

CARMEN NUNEZ; ELIZABETH HOM; JAY )

FRYKBERG; GINA CRAWFORD; LARRY )

KAPLAN; DAVID LAWRENCE; HON. )

JAMES HERMAN; PAUL A. KRAMER; )

CAROLINE HOLMES; IMELDA
SANTIAGO; NATALIE HOPE; STEVE )

MAZER; YUN XIANG; JOAN RANDOLPH; )

JEAN KRISILNIKOFF; ENRIQUE ZUNIGA, )

ROBERT S. BRODY; )

)

of "good faith and fair dealing".

4.   State Bar operates to unfairly restrict law school transfers restraining public liberty and trade while sustaining increased costs and risks to the Federal Government for legal education by allowing schools in its system to not provide "full faith and credit" by use of exclusionary rule that gives the public institution permission to exclude for meritorious review state citizens and taxpayers based on origin; here, the STATE BAR administers a test to students in this category as objective assessment and measure of student fitness.

**Violation of the Federal Administrative Procedure Act and State CAPA statutes;** failure to perform Constitutional review of statutes, rules, or procedures; implementation and enforcement of underground rules and procedures; capricious and arbitrary use and application of determination or decision-making authority.

**Violation of California Business and Professions**

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**THE OFFICE OF CHIEF TRIAL COUNSEL, THE STATE BAR OF CALIFORNIA AS AGENTS AND INDIVIDUALS:**

GEORGE S. CARDONA, CHIEF TRIAL COUNSEL; MELANIE J. LAWRENCE, INTERIM CHIEF TRIAL COUNSEL; ANTHONY J. GARCIA, ASSISTANT CHIEF TRIAL COUNSEL SHATAKA SHORES-BROOKS, SUPERVISING ATTORNEY ELI D. MORGENSTERN, SENIOR TRIAL COUNSEL

and DOES 1-888.

**THE BOARD OF TRUSTEES, THE STATE BAR OF CALIFORNIA AS AGENTS AND INDIVIDUALS:**

RUBEN DURAN, Assembly Appointee, Attorney Member, Chair ("DURAN"); BRANDON N. STALLINGS, Supreme Court Appointee, Attorney Member Vice-Chair; MARK BROUGHTON, Supreme Court

)
)

**Code sections § 17200 and § 17500 violations:** The State Bar's failure to follow established procedures may also be considered a violation of California Business and Professions Code section § 17200 and § 17500, which prohibit any unlawful, unfair, or fraudulent business act or practice. The State Bar's failure to enforce the rules and regulations related to the regulation of unaccredited fixed facility law schools, including credible report of unfair collection practices, extortion, conversion, harassment, defamation, interference with business relationships, and conspiracy to deprive Plaintiff of constitutional First Amendment privilege and Fourth Amendment protections; all aforementioned acts likely fall under the category of unlawful, unfair, or fraudulent business practice.

**Violation of California Code, Business and Professions Code (BPC) § 6068 (a), (b), (c), (d), (f), (g) (a), (b),;; The State Bar and PCL licensee or member Defendants failure to follow established procedures and other misconduct breached their statutorily assigned and sworn duties to support the**

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Appointee, Attorney Member; HAILYN CHEN, Supreme Court Appointee, Attorney Member; JOSÉ CISNEROS, Governor Appointee, Public Member; JUAN DE LA CRUZ, Assembly Appointee, Public Member; GREGORY E. KNOLL, Senate Appointee, Attorney Member; MELANIE M. SHELBY, Governor Appointee, Public Member; ARNOLD SOWELL JR., Senate Appointee, Public Member; MARK W. TONEY, PH.D., Governor Appointee, Public Member.

**THE OFFICE OF ADMISSIONS, THE STATE BAR OF CALIFORNIA AS STAFF, AGENTS AND INDIVIDUALS:**

AMY NUNEZ, Director III; AUDREY CHING, Director I;  NATALIE LEONARD, Principal Program Analyst, Law School Regulation; LISA CUMMINS, Principal Program Analyst, Examinations; TAMMY CAMPBELL, Program Manager II, Operations & Management; KIM WONG, Admissions; DEVAN MCFARLAND, Admissions.

Constitution and the Rule of Law; to respect the courts of justice and judicial officers; to maintain actions, proceedings, or defenses that are legal or just, candor and truth in statements of law or legal proceedings; to advance no fact prejudicial to the honor or reputation of a party for unjust cause; Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest; Never to reject, for any consideration personal to himself or herself, the cause of the defenseless or the oppressed; and cooperation with the tribunal.

**Violations of 18 U.S.C. § 1962(c) RICO Acts in Furtherance of Enterprise;** by engaging in a pattern of illegal conduct including failure to properly apply, use, and enforce the antitrust policy more than once. Office of General Counsel failed to recuse; Office of Chief Trial Counsel failed to intervene. Board of Trustees failed to intervene. All at varying times had constructive or express knowledge of the circumstance.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Defendants

**ATTORNEY GENERAL**

**OF THE UNITED STATES**

As Nominal Defendant per 42 U.S.C. § 1956

and asserted Equal Protection Challenge(s)

**THE SOVEREIGN STATE OF**

**CALIFORNIA**

Nominal Defendant

For purposes of Tort Liability and

Judgment Guarantor

_____

**Violations of 18 U.S.C. § 1962(a) RICO Investing Proceeds of Racketeering**; by investing the proceeds of their illegal activities into the enterprise.

**Violations of 18 U.S.C. § 1962(b) RICO Control of Interests in Enterprise** by exerting control over the enterprise through illegal means or underground rule.

**Violations of 18 U.S.C. § 1962(d) RICO Conspiracy under Subsections (a)-(d);** by conspiring to engage in illegal racketeering activities, including arbitrary and exclusionary policy enforcement to the detriment of a specific targeted market speech.

[COUNT II] Violations: 42 U.S.C. § 1981:

Operation of RICO Enterprise: RICO Acts in Furtherance of Enterprise

**Violations of the State Bar Act § 6001.1 - Protection of the Public** by unlawfully awarding $2/3^{rds}$ of the Federal and State Mandated unit hours—credits—for its regulated postsecondary legal education services as defined for use under Higher

Education Act Title IV requirements for postsecondary institutions.

**Tortious Breaches of the Implied Covenant of Good Faith & Fair Dealing re:**

Contracts [Matriculation and Regulatory]

Performance of Fiduciary Obligations

**Violations of 42 U.S.C. § 1981 Equal Protection 14th Amendment (U.S.) by violating or discriminating against students based on their constitutional rights including:**

    i.    First Amendment  - Free Speech Suppression by Conduct:

        a.  Penal Code 132 PC - offering false evidence.

        b.  Penal Code 134 PC - preparing false evidence.

        c.  Penal Code 135 PC - destroying evidence with "intent to deprive".

        d.  Penal Code 136.1 PC - tampering or

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

intimidating witnesses;'

    e.  •    Penal Code 148 PC - resisting arrest or obstructing a police officer

    f.  Penal Code 632.PC – violation of privacy by unlawful recording.

ii.    Fourth Amendment – Takings Clause

By deprivation of actual constitutional rights and privileges and by unlawful discrimination without rational basis or in direct conflict of protected status.

As relevant here, Plaintiff claims pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq. Plaintiff alleges that STATE BAR and its Directors, Officers, and Employees directly or in inchoate fashion with committed various intentional torts while acting within the scope of his employment as a federal law enforcement officer; that the STATE BAR negligently hired, trained, and supervised WILSON, LEONARD; and that Defendants under color of law and right negligently and intentionally

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

inflicted emotional distress on Plaintiff.

**Violations of 42 U.S.C. § 1981 Equal Protection 14th Amendment (U.S.) under California law, obstruction of justice being constructive;** here Plaintiff claims activities integral to several offenses, including violations of:

**Cal. Code Civ. Proc. § 391** – operating as a vexatious litigant and process abuser to frustrate accountability or intentional injury.

**Cal. Code Civ. Proc. § 391** – operating as a vexatious litigant counter to and in violation of **Section 6001.1 of the State Bar Act -**

•    **Penal Code 132 PC -** offering false evidence,

•    **Penal Code 134 PC -** preparing false evidence,

•    **Penal Code 135 PC -** destroying evidence,

**Penal Code 136.1 PC** - tampering or intimidating witnesses,

**Penal Code 148 PC** - resisting arrest or obstructing a police officer

**Violations of 42 U.S.C. § 1981 Equal Protection 14th Amendment (U.S.) as it applies to California law**; Defendants conduct has attracted, promoted, and promulgated a thriving and unfettered market of "public predation" by those it licenses, services, or regulates as participants in legal education and attorney admissions marketplace.

**Violations of 42 U.S.C. § 1981 Equal Protection 14th Amendment (U.S.) as it applies to California law**, as it has actively participated to the benefit and the public detriment in the continued operation of an unfair enterprise.

**[COUNT III] Violations: 42 U.S.C. § 1983**:

**Violations of 42 U.S.C. § 1983 Malicious Prosecution via Enterprise Control, Failure to Intervene, Malicious Defense, or Malicious Prosecution;** by using their control over the enterprise to maliciously prosecute or defend against students and members of the general public with legitimate

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

grievance by direct or inchoate act.

**Violations of 42 U.S.C. § 1983 Retaliation** — Essential Factual Elements include violation of the Bane Act (Civ. Code, § 52.1) in that the Defendants "singled out" Plaintiff for specific conduct designed to discredit, defame and deprive of just remedy.

**Violations of 42 U.S.C. § 1983 Judicial Deception**; Obstruction of Justice by deceiving the court or obstructing justice in legal proceedings.

State Office of General Counsel to Judiciary in non-conforming determinations of Antitrust dated 1

**Violations of Cal. Pen. Code, § 115 Procuring Filing of False Document or Offering False Information To State Agency;** (Cal SoS) and Conspiracy by filing false documents or offering false information to the California Secretary of State and conspiring to do so.

State Office of General Counsel to Judiciary in non-conforming determinations of Antitrust dated 1

**Prayers for Declarative, Injunctive, Equitable**

- 11 -
COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**Relief to address the violations and seek redress for the damages caused by the violations.**

**A.  This Prayer for Relief includes a special request for Declaratory relief for these issues:**

**[COUNT IV] Requests under 18 U.S.C. § 1956:**

**A.  18 U.S.C. § 1956 Federal Receiver and Trustee** Request seeking appointment of a federal receiver to take control of the enterprise.

Request for appointment as Trustee and Receiver nexus for People's College of Law as Plaintiff is the sole and only lawful officer of the Corporation.

**B.  Temporary Restraining Order (TRO)**

Request seeking injunction to preserve the status quo and prevent the dissipation of assets now actively marketed for sale for conversion or unjust and enrichment of the Defendants.

**C.  Notice of pendency in _lis pendens_ for real property:**

PCL HQ -  660 South Bonnie Brae, Los Angeles, CA 90056

Request under 28 U.S.C. § 1964[2] seeking injunction to preserve the status quo and prevent the dissipation of assets now actively marketed for sale for conversion or unjust and enrichment of the Defendants.

**[COUNT  V ] Requests: 42 U.S.C. § 1981:**

**42 U.S.C. § 1981 Provision of Federal Bar Licensure** ; petitioner asks as both a component of an equitable remedy for harm and to establish normative criteria to "even the playing field" for other members of the public, enhance public protection, and provide just and necessary mitigation to Plaintiff's injuries and foreseeable damages.

---

[2] 28 U.S.C. § 1964 requires a federal litigant seeking to record "a notice of an action concerning real property" to comply with the requirements of the law of the state in which the real property is located. In this case, the Properties in question are located in the State of California. Furthermore, California Code of Civil Procedure ("CCP") Section 405.5, states that the recording of pending actions against real property "applies to an action pending in any United States District Court in the same manner that it applies to an action pending in the courts of [California]. See also CCP § 405.4. Hence, statutory law requires that Receiver must comply with all applicable provisions of the CCP in order to prevail in its Notice.

SECURITIES EXCHANGE COMMISSION v. IPIC INTERNATIONAL, CIVIL ACTION No. 3:03-CV-2781-P, at *2 (N.D. Tex. Aug. 24, 2004)

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Appropriateness supported under 28 U.S.C. § 1654

**[COUNT VI ] Requests: 42 U.S.C. § 1981:**

Plaintiff believes that answers to the questions below relate directly to determining both the existence and the nature of Plaintiff's standing, injuries, damages, or other relief:

The questions asked in context of the present circumstance appear novel. To wit:

**Is the State Bar Act of 1927, as enacted today, unconstitutional, and thus void because it violates the separation of powers doctrine and it consistently "deprives", "materially impairs" and defeats both the stated Legislative goals of "Protection of the Public as the Highest Priority" and the perception of the integrity of the Judiciary?** Because the Legislature holds the Power of the Purse related to Attorney Discipline, an inherently Judicial function, in likely violation of the Separation of Powers Doctrine under Article III, section 3, of the California Constitution, the statute communicates a privity of relationship and priority to

the public that the Judiciary need respect solely for "reasons of comity."

**Is the State Bar Act of 1927 ("SBA"), as enacted, unconstitutional, and void because its Legislative mandates are ultra vires or violative of the Separation of Powers Doctrine? Legislative mandates that venture into the sphere of legal services are discretionary and do not align with Judicial priority;** as a result, enforcement repeatedly and inevitably raises questions that reflect poorly on both the Judiciary and its administrators and thus poses a "grave and imminent danger" of the violation of public rights:

1) Argued that the context of the Act, existentially violates the separation of powers doctrine because it is too vague which "materially impairs" and defeats both the stated Legislative goals of "Protection of the Public as the Highest Priority" and the perception of the integrity of the Judiciary. Here, Plaintiff's basis is the Legislature holds the Power of the

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Purse related to Attorney Discipline, an inherently Judicial function, in violation of the Separation of Powers Doctrine under Article III, section 3, of the California Constitution.

2) Alternatively, the SBA is unconstitutional because it allows for consistently violative conduct by the very same actors obligated and paid to conduct the statute's competent enforcement; in essence the argument is two-fold:

a) That divestiture of the trade association renders the Act unconstitutional because it places the Legislature in both fiscal control and oversight of what rests wholly in the domain of the Judiciary; alternatively,

b) That the SBA is void because "form no longer matches function"; now divested of its substantial functions as a professional trade association and standards body, the Act now creates an

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

inherent and existential "Conflict of Interest" where the Judiciary appears to be or in fact is made beholden to the Executive and the Legislature can "control" by mandate the priorities of Judiciary. alternatively,

c) That the SBA void for unconstitutionality because it communicates to the public either a gratuitous promise or an unenforceable lie, which functions as a "ticking time bomb" where a Judicial outcome does not meet a "clearly stated mandate", as the California Judiciary has already revealed in "in re Attorney Discipline" it uses the construct of the State Bar at its sole discretion.

d) That the SBA is void because it sets an inappropriate Constitutional precedent in allowing a statute to set "false expectation" of public outcomes because it is per se ultra vires because

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

1          the Legislature cannot mandate to the

2          Judiciary and state employees know it.

3

4       e)   That the SBA is void because the State

5          cannot use as rational basis an ultra

6          vires act; Sovereign California cannot

7          tenably argue that the rational basis for

8          maintaining a law is curative for its

9          unlawful instantiation or directives;

10         underground rule likely cannot serve "a

11         clearly stated public mandate" that 50

12

13         years of data demonstrates has been

14         ineffective.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

1
2
3
4

# Table of Contents

Table of Contents...................................................................................................19
**INTRODUCTION**..................................................................................................24
OUTLINE re RICO.................................................................................................26
A NOTE ON TERMINOLOGY .............................................................................31
JURISDICTION ......................................................................................................34
VENUE ...................................................................................................................38
EXCEPTIONAL CIRCUMSTANCES OF VENUE AND THE ENDS OF JUSTICE ...................39
STANDING..............................................................................................................40
   Plaintiff was injured and the unfair business practice was the cause. ................................45
   Duty or Privity?...................................................................................................47
   Unfair Business Practices .....................................................................................52
   Use of unfair rules justifies disgorgement as remedy. .................................................52
   **Allegations to All Causes of Action** ................................................................53
   Statement Of Decision Request ...............................................................................55
SUMMARY OF FACTS:..........................................................................................57
   Two schools, two systems…...................................................................................57
   PCL operates from an area disadvantaged with limited access to legal services. ..............57
   UCLA Tuition and Expenses .................................................................................62
   UCLA's Preemptive Exclusionary Policy ................................................................63
   UCLA Students & Faculty ....................................................................................65
   Full-Time Starting Salaries ...................................................................................65
   PCL and Enterprise P were obstinate and unwilling to cure the issues. ..........................72
   Defendants Conduct Demonstrative of Moral Turpitude ..............................................72
   PCL & Enterprise P employed "ghost" Deans. .........................................................73
   Did the Defendants engage in an unfair and "continuing course of conduct"? .................74
   Two Letter Strategy; Musical Chairs;  used by rackets...............................................74
   PCL's conduct did not comport with Federal or Local Law. .........................................82
   A pogrom of deceptive pattern and practice...............................................................85
   Unfair Practices Need Not Be Unlawful ..................................................................89
   State Action Doctrine Given Plaintiff's Claims.........................................................98
   PCL and the State Bar engaged in the "entwined" and "entangled" operation of distinct
   enterprises. ........................................................................................................104
TAKINGS AND CONSPIRACY CAUSES...............................................................106
   Were PCL documents to the STATE BAR an attempt to legitimize a racketeering enterprise? .....107
   Did the conduct meet the standard for per se violation of the Sherman Act? ..................107
   Why did it take the State Bar 115 days to respond?...................................................123
   *Plaintiff sent repeated inquiries requesting an answer; no answer was forthcoming.?* ........123
   Civil claim at the Court's discretion re the Eleventh Amendment ................................126
   'In the Alternative Request 1: Voluntary Motion to Strike and basis for grant...............127
   Is the "first mandate" of the State Bar Act enforceable as a matter of law? ...................128
   Was The Conduct Anticompetitive? ......................................................................130

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here the conduct appears to meet per se requirements. .................................................131
Clayton Act Prohibits Anticompetitive Joint Ventures .................................................131
Are PCL and State Bar currently in Vertical Merger? .................................................132
No outreach from the regulator to PCL Volunteer Faculty. .................................................134
PCL engaged in the fraudulent entry into tying contracts. .................................................136
Sovereign grants Plaintiff the Right To Make Civil Claim .................................................136
Was Defendants conduct foreseeably anti-competitive? .................................................137
Plaintiff argues Defendant's "Refusal to Deal" .................................................149
Robinson Pattinson Act – Price Discrimination .................................................153
Here .................................................153
What are the limits to rational basis applications to exclusionary rules? .................................................155
Defendant Rhetoric does NOT match the Foreseeable Consequences of the Conduct .................................................156
Violations Under Color of Law. .................................................157
Plaintiff suffered multiple and tolling rights violations. .................................................157
Privacy .................................................158
Did Enterprise S conspire to violate conflict of interest laws? (Gov. Code, § 1090 et seq.) .................................................159
State Bar and PCL persist in breach and misconduct in February 2023 .................................................159
Defendants Operate Enterprises that Rely on Ultra Vires Conduct .................................................161
Plaintiff Claims Interest Injuries in failure to Grant Degree .................................................162
The Privity or Near Privity Doctrine .................................................168
Ultramares Doctrine Applicable to Entwined Enterprise of the State Bar .................................................172
State Bar and Eleventh Amendment Immunities .................................................173
Underground rules are derived, adopted, and enforced in ultra vires fashion. .................................................182
FACTUAL BACKGROUND .................................................187
Synopsis of the facts .................................................187
Fraud, Misrepresentation & Failure To Disclose Material Facts .................................................188
Plaintiff's Privity Relationship to the State Bar .................................................193
Standing .................................................193
Issue preclusion and preemption for State Bar Defendants is discretionary. .................................................194
Disparate Impact a Substantial Factor and Mitigator .................................................194
Is there an Enhanced Duty of Care Reasonably Required for Circumstances of Bias? .................................................195
Plaintiff's Prayers For Relief .................................................199
State Bar constructively complicit and a substantial factor in injury .................................................199
Grant of Doctoral Degree – Juris Doctoral Degree by the Guild Law School dba People's College of Law .................................................201
Summary of Bases for the Grant of Degree .................................................202
Plaintiff's guarantee of right to the privilege and proceeds of a legal education in Due Process. ...203
Activities considering the Doctrine of Contracts .................................................205
Abject Deference to Court for Determination of Suitability for Purposes of Admission to Bar .................................................206
Analysis: .................................................206
Recovery Of Personal Property Via Disgorgement Or Appropriate Mechanism .................................................211
Quantum Meruit For Services Performed Under Deceptive Practice; .................................................211
Restoration Of Funds Due To Improper Conveyance; Punitive Damages .................................................211
Plaintiff Has Paid Sums Not Legitimately Owed Or Demonstrated Owed In Good Faith And Mitigation .................................................211
Enterprise P Engaged In Interstate Commerce Supported By Enterprise S .................................................214

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Enterprise P Engaged in Interstate Commerce Supported by Enterprise S. .....................................215

STATE BAR PROXIMATE AND ACTUAL CAUSE OF SUSTAINED INJURY .....................219

Moral Turpitude Of Defendants In Fraudulent Conveyance .........................................232

Use or Investment of Proceeds from racketeering enterprise. ...........................................233

Argument for assignment of criminal culpability public official misconduct......................233

Requests for Declaratory Relief or Finding of Fact ......................................................235

Are Defendants and operators of Enterprise P and/or PCL culpable for operating a RICO-qualifying Enterprise? .............................................................................235

Does Estoppel Lie for the State Bars Anticompetitive or other violative conduct .................236

Plaintiff Petitions for Award of Juris Doctorate Degree .....................................................236

Plaintiff desires to fulfill voluntary service and restore PCL to lawful and compliant operation. ...239

Are Defendants and operators of Enterprise S and/or the State Bar culpable for operating a RICO-qualifying Enterprise? .....................................................................239

Are Enterprise S and P culpable for retaliatory acts under labor law?.......................................239

Are Enterprise S and P culpable for predicate and overt unlawful conduct? ...............................239

Are Enterprise S and P culpable for interoperating separate and symbiotic RICO schemes? .........239

Are Enterprise S and P culpable for interoperating separate and symbiotic RICO schemes. ..........239

Request for Declaratory Relief & Finding of Fact ........................................................239

Did Defendants PCL and State Bar have affirmative duty to protect?..........................................240

Plaintiff pleads IIED but is unclear on the conduct standard to be applied as threshold for egregiousness for purposes of liability assignment and damages mitigator....................................240

Are Enterprise S and P culpable for conspiracy?..........................................................241

Disinformation and defamation are tactics used by both enterprises. .............................................242

Harassment increased in intensity ...............................................................................243

Plaintiff Requests That the Court Grant Compensatory Damages.................................................245

Plaintiff Asks The Inclusion Of $750,000 To Be Put In Trust For The Same Purpose As The Original Purpose Of The Guild School Of Law. .........................................................246

Defendants Acts Egregious and Calculated And Causing Emotional Distress ...............................246

PLAINTIFF ASKS FOR CONSEQUENTIAL DAMAGES .............................................249

REQUEST FOR RELIEF TO PREVENT FURTHER RETALIATION ..............................250

Criminal culpability is non-delegable under the law governing civil contract..............................253

Plaintiff submits proof of contract and full performance in good faith. .........................................257

Plaintiff is entitled to his degree under the common law right of fair procedure.............................257

Justification for credit hour use as violative of the Takings Clause ............................................262

Clear and compelling evidence shows a strong pattern of bad-faith activities...............................263

All Defendant's had duties of good faith, business judgement, and the fiduciary ...............................275

Overt Predicate Acts And Actors ..............................................................................279

Defendant Preys On A Class Individuals ...................................................................282

PCL and state bar successfully conspired to restrain trade and did restrain trade. .........................282

Defendant Modus Operandi Violates Core Public Policy ....................................................283

Specific Performance 1: Grant of Juris Doctoral Degree .....................................................285

Injunction 1: Preliminary Relief To Preserve The Status Quo .................................................287

Prohibition Against Encumbering Or Disposition Of Assets ..................................................289

**Injunctive Relief Requests Strictly Limited To Future Harms.** ............................................290

Plaintiff's Burden Of Proof Standard Is "Clear And Convincing Evidence." ...............................291

Treatment of action as filing of lis pendens.................................................................293

Preliminary Relief To Preserve The Status Quo Not Deterministic Of Prevailing Party ...............294

- 21 -

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Perpetual Relief To Prevent Future Harm From Prior Bad-Faith Activities ...................................296

**Void Ab Initio Ultra Vires Acts Of The Board Taken After Plaintiff's Unlawful Treatment And Ousting** ................................................................................................................................296

Void Ab Initio The Statement Of Information Filed On Or About 12/3/21 ...................................297

Plaintiff Has Made Best Effort To Resolve  This Matter Amicably ...............................................297

Discussion Of Statutory Grant Of Immunity For Non-Profit Directors..........................................298

A crime committed against the unwitting is still a crime! .............................................................301

NO PRIOR CONSENT REQUESTED OR GAINED FROM ANY PARTY ON THE VIDEO CALL.............................................................................................................................................301

Prohibited Uses Per Zoom's "Terms of Service" supports "Impossibility of Consent":................302

Eleventh Amendment Applications at Courts Discretion but facially disfavor Plaintiff's position. ...................................................................................................................................303

The State Bar Act offers express grant for Plaintiff to bring claims directly against the State Bar. ...............................................................................................................................................306

Were the activities of the board ultra vires? ...............................................................................306

Acts in Light of the Business Judgement Rule (Wind River)........................................................307

Court may reverse or aver arbitrary and capricious decision-making. .......................................307

Regulatory Landscape and Prior Determinations ........................................................................310

State Bar has a long history of intentional neglect of its duties. ...............................................311

 o   Rule 4.200 ................................................................................................................312

 o   Rule 4.201 ................................................................................................................312

State Bar Guidelines synonymous with Rule ...............................................................................312

State Bar Act Mandates Regulatory Oversight of Law Schools ...................................................314

The Federal Office of Postsecondary Education...........................................................................316

Private Postsecondary Education Act (California)........................................................................316

Section 94874.............................................................................................................................316

Section 94875.............................................................................................................................316

Section 94878.............................................................................................................................317

Legislature has defined the scope of authority and priorities of State Bar activities. .......................319

Statute of limitations 6 years for ultra vires policy applications to Plaintiff. .....................................319

Statute of limitations and ripeness for federal rights violation(s). ....................................................320

Ultra Vires Conduct is not Granted Governmental Immunity ......................................................320

Ultra Vires Acts Cannot be Approved by the Board.....................................................................320

Bad-faith Activity Voids Immunity ...............................................................................................321

Attorney Violations of Law Presumptively Bad-Faith..................................................................321

Defendants "Unclean Hands" ......................................................................................................322

Plaintiff brings viable ultra vires claim against entity and its administration. ...............................324

California Office of Administrative Law ........................................................................................326

Defendants offer no denials nor acts in mitigation. .....................................................................328

The Board is "subject" to the Bylaws and must follow them faithfully.........................................328

Exigent Circumstance "Exemption" under Enron ........................................................................329

Fraud and misrepresentation........................................................................................................329

Fraud includes suppression of the truth.......................................................................................329

Defendants Ultra Vires Acts Are Presumptively Bad-Faith.........................................................330

What would be a reasonable response to such circumstance if "Protection of the Public" regardless of the conflict of interest is the imperative to the regulator? .........................................331

Circumstances predetermine cause to issue remedy and rule against defendant...........................334

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Board members aid and abet the continuance of criminal harassment..................................................334
    Conspiracy ...............................................................................................335
    Board members had duty to prevent tortious act. ....................................336
    R.I.C.O. Defendants .................................................................................337
Jurisdiction and Venue. ...............................................................................342
The Parties: .................................................................................................343
Culpable Defendants in this action under RICO...........................................343
PLAINTIFF .................................................................................................344
Factual allegations common to all counts. ...................................................358
    Enterprise Descriptions ...........................................................................358
FACTUAL ALLEGATIONS COMMON TO ALL COUNTS...........................366
    California State Auditor provides evidentiary support for predicate, parallel and ongoing
    violation. ..................................................................................................368
    Is the State Bar the "MOVING FORCE" for constitutional violations?.............369
    Enterprise Descriptions ...........................................................................378
[COUNT I]....................................................................................................391
RICO § 1962(c) ...........................................................................................391
    Requirements of 18 U.S.C. § 1961(5) Appear Satisfied. ..........................394
COUNT II.....................................................................................................396
RICO § 1962(a) ...........................................................................................397
APPENDIX A – Additional Extended Rule or Case Summaries ....................403

**No table of figures entries found.**

**INTRODUCTION**

The Court's time is a precious resource.

This document has been drafted in an effort to preserve and utilize it to maximum efficiency.

Plaintiff seeks grant of an earned Juris Doctorate. Plaintiff does not seek admission to the California State Bar or eligibility grant to sit for the California State Bar exam from this cause of action, although Plaintiff believes that may be a just and fair outcome. Plaintiff seeks admission to the Federal Bar and provides an initial attestation in specific support of that request herein.

The Sovereign has a duty to protect its citizenry. This duty extends to protection of the Sovereigns brand.

The argument that a sovereign's duty to protect its citizenry at times requires collateral infringement on the rights and privileges of its citizens is common law canon.

The ability of States to regulate areas of commerce subject to professional licensure, to establish and enforce reasonable standards that may infringe on the rights of its citizens to ensure that the practices in a state represent and reflect the requisite values and principles facilitating proper market function has long been held as a privileged role of the sovereign, consequently held to the "rational basis" standard for constitutional review.

1. Plaintiff asserts that Peoples College of Law engaged in unfair business practices related to its advertising, recruitment, administrative business practices, misrepresentation, extortion,

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

conversion, conspiracy, constructive fraud and other conduct likely violative in the aggregate circumstance of RICO and Antitrust statutes in operating an Enterprise for unlawful purpose.

2. Plaintiff argues the Peoples College of Law entered into a contract in bad faith, then repudiated their obligations to provide instruction or proctoring for Plaintiff's statutorily mandated 4L year.

3. Plaintiff asserts State Bar violations of RICO, Antitrust, breach of duty and conduct violations, Civil Rights and violations of the American Procedures Act.

4. Plaintiff argues that the State Bar Acts mandatory membership provision is unconscionable and unenforceable because the State Bar operates in unlawful enterprise "under the color of law and right."

5. Alternatively, Plaintiff argues that the State Bar Acts provisions for mandatory membership is unconstitutional as the reasonable person in Plaintiff's circumstance would not join an organization with the State Bar's current, longstanding, reputation, and actual misconduct. As such, the requirement violates Plaintiffs' Constitutional Rights.

6. Plaintiff argues in support of evidence that California's State Bar Act violates the Commerce Clause, and the Takings Clause in its enforcement of "physical presence rules" and "clock hour" rules to earn a law degree, modernly abstracted from the stated purpose of

the act and the student outcomes under the act. Plaintiff argues that there is no rational basis that connects this requirement to the legislatures intended purpose.

7. Plaintiff argues for remedy that "treats and excises the cancer before it causes irreparable harm to others.

## OUTLINE re RICO

Plaintiff seeks declaratory relief in context of establishing nature and extent of plaintiff's injuries and available remedies.

I. Issues

The issue is whether the conduct of PCL and the State Bar, as described, satisfies the required elements of a RICO claim under 18 U.S.C. § 1962(c).

II. Rules

The elements of a RICO claim under 18 U.S.C. § 1962(c) are:

a) the defendant is a person - for purposes of the statute, a person can be an individual or one instantiated under articles of incorporation or joint venture principles. PCL and STATE BAR are "corporate" persons, with the operators of <u>Enterprise P</u> and <u>S</u> as individuals.

b) the defendant participated in the conduct of an enterprise; conduct here likely includes affirmative abrogation of duty.

c) the defendant's participation was through a pattern of racketeering activity; Defendants have been engaged in interoperating schemes since at least 2017 based on information from former graduates and current faculty.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

d) the enterprise affects interstate or foreign commerce. State Bar is responsible for law schools in California, the 4th or 5th largest global economy. This includes the law student "transfer market" which is tracked  under ABA 509 activity. Furthermore, distance learning after Covid 19 appears "here to stay"

III. Analysis

Here incorporating the discussion below:

A. Person

The facts indicate that both PCL and the State Bar are organizations, which can be considered "persons" for the purposes of a RICO claim. In addition both State Bar and PCL have Directors, Officers, and Agents that conduct business

B. Participation in the conduct of an enterprise

The facts suggest that PCL and the STATE BAR were in conspiracy, and that their conduct was carried out as part of an enterprise.

C. Pattern of racketeering activity

The facts describe various illegal actions committed by PCL and the STATE BAR, including extorting and converting funds without disgorging them, failing to provide classes, and failing to issue degrees, which could be considered racketeering activity.

D. Enterprise affects interstate or foreign commerce

As a law school and a STATE BAR, it is likely that the actions of PCL and the STATE BAR affect interstate or foreign commerce.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

IV. Conclusion

Based on the facts described, it appears that the conduct of PCL and the STATE BAR could satisfy the elements of a RICO claim under 18 U.S.C. § 1962(c). Further investigation and evidence would be necessary to confirm this.

Does the California State Bar as monopoly regulator in legal education services owes a duty of care to protect students at the institutions it regulates?

This case asks if the California State Bar as monopoly regulator in legal education services has adopted a policy indicating non-intervention between an institution and its students.

Generally, one owes a duty of care to protect students at the institutions it regulates from harm. The State Bar, in both policy and conduct, maintains that it has no duty to interfere in conflicts of any nature between students and their respective institutions.

In the present cause of action, Plaintiff argues that because the State Bar is the monopoly regulator of postsecondary law schools with the express mandate of protection of the public, the regulator has a special relationship with law students and a duty to protect them from foreseeable harm resulting from pursuit of their curricular activities.

The State Bar occupies a special position as market maker, gatekeeper and enforcer for the attorney and legal education services marketplace.

Under the State's current regime, little possibility exists to practice law in the State of California without being approved by the State Bar because the California Supreme Court has taken on a position of public deference to the Legislature and its ability to express its "desires" as they relate to attorney admissions but declined to presume that they are truly enforceable as a matter of law under the Separation of Powers doctrine.

a. The STATE BAR holds a statutory monopoly in the specialized field of legal education services and regulates "the profession and attorney discipline" through such things as its rulemaking process and compliance obligations for continuing education or for law school programs

b. The STATE BAR holds itself out as the regulator of the attorney profession and center for Admissions to the Bar. The STATE BAR represents itself as the de facto spokesperson for standards in the conduct of the legal profession in California.

c. The STATE BAR has superior bargaining power and leverage compared to the independent public individual attorney or mid-size firm or nonmember, which it takes advantage of in many ways, including its lack of substantive active oversight.

Yari v. Producers Guild of America, Inc., 161 Cal.App.4th 172, 177-78 (Cal. Ct. App. 2008)

Plaintiff argues and asks the Court to consider the facts and the legal framework that applies to the alleged violations in respect to the Racketeer Influenced and Corrupt Organizations Act (RICO), under 18 U.S.C. § 1962 (a)-(d). The plaintiff has alleged that the defendants, including PCL and the State Bar, conspired to engage in a pattern of racketeering activity that includes mail fraud, wire fraud, and extortion, among other egregious torts.

To prove a RICO violation under § 1962 (c), the plaintiff must establish the following elements: (1) the existence of an enterprise engaged in interstate commerce; (2) that the defendants were associated with or employed by the enterprise; (3) that the defendants participated in the conduct of the enterprise's affairs; (4) that the defendants participated in a pattern of racketeering activity; and (5) that the pattern of racketeering activity was the proximate cause of the plaintiff's injury.

Here, the Plaintiff alleges that PCL and the State Bar were part of interoperating "entwined or entangled" enterprise that engaged in the unauthorized or illegal activities, and that the defendants participated in the conduct of the enterprise's affairs, including the conversion of funds and the issuance of "fraudulent" or misrepresentative transcripts or degrees. The plaintiff further alleges that this conduct constituted a pattern of racketeering activity, consisting of multiple acts of mail and wire fraud, extortion, and other unlawful conduct.

To support these allegations, the Plaintiff presents evidence of various communications, financial transactions, and other activities that suggest a coordinated effort to defraud students

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

and others who relied on PCL and the State Bar for legal education and proctoring services. Moreover, the plaintiff has provided evidence that PCL and the State Bar were in collusion, allowing PCL to evade substantive regulatory oversight and engage in illegal conduct without fear of punishment or reprisal.

Based on this "clear and compelling" evidence, it seems reasonable to conclude that PCL and the STATE BAR were part of a larger enterprise that engaged in a pattern of racketeering activity, and that the Defendants participated in the conduct of that enterprise's affairs as agents, principals, and operators. Furthermore, the evidence suggests in "clear and compelling" fashion that the defendants' conduct was the proximate cause of the plaintiff's injuries, including distress, financial losses, consortium, and reputational harm.

In conclusion, based on the available evidence and the legal framework that applies to RICO violations, Plaintiff asserts the plausible establishment of a prima facie case of a violation of 18 U.S.C. § 1962 (c) against PCL and the State Bar, and that the case should proceed to trial to determine the merits of the plaintiff's claims.

A NOTE ON TERMINOLOGY

**The use of the term "unlawful" in this document:**

The facts here are not complex but require coverage of multiple rules, statutes, policies, and acts of misconduct. Initially, much of the conduct may strike the reader as pettifoggery; Plaintiff under ordinary circumstance at the outset would have agreed, at least until it became obvious that quantity can yield a quality all its own. To wit:

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

For the reader, when referring to "unlawful" regulatory actions, the pro se Plaintiff implies and argues that a law, rule, or policy is being asserted and argued as not valid due to a conflict with a higher precedence law or because it was implemented without following the proper due process review procedures, or is violative of another statute or lacking approval from the designated governing body, e.g., the Executive, Legislative, or Judicial branches.

It at times also refers to "per se" unlawful conduct, i.e., expressly enumerated unlawful conduct as it is defined in a penal code where civil causes of action are allowed. Again, proximity to specific penal code or continuous conduct should generally serve to make plain the meaning.

The use of the term "unlawful" here does not imply that, in the discretion of the sovereign within the bounds of the Constitution and Common Law,  the "same policy", statute, rule, or exclusion for expressly stated purpose[3] could not be achieved lawfully.

Generally, the use of the term is not intended as a 'conclusory determination of law', which would "usurp" the  role of the finder of fact. As pertains to the contents and facts here, unless expressly cited as argued or successfully demonstrated, generally indicated by reference to some supporting evidence or demonstrative language like 'thus', or 'therefore' or other fair indicator such as case citation information.

---

[3] Statutes or enforceable rules challenged on the basis of Constitutionality generally undergo a two part test: 1. Is it "appropriately "tailored" (scoped)  to achieve an reasonable interest of the Sovereign and is it actually rationally related to achieving the purpose.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

An important distinction lies in whether a statute is argued as substantively or procedurally "unlawful".

 A policy may look and operate as if it complies with law but may be "procedurally" unlawful; for example, where one is asked to provide information that invades their right to privacy because it is improperly stored, or the policy was made by an agency that was not given rulemaking authority in the area.

Alternatively, a policy may look and operate as if it complies with law but may be "substantively" unlawful; for example, where a public entity excludes participation from a protected class or market segment to affect restraint of trade or adopts a policy facilitating the home-based printing of a replacement dollar bill are possible cases where the policy either directly conflicts with existing law or actively facilitates foreseeable misconduct.  The entity may have discretion to make "carve outs" but not by using a protected delimiter, like race, or by implementing the policy to the same "exclusionary"  effect with disparate impact.

That a policy may look to always produce lawful results after a long period of use in and of itself does not make it lawful; here akin to high school algebra or calculus, the right answer requires both that the correct steps were followed, and the rule is allowable as a matter of law.

Plaintiff demonstrates subsequent to the action that a showing of both procedural and substantive due process is required in the adoption and enforcement of the rule, whether or not it was put in place by statutory authority or designated rulemaking body.

**JURISDICTION**

Jurisdiction in this case rests with the Court pursuant to provisions of 18 U.S.C. §1961; 18 U.S.C. §1962; 18 U.S.C. § 1964, et sequentia, of the civil RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO); and Article III, Section 2, to the Constitution of the United States codified under 28 U.S.C. § 1331.

Diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) is provisionally invoked in that the pool of plaintiffs likely includes residents from different states of the Union.

Relevant to Antitrust jurisdiction, provisions are invoked under California Business and Professions Code, Title 2, Chapter 15.05 et, seq., and applicable provisions of the CLAYTON ACT pursuant to 15 U.S.C. § 15(a).  1 18 U.S.C. § 1964(c). This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964. This Court has original jurisdiction under 42 U.S.C. § 1983 and Thompson v. Clarke, 596 U.S.____ (2022) (malicious prosecution; inc. dissenting); judicial fraud under 42 U.S.C. § 1983 and § 1981 claims under "No. 16-16568" Keates v. Koile, 883 F.3d 1228, (9th Cir. 2018); and equal protection challenges under 42 U.S.C. § 1981 where Plaintiff is entitled to equal protection, and is not being granted equal protection; and requires reference for per se violations of 15 U.S.C. § 1 and N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n, 574 U.S. 494, (2015).

This Court has supplemental jurisdiction where pending state claims may become federal question under 28 U.S.C. § 1331.

Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

18 U.S.C. Section § 1391 applies because defendants do business in this district and are each subject to personal jurisdiction in this judicial district and reside in this district, where process may be served in any judicial district of the United States per 18 U.S.C. § 1965(b), when required by the ends of justice. Nationwide service of process confers personal jurisdiction over a defendant in any judicial district where each defendant has minimum contacts with United States.

The conduct of attorneys, public servants, and state employees in retaining students likely to pass the bar with or without their consent, using the units and the California State Bar's Rules and Guidelines for Unaccredited Fixed facility law schools, can be seen as a form of "poison pill" activity, like traditional tortious or criminal activity.

However, unlawful conduct of this form, where the public does and should least expect it, renders the potential harm to the public an inevitable outcome, in that it undermines the integrity of the legal profession and the administration of justice.

When analyzing this conduct, it must be evaluated under the equal protection and commerce clause standards, as it is an exercise of the state's rulemaking authority. In this case, the California State Bar's Rules and Guidelines for Unaccredited Fixed facility law schools would be treated as legislation.

Are the "mandatory" student fees the STATE BAR charges students in fact, a tax

Jurisdiction attaches due to Federal questions necessary to establish scope of injury and range of available remedies as follows:

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

1. Is the privilege extended by the United States to the Sovereign States to establish proprietary mandatory admissions to a third-party or sovereign designated entity for professional licensure necessary to provide services or goods as an active market participant when association risks the capricious tarnish or arbitrary ruination of the reputation of the practitioner?

In a situation where a State Bar has shown flagrant disregard for established procedures and has failed to enforce the rules and regulations related to the regulation of unaccredited fixed facility law schools, including credible reports of unfair collection practices, extortion, conversion, harassment, defamation, interference with business relationships, and conspiracy to deprive individuals of their constitutional First Amendment privilege and Fourth Amendment protections, it is difficult to trust that such an organization has the best interests of the public at heart. Such blatant disregard for the law and for individuals' rights is unacceptable, and it is important that we hold organizations like the State Bar accountable for their actions.

In this cause of action, plaintiff asserts that the California Legislature instantiated a private entity, the STATE BAR, to proscribe rules, apply and enforce the law as the designated entity monopoly regulator of the Judiciary for purposes of attorney legal education, fitness, admissions program regulation, rulemaking, and discipline. The California State Bar operates as the sole monopoly regulator for legal education services and law schools.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

The California State Bar is responsible for a massive legal education services marketplace, with special distinction as its public law schools are considered rivals to those of the Ivy Leagues.

Historically, the STATE BAR taken the approach that it will not intervene in student conflict in discord with it's "protection of the public mandate."

Plaintiff alleges egregious abuse, experienced first-hand examples of misconduct by its officers, directors, and staff who make publicly aware that unaddressed bias issues increase Plaintiff's risk of being unjustly reported and disbarred by an organization that has acted to prevent and deny degree grant in direct conflict of duty to protect Plaintiff, responsibilities and subsumed obligations of the regulator, and STATE BAR's publicly expressed focus on increasing "diversity, equity, and inclusion."

2. Is the privilege extended by the United States to the sovereign states to establish admissions requirements for professional licensure enforceable even when it is established constructively or expressly that in regulated sectors where the Sovereign delegates disciplinary responsibility fails to establish a disciplinary structure or maintain adequate oversight ?

    a. If generally the answer is affirmative, what in the specific case of the "privilege grant" of an attorney, in consideration of oath, fitness, and competency in the exercise of privilege to bring causes before the Court on behalf of third parties?

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Plaintiff argues in part that the "privilege"[4] grant offered by the Judiciary (and not the Legislative or Executive branches) is a "liberation" from a State sovereign-imposed limitation or "easement" on the citizens First Amendment privilege and that due process requires more than "rational basis" review in this context.

**VENUE**

Venue is proper within this Court pursuant to 28 U.S.C. § 1391(b)(2) and § 1391(c)1, in that, plaintiff is a law student and citizen residing in the State of California. In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchase of the legal postsecondary education service, because Defendants transact substantial business in this District, and because Defendants have intentionally availed themselves of the laws and markets within this District.

Venue is invoked pursuant to 18 U.S.C. § 1965(a)[5] and § 1965(b)3.

In re pro se representation before Federal Court for complex matters, pro se Plaintiff requests Federal Attorney applicant consideration and Court approval under 28 U.S.C. § 1654 for this cause and any other as pro se litigant or as counsel elect for the persons or parties as long as Plaintiff HILL can demonstrate that he comports himself to the same or similar standard of the "ordinary member of the profession in good standing."

---

[4]

[5] 2    18 U.S.C. 1965(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs. (b) In any action under section 18 U.S.C. 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Defendants may argue that the State Bar of California, instantiated by Legislative statute and adopted as the "administrative arm" of the Supreme Court of California is the appropriate venue due to justiciability and Federal restraint precedents. They may present on copious case law citations and convincingly coherent banter.

Unfortunately for the Defendants, the plain language of RICO, 42 U.S.C and other statutes governing Plaintiff's claims establish this Court as appropriate venue.

Here, as below, Defendants may argue "forum non conveniens"[6] in preference for adjudication by the state Supreme Court.

Defendants likely cannot coherently argue, given the nature of the parties and alleged conduct, that for the sake of "substantial justice the action should be heard in another forum…." (Mass. Gen. Laws ch. 223A § 5[7])

**EXCEPTIONAL CIRCUMSTANCES OF VENUE AND THE ENDS OF JUSTICE**

18 U.S.C. § 1965(a) provides that "any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."

Here, as above, Defendants may argue "forum non conveniens"  in preference for adjudication by the state Supreme Court.

---

[6] "Forum non conveniens is a judge-made doctrine that is recognized by some courts (state and federal) as a check on inappropriate forum selection. To invoke the doctrine, an alternative forum must exist, and the reviewing court must balance the parties' private convenience and the publics' interest. The case should be dismissed in favor of the alternative forum if the balance favors litigation there." (International Lawsuits and the Federal Doctrine of Forum Non Conveniens N. Gregory Young Finance, Real Estate, and Law Section)

[7] The California Judiciary appears to not have adopted this principle, so it is understandable that Plaintiff was unable to find on point caselaw for California.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Unfortunately for the Defendants, here as immediately supra, no tenable coherent argument is likely to take form.

# STANDING

Plaintiff asserts and provides evidence in support of determination of appropriate standing to bring this cause of action given pecuniary, physical, and emotional injuries sustained:

General standing for UCL claims under California Code of Civil Procedure Section 382 authorizes class action suits when " the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.... " ( Code Civ. Proc., § 382.)

      d.  Here, Plaintiff is a matriculated student at PCL who was recruited under fraudulent purpose, such fraud Plaintiff having reasonable belief and factual evidentiary support to maintain.

Antitrust Injury Requirement Satisfied

Discussed below are the reasons the requirement that a Plaintiff suffer an injury of the type the antitrust laws were designed to prevent because

- Failure to produce documents: Bylaw 12.2, & CA Corp. Code: § 8330 From 10/2021 to present

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

- Election violation failure to adhere to duties: CPC §5231 Director duty to serve in good faith and best interest of org.

- **December 2021**: HCP Files factually incorrect Statement of Information with Secretary of State changing Plaintiff's lawful status as Secretary of the Corporation in reckless disregard to statute and the Corporate Bylaws. The SOS remains uncorrected today.

  - <u>**Violation of PC 115 (Felony)**</u>: against the law to publish false info to Government. Here Enterprise P operators affirmed and supported the submission of a nonratifiable and unlawful Statement of Information because the basis for the submission was ultra vires and constructively known by the parties to be unlawful.

  - STATE BAR bears inchoate responsibility for the above activities because it was aware, on notice and staff or <u>Enterprise S</u> operators participated in Plaintiffs direct oppression to facilitate Enterprise P as an entangled an interoperating enterprise in the vertical position to PCL as its statutory regulator.

  - Members of the Board are 'slave' to bylaw under CPC §5210, §7210,§ 7213,§9210: Board members are required to adhere to the bylaws. Here Defendants have violated election provisions, fiduciary obligations, and obligations to the membership interests of the non-profit.

- Recording of Board meetings unlawful:

- Cal. Pen. Code §637.2, Consent required for electronic video recording.

- <u>Flanagan v. Flanagan</u>, 27 Cal.4th 766 (Cal. 2002): Holding as precedent case proving expectation of privacy.

- <u>Friddle v. Epstein</u>, 16 Cal.App.4th 1649 (Cal. Ct. App. 1993): Holding that unpublished but illegal recordings are a violation of the law.

- 

- **Fraud, Unfair Business Practices: the Unfair Competition Law (UCL)**

The UCL expressly permits claims to be brought by any "person," which it defines to

include "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons."

**<u>Two Requirements:</u>**

a.         Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of  competent jurisdiction . . . by a person a who has suffered injury in fact and has lost money or property as a result of the unfair competition.

b.      UCL requires that private cases involving aggregated claims comport with California's class-action standards.

1.    Amended Section 17203 provides: Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Code of Civil Procedure section 382, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.

c.   Clayworth v. Pfizer, Inc., 49 Cal.4th 758 (Cal. 2010), retail pharmacies brought UCL claims against pharmaceutical companies for alleged price fixing. Defendants challenged the plaintiffs' standing, arguing that they did not suffer a loss of money or property because they passed on the overcharges to customers. According to defendants, plaintiffs had no remedy to pursue. The California Supreme Court rejected this position, making clear that the issues of standing and remedies are separate: "That a party may ultimately be unable to prove a right to damages (or, here, restitution) does not demonstrate that it lacks standing to argue for its entitlement to them."

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

"The doctrine of mitigation . . . is a limitation on liability for damages, not a basis for extinguishing standing." In short, looking at the language and intent of Section 17204, the Court found that plaintiffs need not prove "compensable loss at the outset" in order to have standing.

d.      Kwikset Corp. v. Superior Court, 51 Cal.4th 310 (Cal. 2011),

e.      Hodsdon v. Mars, Inc., 162 F. Supp. 3d 1016, 1022 (N.D. Cal. 2016), aff'd, No. 16-15444 (9th Cir. June 4, 2018) ("California law permits litigants to pursue claims under the UCL, CLRA, and FAL if they show that the deceptive practice caused pecuniary loss.");

Proposition 64 also amended Cal. Bus. & Prof. Code §17535 (governing the relief available in FAL lawsuits) to impose the same standing and class-action standards as those contained in the revised §17204, as follows: Actions for injunction under this section may be prosecuted by any person.

Prop 64 statutory language expressly states, 'It is the intent of the California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution.'" The Court explained that, "**[u]nder federal law, injury in fact is 'an invasion of a legally protected interest**

– 44 –

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**which is (a) concrete and particularized; and (b) actual or imminent, not "conjectural" or "hypothetical."**'" "'Particularized' in this context means simply that 'the injury must affect the plaintiff in a personal and individual way.'"

The Defendants continue in their unfair and abrogative conduct, with neither motion nor communication of intent to operate in good faith accord to the statute governing both STATE BAR's instantiation and PCL's ostensive operation under guidelines.

Plaintiff's familiar relationships with his parents and spouse, children and neighbors have been negatively impacted, the time and the reasonable loss of faith in the fundamental.

Plaintiff, as primary financial provider in the home with a mortgage has not recovered from the unplanned extortion and conversion of funds
The money paid under PCL unreasonable and extortion-like demands deprived Plaintiff resources during  period that the parties were on notice HILL's youngest daughter had been born under dire circumstance and required extra critical  neonatal care.

**Plaintiff was injured and the unfair business practice was the cause.**

For a successful claim, Plaintiff must show that Defendants conduct, more probably than not deprived him of property or interest sufficient to claim injury and that the injury was caused by the unfair practice:

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

(1) To establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, Plaintiff asserts tolling and continuing tortious injury from the conduct of the defendants including, but not limited to:

1. STATE BAR and operators of Enterprise S, including NUNEZ, LEONARD, WILSON, DURAN and CHING, facilitated and assisted PCL to recruit students, charge fees, and grant fewer units than law or industry custom allowed. Here, PCL awarded 2 units where other institutions provided 3 units for completed study.

This conduct was arbitrary and capricious **because** STATE BAR and operators of <u>Enterprise S</u> failed to operate both as the vertical monopoly regulator in establishing compliance or noticing the public in the case of PCL's non-compliance, a clear lapse of its public protection function, as it is not reasonable to believe that a student will opt to attend a law school that gives the students less than they are entitled to and openly disregards the law.

Defendants STATE BAR will likely attempt defense by questioning whether or if they were under a "duty to exercise due care" to protect the Plaintiff from injury even in the case of negligence due to lack of privity of contract at the time of Plaintiff's matriculation.

To establish a cause of action for negligence, the plaintiff must show that the "defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." ( Nally v. Grace Community Church (1988) 47 Cal.3d 278, 292, 253 Cal.Rptr. 97, 763 P.2d 948.)

**In addition:**

Recovery for negligence depends as a threshold matter on the existence of a legal duty of care. ( Gas Leak Cases , supra , 7 Cal.5th at p. 397, 247 Cal.Rptr.3d 632, 441 P.3d 881.) Brown v. U.S. Taekwondo, 11 Cal.5th 204, 213 (Cal. 2021)

**Duty or Privity?**

Plaintiff asserts that Legislative mandate of the State Bar Act imposed a duty on the Defendants STATE BAR and through its express delegation of regulatory enforcement to the STATE BAR the monopoly regulator in the field of legal education.

Alternatively, the payment of fees to the STATE BAR

Ultimately, per Sheen v. Wells Fargo Bank, 12 Cal.5th 905 (Cal. 2022):

"The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm."

2.  PCL and operators of Enterprise P, including SPIRO, PENA, GONZALEZ, BOUFFARD, recruited students with the intent to defraud them by accepting unqualified students as a matter of law or recruiting qualified students for purposes of entrapping them at the school to the detriment of the student. Students unable to effect transfer were forced to submit to abusive treatment or risk the loss of additional time and money.

This conduct is believed to be per se "bad faith" as PCL Directors, Officers, and Agents entered into contracts that contained "trojan horse' or "poison pill" attributes misrepresented or intentionally not disclosed, preventing an actual "agreement" or meeting of the minds as Defendants sought to unfairly deprive students from the outset.

3.  Students and officers of PCL were subjected to extortion, harassment, intimidation, and threat of expulsion. Here, Plaintiff suffered irreparable harm to his school and peer relationships, family consortium, academic record due to the agreement of SPIRO, PENA, GONZALEZ, BOUFFARD, and SARIN. Plaintiff also has suffered egregious and long term financial

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

harm from funds fraudulently claimed owed, extorted, converted and used for the benefit of the Defendants as proceeds of their venture.

(2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim."

- o Cal. Bus. & Prof. Code §17200–17209 ("UCL"); and the
- o Consumers Legal Remedies Act, Cal. Civ. Code §1750–1784 ("CLRA").

People ex rel. Lockyer v. Brar, 134 Cal. App. 4th 659, 666-67 (2005) (seeking to enjoin attorney from bringing "shakedown" UCL claims against small businesses). The court explained:

Cal. Bus. & Prof. Code §17200 delineates part 2 of division 7 of the UCL, and deals with unfair competition, while section 17500 begins part 3 of the same code and deals with representations to the public. The Legislature evidently thought that false advertising was sufficiently distinct from unfair competition so as not to be lumped even in the same part of a division. The complaint thus did not give fair warning that [defendant] was subject to being enjoined from filing false advertising suits under section 17500 as well as unfair competition suits under section 17200.

1. Densmore v. Manzarek, Nos. B186036, B186037, B188708, 2008 WL 2209993, at *27 (Cal. Ct. App. May 29, 2008) (unpublished) (finding that dismissal of UCL

– 49 –
COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

claim does not require dismissal of section 17500 claim, which coEmery v. Visa Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 960 (2002)

1. ("'The concept of vicarious liability has no application to actions brought under [the UCL].' . . . A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500.") (quoting People v. Toomey, 157 Cal. App. 3d 1, 15 (1984)); accord consists of distinct elements).

Aiding abetting principle -  Rogers v. Cal. State Mortg. Co. Inc -

1. <u>Emery v. Visa Int'l Serv. Ass'n</u>, 95 Cal. App. 4th 952, 960 (2002) ("'The concept of vicarious liability has no application to actions brought under [the UCL].' . . . A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500.")

2. <u>People v. Toomey</u>, 157 Cal. App. 3d 1, 15 (1984)); accord

3. Rogers v. Cal. State Mortg. Co. Inc

4. People ex rel. Harris v. Sarpas, 225 Cal. App. 4th 1539, 1562 (2014) (holding that corporate owners could be liable under the UCL where owners and corporation operated as a single enterprise).

**<u>Lawyers facilitating improper conveyances</u>** - Courts in other jurisdictions have similarly concluded that lawyers can run afoul of disciplinary rules by facilitating

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

fraudulent conveyances or fraudulently conveying property themselves. See, e.g., In re Morris, No. 11–O–13518, 2013 WL 6598701, at *1 (Cal.Bar Ct. Dec. 4, 2013) (unpublished opinion) (finding lawyer violated rule prohibiting moral turpitude, dishonesty, and corruption by assisting a client in creating promissory notes and recording deeds of trust to delay a creditor's collection of its judgment); Fla. Bar v. Rood, 620 So.2d 1252, 1255 (Fla.1993) (finding rule violation when lawyer fraudulently transferred property to his father); Att'y Grievance Comm'n v. Culver, 381 Md. 241, 849 A.2d 423, 444 (2004) (sanctioning lawyer for, among other things, advising client "how she could avoid repaying" creditors); Dayton Bar Ass'n v. Marzocco, 79 Ohio St.3d 186, 680 N.E.2d 970, 971 (1997) (disbarring lawyer based in part on lawyer's "apparent attempt to transfer property to evade the effect of a judgment"); In re Conduct of Hockett, 303 Or. 150, 734 P.2d 877, 883–84 (1987) (suspending lawyer for violating rules prohibiting misrepresentation and illegal conduct when lawyer helped client unlawfully convey property to avoid the claims of creditors). In contrast, we have concluded the Board failed to prove Ouderkirk's conduct violated any disciplinary rule. We have never found an attorney's conduct to be prejudicial to the administration of justice without an underlying violation of some other disciplinary rule. Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rasmussen, 823 N.W.2d 404, 410 (Iowa 2012) (finding lawyer who exercised self-help remedy of repossession did not violate rules 32:8.4(c), 32:4.1(a), 32:4.2(a), 32:8.4(b), or 32:8.4(d) because such action was legally permissible—though unadvisable). Fundamentally, it was PCL's  misrepresentations and STATE BAR's aiding and abetting entangled and entwined conduct and later

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

subsummation of PCL's duties and obligations Governmental entities do not fall within this definition and cannot be sued under the UCL.

**Unfair Business Practices**

In People v. Casa Blanca Convalescent Homes, Inc. (1984) 159 Cal.App.3d 509, the court, acknowledging that the parameters of the term `unfair business practice' had not been defined in a California case, applied guidelines adopted by the Federal Trade Commission and sanctioned by the United States Supreme Court in FTC v. Sperry Hutchinson Co. (1972) 405 U.S. 233, 244 [ 31 L.Ed.2d 170, 179, 92 S.Ct. 898]. The court concluded that an `unfair' business practice occurs when that practice `offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

**Use of unfair rules justifies disgorgement as remedy.**

State Bar Guidelines for Unaccredited Law School Rule (GULS) 4.2.46, which reads in relevant part:

(F) providing law study credit for a fixed-facility law school program or class offered more than ten miles from the site of the law school, outside California, or in multiple locations.

Here, PCL failed to file "Major Change" application prior to soliciting and accepting out of state students who matriculated in Fall Quarter 2020, including students residing in Arizona and Mexico while operating under the COVID-19 exemption allowing all schools to offer remote classes during the pandemic. Because PCL engaged in conduct that it expressly and constructively knew required prior notice, PCL clearly violated the rule.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

This violation is sufficient as conduct a compliant institution; here PCL constructively and expressly knew they were not in compliance as did the STATE BAR, as law students have a 90-day notice and registration fee payment and Plaintiff has no reason to infer that the students themselves were not in comport with their obligations.

To be clear,  PCL's plan to engage in long term interstate contractual commitments in writing without informing the regulator or an alternative plan with the same result was not the goal.

Here, STATE BAR may have "granted" PCL additional ultra vires[8] "privilege" since the STATE BAR collects fees and requires timely registration and would be expressly aware of student circumstance.

Alternatively, PCL's grant of rules exemption by the STATE BAR was sufficiently broad that PCL and operators of Enterprise S and P were not concerned with the outcome.

Violation of this rule has as apportioned remedy disgorgement of funds.

**Allegations to All Causes of Action**

1. Plaintiff,  TODD HILL, is now and at all relevant times mentioned here was an individual, residing and working in the County of Los Angeles, State of California, and is the legally authorized and unlawfully ousted corporate

---

[8] Plaintiff distinguishes that even if it the case that STATE BAR has discretionary authority to interpret and enforce, or waive enforcement, of its rulemaking work product, lawful use of the discretionary authority requires due process review for demonstrative. As "innocence" is not per se defense and must be argued, due process requires evidence of conformance.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Secretary of record officers, Board Members, or Community Members of the People's College of Law.

    a.   Plaintiff is a 4L student.";

    b.   :Plaintiff has completed all regularly offered coursework.

2.     Plaintiff is informed and on belief alleges that defendant PEOPLE'S COLLEGE OF LAW ("PCL") is now and, at all  relevant times mentioned here, was a California nonprofit corporation doing business at 660 S. BONNIE BRAE, LOS ANGELES in the County of LOS ANGELES. Thus, this Court is the proper Court for the trial of this action.

3.     Plaintiff is informed and believes, and on it alleges, that defendant

GUILD LAW SCHOOL dba PEOPLE'S COLLEGE OF LAW,  ("PEOPLE'S COLLEGE OF LAW")  is now, and at all relevant times mentioned here was,  a company doing business at 660 S Bonnie Brae, Los Angeles, 90057. Thus, this Court is the proper Court for the trial of this action. The claims as currently presented are grounded in California law and doctrine.

4.     Plaintiff contends that defendant PEOPLE'S COLLEGE OF LAW, all named Defendants, and DOES 1-100 are now, and at all relevant times mentioned here were individuals, and one of the principal directors and operators of Defendant PEOPLE'S COLLEGE OF LAW.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

PEOPLE'S COLLEGE OF LAW's HQ and sole office is located at 660 S Bonnie Brae, Los Angeles, 90057. Thus this Court is the proper Court for the trial of this action. Defendants were authorized by, and were acting on behalf of, Defendants PEOPLE'S COLLEGE OF LAW or PENA, when the representations to Plaintiff alleged in this complaint were made.

5.      Plaintiff is unaware of the true names or capacities, whether they are individuals or business entities, of Defendant DOES 1 through 100, inclusive, and sues them by such fictitious names. Plaintiff will seek leave of this Court to insert their true names and capacities once they have been learned.

6.      Plaintiff is informed and believe and upon such information and belief alleges, that the named defendant(s) and  DOES 1 through 100 inclusive, were, at all times here mentioned, authorized by each other to act, and did so act, as agents of each other, and all of these things alleged to have been done by them were done in the capacity of such agency. Upon information and belief, all Defendants are responsible in some manner for these events and are liable to Plaintiff for the damages it has incurred.

7. Plaintiff requests include Statement of Decision, Prayers for Declaratory and Injunctive Relief

**Statement Of Decision Request**

Rule 3, Section 1590 details rules and requirements for plaintiffs to request a statement of decision. Plaintiff makes the request for a Statement of Decision.

Hill seeks declaratory, injunctive, and monetary relief from Defendants for False Advertising in violation of both the Lanham Act, 15 U.S.C. § 1125(a) and California Business and Professions Code §§ 17500 et seq., and for Unfair Competition in violation of California Business and Professions Code §§ 17200 et seq.

Hill's claims against Defendant stem from alleged misrepresentations of material significance, including that Defendant awarded students non-compliant units as defined under the California Private Postsecondary Education Act. Professors were unaware of this issue as well, and submitted class syllabi to the school for approval presuming that three units, and not two, was the design of the particular course.

# SUMMARY OF FACTS:

## Two schools, two systems…

Two sets of rules govern the operations of law schools in the State of California. The primary differentiator between the legal education services market participants is whether the program leading up to the student's taking of the Bar Exam was ABA-accredited or "merely" state registered or accredited.

PCL focuses its enterprise on recruiting students, most of whom will defer or abandon their studies after failing to pass the FYLSX.

PCL operates in an area that undoubtedly suffers from lack of access[9] to legal services, including legal education services capable of generating the number of local, community-centric, attorneys to operate in the marketplace.

**PCL operates from an area disadvantaged with limited access to legal services.**

PCL operates in a zone commonly referred as the 'MacArthur Park District".

For purpose of census PCL specifically operates in BG 1, Tract 2089.02, Los Angeles, CA.

Table 1- Race & Ethnicity Demographics[10]

| Column | Block Group 1 | | | | Los Angeles | | | |
|---|---|---|---|---|---|---|---|---|
| **White** | 2.1%[†] | ±2% | 39 | ±38 | 28.1% | ±0.2% | 1,095,259 | ±8,044 |
| **Black** | 4.9%[†] | ±3.2% | 90 | ±61 | 8.3% | ±0.2% | 324,152 | ±5,685 |

---

[9] There are quite a few attorneys and law firms located within five (5) miles, as the areas is close to Stanley Mosk and the Family Court facilities. Access to legal services is likely governed by cost and the nature of the matter and not due to lack of attorneys in the immediate area so close to Downtown Los Angeles.

[10] Census data taken from Census Reporter at https://censusreporter.org/profiles/15000US060372089021-bg-1-tract-208902-los-angeles-ca/

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

| Column | Block Group 1 | | | | Los Angeles | | | |
|---|---|---|---|---|---|---|---|---|
| **Native** | 0% | ±0% | 0 | ±13 | 0.2%[†] | ±0% | 6,093 | ±791 |
| **Asian** | 3.6%[†] | ±3.2% | 65 | ±59 | 11.6% | ±0.2% | 450,761 | ±6,642 |
| **Islander** | 0% | ±0% | 0 | ±13 | 0.1%[†] | ±0% | 4,870 | ±764 |
| **Other** | 0% | ±0% | 0 | ±13 | 0.5%[†] | ±0.1% | 18,358 | ±1,988 |
| **Two+** | 0% | ±0% | 0 | ±13 | 2.9% | ±0.1% | 112,610 | ±3,563 |
| **Hispanic** | 89.4%[†] | ±10.6% | 1,636 | ±3 | | | | |

The data[11] indicates that the area is 89.4% Hispanic, 4.9% Black, 3.6% Asian and 2.1% White.

70% of the community lives well under the poverty line with **$12,072 (** ±$2,215Per capita income)

- **about one-third** of the amount in Los Angeles: $39,378 ±$248

- **about one-third** of the amount in Los Angeles County: $37,924 ±$193

Median household income is reported as $31,393 ±$2,774

- **about half the amount in Los Angeles: $69,778 ±$576**

- **about two-fifths of the amount in Los Angeles County: $76,367 ±$411**

**Area educational attainment statistics demonstrate bias and presumption of poor educational quality.**

PCL focuses its recruitment efforts in and around this community. Limited availability of space, lack of its own proprietary parking, and an afternoon to evening class schedule normally render many with longer commutes, i.e., those needing to travel in rush hour conditions from more a

**27.3%** High school grad or higher

---

[11] Census data taken from Census Reporter, Ibid.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

- **about one-third** of the rate in Los Angeles: 78.4% 2,137,507 (±0.4% / ±10,778.1)

- **about one-third** of the rate in Los Angeles County: 80% 5,540,614 (±0.3% / ±18,359.9)

**6.6%** ±3.8% (71 ±42.8)Bachelor's degree or higher

- **about one-fifth** of the rate in Los Angeles: 36.2% 986,767 (±0.3% / ±7,269.3)

- **about one-fifth** of the rate in Los Angeles County: 34% 2,356,572 (±0.2% / ±11,867.5)

**No degree:** 73%[†][12]

- **more than double** the rate in Los Angeles: 22%

- **more than double** the rate in Los Angeles County: 20%

[†] Margin of error at least 10 percent of total value

**Population by highest level of education**

73%[†]**No degree;** 10%[†]**High school;** 11%[†]**Some college;** 7%[†]**Bachelor's**0%**Post-grad**

---

[12] '†' signals data provider stated margin of error is at least 10% of the total value. Although caution is necessary, Plaintiff asserts that the margin of error, even if doubled or tripled, does not substantively impact the arguments or foreseeable outcomes of the Defendants conduct.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Plaintiff asserts that PCL and State Bar bad-faith conduct includes :

1.  Violation of the Fourteenth Amendment's Equal Protection Claims

    a.  Plaintiff believes based on personal experience and corroborating evidence attached to this complaint that PCL, STATE BAR, and operators of Enterprise P and S:

        i.  Conspired to maintain and improve as plausible cover the perception of the STATE BAR's commitment to its rhetoric responding to a Legislative mandate on Diversity, Equity, and Inclusion recruitment into the practice efforts by allowing PCL to operate a scheme so that it recruited academically underqualified or otherwise ill-prepared students, largely from minority and underrepresented backgrounds, including but not limited active DACA participants.

        ii.  All had express and constructive knowledge that this mandate was shibboleth and consequently all had constructive knowledge

        iii.  PCL, STATE BAR, and operators of Enterprise P and S had put in place or were constructively aware of a longstanding STATE BAR rule—STATE BAR does not intervene in conflicts between students and their law schools even when the organization is under its probationary control! Plaintiff argues that PCL, STATE BAR and Enterprise P and S could rely on the sole monopoly regulator ignoring student complaints of school administration misconduct.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

PCL and State Bar had express knowledge of PCL's longstanding nonconformance to the law. (See EXHIBIT PL-01 PCL Probation Letter)

  iv. HILL received acceptance notice via email August 31, 2019. (See EXHIBIT PCL-1 thill acceptance 08132019.pdf)

    1. Attached to the email was a document entitled "Student Tuition, Enrollment, & Registration Agreement" with a May 2019 revision date. (See EXHIBIT PCL-2 2019 PCL Enrollment Agreement REVISED 2019-5-24 per bd decn 2019-5-19.PDF)

    2. The document includes the following table implying that the school has a 13% pass rate for students taking the FYLSX.

    3. The document failed to disclose unit award deviations from national academic standards.

    4. In parallel, the State of California's Public University Postsecondary Legal Education system, its flagships being the University of California law schools has failed to demonstrate any pricing efficiencies as a result of the State Bar's market strategies.

    5. HILL attempts transfer Summer 2022 to present 2023 and learns he is persona non grata in the transfer market to an ABA school even though he had passed the First Year Law Student Exam in Summer

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

2020.

    a. Plaintiff's father attended UCLA Law School from 1969 to 1972; he was admitted to the State Bar in 1973. At that time tuition was under $100 a unit. Plaintiff's uncle graduated Loyola Law School in 1973 and was admitted the same year. Tuition at that time ranged from $65.00 to $69.00 a unit.

    b. It is reasonable to infer that more than inflation is responsible for the current cost of a legal education.[13]

*Table 2- UCLA T&E 2017 and 2020 cohort comparison.[14]*

| UCLA Tuition and Expenses | 2020 | 2017 |
|---|---|---|
| Tuition (In-State): | $45,600 | N/A |
| Tuition (Out-of-State): | $52,094 | N/A |
| Room and Board: | $18,612 | $17,719 |
| Proportion of full-time students receiving grants: | 80.6% | 81.0% |
| Median grant amount among full-time students: | $20,000 | $21,000 |
| Average indebtedness of those who incurred debt: | $123,594 | $118,874 |
| Proportion of graduates who incurred debt: | 67.6% | 72.5% |

---

[13] As discussed throughout this pleading, Plaintiff sough to transfer to UC Berkeley School of Law and UCLA Law School but both exclude application for transfer from other California registered or accredited (non-ABA) law schools. Plaintiff believes this policy is ultra vires as it is outside the scope of authority or grant of rulemaking power given to the State Bar, as the monopoly regulator of law schools in California, or the Board of Regents, who may make reasonable rules for admission but has no grant of privilege of economic or needs based exclusion. State Bar has not provided any evidence in opposition to the assertion that a public university cannot preemptively exclude and deny the chance to apply for entry to qualified state citizens solely based on what school they prior attended. Alternatively, the policy likely fails under administrative review.

[14] Tables 1 & 2  generated from data 02/16/23 from the Internet research Legal Group (ILRG) (https://www.ilrg.com/rankings/law/view/121)

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**UCLA's Preemptive Exclusionary Policy**

Plaintiff's attempts at transfer were either frustrated or made impossible by State Bar's policies or lack of policy enforcement. These issues were not the result of mere negligence, as the policy for UCLA reads:

UCLA School of Law Transfer Credit Acceptance Policy

Transfer applicants must have successfully completed an entire first-year curriculum at another American Bar Association (ABA)-approved law school. UCLA will award a maximum of 39 credits earned at another institution. Transfer students must spend four (4) full-time semesters at UCLA School of Law upon transferring. Students from law schools that are only[15] state-approved are not eligible for admission. For more information about the transfer admission process and procedures, please contact our Admissions Office at (310) 825-2080 or admissions@law.ucla.edu

6. Plaintiff will demonstrate that this system is functioning by design and is actively facilitated by the Defendants and operators of Enterprise P and S are willing to engage in conduct anathema to the rule of law.

---

[15] "Only" is a potentially telling mitigator, as it implies "insufficient" quality without provision of bases for the statement and as justification for avoiding re-evaluation of the market.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

*Table 3- UCLA Demographics 2017 and 2020 cohorts.*

| UCLA Students & Faculty | 2020 | 2017 |
|---|---|---|
| Total Students: | 955 | 974 |
|    Men: | 49.8% | 49.5% |
|    Women: | 50.2% | 50.5% |
| Student Racial Demographics: | | |
|    White: | 56.2% | N/A |
|    Black: | 3.7% | N/A |
|    Hispanic: | 10.4% | N/A |
|    Asian: | 14.2% | N/A |
| Student-to-Faculty Ratio: | 5.9 : 1 | N/A |
| Total Faculty: | 236 | N/A |
|    Male: | 54.7% | N/A |
|    Female: | 45.3% | N/A |
|    Minority: | 19.5% | N/A |
| **Full-Time Starting Salaries** | 2020 | 2017 |
| Private Sector (Median): | $180,000 | $160,000 |
| Public Sector (Median): | $55,053 | $46,000 |

ovember 5, 2021 a final demand for production of documents noticed to PCL and STATE BAR under CBPC Section § 8330:

1. PCL, subsequently noticed on multiple occasions as described above and below FAILED TO RESPOND.

2. Under the section, failure to respond allows demanding party to seek

– 65 –

order of contempt and mandamus order from the Court; here Plaintiff makes express request for issuance of finding and order as immediate injunctive remedy;

3. There appears to not be a tolling or SOL attached to compliance and PCL has failed in its duties to resolve the current issues clouding its actual organization, as all current officers of the Corporation are likely there by "ultra vires" conduct, thus it is argued that any acts void ab initio as a matter of law;

4. Plaintiff asserts he is still lawful Secretary of the Corporation and seeks to take control and appoint a Trustee to hold valid elections and reconstruct the administration.

vi. Plaintiff argues and requests factual determination and statement of decision determining if the STATE BAR abrogated its duties in direct contradiction to statute, including CBPC Section § 6001.1 in the interpretation and enforcement deviation from policy, statute, quasi legislative Judicial Order or approved rule.

vii. In addition, Plaintiff argues, and requests factual determination and statement related to whether the California Judiciary abrogated its duties in direct contradiction to statute, given that:

1. Argued and evidence provided in support above and below yield a clear and compelling demonstration that the STATE BAR and

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

operators of <u>Enterprise S</u> daily ignore, misrepresent, or fail to maintain reasonable adherence to Section § 6001.1, Federal and State administrative law, e.g., the APA and CAPA, or Judicial Administrative Order. to the lay person such as Plaintiff what appear to be unlawful deviations from both Legislative statute and quasi legislative Judicial Order or approved rule.

    a.  Plaintiff demonstrates using electronic communications, third-party reports, video, and witness affidavits. [See EXHIBITS PCL-1, PMT -1, R1, etc.]

The common law right to fair procedure was established to protect the public from "arbitrary decisions by private organizations."

The purpose of the common law right to fair procedure is to protect, in certain situations, against arbitrary decisions by private organizations. As this court has held, this means that, when the right to fair procedure applies, the decision making "must be both substantively rational and procedurally fair." ( Pinsker II, supra, 12 Cal.3d at p. 550.)

Potvin v. Metropolitan Life Ins. Co., 22 Cal.4th 1060, 1066 (Cal. 2000)

    2.  Section 6001.1 is not the stated primary purpose or intent of the State Judiciary; consequently, does this section violate Separation of Powers Doctrine or imply unlawful waiver of Constitutional rights or implicit Conflict of Interest issues?

– 67 –
COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Plaintiff asserts that no reason to believe that this violates any rights, as the establishment of a professional duty standard of care or consideration.

      a.  Here, Plaintiff asserts on reasonable belief and no evidence to the contrary, that the State Bar has never openly communicated the expectation that "Protection of the Public is the Highest Priority No Matter the Conflict of Interest."

      b.  If Membership in the STATE BAR is mandatory, why is the State Bar able to vary its speech related to its mission and hold licensees and unauthorized "practicing" individuals to procedural discipline where it has not been established that their discipline process is Constitutional or itself has followed the proper procedures.

         i.  Where the State Bar has clearly failed to operate in accord with its own rules, as incorporated reports from the State Auditor are incorporated by reference here.

      c.  STATE BAR will likely argue here that the "arm of the Judiciary" must uphold the law; unfortunately for the Defendants, there conduct demonstrates the frivolity of such contention as militate and terminal to their cause.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

viii.   The State of California's interest here may be conflicted, as clearly a great deal of Federal Student Aid is applied to California public law schools; making space for intrastate transfers versus out-of-state transfers is facially more lucrative.

2. An affirmative duty to ensure that PCL was in fact in compliance as both the school and its monopoly regulator the STATE BAR.

3. Failed to comport conduct to the standard of the "reasonable person in similar circumstance "with an affirmative duty to screen their student prospects for fitness, under STATE BAR Guidelines.

   a. As discussed below, the STATE BAR is the former attorney's professional trade association, since on or about 2018 its role as such was terminated by statute.

4. Failed to comport their conduct to the duty when informed of its deviation from the conduct that would reflect the circumstances. Examples include, but are not limited to:

   a. Violation of Guidelines for Unaccredited Law Schools Rule 4.208 in that PCL had a undertaken the duty to submit a good-faith application for a waiver notifying the State Bar of my participation as a "full time" student and eligibility for degree award. Instead of this, operators of <u>Enterprise P</u> and <u>S</u>, including SPIRO and LEONARD conspired and collaborated to deny Plaintiff lawful relief by:

      i.   LEONARD's continued representation of Admissions and as primary point-

of-contact in the coordinated joint venture to neutralize and suppress Plaintiff after denying him any viable mechanism for completing his degree to the express knowledge of Enterprise S directors DURAN, WILSON, DAVYTYAN, CARDONA, HOLTON, AND NUNEZ and operators CHING, HOPE,

    ii.

b. Plaintiff reiterates, although he might "pray" for eligibility to take the State Bar and believes he has met the lawful and appropriately enforceable mandates of the statute, Plaintiff's argument here treats separate the degree grant from its "approval" by the Court or the State Bar as qualifying or readiness to sit for the Bar. Consequently, Plaintiff's request that the Court issue order for delivery of degree request as separate from an order indicating that the finder of fact has indeed found in Plaintiff ready and qualified to sit for the Bar.

c. Plaintiff here requests that the Court provide a statement of determination indicating, as for degree grant, what requirements remain, and which entities or individuals bear responsibility or liability for its delay and delivery.

d. Plaintiff requests determination related to the procedural and substantive "unconscionability" of the contract.

e. Plaintiff requests determination related to the procedural or substantive unconscionability related to enforcement of contentious provisions of the State bar Act, including the mandatory membership requirement.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

      f.  Plaintiff challenges mandatory membership requirement based on rights of freedom of association and under 28 U.S.C. 1265.

**Plaintiff Attestation of Fitness and Preparedness**

Plaintiff asserts that he is an American male above the age of forty-five without criminal record.

Plaintiff asserts that he has demonstrated in exemplary the model of the diligent fiduciary, at tremendous risk realized in the financial, familiar consortium and emotional costs this experience has tolled.

**Plaintiff matriculated into PCL law school in Fall 2019.**

Plaintiff was recruited as a victim and unwitting participant in a scheme by the PCL administration to defraud their students, volunteer faculty, and alumni membership to the detriment of all but the Defendants and their continuing unlawful.

The Plaintiff has reliable evidence and witness testimony corroborating the issue existed and was constructively noticed, via individual transcripts and other records in 2015, to the California State Bar, the "administrative arm" of the California Supreme Court, responsible for the "protection of the public as the highest priority"; the "first mandate" of BPC 6001.1 includes an imperative admonishment that on lay first impression, and after it, communicates that this priority comes first, "no matter the conflict of interest".

Here, the school and its vertical market participant and statutory monopoly regulator, the California State Bar knew, conspired, and engaged in a scheme (racket) where the school was granted the "power" of ignoring state and federal law without fear of admonishment or substantive castigation.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Defendants will argue that plaintiff seeks to invoke tort or penal culpability

After taking the Baby Bar, Plaintiff receives transcripts that identified the classes taken and an incorrect corresponding unit award where the hours were shown.

The form of the transcript, as well as additional information received by the State Bar from PCL, suggests error identification and correction possible with little expenditure of State Bar regulatory resources.

Instead the Defendants chose to demur, deny, and delay, hosting a series of meetings that lasted hours, involved as many as a dozen community members and ended with no internal remedial or good faith  action from the Enterprise.

PCL and Enterprise P were obstinate and unwilling to cure the issues.

Instead, PCL and the State Bar engaged in conduct, egregious and anathema to the rule of law, designed to "quash" the matter and "silence" those who complained.

Defendant solicited aid from the State Bar, the "administrative arm" of the California Supreme Court and PCL was further affirmatively assisted by STATE BAR executive and administrative leadership.

**Defendants Conduct Demonstrative of Moral Turpitude**

Plaintiff's exhibits show that many Defendants will claim to have been respected members of the Bar for many years and each will likely be able to present significant "mitigating" evidence.

Here, as with the now infamous disbarred attorney Thomas Girardi, the Defendants conduct cannot

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

be excused on that basis, given the level of culpability, conspiratorial or symbiotic enterprise interoperation, and the substantial injury, and tremendous potential for public injury, their conduct has driven the Plaintiff to appear with in compelling cause before the Court.

**PCL & Enterprise P employed "ghost" Deans.**

SPIRO was Dean of the People's College of Law until his resignation in 2021. Although SPIRO remains active in all aspects of the operation of  Enterprise P. SPIRO was not a ghost, as he was active and easy to reach even after his "retirement" as Dean. SPIRO operated as school contracts "enforcer" along with PENA, BOUFFARD, SARIN, and GONZALEZ.


POMPOSO took over as PCL's Dean September 27, 2022. As of February 18, 2023 POMPOSO has not responded to the notices sent to her as notice or request to deal. POMPOSO appears to have intentionally blocked messages to her  from the Plaintiff  to another publicly available email address.

**STATE BAR condoned PCL's "ghost" Dean practice.**

STATE BAR, LEONARD and operators of Enterprise S were noticed on each change. Plaintiff is uncertain if these notices were made timely.

Plaintiff reasonably believes that the "appointments" of TORRES and POMPOSO were unlawful, given Plaintiffs allegations related to the ultra vires status of PCL's Community Board.


**Ghost Deans conduct violated rules of professional responsibility and state law.**


**Ghost Deans had contractual and fiduciary obligations and a higher conduct standard.**

**Did the Defendants engage in an unfair and "continuing course of conduct"?**

For reasons discussed above and further below, Defendants appear to have engaged in and are now presently operating "continuing course of conduct" that is unfair, egregious, and unlawful.

Unfortunately for the Defendants, the nature and easily foreseeable negative impacts of the conduct, including failures to intervene or recuse when statute or duty demanded, unfair debt collection, extortion, retaliation[16]

**Two Letter Strategy; Musical Chairs;  used by rackets.**

State Bar uses the strategically timed release akin to the cephalopods use of ink in the ocean to avoid accountability.

For example, on or about January 9, 2023, the State Bar announced the appointment of Enrique Zuniga 'Public Trust Liaison' (PTL), ostensibly as a proactive, confidential[17], independent, and impartial nexus for the public.

Yet the position is new and seems to be focused on lulling te public through hiring an "omsbudsman" that is a great listener but effectively, by design of the position, a living "File 13" where a duty of confidentiality and special relationship between the PTL position

Defendants will argue that correlation is not causation and that the "strategic release of public records" or hiring personnel for damage control is both common practice, i.e., not a crime and a good response to the publics issues.

Unfortunately for the defendants the arguments fail disjunctively given:

---

[16] Here, after HILL paid a demand amount of $7934.00, on
[17] The State Bar claims and role elated to the PTL  it can "appoint" employees to novel positions on its website

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

e. What is the actual capacity of one liaison when the STATE BAR cannot substantively handle cases in backlog received through "normal" non-pipeline channels? Is this capacity so great that it even merits advertising? What was the approach for procedural consideration of the scope and roles of the position?

The mere raise of the questions creates doubt; STATE BAR's responses not likely to coherently answer these questions again raise the issues of procedural rulemaking adherence under the APA.

f.  that correlation sufficient to establish plaintiffs position as well as the nature of many of the alleged violations are designed by statute to allow broad and plausible evidence as sufficient to establish culpability; and

g. There is no lack of direct evidence in support of claims; and,

h. No material facts are in dispute.

**Enforcement Attorney Discipline Announcements Display "Two-Letter" Conduct**

Are PCL and STATE BAR estopped from claims of negligence?

1. There is no defense of negligence in the context of contempt. Here, Plaintiff from experience as well as direct reporting from the sovereign California have recorded decades long issues that the State Bar continues to fail to address.

   a. "Girardi (disbarred, ID , Eastman, and even Mr. Dunn": Here State Bar will claim the appropriate results—disbarment or proceedings underway; for Mr. Dunn, the only

name of the last that served as a former Executive Director of the State Bar.

    i.   Plaintiff asserts that it is not relevant whether these men are convicted of crimes as they have already been disbarred establishing the conduct violated the professional rules;

    ii.   State Bar admits to previous mistakes when publicized and issues comments to the press and potential changes to the professional rules systems in demonstration of its "earnest efforts of reform" for every crisis;

    iii.   Foe every crisis as longstanding operational pattern and practice

   b.  Plaintiff argues here the racket essentially operates and maintains viability year after year as an "intractable problem that requires additional funding to resolve." or laches issues in prosecution preventing substantive remedial action:

    i.   The rhetoric of the State Bar in its communications to the public and its member licensees where accurate is reasonably promulgated by good faith market participants; but this perspective is a "double-edged" sword, for it lends "artificial credibility" to spurious argument, insipid, and deceptive rules and practices outside the bounds of State Bar authority as well as that of its Judicial body.

    ii.   The State Bar violates law and due process to avoid and abrogate its legislatively mandated and Judiciary unopposed administrative and enforcement obligations. Here Plaintiff argues that here,

2. PCL and Enterprise P coordinated an Interstate Fundraising Auction; Plaintiff believes and has requested documentation to help determine, the following conduct:

    a.   and failed to report the sums to the appropriate agencies nor remand the proceeds to the school for legitimate purpose.

    b.   Plaintiff issued a "Final demand for the immediate delivery of documents prior requested for inspection. Notice of Breach of Duty; Notice of Potential and Ongoing Violation of Law (BPC § 8330 et al.) " on November 5, 2021, [see exhibit EXHIBIT FD-1 fDemand11052021thtoPCL.pdf].

3. PCL continues presently (02/04/2023) to continue to operate in furtherance of its scheme, evidenced by the following:

    i.   Engaging in ultra vires fashion to the bylaws of the corporation and, as discussed earlier with full knowledge of STATE BAR and operators of <u>Enterprise S</u> liquidate the fixed assets of the school in unlawful and unjust profiteering and in violation of their duties as operators of a law school, focused on attracting and matriculating the "underrepresented.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

## ATTN: ATTORNEY GENERAL OF THE UNITED STATES

EXTERNAL RACKETEERING INVESTIGATOR DEMAND UNDER 42 U.S.C. § 1956;

EQUAL PROTECTION DEMAND UNDER 14th AMENDMENT AND U.S.C. § 1981.

a) Plaintiff asserts and believes on reasonable evidence that Defendants the State Bar of California and the Peoples College of Law, et alia,  are culpable for conspiring, engaging, abetting, obstructing lawful investigation, numerous violations of and various violations of California's Unfair Competition Law arising from the following factual conduct not disputed by any of the parties:

i) That PCL and Co-Defendant, Directors, Officers, and Agents, of a culpable "person" willfully conducted the affairs of a distinct "enterprise" ("Enterprise P") through a "pattern" of "racketeering" in a way that proximately causes restraint of trade and injury to students whether the student has any actual intent to transfer from the institution. Plaintiff injury arises from conduct that breached California's Unfair Competition Law:

   a. California's Unfair Competition Law ("UCL") prohibits insipid conduct counterproductive to the confidence and reliability of a regulated marketplace.

b.  Here, the student is never told that they will receive fewer units than are in essence standardized nationally for law school participants and others engaged in the pursuit of a postsecondary education.

c.  A substantial factor facilitating the fraudulent scheme is STATE BAR's operation of the Registered and Unaccredited Law School marketplace using a model that resembles a lottery with student outcomes for those in poor economic condition suggestive of a "hunger games" lottery.

  i.  For every 100 students that successfully take the FYLSX 5 will pass the State Bar Exam and be allowed before the State Bar.[18]

  ii.  Most passers, including Plaintiff who attended the University of California at Los Angeles, that the units received and "validated" were not transferable to state run (ABA) law school operated within the secondary and postsecondary public trust system.

  iii.  To be clear, the UC system rule is an <u>exclusionary</u> rule with inevitable disparate impact consequences because PCL as a "fixed facility" school located in a community suffering tremendous lack of access to legal and quality education services in MacArthur Park district[19] and  is located  it prevents

---

[18]

[19]

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Here, PCL entered tie contracts that, unbeknownst to the Plaintiff, were designed to heavily discourage and prevent his transfer to another law school, a per se naked restraint of trade in the interstate law school transfer marketplace and a violation of Plaintiff's rights.

PCL's lack of regard for student readiness and preparedness can be seen from its FYSLX passage rates over a period of years renders axiomatic the premise that PCL's recruitment practices present for the students were unconscionable and intended to conceal their unlawful scheme; whereby those who successfully passed the First Year Law Student's Exam (FYSLX) and desired, or were thought to desire, to exercise their rights in attempting transfer to other institution to complete their education were disincentivized or prevented from transfer.

1. Awards assignment violated Federal Law:  2011 Federal Government set the standard for use in order to make Title IV Federal Financial Aid applications and awards more efficient.

2. The Higher Education Act created the federal Financial Aid System, reauthorized by Congress every five (5) years.

3. The 2008 reauthorization included a new definition of credit hour that went into effect July 1, 2011.

4. In a response to initial cries of "infringement of institutional autonomy, The Department of Education's response, recorded in the Federal Register, was that, "…the proposed definition of a credit hour is necessary to establish a basis for measuring eligibility for Federal funding…This standard measure will provide increased assurance that a credit hour has the necessary educational content to support the amounts of Federal funds that are awarded to participants in the Federal funding programs and that students at different

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

institutions are treated equitably in the awarding of those funds."

2. Specific categories of conduct recognized under the statute are "'unlawful, unfair or fraudulent business act or practice.'" In re Pomona Valley Med. Group, Inc., 476 F.3d 665, 674 (9th Cir. 2007) (citing Cal. Bus. & Prof. Code §§ 17200, et seq.).

**PCL's conduct did not comport with Federal or Local Law.**

Most law schools, and all those located in the State to the Plaintiff's knowledge except for PCL, uses the traditional, federally and state mandated unit credit hours assignments.

Had student been able to transfer and had elected an ABA school with Federal Unit Award Requirements, the student would be forced, after taking a haircut, to borrow more money than they should have needed if the school had comported its conduct to the law, presumably at greater expense to the student, Federal Government and ostensibly the unrelated taxpayer.

PCL's conduct unfairly delayed Plaintiff's graduation in a circumstance where the school was in breach and unwilling to provide the requisite classes they were obligated to provide under regulatory rule and the common law of contracts.

PCL will argue that because they do not participate in Title IV Federal Financial Aid Programs, the law related to credits is not applicable.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Plaintiff responds that nothing in the Act implies that the unit assignments are only binding to Title IV schools, just that it is the standard "measure" for credit hours.

Plaintiff has reason to believe and credible evidence to support the reasonable assertion, in holdings related to the Courts previous evaluation approach as stated in holdings of the plain language of a statute, enumeration is used to limit the scope of a statute; in the case of exclusion, generally the same approach is taken.

Plaintiff argues that the 10th Amendments Supremacy Clause preempts the argument of whether or not "participation in the market" set the contingency on compliance; here, neither PCL nor State Bar will be able to adequately support an argument for non-applicability based on non-market participation; that would be both fallacious and frivolously presented if they were so inclined to debate as argued throughout this pleading.

**Analysis**

The Commerce Clause and Supremacy Doctrine provide the foundation for the argument that credit hours still apply to non-participating but active postsecondary education participants in the marketplace.

Under the Commerce Clause of the United States Constitution (Article I, Section 8, Clause 3), Congress has the power to regulate commerce with foreign nations, among the states, and with Indian tribes. This broad authority provides the basis for Congress to regulate the flow of goods, services, and information across state lines and between the federal government and private parties.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

The Supremacy Doctrine, established in Article VI of the U.S. Constitution, holds that federal law is supreme over state law, and that federal law must be followed by all state and local officials and citizens. This doctrine gives the federal government broad authority to preempt conflicting state and local laws, and to ensure that federal regulations are uniformly applied across the country.

Together, the Commerce Clause and Supremacy Doctrine provide a strong argument for why credit hours still apply to non-participating but active postsecondary education participants in the marketplace. This is because these clauses give the federal government the power to regulate commerce and enforce federal regulations, and to preempt any conflicting state or local laws.

As such, credit hours, which are a standard measure of educational progress and are used to determine eligibility for federal financial aid and other educational benefits, must be consistently applied to all postsecondary education participants, regardless of whether they are participating in a federal aid program or not. This ensures that the flow of educational services, information, and financial aid is not disrupted by state or local regulations, and that all postsecondary education participants are treated fairly and consistently.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Thus, PCL more likely than not was in violation of both Federal and State Law in the assignment of non-standard unit awards because the HEA and other federal statutes apply to its operation.

**A pogrom of deceptive pattern and practice.**

Here, PCL has entered into deceptive arrangements under the "color" of its grant to award degrees in non-compliance with the Private Post-Secondary Education Act, the Higher Education Act of 1965, as well as the State Bar Act of 1937 and those lawful rules and mandatory guidelines the State Bar has constructed to define institutional compliance.

3. Bylaws of the People's College of Law clearly define election procedures and the approach for contested elections, as discussed above and below.

   1. Plaintiff offers as EXHIBIT D titled "BYLAWS OF THE PEOPLE'S COLLEGE OF LAW" a true and accurate copy of the last known and uncontested text and holographic signatures of the Board after a sudden transition

in PCL's administration effected May 22, 2017.

2. Bylaws are the last known ratified set, consisting of 26 pages the majority typed but with various areas of inked signatures.

4. Section 5.3 of the Bylaws was amended and adopted by the then instant Community Board March 19, 2018 and ratified by the General Membership April 7, 2019. Plaintiff has no basis to challenge the accuracy of the record or the validity of the bylaws here, although issues and arguments may arise during discovery that are currently reasonably suspected but for the sake of fairness to all of the parties are not raised now.

5. Lack of government oversight and enforcement means that, even when

successful, the regulator is more likely to unjustly punish the "rare minority or protected class member that survives the California sovereigns unaccredited "hunger games".

6.  The practice fundamentally defames the student, by implying that it takes more time to accomplish less work, that the students and/or the classes are of poorer caliber without objective check.

1.  Students that successfully use California's "alternative pathway" mechanism still face an unequal burden, since they are subject to a 5-year practice delay for Federal Bar.

2.  The State Bar perpetuates a "class" attorney system, where the "lower classes" of its membership are subjected to heightened scrutiny and

recidivistic discipline as accepted pattern and practice.

7. The practice is unfair, because academic institutions regulated by the State Bar must follow the law to be in good standing. Constructive knowledge of the administrators of the institution is all that is required to render the conduct culpable as a matter of tort, but it is clear the practice is unfair to all parties of the class of those attending a California registered or accredited law school who may desire or find themselves in circumstances, economic or otherwise, necessitating transfer.

8. **The practice interferes with students' prospective rights to transfer by denying them the right to apply because of their use of a competitor or competing service.**

9. The practice represents an unfair and likely unlawful "taking".

1.   State Bar's approach to the operation of the marketplace resembles a lottery.

"The 'unlawful' practices prohibited by . . . section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." S. Bay Chevrolet v. General Motors Acceptance Corp., 72 Cal. App. 4th 861, 881 (1999) (citations omitted). Under the unlawful prong, therefore, the UCL "borrows" violations of other laws and makes them independently actionable under the UCL.

**Unfair Practices Need Not Be Unlawful**

In addition, a practice that is not "unlawful" under the UCL may still be considered "unfair." See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180-81 (1999).

To be unfair, the plaintiff  must show that his claim is "tethered" to an underlying law. Cel-Tech, 20 Cal. 4th at 186-87. Finally, the fraudulent prong of § 17200 requires a showing "that 'members of the public are likely to be deceived.' Allegations of actual deception [and] reasonable reliance . . . are unnecessary." Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197 (1983). California Business and

Professions Code § 17200, et seq. is also known as the Unfair Business Practices Act or Unfair Competition Law.

Did Defendants commit unfair, deceptive, and abusive acts and practices in taking and demanding payment from Plaintiff, students, and consumers that those consumers did not owe, because tuition collection, and the loans PCL and operators of <u>Enterprise P</u> solicited had been rendered void or otherwise not payable under state law?

4.  Here, PCL operated a scheme where it recruited students from underrepresented backgrounds that have generally been shown to lack "equal access to legal resources," per its publicly stated mission.

5.  Recruited students were unwittingly solicited to sign and matriculated into by PCL tying agreements, per se restraints of trade.

6.  Students were deprived of privileges and subjected to the following harms:

    1.  Failure to notice, misrepresentation and breach in the duty of care required for "good faith" in depriving Plaintiff of the opportunity to give informed consent related to the unlawful unit awards;

    2.  Here, informed consent would include notice that the award was unlawful, likely sufficient "reason" for the reasonable person to steer clear if prior warned.

    3.  Here, prevention of public harm is presumed superior to risk of or actual public injury.

    4.  Unlawful debt assignment and collection practices;

    5.  Fraud;

    6.  Misrepresentation;

    7.  Timely provision of State Bar mandated disclosures;

    8.  Numerous tolling failures under rule 3.3 § 6068 Duties of Attorney of the

    7.  Contempt of Court, imputations of bad-faith and other inchoate acts to obstruct timely investigation and impede Plaintiff's ability to file timely through conduct coldly calculated to obscure the facts, delay and undermine the plaintiff, and "trump up" cause to attack and defame plaintiff likely to continue their unlawful, anticompetitive conduct and avoid additional liability and public oversight.

    8.  Solicitation and recruitment of enterprise and racket operators to participate in the unlawful conduct described above and below.

**The Unclean Hands Doctrine Reasonably Applies**

Plaintiff asserts pre-emptively  unclean hands doctrine to Defendant served with evidentiary production documents

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Plaintiff has reasonable, clear, and convincing evidence of the culpability of the Defendants:

    *i.*   Defendants have shown a protracted, inchoate, and concerted unlawful effort to avoid and deny the acknowledgment and duties of preservation of evidence in their possession known to be likely material and inculpatory.

        (i)  Formal and final demand for the provision of documents made to PCL Defendants

    *ii.*  Defendants individual defendant activities include, but are not limited to:

        (i)  Failures to follow both Federal and State statutes as well as State Supreme Court Administrative Order, as referenced throughout this document including violations of the Administrative procedures Act and the California Administrative Procedures Act by conspiring to adopt, adopting, implementing, and avoiding Constitutional review in consistent pattern and practice. Plaintiff reasonably believes that

    *iii.*  continuing and presently tolling failure to heed multiple preservation of evidence requests, fully qualified and in sufficient form, with detailed and accompanying bases for the requests.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

  *iv.* Defendant licensees failure to exercise "the knowledge and skill of an ordinary professional in good standing" in Bad-Faith and counter to the interests of public protection.

   a. The duty of care standard here is constructive, i.e., "knew or should have known" because Defendants

II. The State Bar of California is a monopoly regulator and market participant tasked by the California State Legislature with the express unique mandate of **"protection of the public regardless of the State's or agents Conflict of Interest."**

 i) "As in In re Shattuck, supra, 208 Cal. 6, and Brydonjack v. State Bar, supra, 208 Cal. 439, there is no reason to interpret the existing statutes in a manner that would raise serious constitutional questions." (see in re Attorney Discipline)

 ii) In 2017, the Supreme Court of California issued Administrative Order 2017-09-20 (see Exhibit AO-1) clarifying the State Bar's authority as the 'administrative arm" of the California Supreme Court stems from the Legislatures remand of the State Bar to the judicial branch for purposes of "attorney admissions, regulation, and discipline." ibid p. 3

  (1) Argued here is that the State Bar's failure to follow process in its regulatory functions realized is more direct threat to the public than "the possibility of inconsistent judgments which may undermine the integrity of the judicial system." (People v. Sims, supra, 32 Cal.3d 468 at p. 488, 186 Cal.Rptr. 77, 651 P.2d

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

<u>321</u>.)" *Lucido v. Superior Court (People)*, 259 Cal. Rptr. 339, 342 (Cal. Ct. App. 1989)

(2) Because the State Bar is the outward "facing" administrator, disciplinary regulator and point of contact for the public, it is lik

iii) The State Bar is a public licensing and regulatory entity that acts under the authority lawfully delegated to it by the sovereign arms of the State of California: the Supreme Court and the Legislature.

iv) The Supreme Court's authority over the State Bar includes the authority to review State Bar actions for antitrust issues and impacts on competition. The Supreme Court, in the exercise of its inherent authority, may conduct a de novo review and may modify or reject any policy or action of the State Bar relating to the regulation of the practice of law, including any that may implicate antitrust and competition issues. [Exhibit AO-1 p.3]

III.   The State Bar Act, encapsulated in Business and Professions Code Div. 3 - Professions and Vocations Generally, Ch. 4 - Attorneys (Bus. & Prof. Code §§ 6000 et seq.), is the source of both the State Bar's authority and imperative mandate.

IV.   The People's College of Law, PCL, is a vertical and regulatory competitor and active market participant (regulator v. regulated), as a registered fixed facility law school.

V.   PCL was engaged in per se interstate commerce, as it accepted students who were reasonably believed by the Plaintiff to be, at all times of their attendance, fully qualified residents-in-fact of other states, including but not necessarily limited to Arizona.

VI.   PCL was allowed to operate by the State Bar from 2015 to 2022, while PCL knowingly operated  in violation of a variety of Federal and State statutes not limited to unfair debt collection, fraud, and conversion. State Bar has published in a letter of non-compliance to the school issued in July 2022 that it knew of the issues in 2020, but elected not to issue the requisite notice of non-compliance letter.

VII.   There is no evidence that the State Bar's non-issuance of notice changed or avoided any of the duties of PCL, its Directors, officers, or agents.

" There can be no vested right to do wrong," citing Satterlee v. Matthewson , 16 S. & R. 191: " In the nature of things there can be no vested right to violate a moral duty or to resist the performance of a moral obligation." We consider the same rule applies to political duties and obligations--that is, duties and obligations due to the Government. Cohen v. Wright, 22 Cal. 293, 327 (Cal. 1863)

i)

VIII.   Violations of the State Bar Act sufficient to form probable basis for RICO;

(1)  Section 1962 requires the existence of two distinct entities: "a 'person' and an 'enterprise' that is not simply the same 'person' referred to by a different name."

(2) For facts related to <u>Enterprise P</u>, Defendants PCL and the enumerated individual defendants, under a "student recruitment for purposes of exploiting and restraining FYLSX passers" racket.

   *i.*   Here, Plaintiff asserts student "exploitation" refers to the following conduct:

      (i)   Conspiracy to commit fraud under color of law;

         a.   Conspiracy is the agreement between two or more to commit an unlawful act. Generally, a conspiracy requires the involvement of one additional person than would be necessary to commit the crime, and modernly many states require an "overt act in furtherance of the conspiracy", for example the filing of false documents with a governmental agency, as a prove out requirement.

      (ii) soliciting money, under color of right and law, with the intent to defraud.

         1.   Fraud is the conversion of property obtained by the intentional misrepresentation of material facts. The tortfeasor need not have intent,

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

but to misrepresent the facts , only that the consequence of the

misrepresentation is to the enrichment or benefit of the tortfeasor.

Here, Defendants PCL as individuals and operators of Enterprise P

(iii)Offering "discounts" for volunteer labor fraudulently solicited by the

Defendants operating Enterprise P and supported by

(3) For facts related to Enterprise S, Defendants The California State Bar and the

enumerated individual defendants thereunder, in the operation of "The Office of

Admissions" racket. the grant of a monopoly powers to the detriment of the public,

specifically law students and restraint of trade in the specific marketplace.

*i.* Office of Admissions is budgeted differently and generally has greater

discretionary access to funds. (See Finance Committee Meeting, YouTube, )

(4) they are legislatively mandated to regulate.

IX.   PCL engaged in concert with NL, a State Bar employee and active participant in Enterprise

S, acting under "color of law" in her designated role  the Bar as well and concert with the

State Bar unlawful conduct, including

X.   PCL knowingly engaged in fraudulently entering into tying contracts, as no student or

public consumer could transfer without extreme disincentive unlawfully granted under

"color of authority".

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**State Action Doctrine Given Plaintiff's Claims**

The Fourteenth Amendment incorporates the Bill of Rights and Constitutional protections enjoyed by Citizens of the United States to enforce those same rights against government actors.

In addition, Persons, as individuals, cannot claim that another person, fictitious or natural has violated the rights above without "State actor involvement".

    a.  The State Bar is a statutory entity created initially by Legislative mandate to function as a professional licensure and members only professional association.

       i.  The Legislature has

Request for Declaratory Relief & Finding of Fact  – Were the activities of People's College of Law and the State Bar in the conduct of their separate and symbiotic Enterprises when State Bar actors were on constructive or express notice, had a duty to act and constructively knew they had the duty, yet willfully failed to act?

**Is there a duty "mitigator" for those determined to be State Actors or operator Licensees who voluntarly, without employment, but perhaps by appointment to a Governmental Agency?**

Defendants will likely argue that these were the "honest mistakes and negligent oversight" of unpaid volunteers and appointees.

 Here, Plaintiff has been unable to find factual evidence, argument or legal basis for an assertion that a volunteer public servant serving as a Director or Officer is immunized for their per se

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

conduct in bad faith or gross negligence. Since time immemorial, ignorance of the law has not been held as viable defense; Plaintiff believes that remains the case here; given the nature of the education of the parties and the circumstances.

In further support, Plaintiff incorporates various State of California agency work products, including a State Auditor prepared risk assessment and audits conducted over a fifty (50) year auditing period reporting issues related to the conduct or the dysfunction of the discipline system, issuance of orders, many of those references referred to and detailed throughout this pleader, generally incorporated by reference as exhibits including:

**A.**  , Office of the State Auditor, Report 2015**, State Bar of California: It Has Not Consistently Protected the Public Through Its Attorney Discipline Process and Lacks Accountability [see Exhibit PP1A FULL REPORT CAO 2015-030]**

**If criteria are met, could Eleventh Amendment privilege reasonably extend to the non-governmental but complicit and entwined operators of <u>Enterprise P</u> ?**

**Here, Defendants will likely argue that they were "just following orders" and acting in accord with the statutes and rules.**

Plaintiff responds that the Defendants with statutory obligations to act as the monopoly regulator cannot, in abrogation of their duty, tenably argue that a rule that deprives a party of all remedy for the enforcement of his rights, impairing the obligation of contracts and assisting their vertical market regulatory charge in continuing unlawful conduct.

In support of their argument STATE BAR and Enterprise S Operators will cite that as Plaintiff was a student at the school, their disregard for Plaintiff's wellbeing as the monopoly regulator was simply appropriate compliance with the law.

Plaintiff answers that there is no question that the State Bar was aware that HILL was in fact the lawful Secretary of the Corporation and remains so today. STATE BAR and Enterprise S operators were made aware on multiple occasions that a false statement of information document had been filed.

A D&O insurance policy held by carrier AVN denied Plaintiff coverage primarily for reasons that the policy waiver did not cover conflicts between Directors and Officers. Todd believes that the fixing of the election and any acts of the "Board" are illegal and void from the outset, and that as a result, he is still Secretary of the Corporation.

Plaintiff believes that the State Bar has interfered with his statutory duties because of their substantial factor in supporting PCL and its efforts to frustrate Plaintiff's performance.

The following is a list of probable violations that HILL believes have occurred under CCC 52.1 or the TOM BANE CIVIL RIGHTS ACT:

 If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

shall be awarded to each individual whose rights under this section are determined to have been violated.

**Defendants conduct to demur, delay, lull, dissemble, and deny fair fulfilment of contractual obligations.**

STATE BAR and <u>Enterprise S</u> operators appears to have adopted a series of questionable practices, designed to allow it to abrogate its duties related to auto determined categories of "customers, i.e., members of the public with valid complaints, using conduct designed to promote the "rhetoric" of good faith and substantive compliance, while in fact forcing the aggrieved to "waste" their time and effort on activities and outreach designed to lull and give a plaintiff false "hope", generate communication exchanges sufficient to show "good faith" effort to resolve the "impossible or intractable", stall and then ignore or frame any given plaintiff as "unreasonable" or other ad hominem descriptor as defamatory tactic, intended for establishing a "false light" basis for promulgation of an argument of either unreasonable claim or unfortunate lack of redressability. This conduct is exemplified when STATE BAR has a duty to communicate in transparent and plain language and has previously received multiple requests and notices for determinations and fair enforcement of its policies and guidelines.

**Egregious misconduct demonstrated by Enterprise S work product.**

Instead of procedural compliance and fair and equitable enforcement of its Antitrust policy, e.g., where the Office of General Counsel is implicated and the process also requires evaluation by the Office of the Chief Trial Counsel (which see, EXHIBIT AO-1 State Bar Anttrust Policy.pdf).

**Denial and misrepresentation as initial tactic and production of false evidence.**

Plaintiff issued a request for Antitrust Determination to the Defendants and enterprise operators on

Upon multiple submissions for determinations, the masthead was always that of the General

Counsel "self-serving" excerpts from contracts where the nature of the loss and LM's reticence in

providing digital copies of the policies on its platform and that is the ONLY source of immediate

information. In the case that a dwelling place is rendered uninhabitable it is easily foreseeable that

access to a physical copy of the policy is not achievable.

Interference with Statutory Duties: HILL believes that the State Bar has interfered with his

statutory duties as Secretary of the Corporation. This interference may have violated various

provisions of the penal code, business and professions code, and/or other relevant laws as

mentioned above and below.

Ultra Vires Acts of the "Board": HILL believes that the fixing of the election and any acts of the

"Board" are ultra vires and void ab initio as a matter of law. This may violate the Corporation Code

and/or other relevant laws regarding the formation and conduct of corporations.

Violation of Duty of Care: HILL believes that the State Bar and other members of the PCL

administration may have violated their duty of care as members of the Corporation. This duty

requires members to act in a responsible and prudent manner in carrying out their responsibilities

and obligations as members.

Violation of Duty of Loyalty: HILL believes that the State Bar and other members of the PCL

administration may have violated their duty of loyalty to their respective Corporations and its

members. This duty requires members to act in the best interests of the Corporation and to avoid conflicts of interest or self-dealing.

Violation of Duty of Inquiry: HILL believes that the State Bar and other members of the PCL administration may have violated their duty of inquiry, which requires members to make reasonable efforts to inform themselves of the Corporation's activities and to ask questions as needed to fulfill their responsibilities. The facts present multiple instances of failure to timely produce documents, including proof of debt, meeting videos, etc.

Violation of Duty to Follow Investment Standards: HILL believes that the State Bar and other members of the PCL administration may have violated their duty to follow investment standards, which requires members to make investments that are consistent with the Corporation's investment policies and objectives. Here HILL believes on reasonable evidence that the failure of the STATE BAR to follow the standards for decision making established by the APA and expressed in the CAPA, the STATE BAR has failed to properly review their accounts and expenditures.

Todd cites the relevant sections of the penal code, business and professions code, and/or other relevant laws as the basis for his belief that these violations have occurred. The exact citations of code sections and relevant parts will depend on the specific circumstances and laws that apply in this case.

Because the STATE BAR is the monopoly regulator in the field it cannot appear to be biased and because the Admissions operations of Enterprise S suffer cyclical workloads with "fixed" human

resources avoidance of involvement with students is critical to getting the more important work done.

In addition, STATE BAR may argue in a manner that did not display capricious or arbitrary grants of assistance that might infer favoritism or targeting as the STATE BAR has a high standard for measurement of its internal conduct and discipline regimes and a "reasonable person in similar circumstance complying with a high and rigid compliance to their sworn statutory duty as members and staff of the STATE BAR

**Rule 4.206 Student Complaints**

The Committee does not intervene in disputes between a student and a law school. It retains complaints about a law school submitted by students and considers those complaints in assessing the law school's compliance with these rules.

Rule 4.206 adopted effective January 1, 2008.

**PCL and the State Bar engaged in the "entwined" and "entangled" operation of distinct enterprises.**

In Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001)

<u>Plaintiff can Show Proximate Injury from Enterprise Operators</u>

RICO statute requires a culpable "person" who conducts the affairs of a distinct "enterprise" through a "pattern" of "racketeering" in a way that proximately causes injury.

Generally, RICO liability depends on showing that the person "conducted or participated in the conduct of the enterprise's affairs. "For purposes of RICO, a corporate employee (a natural person) is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status, even where the employee is the corporation's sole owner. Likewise, the existence of an enterprise is separate from the pattern of racketeering activity in which the enterprise engages. The enterprise is "proved by evidence of an ongoing organization . . . and by evidence that various associates function as a continuing unit," while the pattern of racketeering activity is proved by evidence of at least two racketeering acts committed by participants in the enterprise.

**Unlawful credit hours awards is not in factual dispute.**

Here, all parties agree that PCL was, in fact, awarding the incorrect number of units for years.

In an attachment to an email sent to the PCL Board of Directors dated September 6, 2021, "Regarding Peoples College of Law Awarding of Course Units and Students Transferring Out", Robert D. Skeels, Esq., a volunteer Contracts instructor and 2017 PCL graduate indicates the following:

"                "Peoples College of Law ("PCL") has been awarding the wrong number of units for courses for a number of years, and this practice harms students that want to transfer to other law schools."

 [see, EXHIBIT UI -1 units issue memo to PCL Board RDS.pdf, p. 1]

However, evidence establishing the pattern of racketeering activity and evidence establishing an enterprise "may in particular cases coalesce."

Defendants and instructors have admitted to the unlawful credit hours award and Plaintiff cedes here that the same unit awards were used for all students.

Defendant licensees and culpable operators of Enterprise S knew or should have known that the grant was unlawful; furthermore, any claim of negligence, given that from the time of initial discovery of an "honest mistake" to acceptance by the Plaintiff of the Defendants willful conduct performed in bad faith was nearly a year.

**TAKINGS AND CONSPIRACY CAUSES**

**Did the Defendants conduct violate the Takings Clause?**

In order to state a claim under the Takings Clause, a plaintiff must first establish that he possesses a constitutionally protected property interest.

For efficiency, because "the absence of any actionable constitutional violation negates by definition the existence of a conspiracy to violate constitutional rights[20]," Plaintiff reiterates standing his arguments for standing above and below.

The Fifth Amendment to the United States Constitution provides, in relevant part:"[Nor shall private property be taken for public use, without just compensation." U.S.CONsT. amend. V. The Supreme Court has applied the Fifth Amendment's just compensation requirement to the states through the due process and equal protection language of the Fourteenth Amendment. See Missouri Pac. Ry. v. Nebraska, 164 U.S. 403, 417 (1896) (holding that the taking of private property is forbidden absent compensation by the due process language of the Fourteenth Amendment); Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 381 (1894) (holding that the taking of private

---

[20] (Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989))." San Diego Police v. San Diego Retirement, 568 F.3d 725, 740 (9th Cir. 2009)

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

property is forbidden by the equal protection language of the Fourteenth Amendment in the absence of compensation).

**PCL and State Bar knowledge of foreseeable injury is not in factual dispute.**

Does Section 6000.4 violate the Plaintiff's First Amendment Rights?

Plaintiff arguments are two-pronged : That the reputation of the State Bar and the reality of its operation increases the likelihood of Plaintiff to loss or injury without application of due process because the STATE BAR's admissions and disciplinary systems are admittedly biased and over enforce against minority members of HILL's complexion. [See EXHIBIT

That the STATE BARS negligent Governmental oversight defies and frustrates the reasonable persons statutory obligation to join?

**Were PCL documents to the STATE BAR an attempt to legitimize a racketeering enterprise?**

**Did the conduct meet the standard for per se violation of the Sherman Act?**

Here, Plaintiff asserts upon reasonable evidence, including progress reports and personal transcripts issued to him by the school and in the possession of the Defendants operating both Enterprise's P and S the following:

From the Fall of 2015 until the State Bar's issuance of a letter of non-compliance to PCL in the Summer of 2022, PCL issued 2/3$^{rd}$s of the lawfully required units for every class taught and successfully completed by students. Issuance was both accomplished by mail and wire:

Plaintiff asserts both postal service and wire were also used to effect a cover for the misrepresentation and likely fraudulent conduct of PCL and its Enterprise P operators as a "mere" tortious "breach of contract."

    ii. On July 8, 2022, PCL and operators of <u>Enterprise P</u> sent to Plaintiff giving notice of intentional breach of contract and duty.

    iii. On July 9, 2022, agents and operators of Enterprise P, placed into the bailment of USPS for purposes of delivery to Plaintiff via certified mail (id 7022 0410 0002 9113 6086) the same. Plaintiff upon reasonable belief and evidence believe operators here were SPIRO, PENA, BOUFFARD, FRANCO, DUPREE, SILBERGER, ZUNIGA, TORRES, SARINANA, LEONARD, CHING, AND NUNEZ.

Here, Defendants will argue that Plaintiff was aware that the school's class offerings were limited and that there were also limitations on the institutions ability to find teaching staff ostensibly for no other consideration than the ability to apply the experience as MCLE (continuing education) requirements. Additionally, as has been illustrated throughout, Defendants likely to uses a variety of "ad hominem" attacks ("Why would student take extra classes? He was planning to graduate early and that's just wrong!") designed to "cloud" the fact that none of their "defenses" speak to why Plaintiff's lawful good-faith conduct justifies their bad-faith, insipid and unlawful conduct.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

XI. Plaintiff asks for determination of whether ANY allocative efficiency or maximization of consumer welfare is realized in violations of the State Bars Administrative rules, State and Federal statute, including, but not limited to The Sherman Act, by issuing two units instead of three for qualifying classes in conflict and under "color of law" for unlawful purpose .

XII. Plaintiff alleges violations of the APA, in that the Defendants have a duty of both assessment and recordkeeping; failure to use the correct metrics or provide appropriate records assessment is likely both breach of law and rule of professional responsibility, as argued above and below.

XIII. Here, because the STATE BAR is the monopoly regulator, modernly the STATE BAR can be found to have violated Plaintiff's common law right of due process from the OUTSET.

   i) Here, Plaintiff argues that STATE BAR issued in essence a "retroactive" notice of non-compliance two (2) years too late. STATE BAR had a duty to issue the notice when it was constrictively aware of the non-compliance. Here, STAT BAR did not issue any notice to the public for years, and did not operate in any semblance of good faith to resolve the issues when likely doing so would have resulted in no claim or viable cause.

*2)* Breach of Contract, Breach of Good Faith

   I. Plaintiff further makes claims of Violations of Civil Tort Law with the facts satisfying all required elements, undisputed and not limited to the following:

PCL entered into contract with PLAINTIFF in bad faith and demonstrable intent to defraud.

   i) Violation of Federal Civil Rights pursuant to 42 U.S.C. § 1983in that:

(1) Defendants the People's College of Law violated Plaintiff's civil rights. To establish this claim, HILL must demonstrate all of the following is likely—more probable than not – the case:

1. That LEONARD was a State Actor, employed in the Admissions area of the STATE BAR and her conduct in relationship to the alleged scheme was reasonably related to her duties as the "Principal Program Analyst" for The State Bar's Office of Admissions.

2. That LEONARD engaged in tolling and continuous conduct designed to lull, frustrate, deter, oppress and assist PCL in unfair and unlawful conduct.

3. That LEONARD with express scienter and intent, when the standard required to comport her conduct in strict accord was "knew or should have known", accepted and processed many non-conforming transcripts, as a result assisting PCL in its Enterprise P.;

ii. LEONARD intentionally and with scienter "ran interference" for the interoperating racketeering Enterprises P and S, obstructing both the lawful handling and publication of student complaints and "public commentary";

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

(i)  Plaintiff refers to EXHIBITS

1.   EXHIBIT R - Communication between Dean Spiro, Christina, and Natalie 102221.pdf;

2.   EXHIBIT R1 - 102721 Natalie confirms she is working on complianceresolution_.pdf

3.  EXHIBIT R2 - 111221 Request for update_.pdf

4.  EXHIBIT R5 - Communication from Audrey indicating assistance 01042022 .pdf

5.  EXHIBIT R3 -091522 Next Steps as to Denial of Exception Under 5.6.pdf

iii. 2. That LEONARD was acting or purporting to act in the performance of her official duties, under color of law as a state actor in her role  as Director of Admissions at the California State Bar. 3.

iv. Plaintiff argues that the conduct violated Equal Protection as claim under a fundamental right theory of liability and right of equal, non-capricious or arbitrary rules enforcement; the STATE BAR has failed to provide the education

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Defendants claim that HILL requires for degree grant although he was clearly the victim of unfair business practice and unlawful conduct. That STATE BAR's failure to intervene, prior to and after students' matriculation into a KNOWN non-compliant but undisclosed and misrepresented to the student was a substantial factor in causing Plaintiff HILL's harm.

    *v.*  Plaintiff argues that the conduct violated Equal Protection as claim under a fundamental right theory of liability and right of equal, non-capricious or arbitrary rules enforcement, including unlawful seizure of property rights and interests; the State Bar has failed to fairly enforce its statutory and regulatory obligations; instead, in an apparent grant of "monopoly power" Defendants claim that HILL requires for degree grant although he was clearly the victim of unfair business practice and unlawful conduct. That STATE BAR's failure to intervene, prior to and subsequent to students' matriculation into a KNOWN non-compliant but undisclosed and misrepresented to the student was a substantial factor in causing Plaintiff HILL's harm.

ii) Plaintiff asserts and offers for demonstration that Defendants, acting as Dean's, Directors, or Officers of the Corporation, dba PCL submitted or willfully caused to be submitted, documents designed to restrain trade, in that it restrained the student from transfer, a common commercial practice of market selection in academia.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

iii) Plaintiff asserts that Defendants entered into every student agreement in Bad-Faith, since the intent was to "reward student success" with fewer units than lawfully allowed.

Here, Defendants will argue, amongst a facially limited number of "defenses", that even if they did, no liability will lie pursuant to Sections § 5047.5 and § 24001.5 of the California Corporations Code ("CCC") limiting, i.e., nullification via grant of immunity, personal liability for officers and directors of nonprofit corporations and associations.

    a. Unfortunately for defendants STATE BAR and Enterprise S, their conduct and constructive and express[21] prior knowledge that exemptions and immunities for the particular acts, the nature of the acts, or the purpose of the acts do not lie for bad faith or unlawful solo or joint venture.

Here, Plaintiff argues the relevant section of the Corporations Code reads: {**emphasis added**} "

Except as provided in this section, **no cause of action for monetary damages shall arise against any person serving without compensation as a director or officer of a nonprofit** corporation subject to Part 2 (commencing with Section 5110 ), Part 3 (commencing with Section 7110 ), or Part 4 (commencing with Section 9110 ) of this division **on account of any negligent act or omission occurring** (1) **within the scope of that person's duties** as a director acting as a

---

[21] Sections 5047.5 and 24001.5 of the [California] "Corporations Code do not provide volunteer directors, officers, members or trustees with predictability and security regarding the limitations of their liability exposure. Instead, they create unpredictability as to whether a plaintiff in a matter totally unrelated to membership, services or benefits could use potential inapplicability of statutory liability protections by adding allegations of wrongful discrimination by the organization as a weapon." (Legislative Proposal (BLS-2008-07), p.3. July 26, 2007).

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

board member, or within the scope of that person's duties as an officer acting **in an official capacity**;  (2) **in good faith**;  (3) in a manner that the person believes to be in the **best interest of the corporation**;  and (4) is **in the exercise of his or her policymaking judgment**.

Plaintiff argues and asks the finder of fact to determine if the conduct of the Defendants fails to meet at least one of the criteria for immunity under the relevant section:

iv) PCL operators of the racket supported CMG (GONZALEZ) in multiple CPC  632 violations, where she expressly activated electronic recording without prior permission of the attendees and with constructive knowledge and the duty to avoid the conduct as a licensee and member of the California State Bar.

(1) Plaintiff sends a final demand for documents email to CMG, PCL, and operators of Enterprise P and S, true and accurate copy of this request, as well as subsequent communications between Riskin and Respondent regarding this request, are attached to this petition as Exhibit B.

v) PCL Enterprise P operators in Conspiracy and through inchoate aid from the monopoly regulator under color of law, sought to frustrate Plaintiff's rightful pursuit of redress on his personal behalf and on the behalf of the Corporation, which the Plaintiff as Secretary of the Corporation had a duty of loyalty to defend and protect.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

vi) Plaintiff asserts that he persists in the good faith attempt to fulfill his duty and appropriately "restore" the corporation from its ultra vires status via imposition of a trustee.

vii) Plaintiff seeks declaratory relief and appropriate referral for criminal activity, as generally sovereign does not grant citizen members of the public the right to charge and prosecute acts that carry criminal culpability.

(1) A standard argument that Defendants rely upon to confuse both officer of the law and lay person alike is to claim that a popup disclaimer indicating acceptance of a private company's terms of service is waiver of the right to claim tort or criminal injury.

(2) Unfortunately for the Defendants, since "time immemorial" a right a person does not have cannot be alienated or waived by civil contract as it is exercised solely under the discretion of the Sovereign through authorized agents. A distinction of note is that the manner of consent for a corporation, a person as an entity, is through vote.

(3) Here, because in this circumstance, neither consent nor waiver was granted, the conduct is tortious and likely criminal in nature, and plaintiff requests a statement of

determination related to this finding as well as referral as is the mandatory obligation of the judiciary in circumstances such as these.

Even were it the case that a third-party "adhesion contract" could in fact somehow avoid or constrain criminal liability by notice for a natural person, in the case of an entity no such claim can be made absent the presence of prior vote.

Plaintiff and all participating members would reasonably expect the meeting notes and comments to be "confidential"; per the bylaws the meeting participants and its work product confined to a specific "membership", identified as the "Community". A private conversation between members of the same community, business, or other entity may ostensibly include any number of individuals. It is the privity of relationship that functions here to establish the expectation of privacy. Public policy would be averse to having things otherwise, as the goal is to avoid "the chilling effect" it may have on honest discourse.

Plaintiff HILL initially included State Bar staff in the correspondence chain seeking assistance, both as a student and Officer of the Corporation; this was prior to his knowledge of the extent of support and interoperation and entwinement shared by Enterprise P and Enterprise S .

Finally, during his attempt to accelerate the response of LEONARD in what had now been in EXCESS OF ONE HUNDRED DAYS (100+) waiting for a response that should have been instantaneous and express for what should have been a simple determination for the institutions (the incorrect award of 2 units for core topic courses instead of the guideline mandated 3), but I now believe is a much graver circumstance in character.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**The form, function, and operation of PCL's racketeering Enterprise ("Enterprise P"):**

1. PCL Administration some time prior to 2015 had constructive knowledge, i.e., knew or should have known that the College was in material and substantial nonconformity to the Guidelines and Rules for Registered Institutions.

   a. In 2020, Plaintiff made PCL expressly aware of the violation. PCL's conduct was designed to perpetuate violation of law.

   b. PCL enlisted Natalie Leonard, when its own efforts to unlawfully "dissuade" the plaintiff were ineffective to further deny, demur, and delay. Here, communications between SPIRO, LEONARD, GONZALEZ, AND PENA provide clear basis for reasonable belief of interaction and interoperation, as discussed above and below.

   c. Administrative Procedure Act (APA) violation: The State Bar's failure to follow proper procedures and consider the consequences of their actions, as described in the case of All. for the Wild Rockies v. Cottrell, would be considered arbitrary and capricious, and would be considered a violation of the APA. The State Bar is a governmental agency and as such, it is bound by the APA's requirements of notice and comment rulemaking and judicial review.

RICO violation: The State Bar's failure to follow the State Bar's own antitrust policy on multiple occasions would be considered a violation of RICO. RICO, or the Racketeer Influenced and

Corrupt Organizations Act, is a federal law that targets organized criminal activity. The State Bar's failure to enforce the antitrust policy on multiple occasions shows a pattern of illegal conduct that could be considered racketeering activity.

California Business and Professions Code sections 17200 and 17500 violations: The State Bar's failure to follow established procedures may also be considered a violation of California Business and Professions Code section 17200 and 17500, which prohibit any unlawful, unfair, or fraudulent business act or practice. The State Bar's failure to enforce the rules and regulations related to the regulation of unaccredited fixed facility law schools, including unfair collection practices, extortion, conversion, harassment, defamation, and interference with business relationships, and conspiracy to deprive students of their constitutional first amendment privilege, would fall under the category of an unlawful, unfair, or fraudulent business practice.

Sherman Act and Clayton Antitrust Act violation: The State Bar's failure to follow its own antitrust policy on multiple occasions is evidence in support of the claim of antitrust violation under the Sherman Act and Clayton Antitrust Act. As a regulator, the State Bar has a duty to prevent anti-competitive conduct such as price fixing and inefficient monopolies. By allowing PCL and Enterprise P to engage in these practices, the State Bar is violating these specific federal antitrust laws.

In addition, the STATE BAR grants a monopoly power to the public universities of California to the detriment of its own citizens: the ability to summarily deny without accepting an application and transfer from any California registered or accredited, but non ABA, school.

State action doctrine: The state action doctrine is a legal principle that holds that certain actions of a state or state actors are immune from antitrust liability. However, in this case, the plaintiff argues that the State Bar's conduct does not qualify for state action immunity because it has not been actively supervising PCL Law School and has not demonstrated a clear articulation of its policy that would justify the conduct.

2. Members of the Administration either failed to inquire and/or inform both peer Board Members as well as the student body, while actively recruiting both students and members of the Board, and in fact sought to hide the fact of this nonconformity.

3. Members of the Administration entered into enrollment contracts with payment components that the students were to sign. No student to Plaintiff's knowledge was properly informed of, what I now believe is "more likely than not" the long term history of PCL's nonconformance.

4. When a student fell behind in payments, of which I am one, then the student was forced to sign a payment plan that included specific language that, even if the student later discovered the probable

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

facts in this matter, the contract would likely harm not only the student's ability to seek recovery but shield the original contract from being addressed in a related cause of action. .

5. Nonstandard and "illegal" proprietary unit assignments made it impossible for students to transfer, since after transfer the student would require more time to meet the specific unit requirements for a degree. An example: Where the average student might acquire 36 quarter units, for the same hourly "workload" Plaintiff and students would only be awarded two units.

5a. It is here students who have passed the Baby Bar but have not yet discovered the nonconformance are trapped; since student sophistication generally increases over time, the system serves to essentially "trap" the student at the school with no way to readily avail themselves of recourse.

5b. Argued in addition is the State Bar's negligence and unlawful conduct likely was both an unlawful grant of monopoly power and abrogative conduct resulting in the STATE BAR and Enterprise S operator's breach of duty and contract.

5c. Both PCL and State Bar failed in their duty of "accurate and fair" assessment, as recordkeeping is a principal component of PCL legal education services.

5d. That both the Federal APA and State CAPA requires diligence and review of potential consequence by STATE BAR and its Agents, Officers, and Directors.

6. PCL's Administration is currently in violation of a lawfully executed demand for the production of documents.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

This is an issue of noncompliance and a violation of law. This is a tolling issue, and since the State Bar as regulator has put PCL on "probation", Plaintiff argues here, above and below, that liability lies with the State Bar for each day that passes as well.

It can be difficult not to conflate the civil right of action granted to persons by the Sovereign versus the rights of punitive action, including the right to charge and, if convicted, receive admonishment under the supervision of the Sovereign.

To wit:

Strict compliance is important, but I can understand why facially this may seem like a minor issue; however, it was the unprecedented use of tactics to delay, deflect, deny, and in Plaintiff's opinion defame me that prompted a closer review and Plaintiff's duties to the organization that have moved me to act.

The core of Plaintiff's allegations, focusing just on the conduct and not any potential motives, are as follows:

1. PCL Administration knew or should have known that it had unlawfully deviated from CALBAR's statutorily authorized and enforceable guidelines when it introduced a proprietary quarterly unit which was in use since 2015?

The relevant portion of Section 5.9 makes it unequivocally clear that, "One quarter unit is defined as ten (10) hours of classroom instruction."

Here, I reiterate that PCL awards approximately 66% of the required quantity of units. For every 3 units a student in a compliant school would receive , PCL students receive 2.

2. PCL and all named Defendants for PCL became aware of, knew or should have known this was the case as the standard to be applied here is constructive.

Here, both duty and law, as rulemaking is a quasi-legislative practicum and thus enforceable as law by a regulator, demanded  that in the case of deviations, the school should have and could have without negative repercussion nor lawful detriment.

Section 5.9 is academically "non-controversial". It is a "minimum requirement" and should not require enforcement action.

Here, not only is the conduct sufficient to violate the California Professional Rules of Conduct ("CPRC"), it violates the duties owed to the Bar and the aggrieved students

Plaintiff argues for the "reasonable person in same or similar circumstances"; here for an institutions director, officer  or agent licensee

But for PCL's bad faith activities conducted with malice the Plaintiff would not have been injured.

**Unfortunately for the State Bar, its agents, Directors, and Officers were negligent and complicit, failed in the performance of both statutory mandate and regulatory functions, and therefore a substantial factor in the Plaintiff's injury and damages.**

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Electronic transmission methods were used including telephone and wire to discuss the estimated 150 "fraudulent" and non-compliant transcripts.

The issue at hand for the Bar is what appears to be an obvious DEVIATION FROM THE GUIDELINES THAT IS BARRED BY STATUTE AND CALBAR POLICY.

**Why did it take the State Bar 115 days to respond?**

*Plaintiff sent repeated inquiries requesting an answer; no answer was forthcoming.?*

Plaintiff argues that is likely because the operators of Enterprise S could not derive a non-culpable, traceable and therefore accountable answer.

Because academic and trade custom in addition to statutes like the federal HEA and California's own governing act for postsecondary education, the PPEA.

Plaintiff asserts that the Legislative record of the State Bar Act, specifically the record of statutory exemptions related to the operations of law schools, speaks to the Legislatures understanding the limits of its authority as it relates to not just attorney discipline, but its authority in relationship to the oversight of the profession.

For the Legislature to "deem" a school type as not requiring its students to participate in a particular requirement facially appears a clear violation

Rational Basis must be  Reasonable Basis – Due Process Required in Application

Plaintiff notes a tension perhaps susceptible to exploitation to the detriment of the public in the application of scrutiny, specifically the "Rational Basis" standard established for professional

– 123 –

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

organizations, of which the STATE BAR is arguably one. (There is an argument that divested of its Trade Organizational duties it is in fact a pureplay regulator and enforcement agency and consequently the organization is both ultra vires and unconstitutional, as it fosters the idea that the legislature has protective and enforcement capabilities that it does not AND the actual Enterprise operators are completely aware of the dysfunction.

Here, STATE BAR argues that the statute mandating that fixed facility registered schools offer four-year programs with 270 hours per year "ties their hands. Setting aside for the sake of argument HILL's clear and compelling reasoning above and below contrary to this view,

, as it must imply that a lawful process has been used in its development and promulgation.

If this is not the case, then "rational" is actually simply "any reasonable rationale," and although the state does have a clear interest in the facility of the defenses of acts implemented as enforceable law, the sovereign has sole authority to charge and prosecute on behalf of the people.

GENERALLY, the Sovereign, in its sole authority assigns or declines to issue criminal charges related to issues defined in the penal code and/or other codes and statutes where criminal culpability has been expressly defined.

As one recalls, a core principle of American jurisprudence is the notion that standing to bring criminal action on behalf of the public is exclusively reserved to the Sovereign.

**"The Sovereign Never Grants the Rights of a Person to Make nor Enforce a Cause of Action for Criminal Culpability Without Express Grant."**

Consequently, a person or individual cannot waive what is only the sovereigns right to make charge, prosecute, or punish the culpable.[22]

There are likely many reasons for the PC 632 code to allow for the making of civil claims; I cede that in many cases the corequisite circumstances may not rise to the level the Sovereign wishes to expel effort to prosecute even though the law has been violated.

1. Some judges have expressed the opinion that Congress's authority is limited by provisions of the Constitution such as the Due Process Clause, so that a limitation on jurisdiction that denied a litigant access to any remedy might be unconstitutional. *Cf.* Eisentrager v. Forrestal, 174 F.2d 961, 965–966 (D.C. Cir. 1949), *rev'd on other grounds sub nom*, Johnson v. Eisentrager, 339 U.S. 763 (1950); Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2d Cir. 1948), cert. denied, 335 U.S. 887 (1948); Petersen v. Clark, 285 F. Supp. 700, 703 n.5 (N.D. Calif. 1968); Murray v. Vaughn, 300 F. Supp. 688, 694–695 (D.R.I. 1969).

2. Plaintiff has been unable to locate case precedent wherein the United States Supreme Court has had occasion to consider the question.

42 U.S.C. § 1981

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal

---

[22] In California Penal Code 837 PC allows for a person to make a "citizens arrest" for a public offense committed or attempted in her presence, (2.) when the person arrested has committed a felony, although not in her presence, or (3.) when a felony has been in fact committed, and she has reasonable cause for believing the person arrested to have committed it.

benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981

**Civil claim at the Court's discretion re the Eleventh Amendment**

Harrison-Hill Doctrine proposed for the clear establishment of express evidence of state waiver  or acknowl3edgement.of  sufficient for

**The Harrison-Hill Doctrine**

Here Plaintiff suggests the following doctrine:

The Court should nullify "triumvirate comity", that is  in its own considerations or decisions that yield foreseeable justiciable when its grant threatens to undermine the perceived or actual integrity of its decisional or rulemaking process.

Integrity in matters of evaluating poorly constructed law, especially law easily foreseeable as subject to challenge.

Here, the lay publican Plaintiff requests the Court's indulgence and consideration of a novel argument for State or Federal Eleventh Amendment Waiver, as well as a way to signal this application as adequate for adjudication in a Federal venue:

It seems appropriate that any law in place needs to be founded on firm constitutional footing. Here, in a sphere where not just the ACTUAL integrity of the participants but the publics confidence that the system operates with integrity

1. proposed for the clear establishment of express evidence of legislative waiver, or

2. proposed for the clear establishment of circumstance framework where it is clear that the governing sovereign cannot or will not be able to maintain the appearance of or actual integrity of the investigation, judicial proceeding, if left to manage by the conflicted person or agency party, or

**'In the Alternative Request 1: Voluntary Motion to Strike and basis for grant.**

In the case that the Honorable Magistrate determines Eleventh Amendment Immunity likely will preclude or preempt claims for money damages and equitable relief requiring use of taxpayer resources against particular DOES, Plaintiff asks that eligible Defendants be removed without prejudice for all appropriate claims.

In addition, Plaintiff asks that all Defendants deemed eligible by the Magistrate be retained for claims where jurisdiction has been determined by the fact finder to be appropriate so that parallel litigation can be pursued by the Plaintiff insofar as he may reasonably seek remedies in good faith

and without detriment, including but not limited to guaranty of monetary claims and determination of anti-trust activities. Plaintiff asserts the following legal basis and support:

    i)   Pending relevant SCOTUS case decision

    ii)

**Is the "first mandate" of the State Bar Act enforceable as a matter of law?**

The California Supreme Court declared in Waller, "Courts will not strain to create an ambiguity where none exists."

The State Bar appears to disagree with this approach to its operations as the "administrative arm of the Supreme Court."

The State Bar uses ambiguous interpretation and underground rule to abrogate duty and avoid accountability. Everyone knows this; lack of trust

Section 6001.1 establishes the state purpose of the Bar as "protection of the public as the highest priority." Until recently, even though this statutory section is never repeated by the State Bar in its printed or online media, the additional "guidance" strongly suggests that the Legislative purpose of the statute is just that, as it terminates with the imperative "no matter the Conflict of Interest."

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

The words set both public expectation and express duty while the State Bar's conduct and rhetoric intentionally meet neither.

If it is enforceable, what is the scope of duty imposed to those who fall under its mandate, including the duties of culpable Defendants who are better served by noncompliance due to conflicting interest?

Specifically:

Is the State Bar responsible for foreseeable injuries to students based on its regulatory negligence?

Is the State Bar responsible for foreseeable injuries to student based on its regulatory malice when "merged" with the institution causing student injury?

 for purposes

1. To whom, and in what circumstance is it fairly applied?

    a. This request is for a separate statement of determination related to the Constitutional question expressed here.

    b. In addition to, or in the alternative, Plaintiff requests an answer here specific to the parties and the facts, which will likely assist in the efficient and good faith identification of the culpable parties

2. Can the State Bar Act itself supply the test for compliance?

3. Are the tests prior accepted as applicable for the determination of qualified, "sovereign", or statutory grants of immunity?

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

a.   Here, Plaintiff refers to the later discussion presented by AO

4.

5.   Does it apply equally in both civil and criminal?

Here, Plaintiff asserts that, in fact, the State Bar Act as written imposes

Is Section 6001.1 Constitutional, in that

§ 6001.1 State Bar–Protection of the Public as the Highest Priority Protection of the public shall be the highest priority for the State Bar of California and the board of trustees in

Does the State bar Acts requirement that students at registered schools study for "4" years violate Equal Protection, in that there is a modern divide between this requirement and the federal credit hour as defined for Title IV programs.

**Was The Conduct Anticompetitive?**

Antitrust is about the rule of law.

The purpose is not to ban a monopoly if a monopoly promotes the most pro-consumer efficient marketplace.

As earlier discussed, a U.S. Supreme Court ruling makes clear that licensing bodies can be subject to antitrust complaints if a majority of their board members come from the profession being licensed.

Here, Plaintiff reasonably believes that the comportment of the State Bar Board Members were licensees and active market participants and not lay members of the public AND that they were functioning or purporting to function in the public interest for the sake of perpetuating a fraudulent scheme.

**Applicability of Section 7 of the Clayton Act**

Conduct that violates Section 7 of the Clayton Act must be "substantially likely to lessen competition if widely applied. Here, pricing is confirmed, and transfer application to the public school system for this subset of schools is summarily denied due to the Board of Regents grant to deny entry ro California residents attending state recognized institutions. "

**Here the conduct appears to meet per se requirements.**

Mob tactics, rigging, racketeering, extortion, wire fraud, all are per se violations in relationship to competition as unlawful conduct is not thought conducive to the orderly operation of the market because the fundamental interest of the State is that its citizens follow the law.

**Clayton Act Prohibits Anticompetitive Joint Ventures**

Section 7 of the Clayton Antitrust Act prohibiting mergers, acquisitions, and certain joint ventures where the effect may be to substantially lessen competition.

Market advantage obtained through unlawful conduct is prohibited.

Here PCL and Defendants involved in Enterprise P to raise "tuition" which it failed to distribute or transparently provide account for in accord with their duties.

a.  PCL engaged "ghost" Deans including JMS and PST including Juan Manuel Sarinana and Pascual Torres;

b.  PCL has apparently engaged a new, complicit Dean in

**The reasonable person does not voluntarily engage and persist in unlawful conduct.**

The reasonable person standard requires one to comport their conduct to the standard of "a reasonable person in similar situation and circumstance."

Here Defendants are either licensees or professional market participants with statutory obligations and legal education.

**Are PCL and State Bar currently in Vertical Merger?**

Plaintiff has reasonable belief and evidence to demonstrate that today PCL and STATE BAR, in tolling misconduct, have established a pattern that satisfies the vertical merger requirements for purposes of unification of interests and action because it demonstrates a merging of interests and actions between the State Bar, as the regulator of law schools, and PCL, a law school under its jurisdiction.

A vertical merger is defined as a merger between companies that operate at different levels of the supply chain, such as a merger between a supplier and a distributor. In this case, the State Bar operates as the regulator and, with PCL as a legal education services provider, operates as an active market participant.

Here, on or around December 2022, the school was placed on "probation", an enhanced level of oversight and a determination requiring consistent and egregious noncompliance.

The State Bar's duty to ensure that all law schools are operating in compliance with the regulations set forth by the State Bar Act of 1937 and the Rules for Unaccredited Fixed Facility Law Schools creates a clear interest in PCL's compliance with these regulations. This is further reinforced by the State Bar's authority to investigate and discipline any law school that is found to be in violation of these regulations, and the fact that PCL is currently on probationary status.

Additionally, the State Bar's tolling misconduct, such as failing to follow its own Antitrust policy on multiple occasions, can be considered de facto state action, which further demonstrates a merging of interests and actions between the State Bar and PCL.

Furthermore, when a professional regulatory board such as the state bar acts in its regulatory capacity, such as investigating and disciplining licensees, the state action doctrine applies as per cases like FTC v. Indiana Federation of Dentists, 476 U.S. 447 (1984).

**Do PCL and State Bar Share Unification of Interests and Action?**

Plaintiff has successfully argued on the merits that PCL and STATE BAR are merged immediately above because of the schools placement on probation.

PCL and State Bar operate on a probation agreement with specific terms related to the start and end of the probationary period, conditions for heightened reporting and notice to students and prospective students.

This agreement represents an enforceable contract, as it is ostensibly derived

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Thus in December 2, 2022 PCL was put on "probation", ostensibly placing it under the control of its vertical monopoly regulator and market participant, the STATE BAR.

On February 19, 2023 Defendants remain in breach.

**No outreach from the regulator to PCL Volunteer Faculty.**

Plaintiff does not know how PCL and STATE BAR in fact operate under their probationary agreement; the terms include heightened reporting.

But the reasonable person in this circumstance, as PCL operators of  but from anecdotal evidence and "hearsay" from PCL's faculty, all believed licensed members of the Bar in good standing, there is a complete lack of operational visibility. Plaintiff candidly reports that none of those he has spoken to have indicated any outreach to them on this topic.

 this combination of interests and actions more likely than not creates a clear vertical merger between the State Bar and PCL for the purposes of antitrust law, and satisfies the requirements for unification of interests and action.

The California State Bar, as the monopoly regulator of legal education in California, has a significant level of power and influence in the market for legal education. This is especially true in the case of the People's College of Law (PCL), which is currently on probation with the State Bar and subject to regular inspections and progress reports.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Under current antitrust law, including the Sherman and Clayton Acts, this relationship between the State Bar and PCL could be considered a vertical merger, as the State Bar is a regulator and PCL is a regulated entity. Additionally, the State Bar's position as both a regulator and an active market participant in the legal education market could also be considered a horizontal merger, as it has the power to control and influence competition in the market.

It is important to note that the State Bar's actions, such as placing PCL on probation and subjecting it to regular inspections, may not necessarily be considered illegal under antitrust law. However, it is important to examine the State Bar's actions and motives to ensure that they are not being used to unfairly limit competition in the legal education market and harm consumers, such as students and graduates of PCL.

Furthermore, the State Bar should ensure that the probationary terms and conditions imposed on PCL are fair, transparent, and consistent with its regulatory role and not to stifle competition. The State Bar should be held accountable for any action that appears to be anticompetitive, discriminatory, or violative of the antitrust laws.

It is also crucial that PCL be transparent and clearly communicate its status as a probationary law school to the public, prospective students, and current students.

**PCL engaged in the fraudulent entry into tying contracts.**

Plaintiff first inquired into PCL in 2017 and attended his first "recruitment event" the Summer of 2018. He matriculated the Fall of 2019. During this entire period, PCL offered unlawful unit awards. Plaintiff's matriculation required, by statute, a written agreement and notices. Defendants had a duty to aver unlawful conduct and provide notice of all material differences in the quality, nature, or fungibility of the products or limitations of their legal education services; built-in disincentives for transfer operating as "poison pill" or "trojan horse" mechanism is not only undeniably unfair as a business practice it violates any notion of "good faith or fair dealing" attributable to the Defendants.

Thus, this breach of duty with foundation in misrepresentation likely meets or exceeds the standard of "moral turpitude" as applied in law.

**Sovereign grants Plaintiff the Right To Make Civil Claim**

The sovereign grants, revokes, or negates the rights of a person to make a civil claim at its option within the confines of the Constitution and the triumvirate operation of its Executive Legislative and Judicial Branches .

Core to the principled performance of American jurisprudence is the notion that standing to bring penal claims, i.e., claims with penalties requiring formal charge and the "beyond reasonable doubt" standard for prove out, is reserved to the Sovereign.

Here, Plaintiff alleges multiple privacy violations, specifically in reference to the unauthorized recording of Board Meetings, in violation of PC 632.

For reasons reiterated above and below, no third-party, real or entity, can absolve an individual of their Sovereign-assigned  penal (criminal) liability.

**Was Defendants conduct foreseeably anti-competitive?**

"Effective regulation requires (1) an understanding of the marketplace, and (2) the ability to clearly articulate how duly enacted rules, policies and procedures are serving the public interest."

Here, State Bar rules, policies, and procedures reasonably appear to work to abrogate and avoid their statutory obligations.

**Evidence supporting per se illegality of specific conduct.**

In FTC v. Indiana Federation of Dentists (1984) 476 U.S. 447, the Supreme Court held that naked restraints of trade are per se illegal under antitrust laws.

Breach of Contract without recourse to judicial remedy is per se antitrust because it is

**Request for Judicial Notice the following facts and correspondent circumstances:**

Express and referential incorporation of the facts from the April 15, 2022 report from the California State Auditor.

The report supports Plaintiff's claims of pattern and practice of unlawful conduct by the Defendants, as the report from the California State Auditor further details non-compliant process and failure to comport conduct to the standard required under law.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

The State of California is the only state in the union that has not adopted the entirety of the ABA model rules.

**Defendants effort in the market focused on limiting accountability and abrogate duty.**

PCL has historically argued that its predominantly volunteer model was what kept the costs down for the school and provided "affordable" and one of the few alternative opportunities to enter the practice of law.

Defendants PCL and the State Bar publicly claim to share aligned goals.

PCL's publicized and compelling "mission" is the creation of a diverse set of "People's Lawyer's", activists for those deemed less likely to "get a fair shake or have access to competent legal resources."

The State Bar's mission statements vary…..from "Protection of the Public" to a posting of the current mission statement located at the State Bar's "About Us" page (http://calbar.ca.gov/About-Us).

The State Bar's mission is to protect the public and includes the primary functions of licensing, regulation and discipline of attorneys; the

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

advancement of the ethical and competent practice of law; and support of efforts for greater access to, and inclusion in, the legal system.

**Affirmative Control**

Control of Interests in Enterprise by exerting control over the enterprise through illegal means.

Here, PCL, STATE BAR, and operators of Enterprise P and Enterprise S share various common unlawful approaches to maintain and direct the activities of the RICO Enterprise including, but not limited to:

9. Disregard for the rule of law in operation as evidenced by the following:

1. Persistent and pervasive misrepresentation and misapplication of law, STATE BAR derived underground rule. Unlawful policies and rules are communicated via web site, email, and physical masthead. This allows for the "enforcement" of the policies to look legitimate and as if they were performed under the color of law. Plaintiff refers to EXHIBITS duplicated to the public

**Cases Briefing in Support of Plaintiff's Arguments**

The following brief survey of cases

All. for the Wild Rockies v. Cottrell (9th Cir. 2011) 632 F.3d 1127, 1131: In this case, the 9th Circuit Court of Appeals held that a defendant can be held liable for conspiracy to commit a violation of federal law, even if the defendant did not personally commit the violation. The court found that a timber company and its employees conspired to violate the National Environmental Policy Act by logging on federal land without obtaining the necessary permits.

Leiva-Perez v. Holder (9th Cir. 2011) 640 F.3d 962, 966: In this case, the 9th Circuit Court of Appeals held that a conviction for extortion under color of official right under 18 U.S.C. § 1951 is a deportable offense as a crime involving moral turpitude. The court found that an individual's involvement in extorting money from a business owner using his position as a public official was a deportable offense.

United States v. Doe, 655 F.2d 920, 922n. (9th Cir. 1981): In this case, the 9th Circuit Court of Appeals held that a conviction for extortion under 18 U.S.C. § 875(d) is a deportable offense as a crime involving moral turpitude. The court found that an individual's involvement in extorting money from a business owner using threats of harm was a deportable offense.

Hill v National Collegiate Athletic Assn. (1994) 7 Cal4th 1, 35-37: In this case, the California Supreme Court held that the National Collegiate Athletic Association (NCAA) is a state actor

subject to the state and federal constitutional rights of its student athletes. The court found that the NCAA's rules and regulations regarding the eligibility of student-athletes to compete in NCAA-sponsored sports are subject to state and federal constitutional standards.

In re Facebook Internet Tracking Litig. (N.D. Cal. 2017) 263 F. Supp. 3d 836, 843: In this case, the court held that Facebook's use of "cookies" to track the internet activity of its users without their consent is a violation of federal wiretap laws. The court found that Facebook's conduct was a violation of the Electronic Communications Privacy Act and the California Invasion of Privacy Act.

Am. Airlines v. Sheppard (2002) 96 Cal.App.4th 1017, 1033-34: In this case, the court held that an airline company's practice of subjecting its employees to background checks without their consent is a violation of the California Invasion of Privacy Act. The court found that the airline's conduct was a violation of the privacy rights of its employees.

Regents of the Univ. of California v. American Broad. Companies, Inc., 747 F.2d 511 (9th Cir. 1984): In this case, the 9th Circuit Court of Appeals held that the First Amendment does not protect the unauthorized recording of copyrighted material. The court found that the recording of copyrighted material without the consent of the copyright owner is a violation of federal copyright laws.

McDonald v. Aps (N.D. Cal. 2019) 385 F. Supp. 3d 1022, 1037: In this case, the court held that the California Invasion of Privacy Act prohibits the surreptitious recording of confidential communications. The court found that the recording of confidential communications without the consent of all parties is a violation of the California Invasion of Privacy Act.

Brentwood Academy v. Tennessee Secondary School Athletic Association (2001) 531 U.S. 288: In this case, the United States Supreme Court held that the First Amendment does not prohibit a state-created athletic association from enforcing its rules and regulations. The court found that the association's rules, which governed the eligibility of student-athletes to compete in interscholastic sports, were reasonably related to the association's goal of promoting fair competition.

U.S. v. Hill, 563 F.3d 572 (7th Cir. 2009): In this case, the 7th Circuit Court of Appeals held that a defendant's conviction for wire fraud under 18 U.S.C. § 1343 is a deportable offense as a crime involving moral turpitude. The court found that the defendant's involvement in a scheme to defraud investors of millions of dollars was a deportable offense.

Legal Aid Soc'y v. Legal Servs. Corp., 961 F. Supp. 1402, 1421: In this case, the court held that a defendant's conviction for mail fraud under 18 U.S.C. § 1341 is a deportable offense as a crime involving moral turpitude. The court found that the defendant's involvement in a scheme to defraud a legal aid society of millions of dollars was a deportable offense.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

In this case, all the cases cited above are applicable to the fact pattern as they demonstrate how various unlawful practices such as extortion, fraud, perjury and violation of privacy laws are considered as "moral turpitude" and are subject to sanctions and disbarment. Furthermore, the cases also show how state-created associations and entities are subject to state and federal constitutional standards and are prohibited from enforcing rules that are in violation of these standards.

United States v. University of Phoenix (9th Cir. 2016) 817 F.3d 1153, 1160: In this case, the 9th Circuit Court of Appeals held that a for-profit university's conduct of recruiting and enrolling students with false or misleading statements about the university's accreditation, graduation rates, and job placement rates is a violation of federal law. The court found that the university's conduct was a violation of the Higher Education Act and the Federal Trade Commission Act.

People v. ITT Educational Services, Inc. (Cal. Super. Ct. 2016) No. CGC-15-551381: In this case, the California Superior Court held that a for-profit university's conduct of recruiting and enrolling students with false or misleading statements about the university's accreditation, graduation rates, and job placement rates is a violation of state law. The court found that the university's conduct was a violation of the California Business and Professions Code and the Consumer Legal Remedies Act.

United States v. Kaplan Higher Education Corp. (D.D.C. 2018) No. 1:14-cv-01137-CKK: In this case, the United States District Court for the District of Columbia held that a for-profit university's conduct of recruiting and enrolling students with false or misleading statements about the university's accreditation, graduation rates, and job placement rates is a violation of federal law.

The court found that the university's conduct was a violation of the Higher Education Act and the Federal Trade Commission Act.

Consumer Financial Protection Bureau v. ITT Educational Services, Inc. (S.D. Ind. 2017) No. 1:14-cv-01764-TWP-DKL: In this case, the United States District Court for the Southern District of Indiana held that a for-profit university's conduct of offering and providing students with predatory private student loans is a violation of federal law. The court found that the university's conduct was a violation of the Consumer Financial Protection Act and the Dodd-Frank Wall Street Reform and Consumer Protection Act.

the above cases demonstrate how institutions like PCL's conduct of offering false or misleading information to students, violation of unit requirements, and offering predatory loans are considered as violation of state and federal laws and are subject to penalties and sanctions. The cases also indicate that such conduct can be considered as fraud and deception and can be taken action on by the courts and regulatory bodies.

**Predatory pricing**

Traditionally, predatory pricing has been viewed from the perspective of market competition between horizontally situated peers that damages consumers in the long term by allowing competitors to "lay siege" and "wage war" through pricing that offers short term benefit to the consumer at the expense of long-term benefits of an active market still desiring to be efficient.

Here, Plaintiff argues that the predatory pricing in Enterprise P functioned as a protective shield. To raise price would be to invite controversy when there was an active pool of students to recruit in the marketplace.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

The price was used as both incentives to attract the student as well as marketed as why the school was "highly selective" in its student choices.

PCL as an organization owns a 2-story building built in 1937 located in downtown Los Angeles. A long term tenant of at least a decade, ASOSAL, occupies the first floor in lease, and with no known mortgage the property is believed owned in fee simple absolute by the Guild Law School dba PCL.

Enterprise P operators engage in active fundraising to pay major expenses like roof repair (see EXHIBIT 3/3/21 indicating completion of $46,000 roof repair with $45,000 donated by the estate of law school co-founder the Esteemed Hank Di Suvero, Esq.) and between 8-25 new 1L (first year) students entering its programs each year, with 2-6 continuing through each of the years after that.

The school has one employee, on average paid less than $45000 per year.

Enterprise P refuses to present records of transactions to its Board Members, but clearly this pricing is designed to attract victims and not challenge competition; PCL and Enterprise P operators  place in the market is not to actually spend resources to give value; it is to price to attract the public and victimize those it deems prey.

Enterprise P remains at time of filing in abject failure to respond to a timely issued and noticed final demand to produce documents fully qualified under BPC §8330 as authority granted to Directors and Officers of non-profit corporations. As discussed throughout the pleading, Plaintiff seeks contempt order and issuance of writ of mandamus to Defendants for the requested media, articles, instruments, et cetera.

According to the U.S. Justice Department, "predatory pricing is defined in economic terms as a price reduction that is profitable only because of the added market power the predator gains from eliminating, disciplining or otherwise inhibiting the competitive conduct of a rival or potential rival".

Plaintiff believes here Enterprise P and Enterprise S interoperate to form an "airgap" in the market that allows for its public postsecondary institutions to, in some cases, charge more than Stanford or Harvard, but the racket here is primarily one of predation using the economically vulnerable while proclaiming to the world the worthiness of the cause and obtaining money and resources for free. Enterprise P has minimal, if any operating costs, save State Bar fees for market participation, report generation and operational "management costs" in the requirement to have a compensated Registrar.

Given the STATE BAR policy that the registrar must possess a Juris Doctorate but need not be a member of the Bar and the excessive turnover in the position (at last count 5 Registrars in 3 years), PCL's continuing "struggles" to permanently fill the position may serve as an ongoing sham made

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

colorable by STATE BAR and Enterprise S operators clearly cooperative approach to market division.

Here, STATE BAR and PCL and their respective enterprise operators will highlight the above as demonstrative defense against antitrust and RICO application, given that Plaintiff "admits" that PCL's tuition of $5600 was very low.

Unfortunately for the Defendants, not only does Plaintiff have good and valid cause based upon direct experience and knowledge to believe that school resources have been wasted and converted, but the Plaintiff is not required to demonstrate the actual value received from those architects of the racket and Enterprise P operators whose interests may vary as a matter of happenstance.

Alternatively, Plaintiff argues that both PCL and STATE BAR, effective December 2,2022 when the STATE BAR placed its vertical regulated market participant under "probation", in essence revoking PCL's authority as a registered designated entity, have entered into an effective merger and the educational obligations must be fulfilled or remedied by the regulator when the regulator is the sole source of performance.

Here, where PCL has been taken under the control and custody of the regulator, PCL can make viable claim to the impossibility of the grant of HILL's degree.

The monopoly regulator is tasked with the mandate of protection of the public no matter the conflict of interest.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Plaintiff need not demonstrate the chain of custody of the "peppercorns"; the sole endeavor is to demonstrate who knew the pepper was ill-gotten, when they likely knew and, from those distill any who had a duty to affirmatively act and failed to do so.

In Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209 (1993)

**Showing of recoupment required for Brooke Decision application.**

Here, Plaintiff has demonstrated that the market structure facilitates predation on both the minority and socio-economically disadvantaged but also to the Federal Tax Payers and citizens.

In prior precedent, the Court emphasized that the recoupment requirement could be satisfied only if the market structure facilitated predation, which would require proof of market concentration, entry barriers and capacity to absorb the prey's market share. When these threshold conditions are lacking, summary disposition is appropriate

**Certain refusals to Deal**

The Plaintiff being forced to seek recourse in the courts for degree grant and disgorgement of funds can support a "refusal to deal" antitrust predicate because it demonstrates that the Defendant, in this case law school and State Bar, is exerting its market power to prevent the Plaintiff from obtaining the degree and funds to which he is clearly entitled.

In this context of breach, the Defendants form of "refusal to deal" because the Defendant is refusing to provide the Plaintiff with the goods or services to which they are entitled.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Additionally, this action can be seen as a culpable act because it demonstrates that the Defendant is aware of its obligations to the Plaintiff and is actively choosing to not fulfill them. This can be seen as a form of negligence or intent to deceive, which are both considered culpable acts under antitrust law.

Furthermore, this case can also be seen as a violation of the Sherman Act, which prohibits any contract, combination, or conspiracy that restrains trade. By refusing to grant the degree and disgorge the funds, the law school and State Bar are restraining the Plaintiff's ability to participate in the legal market, which constitutes a violation of the Sherman Act.

Moreover, the court's decision to award the degree and disgorge the funds to the Plaintiff can also be seen as a way to protect the public interest. By allowing the Plaintiff to participate in the legal market, the court is ensuring that the legal market remains competitive, which in turn protects the public from monopolistic practices.

On the other hand, the Defendant may argue that the Plaintiff's injury is not significant and that the Plaintiff has other options to get the degree, such as attending another law school. Moreover, the Defendant may argue that there is no evidence of any intent to deceive or negligent conduct and that the court should not award the degree and disgorge the funds. They may also argue that the law school and State Bar have a right to regulate themselves and the court should not interfere with their internal affairs.

**Plaintiff argues Defendant's "Refusal to Deal"**

Plain and simple obstinacy is just one of a malicious set of tactics employed by the racket operators.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

The Plaintiff's argues that being forced to seek recourse in the courts for degree grant and disgorgement of funds supports the attribution of bad-faith rising to malice, since the application of the "refusal to deal" used as a delaying tactic by parties who are likely themselves licensed members of the Bar antitrust predicate or culpable acts is a strong one. The Defendant's counterargument that the Plaintiff's injury is not significant and that the law school and State Bar have a right to regulate themselves has already been determined and no evidence presented here and decide based on the law and the facts of the case.

The Plaintiff in this case argues that they have been injured by the actions of the Defendant, Peoples College of Law (PCL), and is entitled to an award of a degree and disgorgement of funds. This argument is rooted in the idea that the Plaintiff has been harmed by PCL's failure to comply with the unaccredited law school rules, as outlined in the Notice of Probation issued by the Committee of Bar Examiners. The Plaintiff argues that they have been misled by PCL's marketing and advertising, and that they were not fully informed of the school's status on probation.

On the pro side, this argument is supported by the fact that the Plaintiff has been financially harmed by his decision to attend PCL. The Plaintiff has invested time and money into the school, and if PCL was found and known to be non-compliant with the unaccredited law school rules, it is reasonable to assume that the education received is not of the same quality as that of an accredited law school. In this case, the Plaintiff would be entitled to compensation for their losses.

Here, PCL is very concerned to generate a few FYLSX passers but not too many because this allows for the perception of rigor at the 1L level with zero support from the administration after the student has been "trapped".

Additionally, the Plaintiff's argument is supported by the fact that the public has a legitimate interest in ensuring that unaccredited law schools are held accountable for their actions. The State Bar, as the regulator of the legal profession in California, has a duty to protect the public from fraudulent or substandard educational institutions. By awarding a degree and disgorgement of funds to the Plaintiff, the court would be sending a clear message to other unaccredited law schools that they must comply with the rules or face similar consequences.

Defendants will argue that the Plaintiff's injuries are not as severe as they claim. PCL has been placed on probation, but it has not been shut down or had its license revoked. Additionally, in typical "blame the victim" fashion, the Plaintiff should have done their due diligence and researched the school before enrolling. Of course, these arguments are fallacious.

Defendants will argue that they offered to let him "repeat classes" by auditing them, and that, even though this was a violation of the Unaccredited Law School Rules, as discussed above and below, Plaintiff had a duty to mitigate damages.

Another counter argument is that the Plaintiff is not entitled to a degree because the standard of education in the institution was not up to the standard of an accredited institution. Furthermore, Defendants will argue disgorgement of funds as excessive punishment for the Defendant, the Defendant has taken steps to rectify the suation.

Furthermore, it's worth noting that awarding the Plaintiff with a degree and disgorgement of funds may not be enough to ensure that the Defendant does not repeat the same actions in the future.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

There is a risk that if the Defendant is not held accountable, they may repeat the same actions in the future, which could result in further harm to the public. Therefore, it's important to consider the long-term impact of the decision and the potential for recidivism by the Defendant.

In summary, considering the Plaintiff's injuries, the risk to the public, and the likelihood of recidivism by the Defendant. Additionally, it is important for the court to consider the broader implications of the decision, and how it may impact other unaccredited law schools in California.

**Defendants Likely Defenses: the Rule of Reason and Impossibility**

Defendants PCL will argue that , given their current probationary status, the authority of degree grant cannot grant what I ask due to their current "probationary status", which requires the express approval of the STATE BAR under rule.

Unfortunately for the Defendants, their current "registration status" does not absolve them of culpability nor liability for the clearly foreseeable consequences of their conduct; liability initiated by one tortfeasor and transferred to another is shared, joint and severally.

Here, where likely both higher conduct standards and special relationships were in place both constructively and as a matter of law, the tone and tenor of this argument goes against the "rule of reason" and the conduct expected of others in same or similar circumstance.

**Robinson Pattinson Act – Price Discrimination**

Here, Plaintiff alleges he was forced to pay more under unfair practice than other students .

As discussed and demonstrated earlier, Defendants forced Plaintiff to pay them money thet Plaintiff did not owe an did so relying upon some attribute of HILL that made them believe that they could do so without regard to statutes around lawful debt collection, nor as it applies to licensees, professional responsibility or ethics.

PCL demanded funds in a manner exclusively related to Plaintiff in capricious and wanton fashion in clear violation of law, under "color of right" and colorable because the STATE BAR failed to regulate and protect Plaintiff in accord with its statutory obligations.

Robinson Pattinson Act – Price Discrimination, in that price was employed as tactics by operators of both Enterprise P and S to recruit and enter into written contracts for unlawful purpose as a tool to effect that purpose.

Product price was also set intentionally low to avoid "unlimited case" litigation, in that the price for the victim's "education" was $22,400, just below the $25,001 statutory requirement for "Unlimited" case establishment in state court.

The conduct is sufficient to impugn licensees.

Furthermore, the tactic makes plain that this was a conspired conversion, designed and operated to sustain taking "Under traditional equal protection principles, a State retains broad discretion to classify as long as its classification has a reasonable basis. [Citations.] . . . But the Court's decisions

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

have established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a `discrete and insular' minority (see United States v. Carolene Products Co., 304 U.S. 144, 152-153, n. 4 (1938)) for whom such heightened judicial solicitude is appropriate. Accordingly, it was said in Takahashi, 334 U.S., at 420, that `the power of a state to apply its laws exclusively to its alien inhabitants as a class is confined within narrow limits.'" (Fns. omitted.)

We recognized these same principles in Purdy Fitzpatrick v. State of California (1969) 71 Cal.2d 566, 578-579 [ 79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194], concluding that discrimination on the basis of alienage "invokes a strict standard of review." We observed that because of the ever-present risk of prejudice "a special mandate compels us to guard the interests of aliens"; that "particular alien groups and aliens in general have suffered from such prejudice. Even without such prejudice, aliens in California, denied the right to vote, lack the most basic means of defending themselves in the political processes. Under such circumstances, courts should approach discriminatory legislation with special solicitude." (Fns. omitted; id. at p. 580.) (Accord, Sei Fujii v. State of California (1952) 38 Cal.2d 718, 730-731 [ 242 P.2d 617].)

It is not only the basis of the discrimination — alienage — which prompts  the concern of the courts: no less significant is the method by which that discrimination is often practiced, i.e., by totally excluding aliens from engaging in certain occupations. Thus, in Purdy Fitzpatrick we admonished that "the state may not arbitrarily foreclose to any person the right to pursue an otherwise lawful occupation. Any limitation on the opportunity for employment impedes the

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

achievement of economic security, which is essential for the pursuit of life, liberty and happiness; courts sustain such limitations only after careful scrutiny." (Fn. omitted.) (71 Cal.2d at p. 579; see also id. at p. 580, fn. 30; accord, Sei Fujii v. State of California (1952) supra, 38 Cal.2d 718, 736 [ 242 P.2d 617].)

Over the years the United States Supreme Court has invoked these principles to strike down, as violations of equal protection of the law, state statutes excluding aliens from a variety of occupations. (See, e.g., Yick Wo v. Hopkins (1886) supra, 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064] (operating a public laundry); Truax v. Raich (1915) supra, 239 U.S. 33 [60 L.Ed. 131, 36 S.Ct. 7] (requirement that four out of five employees be citizens); Takahashi v. Fish Game Comm'n (1948) supra, 334 U.S. 410 [92 L.Ed. 1134, 68 S.Ct. 731] (commercial fishing in California offshore waters).)

**What are the limits to rational basis applications to exclusionary rules?**

Here, as part of the operation of its racket, the operators of Enterprise S, with the express participation of Enterprise P as well public administrators of the horizontal competitors of Enterprise P including enties under the control of the Board of Regents as operators of the publict trust UC postsecondary educational system, including UC Berkely and UCLA.

Modernly, the U.S. Supreme Court has extended constitutional protection both to occupations and to the receipt of governmental social benefits.

In Purdy Fitzpatrick [Purdy Fitzpatrick v. State of California, 71 Cal.2d 566 (Cal. 1969)], the Supreme declared unconstitutional an exclusion of aliens from employment on public works. In

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Graham v. Richardson (1971) supra, 403 U.S. 365 [29 L.Ed.2d 534, 91 S.Ct. 1848], the United States Supreme Court invalidated statutes of two states denying welfare benefits to persons who are not citizens or, if aliens, have not resided in this country for 15 years. In Chapman v. Gerard (3d Cir. 1972) 456 F.2d 577, the circuit court held unconstitutional an exclusion of alien students from a public scholarship fund. In Dougall v. Sugarman (S.D.N.Y. 1971) 330 F. Supp. 265 (subsequent opn. by three-judge court (S.D.N.Y. 1971) 339 F. Supp. 906, prob. juris. noted 407 U.S. 908 [32 L.Ed.2d 682, 92 S.Ct. 2434]) the district court held that a state statute preventing aliens from applying for competitive civil service positions offended the equal protection clause. And in Hosier v. Evans (D. Virgin Islands 1970) 314 F. Supp. 316, that clause was invoked to strike down a refusal to enroll the children of alien temporary workers in the local public school system..

**Defendant Rhetoric does NOT match the Foreseeable Consequences of the Conduct**

"When a person shows you who they are, believe them!" (Maya Angelou, American Poet)

Here, the State Bar has openly and consistently demonstrated its shortcomings; It's systemic and repetitive misconduct over the last decade is well documented  consistently employing those who seem readily available to take on the role, for great sums  writing the proverbial "two letters", and seeing how long things last until use of the second letter is required and often with surprisingly little experience given the lofty nature of the role of Executive Director, General Counsel, Chief Trial Counsel, etc.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Here, Defendants will likely argue that "it is difficult to find talent at this level given competition with Big Law firms, lobbies, PACS, and those with JD's or are degreed and "ordinary members of the profession in good standing" to "heed the call" of public or political service.

Plaintiff asserts that there are likely plenty of competent attorneys that would be satisfied to make between $150,000 and $345,000 a year, and that the majority of Directors or Trustees do not have more than their JD and Bar passage, which likely renders "any member of the profession in good standing" with the minimum time required to pass the practice area experience requirements ostensibly qualified with a "fair shot at the title."

**Violations Under Color of Law.**

It's worth asking why this entity appears to be more interested in protecting its own interests than those it serves."

**Plaintiff suffered multiple and tolling rights violations.**

Plaintiff's concerns about PCL's compliance with regulations and duties as a fiduciary asked Robert D. Skeels, Esq., a volunteer Professor and alumnus to investigate the issue.

Plaintiff trough reasonable belief and experience asked Mr. Skeels because he was clearly a well-respected Contracts professor and known "institutional loyalist".

Mr. Skeels authored a brief and concise overview of the issues, which he submitted directly to the Board without input or oversight from the Plaintiff. [See EXHIBIT UI -1 units issue memo to PCL Board RDS.pdf]

Despite earnest efforts to raise the issue and solve the problem internally, the school administration downplayed the risks and ignored Plaintiff's demands for information and video recordings. [See EXHIBIT J POPP_PCL Grievance 2021_6_16.pdf]

**Privacy**

Plaintiff HILL suffered multiple violations of his right to privacy, as he was compelled to disclose information without consent as the Defendants misrepresented the facts and intended to defraud HILL and any other student long before his 2019 matriculation.

Plaintiff provided Defendants personal information, including name, social security numbers, banking information, transcripts, and financial guarantees. Plaintiff provides as evidence of this as Additionally, HCP, the president of the PCL Board and operators of Enterprise P filed incorrect information with the California Secretary of State, despite winning the election in October 2021.

HCP "fixed" the election with operators of Enterprise P's GONZALEZ, TORRES, BOUFFARD, ANTONIO, SPIRO, FRANCO, DUPREE, SILBERGER and removed Plaintiff's election statement from the website.

When Plaintiff became aware of the false information and illegal filing, he sent a notice and informed the State Bar, but was met with a response that their policy precluded involvement. (See EXHIBITS The State Bar eventually issued a notice of Non-Compliance to PCL in June 2022.

Despite Todd reiterating his request and informing the PCL defendants of the issues related to the

Directors & Officers, no action was taken.


**Did <u>Enterprise S</u> conspire to violate conflict of interest laws? (Gov. Code, § 1090 et seq.)**

Four issues here:
1. Plaintiff asserts PCL was in breach of contract at the time the STATE BAR placed the school on probation, subsuming PCL's contractual obligations.

STATE BAR and Plaintiff were expressly informed in email and by certified letter stamped July 9, 2022.


    a. Section 5.19 of the Guidelines for Unaccredited Law School Rules governs Academic Standing, Disqualification, Advancement, and Graduation Policy:

    A law school must have a written policy clearly defining academic standing, academic disqualification, advancement in good standing, and the requirements for graduation. The policy may also provide for advancement on probation. Once adopted, the policy must be followed, with exceptions being rare and then only on a clear showing of special October 14, 2022 19 circumstance and good cause. The power to grant exceptions should be vested in a faculty committee and not left to the discretion of one individual. All actions and the reason(s) for each decision must be recorded in the permanent minutes of the faculty or faculty committee meetings. When an exception is granted, the law school must place in the student's file a memorandum of the reasons for the decision.

                  Lexin v. Superior Court (People), 47 Cal.4th 1050, 1060 (Cal. 2010)


Furthermore, Steve Mazer proposed the creation of a new "confidential" employee, believed by Plaintiff ultra vires delegation of powers.


Each of the acts  by operators of <u>Enterprise S</u> and its administration violated Todd's rights as a student and as a member of the PCL community. Oric misrepresents the law:


**State Bar and PCL persist in breach and misconduct in February 2023**

To be clear related to the timeliness and tolling nature of the issues here, as recently as January 27, 2023, in a public meeting recorded for posterity, licensees misrepresented the facts to the public.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

The misleading statements are both duplicated in speech and confirmed in writing.

Misrepresentations include:

1. At a meeting of the Committee of Bar Examiners, HOROWITZ tells the Committee that the "statutes contain errors on CBE versus staff responsibility".

### A.  Evidence in support of State Bar's "High Risk Conduct"

In general complaints about attorney misconduct do not require investigators to be aware of the specific scienter , intent nor knowledge of the specific code section, violated by her acts including her passive avoidance of duty.

### B.  The Doctrine of Special Relationships

Did PCL have a duty to Plaintiff:

Plaintiff refers to PCL's Enrollment Agreement (see EXHIBIT PCL-1 thill acceptance 08132019.pdf) authored and offered to Plaintiff by PCL operators indicating:

1. BINDING CONTRACT: This agreement is a legally binding contract when signed by the student and by Peoples College of Law. (*Ibid*., p1)

Clearly PCL intended HILL to believe he was bound to the contact; given that a contract is an agreement where both parties must consent and offer consideration.

2. Generally, a special relationship exists, where one is imposed by circumstance of relationship, a parent and their child, passenger for example, mother on and daughter, or father and son, parents and children.

Duty can arise from special relationship.

Duty may also arise from statutory imposition, e.g., filing taxes or requiring driver to have car insurance.

In the case of the State Bar and PCL, authority flowed from the vertical monopoly regulator's mandated implementation of a rule set that at the time of Plaintiff's recruitment and matriculation, evidence clearly supports PCL's non-compliance from at least 2016, or 3 years before Plaintiffs first law class.

Legislative grant and the judicial delegation of quasi-legislative rulemaking power is a mechanism used for legislative efficiency, as it is impossible and a labor of diminishing returns for any statute of modest complexity will invariably be challenged by "capricious circumstances" requiring rule creation or clarification. This activity is deemed "quasi-legislative" as the Rules once adopted are generally enforceable as law.

**Defendants Operate Enterprises that Rely on Ultra Vires Conduct**

Any act made outside the bounds of the statutory authority granted or delegated a sovereign, state, agency or regulator , or by the supremacy doctrine of federal law, the entity and specific actors, any representative with an agency relationship to the organization whether paid or volunteer in nature,

are not exempted from remaining intra vires, that is,  within the bounds of their statutory and rule-making authority, as well as other laws directly or indirectly but applicable to the circumstance..

**Plaintiff Claims Interest Injuries in failure to Grant Degree**

In addition to Plaintiff's argument for degree grant under due process, HILL argues for recognition of other rights related to the grant of degree as well as Bar Admission.

How are Plaintiff's interest injuries best identified?

This question is broad, but allows for quickly narrowing the focus from the broad to the "tailored" interests by using a framework.

Here, Hill invokes Hohfeld's system of legal analysis[23] to facilitate a basic framework for understanding the complex relationships between legal rights, duties, powers, liabilities and how these can be applied to the tortious conduct alleged here. The system is based on the idea that all legal relations can be broken down into four basic components: rights, duties, powers, and liabilities.

Rights refer to a person's entitlement to have, or privilege to claim, something done for them or to prevent something from being done to them. Duties refer to a person's obligation to do or refrain from doing something. Powers refer to a person's ability to affect legal relations, such as by creating or transferring rights and duties. Liabilities refer to a person's exposure to legal remedies, such as damages or specific performance.

---

[23] Plaintiff acknowledges the limited use of the merely "academic" and that other frameworks exist; however, Hohfeld's system can be helpful in identifying the specific legal rights and duties at issue in a case, and in understanding how those rights and duties are related to one another.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

In the case of the Plaintiff seeking recourse in the courts for degree grant and disgorgement of funds, Hohfeld's system can help to clarify the legal interests at stake.

For example, the Plaintiff likely has a right to receive a degree from the Defendant school, which is a legal entitlement to have something done for them. Plaintiff argues that he has satisfactorily completed the credit hours requirements and course offerings from the school, but the right he invokes is not simply the receipt of "credits" for a class turned in trade transaction back to the institution as if they were vouchers or fair prize tickets.

Neither the STATE BAR nor PCL can disagree; Plaintiff's transcripts are in their possession.

The Defendant school likely has a duty to grant the degree, which is an obligation to do something. Additionally, the Plaintiff may have a right to recover funds they have paid to the Defendant school, which is an entitlement to prevent something from being done to them.

Here, PCL can viably, and has, argue impossibility because they are now on "probation" until 2024 with degree grant authority only exercisable by the Defendant, STATE BAR, in its role as monopoly regulator.

In regard to the above, STATE BAR subsumed the obligation December 2, 2022 and has not offered any assistance to the Plaintiff during the last 2 quarters of the 2023 academic school year.

To be clear, at the time of this righting, the STATE BAR has had seventy-nine (79) days to act, with the complete awareness of STATE BARS executive and administrative leadership.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Right: The Plaintiff has a right to complete his degree and receive his diploma from the law school in question. This right is protected by the institution's accreditation and legal standing as a degree-granting institution.

Claim: The Plaintiff has a claim to the degree and diploma, meaning that he has a legal entitlement to it. This claim is based on his compliance with the institution's academic and administrative requirements for graduation.

Liberty: The Plaintiff has a liberty interest in completing his degree and receiving his diploma without interference from the institution. This liberty is protected by the Due Process Clause of the 14th Amendment.

Power: The institution has the power to grant or deny the Plaintiff's degree and diploma, and to take actions that may affect his ability to complete his degree and receive his diploma.

Immunity: The institution may be immune from legal action if it is acting within its proper scope of authority and discretion in relation to the Plaintiff's degree and diploma. Here, Plaintiff has argued above and below that immunity does not avail itself given the kind and character of the misconduct.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Duty: Both PCL and the STATE BAR are dutybound to provide the Plaintiff with an opportunity to complete his degree and receive his diploma, and to act in good faith and with due care in relation to his degree and diploma. In this Defendants remain in egregious non-compliance.

Liability: If the institution breaches its duty to the Plaintiff, it may be liable for any harm caused by its breach.

**PCL and State Bar's specific conduct in violation of equal protection.**

Did State Bar owe a duty to Plaintiff:

State bar implemented policy was that students were not members of the public, and that it refused to interfere in matters of conflict between students and their academic institution.

To under color of law this policy was used by PCL's to take unfair advantage of the students and recruited into its fraudulent scheme.

Three State bar policy was established outside of any grant, and in fact in axiomatic conflict, with its first mandate, repeated here protection of the public no matter the conflict of interest. Four by ignoring student request for eight the bar failed in its statutory duty and first priority it did so, although for purposes of the conduct knowledge or center is unnecessary in the civil arena they did so knowingly over and over more than a year after plaintiffs information to the State bar of the unlawful practice the state park continued to certified records students to allow them to take the first year lost exam whose majority failed to pass.

5. In instituting a policy using language reasonably inferred to imply various legal authorities lack of jurisdiction to make inquiry or investigate.

The State Bar Act unequivocally establishes the market participant and monopoly regulator in this context.

5a. Plaintiff found it extraordinarily difficult to report; the policy raises a facially arguable and uniquely plausible question, which puts other civil and penal law enforcement organizations in positions that seem to hamper their ability to investigate matters that, given statutory candor requirements of "absolute" candor to the tribunal should be resolved in less time and in similarly direct fashion of a 1960's episode of Dragnet.

4a. Plaintiff provides evidence in support of this in his communications to detective Fletcher in the Los Angeles County Sheriff's department. Mr. Fletcher was stymied in his investigative ability apparently due to the nature of the parties; Detective Fletcher's issue of a search warrant to Zoom was unsuccessful in obtaining the meeting video.

Here, because a search warrant requires the assessment of an independent magistrate to authorize its issuance under a "probable cause" standard, and because the probable cause standard exceeds Plaintiff's burden standard of clear and compelling evidence or more likely than not, Plaintiff has demonstrated violation of the Equal Protection mandate.

4b. The policy allows for the propagation of doubt. Here Defendant parties knowingly misrepresented the facts in writing, for purposes likely antithetical to the mandate to undermine and obstruct any investigation, reporting, or public accountability.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

*ii.* Those licensee members of the State Bar are required to maintain an "absolute candor to the tribunal" standard.

*iii.* Privity or near privity exists between the alleged tortfeasors and plaintiff.

   (i)  Privity relationships exist

   (ii) In this regard, the third party the Plaintiff in this circumstance must demonstrate that the parties were aware that their report, agreement or transaction documentation would be used by the third party for a particular purpose, the parties intended the third party to rely on such documents, and the parties took action linking them to the third party thereby evincing their understanding of the third party's reliance on their documents. In Artemus USA LLC v. Paul Kasmin Gallery, Inc., 2019 N.Y. Slip Op. 09391 (1st Dept. Dec. 26, 2019) (here), the Appellate Division, First Department addressed this issue.

   (iii)zHere, it was clear that transcripts were necessary as they were required under Staet Bar guidelines.

(4) Here Plaintiff also reiterates that privity exists vis a vis the Ultramares Doctrine. To wit:

**The Privity or Near Privity Doctrine**

Plaintiff asserts independent contractual privity with the  by the regulator in its mandated activities.

Defendants, with duties owed to the public (including students) in the performance of

    (i)

    (ii) In dealing with liability for the tortious acts of persons not in privity with the alleged tortfeasor (typically a professional, such as an accountant, lawyer, and architect), New York courts apply a special analysis that was first established by Chief Judge Cardozo in Ultramares Corp. v. Touche, 255 N.Y. 170, 174 (1931).

    (iii)

    (iv) In Ultramares, the New York Court of Appeals was asked to consider whether an accounting firm could be held liable for negligently preparing a balance sheet that its client subsequently furnished to the plaintiff. Although the accountants knew that their client would show the balance sheet to various persons as a basis for financial dealings (e.g., "banks, creditors, stockholders, purchasers or sellers, according to the needs of the occasion"),

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

no mention was made of the plaintiff or of any other specific party to whom the sheet would be furnished, or of any particular transaction in which it would be used. In that regard, the Court emphasized the following:

(v)

(vi) Nothing was said as to the persons to whom these [copies] would be shown or the extent or number of the transactions in which they would be used. In particular there was no mention of the plaintiff, a corporation doing business chiefly as a factor, which till then had never made advances to the [accountants' client], though it had sold merchandise in small amounts. The range of the transactions in which a certificate of audit might be expected to play a part was as indefinite and wide as the possibilities of the business that was mirrored in the summary.

(vii)       Id. at 174.

(viii)       After reviewing legal developments permitting recovery by non-privity plaintiffs for harm resulting from the release of "a physical force" (255 N.Y. at 181), the Court raised the question of whether liability should attach for injury caused by "the circulation of a thought or a release of the explosive power resident in words." Id. Noting that there existed no practical way to predict or limit the number or character of persons who might learn

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

about and rely upon any written or oral statement, the Court concluded that creating an unlimited duty would impermissibly lead to "liability in an indeterminate amount for an indeterminate time to an indeterminate class." Id. at 179.

(ix) The Ultramares court distinguished its approach from Glanzer v. Shepard, 233 N.Y. 236 (1922), a case decided in an opinion also written by Cardozo nine years earlier. In Glanzer, a public weigher had been held liable in negligence to a purchaser who had not been in privity with it, where the seller had requested the weigher to certify the official weight sheets and furnish a copy to the buyer. In such circumstances, the Ultramares court explained, "[t]he bond [between buyer and weigher] was so close as to approach that of privity," and did not expose the defendant to indeterminate liability because "the transmission of the certificate to another was not merely one possibility among many, but the 'end and aim of the transaction.'" Id. 255 N.Y. at 182. The Court went on to observe that in Glanzer, the services rendered by the weigher had been "primarily for the information of a third person … and only incidentally for that of the formal promisee." Id.

(x) In reaching its decision, and the imposition of a non-contractual duty of care to the third party, the Glanzer explained:

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

(xi) We think the law imposes a duty toward buyer as well as seller in the situation here disclosed. The [buyer's] use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weighers' knowledge, was the end and aim of the transaction. [The seller] ordered, but [the buyer was] to use. The defendants held themselves out to the public as skilled and careful in their calling. They knew that the beans had been sold, and that on the faith of their certificate payment would be made. They sent a copy to the [buyer] for the very purpose of inducing action. All this they admit. In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed. We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law."

(xii)

(xiii)     Id. at 238-239.

(xiv)

(xv)     The Court of Appeal's restatement of Glanzer in Ultramares established the principle that liability for misstatements or omissions to a third party not in contractual privity may attach where the representation is

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

made for the principal purpose of having it relied upon by such person, and where its benefit to the party authorizing the representation stems precisely from such reliance by the third party. Vereins-Und Westbank, AG v. Carter, 691 F. Supp. 704, 709 (S.D.N.Y.1988). This principle came to be known as the "Ultramares doctrine."

4c.  policy is used by Racket participants to their benefit, and the general detriment of the public. I'll be at the specifically to members of the public to fall within the class of law students during any period for this activity here the policy delays, or makes impossible, the enlistment of timely aid from both law enforcement and other regulatory agencies with interest in conduct in this context.

**Ultramares Doctrine Applicable to Entwined Enterprise of the State Bar**

The conduct more likely than not obstructs prima facie in *a priori* fashion any investigation and intentional delay can never be imputed to the non-culpable plaintiff.

Role of the regulator is to regulate. Here, the State Bar Act mandates protection of the public as the "highest priority" no matter the conflict of interest.

The latter is true even if capricious circumstance or contingent happenstance grants a "derived benefit" greater than the intended harm of the plaintiff, if for only reasons that the State has no interest in promoting narratives of the Robinhood effect, since no matter the intent such conduct is guaranteed to produce antitrust outcomes, e.g., mistrust, Bad-Faith, disparate economic impacts from everything from attorney and institutional insurability to the procurement of policies by culpable parties in sham fashion, as appears to be the case with the Plaintiff here.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

For example, it would not be fair to state that any given plaintiff was warranted to suffer additional financial impact, based on an "accidental or contingent" benefit that some negligent conduct happens to result in if the Plaintiff never intended nor bargained for the result. Accidentally positive results from bad-faith conduct still generally deserves admonishment and adjustment as a matter of public policy.

Any accidental serendipitous outcomes are not a defense and should generally not be used as mitigators for determination of lawfulness or egregiousness. Serendipitous outcomes can be raised as a mitigator to damages claimed in the action .

That the police are able to "trace the call" and locate the wanton extortion enterprise does not make its closure and apprehension by law enforcement "long after the money is gone" a satisfactory remedy for the victim plaintiff.

Here, the Defendants will likely argue that they are a regulatory body and enforcement agency tasked with protection of the public and not with providing remedy to the injured "student" after their failure to protect or to comport their own conduct in such a way as to avoid anything at all.

**State Bar and Eleventh Amendment Immunities**

Here the STATE BAR may or may not, mention the Eleventh Amendment and theoretical immunity from Federal Court rulings related to State Matters.

STATE BAR will also likely raise defense that it only has the power to make recommendations to the Judicial Branch.

Unfortunately for the Defendants an approach similar or equal to the above would not comport to the actual scale and scope of STATE BAR'S statutory and public duties.

Here, this known and "strictly enforced" policy of "non-interference" puts both the Defendant ant its in better position even if it were known

4d. State Bar "policy" of non-interference is more likely than not exercised as tool of duty avoidance.

4e. Policy used to delay claims to preserve their scheme and obstruct the lawful and public airing and adjudication of claims in the neutral venue of the court.

The Courts of law must follow the law.

The Legislature establishes that claims are alive only as long as the applicable Statute of Limitations period allows.

4f. The conduct more likely than not, clouds the perception of neutrality and fairness of the California legal justice system, as State Bar rhetoric of protection of the public through enforcement of the law cannot be tenably reconciled with the consequent issue selection and focus of its rule making and enforcement activities.

II.   Plaintiff asserts Defendants conduct and overt acts in support of fraud, misrepresentation, breach of fiduciary duty, or gross negligence committed in a professional capacity.

   i)   Conduct likely violates CBPC 6002.1 and 6068a-o

   (g) Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest.

   Here, Plaintiff contends that on April 8, 2022, Dean Emeritus and Co-Defendant SPIRO appeared in Court with a plan to promote a judicial "error" by submitting false and misleading information to the Court and, when timely noticed, failed to correct the information.

III.   Likely violations of the Penal Code Grant Standing for Civil Cause of Action

   i)   The school defrauds its students without expectation or concern.

   ii)   The defendants protect both the tortfeasor and criminal with equal vim and vigor; in violation of Oath, core principles of Professional Responsibility, including model rule 1.7;

   iii)   Directors, Officers, and Agents of the school solicited or engaged in the conduct.

IV.   Consistent and clearly "negligent" student selection criteria intentionally ignores duty to use care in student selections. Related to preparation. Here, over the span of years, generally greater than 80% of first year FYLSX test takers failed to pass the Baby Bar.

i.   There are cases in which, as for Ms. Maria Gonzales, students were recruited and attended the first year when they did not meet the 60 unit minimum required by the State of California for transfer into a law degree program. She had to repeat her 1L year. She later left PCL.

ii.  All students were recruited under fraudulent circumstances, where material facts were intentionally withheld, as no one was ever told in advance that PCL planned to offer fewer units to the student than the law allows. Students were unfairly treated as a business practice, forced to attend PCL which clearly ignored its duties and failed to provide adequate monetary investment in programs that benefitted the students or allowed for the recruitment or retention of many of the best teachers, including making decisions in untimely fashion.

a.  Here, Plaintiff reiterates that not only was he initially a paying student, he was briefly employed by PCL, was a for a duly-elected member of the Board of Directors, and ultimately Secretary of the Corporation.

iii.  Students that succeeded at passing the First Year Law Students Exam were met with obtrusive but passive resistance, long delays in receiving transcripts was accepted practice by the school administration and it was generally "too late" to transfer without the plaintiff taking a substantial "haircut".

V.  Consistently, PCL would generate, on average, 1 or 2 students every 2-3 years "eligible" to take the California State Bar Exam, with often, very low first-time passage rates.

3)  Market restraint is two-fold effected under Color of Law:

I.  A student cannot transfer because Bar policy does not allow institutions to grant more units than were offered by the school, so a student takes an immediate "haircut", as they have already been deprived of the benefit of the bargain of the "lawful" unit grant; and,

II.  A student cannot re-take what is essentially the same class again, or a partial, and so cannot complete the requirements. This prevents a pathway for graduation and certification of the Bar without submitting to the unlawful conduct of PCL.

III.  A student cannot obtain resolutions from other public agencies, since the California State Bar is the monopoly regulator and the Bar, rather than act in its regulatory capacity, allows the school to continue not only its unlawful practice to harass the student into silence.

i) An unfortunate consequence here is that victims due to the perceived futility of legal recourse are more likely than not to "join the scheme", where the standard of conduct is by and large "knew or should have known", and the duty to uphold the Constitution of the State of California and the United States Constitution applies.

ii) An important consideration here is the damage caused to the morale of a newly entering attorneys who quite reasonably believe it more likely than not that the "system is rigged" or riggable, can easily prove it, but cannot find willing aid from fellow sworn members for fear of retaliation.

iii) The scheme forever continues as parties are continually rotated in and out under the auspices of being governmental appointee under term limits; in general, staff employees likely last longer than the average appointee in the environment. As a result, staff members that may be conflicted, compromised, or otherwise unreliable in their performance of their duties in good faith, may be allowed to exist and wreak further damage, that festers and metasticizes like cancer, corrupting both the simplest process (here Plaintiff asserts that both PCL and the State Bar have at times "weaponized" their administrative website(s).

(1) PCL used its site to publicate false, misleading, and defamatory statements about its conduct to PCL's membership and Plaintiff's Student and Faculty community';(see emails attached.)

(2) Plaintiff asserts that verbal defamatory conduct in this context meets the criteria for slander and public commentary

(3) STATE BAR in similar fashion posts announcements as rhetoric where the underlying conduct, or the cause of conduct, is often diametrically opposed to their statutory mandate. As discussed above and below, DURAN, WILSON, KRAMER, LEONARD, DAVYTYAN, CARDONA, and the operators of Enterprise S, ignore due process and court order in the ordinary and extraordinary course of daily operations, as exemplified here from the STATE BAR's ratification of non-conforming transcripts, long term and capricious defense of the unlawful conduct of persons under its regulatory authority, and its own failures to assure compliance with statutorily mandated due process review or court ordered recusal and administration requirements for antitrust determinations.

4) Under the color of Law has facilitated, supported, and expressly empowered via grant of monopoly powers to market participants and policy implementations.

I.   State Bar in ultra vires fashion has instituted policies designed to limit, by use of guideline and the copious use of non-plain language interpretations of the law, including, but not limited to:

i)   designating students as "non-members" of the public to avoid their duties as the sole and monopoly regulator and market participant that by rule mandates the payment of fees.

II.   Failure to honor the special relationships, duties, and obligations of the mandates of Professional State Bar Act, the judicially reviewed ruleset that functions as de facto quasi-legislative law, and the guidelines enforced as a trigger for further regulatory inquiry and enforcement.

i)   As discussed, the State Bar has both instituted and through its conduct willfully facilitated "PCL's unlawful racketeering Enterprise" (now Enterprise P.)

ii)   In Re Rutter (1932) 214 Cal. 724, the court held that the State Bar has the authority to disbar or suspend an attorney for violation of the UCL.

iii)   In FTC v. Indiana Federation of Dentists (1984) 476 U.S. 447, the Supreme Court held that naked restraints of trade are per se illegal under antitrust laws.

III.   For at least the past six (6) years, using artifice and misrepresentations of state law, and a designed monopoly over the judiciary in California[24], from California to Florida, trial courts to Courts of Appeal, this case arises from deliberate schemes to defraud judicial officers, litigants, insurance carriers, banks, issuers of securities, and ongoing payments derived from unlawful activity that damaged Plaintiff TODD R. G. HILL's business, property, and civil rights under the United States Constitution.

IV.   "The right to pursue one's chosen profession free from arbitrary state interference also is protected by the due process clauses of both the state and federal Constitutions. (Cal. Const., art. I, § 7; U.S. Const., 14th Amend.; Endler v. Schutzbank (1968) 68 Cal.2d

---

[24] Plaintiff reiterates that the "question" of unlawful monopoly arises only if the monopoly produces inefficient outcomes for the public consumer market participant. Unfortunately for the Defendants to make such determination requires adequate review of the statutes, regulatory environment, and economic outcomes which in circular, akin to "Catch-22" fashion implicates the need for "due process" review.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

162, 169 [ 65 Cal.Rptr. 297, 436 P.2d 297]; Sail'er Inn, Inc. v. Kirby, supra, 5 Cal.3d at p. 17.) Although the state may discipline and regulate the qualifications of individuals employed in certain professions, it must do so within the limits of procedural due process. ( Endler, supra, 68 Cal.2d at p. 170.) "The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protections." ( Yakov v. Board of Medical Examiners (1968) 68 Cal.2d 67, 75 [ 64 Cal.Rptr. 785, 435 P.2d 553].) There is simply no place for the conduct at issue in the United States, and the lack of precedent results from a threat of fear and monopolistic powers of a corrupt organization: The State Bar of California.

V. Reflected by final rulings, defendants used the judiciary and government functions ultra vires, with per se antitrust/competitive violations, to further or conceal fraudulent schemes.

VI. Defendants each had corrupt motives or interests, and they acted with actual malice or at least disregard of Plaintiff, his known harm, and his federally protected rights.

VII. Lacking probable case for claims against Plaintiff, defendants repeatedly used postal mail, wire communications including email, cellular calls, and FAX, as well as overt acts or active concealment by overt acts of coercion, extortion, threats, or bribery to achieve their goals to harm Plaintiff, make money, or conceal to help individual goals.

VIII. Each defendant is part of, acting under license, or prior or ongoing threat of, acting through or under the protection of, defendant culpable persons THE STATE BAR OF CALIFORNIA including **Enterprise S** ("Racket").

Here, STATE BAR has constructed, facilitated, and perpetuated fraudulent schemes willfully designed to abrogate legitimate responsibilities, including the requirement for diligence in the review of policies for status as "underground rules".

Underground rules are derived, adopted, and enforced in ultra vires fashion.

The Racket is deliberately malicious, the lines among it obscure. For example, as stated above and below, STATE BAR and Enterprise S operators preferred to deprive student of ability to transfer, degree, or any assisted option.

The STATE BAR **reneged** on an alternative school administered third-party delivered course meeting the 270-hour requirement, which Plaintiff coordinated and paid for; when Plaintiff asked WILSON and LEONARD why the schools teaching obligations were not subsumed by the State Bar, no answer was offered. Plaintiff has reason to believe that this "solution" was in fact negotiated as a stalling tactic in bad faith, as on or about December 2, 2022, STATE BAR subsumed the obligations of PCL b placing it on formal probation.

Willful failure of a regulatory agency with express and imperative mandate, if enforceable as a matter of law, is intentional unlawful conduct and therefore malice per se.

IX. Beyond Plaintiff, acutely threatening, Racket schemes to defraud exist for "proceeds likely in excess of $5,000,000" among a "putative class of certainly equal to or greater than the 5 members required" students for the clear evidence of the long-term and willful operation of the scheme.

(1) Students recruited to PCL were not told the school would, in exchange for their tuition, not only offer insufficient financial support to their programs to improve outcomes but also that the school would award FEWER units for completed classes than allowed under State and Federal law.

(2) Plaintiff was not informed that PCL's units would not be eligible to transfer

(3) The State Bar received copies of records that indicated the deviation from the law, and not only failed to clarify or correct the issue as was appropriate for the monopoly regulator and vertical market participant, it also openly allowed PCL to continue the practice and assisted the college in its attempts to deny, defer, demur, and delay, and render moot complaints from both students and officers of PCL.

X. Plaintiff shows ongoing schemes to defraud, advanced through the wire and mail used as a "funnel" or "pipeline" to student recruitment as a lead and revenue generator for Enterprise S, as a student that fails to pass the FYLSX the first time is more likely than not to take it a second time, especially given the culture at PCL. The lifecycle and total short term value of a PCL student that FAILS the FYLSX multiple times to the State Bar is $2,375 assuming the maximum three (3) takings of the FYLSX and a single taking of the Bar, versus those who attend ABA or "deemed-compliant" organizations with out-of-state accreditation who pay just the $677 for the Bar. No matter how one looks at it, those who go to less expensive schools, who are likely economically disadvantaged, even if that disadvantage is access to capital, students from different backgrounds are forced to face

unfair burdens or capriciously justified burden assignments that have likely failed to appropriately parse the first mandate.

XI. Plaintiff shows interference with business prospects and relationships in multiple ways:

(i) Defendants PCL publicated false and likely per se detrimental information, defamed, character assassinated, libeled, or otherwise impugned the character or adroitness of Plaintiff's reasonable and coherent presentations of black letter law in good faith.

(ii) Plaintiff asserts and has continuously asserted and affirms here that all claims of tort, negligence, waste, and malfeasance are made in good faith;

(iii) To date, Plaintiff is not aware of any Defendant or ancillary party to the cause of action who has denied any material, substantive, or objective fact. To be clear, no party has disputed any of the facts in this matter as presented by Plaintiff.

(iv) Defendants PCL conspired to deprive Plaintiff of his legal rights to seek remedy, due process, obstruction of justice, and conversion through abuse of the legal process and multiple violations of California's Rules of Professional Responsibility.

(v) Plaintiff understands that Defendants also attempted to commit harm to HILL's reputation and credibility.

XII. <u>Enterprise S</u> under "color of law and right" of state actors engaged in non-sovereign unlawful conduct in conspiracy likely for the purposes of raising discretionary funds for use by or maintenance of its Racket.

XIII. Plaintiff was damaged in his business, property, and person in fact, and seeks treble damages for violations of 18 U.S.C. § 1962(a)-(d).

XIV. Aside from treble damages, Plaintiff seeks federal receivership under § 1956.

XV. Plaintiff seeks a racketeering investigator who is not a licensee of The State Bar of California, who would otherwise be subject to the racketeering activity or coercion shown.

XVI. Plaintiff sues STATE OF CALIFORNIA for its agents here after claim presentation October 14, 2021; receipt by THE STATE BAR OF CALIFORNIA; formal claim denial by "Claims Officer" Sarah L. Cohen acting officially; and Plaintiff's prompt filing of suit with conforming pleadings in *TODD R. G. HILL v. The State Bar of California et al.* (OCSC Case No. 30-2021-01237499) ("State Action 2").

XVII. Plaintiff sues STATE OF CALIFORNIA because it has a nondelegable duty to uphold the United States Constitution, and because it has delegated duty and authority to nonsovereign actors that destroyed Plaintiff's business and property under artificial authority cited by them to justify it as being a matter of "discretion" under authority of State.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

XVIII. Plaintiff sues STATE OF CALIFORNIA for all violations of its nonsovereign actors acting officially under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, which Plaintiff alleges to be ongoing, with deliberate disregard for the truth or sworn oath of attorneys to uphold the laws of sovereign State of California and United States Constitution under Cal. Bus. & Prof. § 6068(a).

XIX. Plaintiff sues STATE OF CALIFORNIA under Cal. Gov. Cod. § 815.2, Cal.Gov. Cod. § 815.3(b) (where DURAN and STATE BAR are named in this action), and Cal. Gov. Cod § 815.6 under the 5th and 14th Amendments to the United States Constitution and specifically equal protection clause and eminent domain.

XX. Plaintiff sues STATE OF CALIFORNIA because its assigned non-sovereign actors operating through, with, or under STATE BAR colorable authority as "regulators" lack immunity where they are controlled by active market participants, as is the case with the STATE BAR.

XXI. Plaintiff sues STATE OF CALIFORNIA here and other culpable defendants because its lax oversight and administrative management were substantial factor in the malicious, frivolous, or negligent regulatory , unfair business practices under state and federal law or ratification of the same with malice; slander/conversion to Plaintiffs business/property at issue all of which may become federal question if improper influence of judicial officers succeeds through GRANDT, DURAN,WILSON, KRAMER, SPIRO, GONZALEZ, SARIN, BOUFFARD, FRANCO and LEONARD.

XXII.      Plaintiff directs to each defendant, Plaintiff, Todd Hill, who files this contends:

**FACTUAL BACKGROUND**

**Synopsis of the facts**

The Guild Law School dba People's College of Law (known as "PCL") recruited and matriculated students in bad faith for unlawful purpose.

Plaintiff reasonably believes on experience and evidence that prior to HILL's 2018 attendance at a recruitment "open house" held at the SEIU Labor Union offices a short walk from the school, PCL and Enterprise P operators conspired to award fewer units to discourage transfer because State Bar rules do not allow a unit accepting a transfer student to adjust the units to those offered by the school.

Subsequently when Plaintiff sought clarification and ultimately enforcement support, STATE BAR and operators of Enterprise S further conspired and succeeded in depriving HILL of his degree and opportunity to sit for the June 2023 Bar Exam, as would be his privilege to claim after program completion.

The conduct STATE BAR directed at Plaintiff was arbitrary and capricious because the STATE BAR failed to provide timely notice of the compliance status of PCL; the STATE BAR failed to follow its own precedents and procedures, thereby treating the PCL differently than other regulated entities and substantively facilitating HILL's current circumstance and injuries; and the decision to impose an additional 270 hours of "academic study" without actual study requirements; failure to properly consider the rule under APA or CAPA requirements and then enforcing it expressly upon

Plaintiff; failure to consider STATE BAR's own culpability and in egregious violation of the California Constitution.

The complaint also challenged as arbitrary and capricious the The STATE BAR's failure to relieve the City of each of the other clauses the City considered excessive, as well as the clause excluding the City from renegotiations. Further, the complaint alleged that the decision was arbitrary and capricious because the DOL "misused the Guidelines to avoid the application of existing law." Id. at 30. The City requested a declaratory judgment and injunctive relief.

small , and that year then Dean Spiro, now Emeritus, and other members of the recruitment committee

Plaintiff believes onhe People Colleges

**Fraud, Misrepresentation & Failure To Disclose Material Facts**

Plaintiff began attending People's College of Law in the Fall of 2019. Before entry and initial payment, Plaintiff was notified that the school had recently (as early as 2016 moved to the "quarter" system for classes. Sometime between receiving notification of passing the required "First Year Law School Examination", required by the California State Bar for future admission and the "recognized" grant of credit, Plaintiff saw what he first believed was simply an "accounting" error; he was issued two ("2") units instead of the statutorily mandated three ("3") units. In essence, in this aspect of the school's performance, students

received only 2/3rds of the statutorily required "benefit of the bargain" for classes under the quarter system.

Not only were Plaintiff(s), as enrolled student(s), awarded fewer units than allowed by law but attempts by student(s) to timely transfer were obstructed in "plain view" of the State Bar in real time.

By the State Bar's own communications and agent admissions, the Bar knew and undeniably held in its possession direct knowledge of the Racket and facilitated PCL by certifying students for the Baby Bar, almost all of which the State Bar knew had been selected with wanton disregard to responsible academic selection standards.

By its own communications and agent admissions, including results from its own on-site audits, the State Bar undeniably acted and benefited from the Racket, as it abetted PCL's unlawful conduct by processing in excess of one hundred (100) non-conforming transcripts, in that they falsely represented an unlawful determination of units awarded.

Here, because PCL managed to grant its students 2 units awarded for every 3 hours of class attendance, traditionally via lecture, in violation of the 1 credited unit per 1 hour of lecture over the academic quarter or semester instead of the for use in authorizing students to take the First Year Law Student's Exam (FYSLX), a State Bar requirement for students attending an unaccredited fixed-facility school without prior passage of the exam or special exemption.

For each student certified, the bar had a very good chance of receiving money, since the desire of the majority

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Plaintiff asserts that the above is bright line example of a monopoly power

It is undeniable that the ability to operate an unlawful scheme with the understanding that Defendant PCL could be certain of support from its vertical monopoly regulator, the California State Bar, which would allow PCL, its agents, directors and officers to succeed in the following tortious and potentially criminal activities including:

a.  act in an ultra vires manner in per se Bad-Faith,

      i.  Here the Plaintiff was unlawfully ousted as PCL's Secretary of the Corporation, whose agents and officers then submitted a fraudulent Statement of Information to the Secretary of State's office, in violation of

b.  harass,

c.  defame,

d.  threaten,

e.  extort,

f.  convert,

g.  inflict emotional distress,

h. conspire,

i. perjure,

j. abuse judicial forum,

k. actively and materially misrepresent the facts when candor was required. Here, Plaintiff asserts he was defrauded and damaged in the following scheme:

  i. PCL, its administrators, agents, directors, officers, employees and volunteer leadership, in per se Bad-Faith and unfair business practice, entered into unconscionable and fraudulent contracts with the intent to offer services inevitable and certain to yield a results—transcripts, trade restraints, coercive demands, harassment, and more—that did not follow the law.

  ii. PCL and operators of <u>Enterpise S</u> would then review the nonconforming transcripts and authorize "where appropriate" certify   under the authority granted to its registrar under the authority of its monopoly PCL staff chose for their sincere loyalty and dedication to the school. and then submitted these transcripts to the State Bar for t the detriment of the Plaintiff(s) and others in sufficiently similar circumstances.

    a. Defendants may argue here that Plaintiff's assertions are "overly broad" and that the claims make even the "casual handler" or even third-party intermediaries culpable for participation in unlawful schemes or liable for damages.

b. Plaintiff responds that the list of Defendants is intended to include only those with reasonable or constructive knowledge that the activities were unlawful and that the purpose of the cause of action is for the purposes of determination by the "finder of fact".

iii. PCL, with the State Bar's full knowledge, entered into contracts with students, both qualified and unqualified, but none entering law school as a 1L would likely meet a parity standard with the attorneys and law school graduates who composed contracts with the irrefutable Pintent to deprive their students and voluntary invitee charges

Plaintiff reasonably believes that a special relationship existed between all of the parties and failure to action when duty, knowledge, and capacity allow is imputed as culpable act.

PCL and members of the State Bar, its agents, paid or volunteer, had express duties to avoid any violative conduct, in many cases when conduct that gives rise to even the question of participating in conduct that was.

But here, the express grant of freedom from interference, no matter the duty breached or law broken; most importantly here, PCL pursued and was supported in its efforts to continue its unlawful practices.

 Regulate rule by the vertical monopoly regulator and a per se market participant power from a This unlawful and *ultra vires* grant of power to PCL monopoly regulator academic institutions

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

duty for a period more than one thousand two and hundred (1,200) days; just shy of forty months, it is 3.28 years of relative inaction.

**Plaintiff asserts that both the conduct and the result were a clear preplanned restraint on consumer choice and commerce**.

In the Summer of 2018, Plaintiff attended an "open house" student recruitment event hosted by PCL. He attended that open house with two other students who matriculated the same year, while Plaintiff took another year to enter due to family concerns.

In their recruitment zeal, PCL recruited and matriculated at least one student unable to lawfully enter the program, as she had not at that time obtained the 60 semester units required from a community college or other recognized institution.

Plaintiff, restrained from transferring, burdened with explaining this unlawful approach to other institutions the student hopes to transfer to or otherwise substantively interact. The only explanation detailing failure to comply with the law by a **law** school?

**Plaintiff's Privity Relationship to the State Bar**

The State Bar charges a fee to review how much credit will be offered from programs to determine eligibility to sit for the Bar. Plaintiff's

**Standing**

Plaintiff asserts standing related to this cause of action; the requirements are met due to the following:

Plaintiff has privity as a duly elected Board Member, Secretary of the Corporation (past; ousted by ultra vires act and false Statement of Information filing to the State of California, in that the Board, its agents, and assignees did not use the bylaws, the courts, nor due process to achieve the change; no lawful means was used to change the comport of the organization.

College bylaws require "due process" in the management of election issues as well as student issues as they arise between  Due process consists at least of notice and the opportunity to be heard.

Plaintiff is also a paying student going to law school with the expectation of an experience that, at the very least, complies with the law and the spirit of the "benefit of the bargain".

Mr. Hill endured interference with his ability to take classes, harassment, slander, libel per se, and unlawful ousting without due process banned from fulfilling his obligations as a Board Member.

**Issue preclusion and preemption for State Bar Defendants is discretionary.**

Plaintiff asserts the following novel facts, circumstances, relationships, conduct, and likely negative impacts:

**Disparate Impact a Substantial Factor and Mitigator**

Plaintiff stipulates that the use of data and statistics to demonstrate disparities in the legal profession is complex and should be accompanied by a thorough analysis and interpretation of the

data, as well as context and an understanding of the systemic issues that may be contributing to the disparities.

That said, here it is non-controversial and constructively known by the parties that State Bar outcomes for African Americans retain systemic bias.

**Is there an Enhanced Duty of Care Reasonably Required for Circumstances of Bias?**

Here, Plaintiff argues that a constructive enhanced duty of care applies for public risks related disparate impacts from known biases.

When an attorney has knowledge that a policy, for example, State Bar Policy which as rule "is" per se law, propagates systemic bias and results in greater levels of risk and injury to protected segments of the population, this knowledge reasonably increases the attorney's duty of care related to her conduct.

This is especially true when considering the internal attorney supervisory structure within the State Bar, which functions similarly to a law firm and thus is reasonably subject to at least "an ordinary member of the profession in good standing's"[25] approach to conduct conformance with duty.

---

[25] Since "time immemorial" it has been held under common law doctrine that "one who holds themselves out as a professional must both possess and exercise the knowledge and skill of an ordinary member of the profession in good standing.

Under California Rules of Professional Conduct (CRPC), it is well established that an attorney has a duty to report unlawful or misconduct of other attorneys they supervise or otherwise have a relationship in practice when that conduct meets the appearance of "moral turpitude".

 California Rule of Professional Conduct 3-700(A) states that "A member shall not assist a client in conduct that the member knows is illegal or fraudulent". Furthermore, California Rule of Professional Conduct 3-700(D) states that "A member shall report to the State Bar any misconduct of which the member has knowledge". Therefore, if an attorney within the State Bar has knowledge that State Bar Policy is propagating systemic bias and causing harm to protected segments of the population, they have a legal and ethical duty to report this misconduct to the State Bar's internal supervisory structure, like reporting misconduct within a law firm.

Additionally, California's Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice. It also prohibits unfair, deceptive, false or misleading advertising. If an attorney within the State Bar has knowledge that State Bar Policy is in violation of these laws, they have a legal and ethical duty to report this misconduct to the State Bar's internal supervisory structure.

Furthermore, State Bar employees and member licensees share a professional and ethical duty to avoid conflicts of interest. As such, an attorney should avoid representing clients or interests that are in direct conflict with the protection of the protected segments of the population. An attorney

should also consider withdrawing from representation when it becomes apparent that the representation will result in violation of this duty.

In summary, when considering the State Bar's internal attorney supervisory structure, which functions similarly to a law firm, an attorney has a legal and ethical duty to report misconduct within the State Bar when they have knowledge that a policy, such as State Bar Policy, propagates systemic bias and results in greater levels of risk and injury to protected segments of the population. This increases the attorney's duty of care, and the attorney must take steps to report the misconduct to the State Bar's internal supervisory structure and to avoid representation that would violate their duty of care. It is important to note that any attorney who becomes aware of misconduct within the State Bar and fails to report it can also be subject to discipline and sanctions for violating their professional responsibilities.

Plaintiff respectfully asserts that to effectively address the systemic bias and discrimination present within the State Bar's policies, it is crucial that the State Bar implements measures to ensure that any reported misconduct is thoroughly investigated and appropriate action is taken. This may include creating an independent body or task force to investigate and address reported misconduct, as well as implementing regular audits and reviews of the State Bar's policies and practices to identify and address any areas of discrimination or bias.

Overall, the State Bar has a legal and ethical duty to ensure that its policies and practices do not propagate systemic bias and discrimination, and that reported misconduct is thoroughly

investigated and addressed. Attorneys within the State Bar have a corresponding duty to report any knowledge of misconduct and to avoid representation that would violate their duty of care. It is essential that the State Bar and its members work together to address and eliminate any discrimination or bias within the organization, to ensure that the legal profession is fair and just for all.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**Plaintiff's Prayers For Relief**

**Writ Request 1: Order for Writs of Mandamus or Alternatives**

Plaintiff petitions the Court seeking relief and remedy in filing petition for a writ of mandate and complaint for common law, declaratory and injunctive relief against the Guild Law School, dba People's College of Law ("PCL"), past and present Dean's and Presidents of the college as well as it's current "Community Board" which was instantiated via ultra vires action.

Plaintiff asserts multiple attempts by the Defendants to interfere with movants business relationships, including willful attempts to obstruct plaintiff's performance of his statutorily mandated duties as the lawfully elected student Board Member and Secretary  of the Corporation in the midst of his efforts to bring the college into compliance with the law and the publicized regulatory requirements for operation.

**State Bar constructively complicit and a substantial factor in injury.**

Constructive complicity  is the "way" a party aids another after the completion of an unlawful and commonly criminal act.

Here Plaintiff argues that the STATE BAR, LEONARD, CHING, NUNEZ, and WILSON, were complicit in the numerous, non-consensual, privacy violations executed by CMG and all named Defendants of Enterprise P.

PCL, in operation of Enterprise P and as individual Defendants harassed Plaintiff in addition to its violations of the unfair debt collection statutes.

**Enterprise P solicited and conspired to deprive Plaintiff of Right and Privilege**

Enterprise P suborned and conspired to benefit from perjury both in inchoate and complicit fashion, going so far as to make a court appearance to mislead and induce the Court, where all PCL or Enterprise P Defendants, the majority of whom are licensees, are represented by their likely complicit, assured knowledge of material facts

1. Same counsel of record for PCL, SPIRO was for that action, as for this cause of action, a Defendant and material witness or at least one of the latter. It is violative

**Enterprise P has engaged in the unlawful submission of Corporate Statement of Information Documents.**

Enterprise P has recruited Plaintiff as a member of the Board to give the Enterprise a veneer of reputability without informing Plaintiff prior or subsequent to onboarding. Defendants engaged in obtaining insurance policies, that they knew or should have known would not be enforceable for claims against defrauded peers.

This conduct by the Defendants seems just another ploy in their well-planned illicit activities.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**PCL breached good faith, duty, and law to Plaintiff's detriment.**

Defendants successful restraint of plaintiff's ability to transfer was executed by the PCL administration under color of law due to both ultra vires and unlawful State Bar policy and the enforcement and failure to enforce both lawful policy and the statutory requirements of the law.

The successful attempts at business interference, in this case, delaying the receipt of a response from the California State Bar, the statutory monopoly regular tasked with  judicial policy and regulate law schools with programs suitable to allow for testing after completion of the work.

Plaintiff further prays for the appointment of a Trustee or Guardian Ad Litem to oversee new and timely elections as well as oversee a full and audited accounting, in accord with both California statute and PEOPLE'S COLLEGE OF LAW's Bylaws.

**Grant of Doctoral Degree – Juris Doctoral Degree by the Guild Law School dba People's College of Law**

Here Plaintiff asks that the Court compel Defendants via writ of mandamus for Grant of Degree.

**Summary of Bases for the Grant of Degree**

Plaintiff, who has completed all coursework, should be granted their Juris Doctoral degree because they attended the People's College of Law (PCL) as a full-time student. The fact that PCL is only authorized to offer a four-year program as a part-time educational facility does not negate the fact that Plaintiff has fulfilled all academic requirements for the degree. Furthermore, the fact that PCL unlawfully granted units and allowed the Plaintiff to take a heavier course load than allowed by law is not a valid reason to deny the Plaintiff their degree.

It is important to note that the conduct of the school, in this case, was unlawful. The school violated federal financial aid laws and the California Private Postsecondary Education Act by awarding 2/3rds of the required units. Additionally, the school's actions are in violation of the California State Bar Act of 1937 and the State Bar's policy which authorize the court to take proceedings to disbar or suspend an attorney for matters within its knowledge or upon the information of another.

The State Bar's role as the vertical and sole monopoly regulator of law schools, holds it to a higher standard of conduct and professionalism, it is imperative that the State Bar follow its own rules, policies and the law. In this instance, the State Bar failed to follow its own rules and policies, and acted in permissive and affirmative support of the school's unlawful issue of 2 units for postsecondary law school classes instead of the required 3.

Given the above, it would be unjust and a violation of the Plaintiff's right to an education to deny them their Juris Doctoral degree. The Plaintiff has fulfilled all academic requirements, and the conduct of the school in this matter should not be held against the Plaintiff. Therefore, it is respectfully submitted that the court should grant Plaintiff's Juris Doctoral degree.

**Plaintiff's guarantee of right to the privilege and proceeds of a legal education in Due Process.**

The right to claim the privilege of a legal education is a fundamental right that is protected under contract law, as well as State and Federal common law doctrine. Under contract law, when an individual enters into an agreement to pursue a legal education with an institution, such as the People's College of Law (PCL), the institution has a legal duty to provide the education that is outlined in the agreement. This includes ensuring that the institution is in compliance with all applicable laws and regulations, such as those set forth by the California State Bar and the U.S. Department of Education.

Furthermore, the right to claim the privilege of a legal education is also protected under the State and Federal common law doctrine of promissory estoppel. This doctrine holds that when one party makes a promise to another party and that promise is relied upon by the other party, the promisor is

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

estopped from denying that promise. In the context of a legal education, if a student relies upon an institution's promise to provide a legal education that is in compliance with all applicable laws and regulations, the institution is estopped from denying that promise.

Additionally, the right to claim the privilege of a legal education is also protected under the State and Federal common law doctrine of unjust enrichment. This doctrine holds that when one party receives a benefit from another party, it would be unjust for the benefiting party to retain that benefit without providing compensation. In the context of a legal education, if a student receives a benefit from an institution in the form of a legal education, it would be unjust for the institution to retain that benefit without providing the education that was promised and in compliance with all applicable laws and regulations.

The U.S. Supreme Court holding that the right to a legal education is protected under the Due Process Clause of the Fourteenth Amendment of the United States Constitution functions as a pre-determinative here. In the landmark case of Regents of the University of California v. Bakke (1978) 438 U.S. 265, the court held that an individual has a constitutional right to equal protection under the law, and that includes a right to an education.

In this case, the People's College of Law and, as monopoly regulator and market participant, the State Bar, violated the Business and Professions Code Section 17200, also known as California's Unfair Competition Law ("UCL") by matriculating students with intent to defraud, committing

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

successful acts of fraud, violating antitrust laws, and failing to follow its own antitrust policy on multiple occasions as "entwined and entangled" but distinct enterprises.

For reasons detailed above and below, these actions constitute per se naked restraint of trade, and are clear violations of state and federal laws.

**Activities considering the Doctrine of Contracts**

Furthermore, these actions also constitute a violation of the Plaintiff's right to a legal education under contract law, as well as State and Federal common law doctrine. The Plaintiff entered into an agreement with PCL to pursue a legal education, and the institution failed to fulfill its legal duty to provide the education that was outlined in the agreement. Additionally, the Plaintiff relied upon PCL's promise to provide a legal education that was in compliance with all applicable laws and regulations, and the institution is estopped from denying that promise.

In light of these violations, it is clear that the Plaintiff has a right to claim the privilege of a legal education. HILL has fulfilled all academic requirements and should not be denied his Juris Doctoral degree as a result of the institution's unlawful conduct or STATE BAR's questionable market making practices.

It is imperative that the STATE BAR, as the vertical and sole monopoly regulator of law schools, holds itself to a higher standard of conduct and professionalism and follows its own rules, policies,

and the law. It would be unjust for the Plaintiff to be denied their degree as a result of the institution's violations of state and federal laws.

In conclusion, HILL has a fundamental right to claim the privilege of a legal education and receive the benefits , protected under contract law, as well as State and Federal common law doctrine, and constitutional rights. The People's College of Law and State Bar's violation of state and federal laws and failure to fulfill their legal duty to provide the education that was outlined in the agreement, should not be held against the Plaintiff, who has fulfilled all academic requirements. The court should grant Plaintiff's Juris Doctoral degree.

**Abject Deference to Court for Determination of Suitability for Purposes of Admission to Bar**

Plaintiff defers to Court related to suitability of the degree's satisfaction of requirements to sit for the California Bar.

Plaintiff is in fact reticent to sit for the bar exam not due to its known difficulty but because the ultimate "benefit of the bargain", i.e., association with the State Bar is of questionable value and raises colorable claims of unreasonableness.

**Analysis:**

The fact that the school's grant of units was unlawful should militate as factor in favor of the Plaintiff, as it strongly suggests that the school's conduct was not in compliance with the regulations set forth by the State Bar and the State Bar Act of 1937.

Here, after correction was applied, student clearly met the requirements of a part-time program in three (3) years. Instead of STATE BAR using its guidelines which allow up to 10% of an institutions student body to receive degrees where a waiver was required.

**What scrutiny standard applies to § does the State Bar Acts requirement of four (4) consecutive years of part-time study for law students enrolled in fixed facility California-registered institutions?**

However, Plaintiff  understands this alone may not be sufficient to grant the plaintiff's degree.

The stronger case if they can prove that the school's conduct was fraudulent and that the defendants engaged in illegal conduct, such as violating antitrust laws and committing fraud. This would indicate that the defendants' actions were not in compliance with professional standards and regulations, which could support the plaintiff's argument that they should receive their degree.

The plaintiff may also have a stronger case if they can demonstrate that they have completed all coursework and attended as a full-time student, despite the school's unlawful grant of units. This would indicate that the plaintiff has fulfilled all of the requirements necessary to receive their degree, despite the school's noncompliance with regulations.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

It's also important to note that the chances of success for the plaintiff may depend on the court in which the case is heard and the specific facts and evidence presented in the case.

Therefore, the chances of the plaintiff's success in receiving the degree are uncertain, given the facts provided. It would be best for the plaintiff to consult with a lawyer and present their evidence to the court to get a clearer understanding of the chances of success.

Plaintiff's first cause of action rests on section 17200 of the Business and Professions Code, the core provision of the UCL. The remedies available under this law, which are generally limited to injunctive relief and restitution, are "cumulative . . . to the remedies or penalties available under all other laws of this state." (§ 17205) "

In contrast to its limited remedies, the unfair competition law's scope is broad. Unlike the Unfair Practices Act [Bus. Prof. Code, §§ 17000 et seq.] it does not proscribe specific practices. Rather, as relevant here, it defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' (§ 17200) Its coverage is 'sweeping, embracing '"anything that can properly be called a business practice and that at the same time is forbidden by law."' ( Rubin v. Green (1993) 4 Cal.4th 1187, 1200 . . . quoting Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 113. . . .)

It governs 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' ( Barquis v. Merchants Collection Assn., supra, 7 Cal.3d at p. 110; see also People v. McKale (1979) 25 Cal.3d

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

626, 631-632 . . .; People ex rel. Mosk v. National Research Co. of Cal. (1962) 201 Cal.App.2d 765, 771. . . .) By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. ( State Farm Fire Cas. Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1103 . . ., citing Farmers Ins. Exchange v. Superior Court 2 Cal.4th 377 at p., 383.)

"However, the law does more than just borrow. The statutory language referring to 'any unlawful, unfair or fraudulent' practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not unlawful and vice versa."' ( Podolsky v. First Healthcare Corp. (1996) 50 Cal.App.4th 632, 647, quoting State Farm Fire Casualty Co. v. Superior Court, supra, 45 Cal.App.4th at p. 1102.)" ( Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. ( Cel-Tech) (1999) 20 Cal.4th 163, 180, fn. omitted.)

The recent opinion in Cel-Tech explains why the UCL has such a broad scope: "'[T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, . . . the section was intentionally framed in its broad, sweeping language, precisely to enable

judicial tribunals to deal with the innumerable "'new schemes which the fertility of man's invention would contrive.'" ( American Philatelic Soc. v. Claibourne (1935) 3 Cal.2d 689, 698 . . .) As the Claibourne court observed: "When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one. . . ." ( 3 Cal.2d at pp. 698-699 . . .; accord, FTC v. The Sperry Hutchinson Co. (1972) 405 U.S. 233, 240. . . .) With respect to "unlawful" or "unfair" business practices, [former] section 3369 [today section 17200] specifically grants our courts that power. [¶] In permitting the restraining of all "unfair" business practices, [former] section 3369 [today section 17200] undeniably establishes only a wide standard to guide courts of equity; as noted above, given the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate.' ( Barquis v. Merchants Collection Assn., supra, 7 Cal.3d at p; 111-112, fn. omitted.) '[I]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited [citations], since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery.' ( People ex rel. Mosk v. National Research Co. of Cal., supra, 201 Cal.App.2d 765 at p. 772.)" ( Cel-Tech, supra, 20 Cal.4th at p. 181.)

Despite the sweeping language of the UCL, Cel-Tech then explains, the scope of a court's power under that law "is not unlimited." ( Cel-Tech, supra, 20 Cal.4th at p. 182.) "Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." ( Ibid.)

The trial court found that Civil Code section 1936, subdivision (m)(2), provides such a "safe harbor," because it specifically authorizes the challenged business practices.

### Recovery Of Personal Property Via Disgorgement Or Appropriate Mechanism

Disgorgement is the State Bar Rule for these circumstances.

### Quantum Meruit For Services Performed Under Deceptive Practice;

Here, Defendants reneged on wage payments and other volunteer service,

### Restoration Of Funds Due To Improper Conveyance; Punitive Damages

Under circumstances described below, Plaintiff asserts that Plaintiff reasonably and in good faith paid moneys not owed, in the sum of $7934 said sum included the total amount of $5000 ($5600 minus 40-hour volunteer commitments that yiHOLTONs a theoretical $600 discount).

### Plaintiff Has Paid Sums Not Legitimately Owed Or Demonstrated Owed In Good Faith And Mitigation

Plaintiff claims personal injury for which Enterprise S, the horizontal monopoly regulator and market participant to its downward regulated market participant, operated as a racketeering Enterprise P.

Plaintiff asserts that he owed no such sums because Cal Bar Guidelines renders it unlawful to charge when Defendants "know or should have known" they were in "non-compliant" status and had a duty to know.

Plaintiff asserts that Defendants had a duty to know and in fact knew or should have known

Plaintiff paid such sum in good faith on the promise of receiving a later accounting and appropriate credit (again before adjudication of the facts or Cal Bar response) to both mitigate his damages, and in the case that Plaintiff was wrong, pay what plaintiff fairly owed.

Plaintiff devoted over 300 hours to PEOPLE'S COLLEGE OF LAW from 2019 until today: hosting study sessions every Saturday for 38 weeks, board meeting attendance, installation, student, and teacher training and support for the Microsoft Teams platform, which included working with Microsoft and various providers.

All of the above for a $600 "discount" reneged upon by the Defendants to apply further "extortionary" pressure in a monumental showing of Bad-Faith; plaintiff has written correspondence acknowledging completion of the hours. So much time was spent on this project that the Board at that time authorized a $600 additional "payment" as a student work-study project. Payment was never issued and the "applied" discounts have been reneged upon by the Defendants.

When has a "Rational Basis" been demonstrated as irrational?

In the United States, the standard of review for most economic and social regulations is "rational basis review," which means that a law will be upheld if it is rationally related to a

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

legitimate government interest. Under this standard, a law does not need to be the most effective or the best means of achieving the government's goal, it only needs to be reasonably related to it.

How does the reasonable person argue the rationality of a procedure or policy that has not been substantively effective for decades.

Is ther a "rational" non-abrgative

Can a "Rational Basis' for the State Bar be an abrogative one that as policy is in direct opposition to given sections of the State Bar Act?

For 30 years the seminal the case of Romer v. Evans (1996), in which the Supreme Court of the United States found that a Colorado constitutional amendment that prevented municipalities from enacting anti-discrimination laws to protect gay and lesbian individuals was irrational. The Court found that the amendment was not rationally related to a legitimate government interest and served only to harm a particular group of people.

Another example is the case of United States v. Virginia (1996), in which the Supreme Court of the United States found that the Virginia Military Institute's policy of admitting only men was irrational. The Court found that the policy was not rationally related to any

legitimate government interest and that there were alternative means of achieving the same goal that did not discriminate against women.

Additionally, in the case of Korematsu v. United States (1944) the Supreme Court upheld the internment of Japanese-Americans during World War II, but in recent years the court has recognized that the decision was a mistake and in 2020 the court issued an order vacating the conviction of Fred Korematsu, the man who challenged the internment order, acknowledging that it was not rationally related to a legitimate government interest and that it was discriminatory.

**Enterprise P Engaged In Interstate Commerce Supported By Enterprise S**

A.  "Enterprise P", utilizing a combination of lawful and unlawful activity, is here defined consisting of the combination of lawful and unlawful conduct and the culpable actors as agents, directors, and officers of PCL, "which more likely than not" or "likely[26]" was operating a scheme to defraud its students and the California State Bar, its monopoly regulator.

B.  **Enterprise S** consists of the unlawful conduct and culpable actors as agents, directors, and officers of the California State Bar, which more likely than not was operating a Racket.

---

[26] Plaintiff wishes the Court to note that occurrences of the word "likely" are meant to invoke the same meaning as "more probably than not" or the standard of sufficient plausibility. It is used for the purposes of assertion, and not intended to be treated as conclusory; it is a descriptor of the "reasonable foreseeability of a likely consequent or negative impact" where the weight of evidence or other objective circumstance may not adequately meet the standard.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Defendants used the "remote access renaissance" during the 2020 pandemic to recruit students residing both in-state and out-of-state students, including students residing in Arizona who attended their classes from their out-of-state location.

**Enterprise P Engaged in Interstate Commerce Supported by Enterprise S.**

Here, Plaintiff asserts factual allegations that "articulate a violation" and contain factual allegations that, "if proven, would result in discipline of the attorney."

The specific facts detailed here proven would "more probably than not" warrant formal attorney discipline.

Plaintiff understands that in order to warrant further investigation a complaint must contain factual allegations that "articulate a violation", or factual allegations that, "if proven, would result in discipline of the attorney." Your complaint must contain an articulation of facts specific enough to allow the finder of fact to conclude that if the facts are proven, discipline is warranted.

1.  The State Bar, from 2015 to present, has willfully allowed the People's College of Law (PCL), to recruit and matriculate students without regard to PCL's duties of student qualification, statute related to student consumer protection, nor State Bar published Rules and mandatory guidelines.

    a.  PCL during this timeframe suffered FYSLX failure rates as high as 100%; similarly, it at times during this period went years without producing a graduate capable of passing the Bar Exam.

    b.  Students in some cases did not meet technical matriculation requirements, like the 60-unit collegiate minimum for lawful entry into a legal program in the State of California.

    c.  PCL submitted numerous transcripts in 2015 to present., likely in the low hundreds, for students it recruited to take the FYLSX for a fee paid to the State Bar for administration of the test.

    d.  Defendants State Bar and PCL knew or should have known and had sufficient evidence in their position to surmise that student recruitment and retention were not in comportment with the duty owed; and,

    e.  that a school with similar failure rates would likely fail as a matter of course in the active market.

2.  The State Bar, from 2015 to present, allowed PCL to award 2/3rd of the statutory amount required to be given to students for 30 hours of lecture over a 10-week quarter period, i.e., 2 units were awarded for every 3 earned by the student.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

3. State Bar policy as enacted exceeds the statutory authority of the Bar.

    a. Plaintiff alleges that it is a per se violation of the Sherman Act, in that it violates Federal Statute and the consequence to the student consumer is that transfer to another institution will at the very least delay their graduation from a different institution that complies with the law and academic standards.

    b. State Bar policy prevents an accepting institution to change the grades or units awarded in any fashion greater than correcting for differences in semester and quarter hours conversions.

       i. Here, PCL in its operation of Enterprise P, awarded less units than Federal Statute allows for uniformity.

       ii. Addressing Historic Defenses Under Federal Law

          1. PCL and the State Bar will likely argue that  because they did not accept Federal Aid or operate a program that was eligible for

Federal Aid during Plaintiff's attendance the law was not applicable to them.

2. State Bar will likely claim immunity pursuant to the State Action doctrine and the 80-year old ruling of the U.S. Supreme Court that California Supreme Court's Rules Regulating the Practice of Law are Entitled to Antitrust Immunity.

Unfortunately for the Defendants, the above arguments are not on point because the Legislature has defined the State Bar as a corporation, capable of raising or defending against cause. The State Bar

The U.S. Supreme Court has explained that the State Action doctrine immunizes from antitrust liability enactments of a state supreme court acting in its legislative capacity to regulate the practice of law. In Parker v. Brown (1943) 317 U.S. 341, the U.S. Supreme Court held that state authorities are immune from federal antitrust liability for actions taken pursuant to a clearly expressed state policy. Id. at 351 ["We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature."]. Although Parker v. Brown analyzed a legislative action, the U.S. Supreme Court later held that State Action immunity applies to policies enacted by a state supreme court acting in its legislative capacity to regulate the practice of law.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Likely a question to be answered by the trier-of-fact is whether the conduct of the Defendants comported not only to clearly expressed state policy.

3. The Interstate Commerce Act of 1887 clearly provides the right of Congress to regulate private corporations engaged in interstate commerce.

   a. PCL is a California not-for-profit corporation organized under California Law;

   b. The State Bar is a legislated constructive corporation, a not for profit entity, that can "sue or be sued";

As both PCL and the State Bar are corporations for the purposes of Federal and State Law, both are obliged to follow applicable statute.

There is nothing "exempting" or actionable as defense for either organization's mandatory compliance failures.

**STATE BAR PROXIMATE AND ACTUAL CAUSE OF SUSTAINED INJURY**

STATE BAR and operators of <u>Enterprise S</u> is the actual, proximate, substantial factor and prime mover of Plaintiff's constitutional injuries.

Because PCL was not only a market participant, but a KNOWN non-compliant market participant (see

But for the failure of the regulator in the sphere, the California State Bar through negligence, inchoate participation, and demonstrable active facilitation in cohort and furtherance of unlawful and unfair enterprise, the Plaintiff would not have suffered injury.

Here PCL will claim that its lack of participation in the Federal Financial Aid markets "expressly" preempts its need to comport its conduct to the aforementioned law.

Plaintiff responds that a question present in this circumstance that was not addressed in Parker v. Brown, that is:

4. Plaintiff counters that the fact that the program did not currently seek to participate in the aid programs does not allow it to shirk established Federal Law created, in part, to prevent the known issue

c. State Bar policy also prevents the repeat of courses for credit.

d. This combination of business practices allowed the school to recruit students to attend remotely from at least Arizona; these students would find similar issues to those in California, as legal academia has essentially standardized the unit granting approach.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

e. The conduct above satisfies the definition of per se interstate commerce.

Therefore it is clear that PCL, and through inchoate and other culpable acts of its agents under "color of law" in their capacity as the sole monopoly regulators for law schools operating in the State of California.

4. With the foreseeable consequence that the State Bar and PCL knew and clearly intended the reduction, a negative incentive for consumers (law students) in the marketplace, and scheme of Enterprise P to continue.

   a. Here , the State Bar may claim negligence, or failure to adequately review or follow procedure. These "negligent" failures would still be violative of the APA and a variety of other laws and the State Bar would not be able to state any coherent policy related to how these wanton violations meet an express state policy objective.

.

5. The Law School Student Transfer Marketplace is active interstate commerce, specially monitored through ABA 509 reporting.

6. Plaintiff has reason to believe that the State Bar, in another apparent grant of special monopoly exemption to PCL, has allowed PCL to engage in interstate commerce with

the full knowledge of both the institutions long standing  issues as well as the State Bar Rule that Unaccredited Fixed Facility Schools intending to enter into interstate commerce must apply for and give notification of a major change,

Plaintiff asserts that this conduct results in per se illegal consequences because:

    a.  It functions as the grant, or attempted grant, of a monopoly power, for any enterprise that is allowed by its "vertical" monopoly regulator and market participant to shirk laws that are directly related to the lawful operations of the entity would more probably than not have a tendency to favor the market participant who is not held accountable.

    b.  This further appears as a likely per se violation and naked restraint of trade, as the California Legislature enacted the State Bar Act of 1927 with the express intent of protection of the public, no matter the COI.

        i.  There is no rational argument that supports per se unlawful conduct or wanton lawbreaking by the regulated entity as pro-competitive conduct, since the conduct since the conduct allows the regulated to anticipate non-interference and thereby ignore the regulator and its express rules.

ii.  There is **no tenable or reasonable argument supporting a regulator**, here the vertical monopoly marketplace participant and regulatory rules maker and enforcement agency in the sphere to ignore the conduct **because** any such argument relies on the counterfactual that it is somehow in the interest of the Sovereign State of California or its citizens to:

a.  Allow its Legislated institutions to decide their own purpose, no matter the original intent of the body responsible for its creation or the plain language reading of the instantiating statute; and,

b.  Allow the entities the Legislature sought to protect the public from to remain uncontrolled and unaccountable, able to bend or break the law at will without fear of reprisal, protected by the "long shadow" of the State Bar.

Here, in the case of the Plaintiff, the State Bar has not only failed in its duties, it allows PCL to continue in its unlawful conduct, now under formal probation, without any evidence they ever intend to actually stop or rectify the circumstance, as the law and duty requires.

Here, not only can the Plaintiff not transfer without facing unfair and undue consequence because he has no reasonable path to obtain the degree he and his family have sacrificed and suffered egregious conduct to earn.

Is interference, disincentivizing or prevention of law student transfer "per se illegal" as a naked restraint of trade under the Sherman Act?

Preventing students for transfer is likely per se illegal and a naked restraint of trade under The Sherman Act.

In addition, Plaintiff has completed all mandatory substantive coursework and has sufficient unit/credit hours to meet all of the requirements; he simply has earned them earlier than the State Bar Act allows.

In addition, student has already completed the required course of study without violation of State Bar rule. Although PCL was fixed facility and required to offer the courses in four (4) years, the State Bar was award the school was not in compliance and, with knowledge, allowed the school to use the emergence COVID-19 distance learning approach under exemption.

iii. Evidence of a consistent pattern and practice exists, with no fewer than 50 and likely 100's of transcripts, issued by PCL and ratified (deemed compliant and accurate for the purposes of taking the First Year Law Student Exam, already in the hands of the State Bar Officers, Directors, and Agents.

iv. Plaintiff learned after he passed the FYLSX that he had been awarded two (2) units instead of the required three (3), contrary to both California statute and State Bar guidelines that require and render synonymous a quarter unit, defined as one unit for every 10 hours of lecture over the course of a quarter, which is the current time used by PCL.

v. The Bar charges each student a "registration fee" where they MUST register with the regulator as students. PCL recruited students that were not qualified to enter law school and had them pay fees under color of law or quasi-legislative rule.

vi. When grading issues were brought to the attention to the office of Admissions, State personnel failed to respond timely or communicate

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

with PCL in material form, also under the auspices of "color of law",
with further conduct that failed to address the issues.

1. Conflicted Defendants in the employ or service of the State Bar
   failed to appropriately recuse themselves, opting to conduct in
   concerted fashion conduct in egregious  "frustrate, intimidate, or
   demur" the plaintiff.

2. State Bar failed to act or comport its conduct or issue guidance to
   the institution in writing.

3. State Bar has also allowed the University of California, organized
   as a Constitutional Department responsible for the Trust, to set
   and enforce exclusionary policy in its regulatory sphere to the
   detriment of the States Citizens under the color of law.[27]

   a. Exclusionary rules facially conflict with common
      interpretation of law and public right of access (See
      Williams v. Wheeler: "Any resident of California, of the
      age of 14 years or upwards, of approved moral character,
      shall have the right to enter himself in the university as a

---

[27] In By the constitution of 1879 the University of California was raised to the dignity of a constitutional department or function of the state government, by the provisions of section 9 of article IX thereof, which read as follows:

"Sec. 9. The University of California shall constitute a public trust, and its organization and government shall be perpetually continued in the form and character prescribed  by the Organic Act creating the same passed March twenty-third 1868 (and the several acts amendatory thereof), subject only to such legislative control as may be necessary to insure compliance with the terms of its endowments and the proper investment and security of its funds."

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

student at large . . . on such terms as the board of regents

may prescribe." Williams v. Wheeler, 23 Cal.App. 619,

622 (Cal. Ct. App. 1913)

    b.  Placement under limited regulatory authority and

oversight because it is not required to seek funds from the

Legislature.

   vii.  PCL began harassing the plaintiff, engaged in interfering and obstructive

conduct designed to "render moot" the issues by depriving client the

opportunity to graduate.

    a.  Plaintiff asserts and presents evidence to support that

these acts were retributive and intended to "deprive

plaintiff the minimum "benefit of the bargain";

7. The State Bar and PCL's conduct likely lacks pro-competitive benefit sufficient for

justification.

State Bar will likely argue that its "patient and benevolent" forbearance with PCL and other

Defendants was based on its struggling mission to increase "diversity in and access to the

profession" from the underrepresented and underserved.

a.  Here Plaintiff argues the State Bar and PCL have engaged in per se illegal conduct with no legitimate pro-competitive justifications, because the benefit of the proper bargain to the student consumer, i.e., the lawful and timely award of units and good faith performance of the contract was breach by the school, ultimately supported by the monopoly regulator and market participant the State Bar;

b.  Plaintiff further argues that the expectation of support by PCL and <u>Enterprise P</u> operators as well as the STATE BAR's and <u>Enterprise S</u> operators admitted abrogation of their regulatory responsibilities a substantial factor in this students injury.

Defense 2: Joint venture to save money is a net public benefit.

Under the law, joint enterprise designed to and achieving maximum public benefit and enjoyment of the free marketplace is not conduct to be sanctioned, derided, or criminalized.

A "perfect monopoly", one that makes and distributes the widget for the lowest price a viable and sustainable market can bear IF there were other viable and truly independent producers would likely be completely legal, given no other special government or public interest to influence enforcement.

The State Bar and PCL may argue that they were, in fact, engaged in a "joint venture" and had not violated "Antitrust Laws. They will argue, amongst other equally untenable propositions that:

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

c.  The joint venture did not involve any beneficial integration of operations that would save money or benefit the public. The joint venture mainly operated to collect funds from students,  for unknown expenditures of the racketeering in the form of tuition for Enterprise P and various testing and vetting services for Enterprise S..

d.  Here Plaintiff asserts upon reasonable belief and evidentiary support that the State Bar and its staff engaged in an effort to assist the private non-profit PCL retain those students it recruited that were capable of passing the First Year Law Student's Exam, and in fact did pass, from transferring, since it was also "more likely than not" that these students would be able to pass the State Bar exam for admission and professional licensure.

e.  Here Plaintiff asserts on reasonable belief and evidence that disincentivizing and preventing transfer allowed for three unjust benefits to the State of California and a multitude of far reaching

f.  In addition, when Bar offered alternative approach, where Barbri proctored attendance could be under school administration counted for the 270 hour "time in seat" requirement in September of 2022, Plaintiff reached out to Deborah Wasserman at Barbri and with their assistance coordinated a full schedule and

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

study plan which Plaintiff also paid at discounted rate due to his representation of Barbri at the school at the commencement of his 1L year.[28]

Defense 3: Policy implementation and enforcement selections are designed to maximize public benefit by deferring the high costs of public postsecondary education to those specific California citizens seeking education in the area and maintaining student access to Federal and State financial Aid programs.

1. **State Bar will likely be unable to demonstrate timely, thorough, and appropriate administrative review or other requirement necessary for due process and lawful application or enforcement. Consequently, evidence of the conduct and justification is the same as admission of misconduct and will not serve as a viable defense.**

**The California Administrative Procedure Act ("CAPA")**

"CAPA" Title 2, Division 3, Part 1, Chapters 3.5, 4, 4.5 and 5 of the Government Code of California ("GCC")

The California Administrative Procedure Act ("CAPA") is the law governing procedures for state administrative agencies to propose and issue regulations and provides for judicial review of agency adjudications and other final decisions in California.

g. Plaintiff asserts that student transfer in the academic marketplace is one of the main approaches used by student consumers to locate the best available

---

[28] As recently as February 10, 2023 Plaintiff has asked for administrative support in an effort to mitigate damages. No response has been provided for the reason to renege.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

resources for their circumstances. To interfere with the timing of a student's right to "transfer" to any institution that would be a restraint of trade in the "micro" and is easily foreseeable as having a tendency to restrain trade in the aggregate (macro) as well.

8.  The State Bar has acted with malice to oppress and deny Plaintiff remedy and support without substantive the individual Defendants negligence and malfeasance.

The State Bar Act establishes as the California State Bar as a corporation that serves as the sole designated monopoly regulator in the sphere of attorney discipline and law school regulation.

The California State Bar inchoate violations include:

1.  Failure of the Office of General Counsel to recuse  itself, as required by Judiciary Rule for Antitrust determinations where reasonable.

2.  Failure from all members, directors, officers, agents of both the State Bar and PCL to respect legally binding "Demands of Preservation of Evidence" documents, although the legal basis was provided and the duty attached  to take the appropriate steps necessary upon receipt and likely prior.

3.  Incorporated by reference, EXHIBITS. :

The State Bar of California Request for Antitrust Determination THILL092622

EXHIBIT A-1 Summary Timeline.pdf

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**Moral Turpitude Of Defendants In Fraudulent Conveyance**

Courts in other jurisdictions have similarly concluded that lawyers can violate disciplinary rules by facilitating fraudulent conveyances or fraudulently conveying property themselves. See, e.g., *In re* Morris, No. 11–O–13518, 2013 WL 6598701, at *1 (Cal.Bar Ct. Dec. 4, 2013) (unpublished opinion) (finding lawyer violated rule prohibiting moral turpitude, dishonesty, and corruption by assisting a client in creating promissory notes and recording deeds of trust to delay a creditor's collection of its judgment);

Here, in concerted effort

A. 03/14/22 – <u>Enterprise P</u> operators BOUFFARD  and  HCP issue an email to the Plaintiff demanding immediate payment of tuition or student will be blocked from further participation in classes. Defendants owed money to the Plaintiff at time the demand was made and they had constructive and express knowledge of that fact.

  a. constructive because they knew they had breached contract, duty, and law by failing to disclose and misrepresenting their pre-planned and actual unlawful unit award.

B.  time which Defendants have failed to disgorge pursuant to State Bar Rules (discussed in greater detail in the section of this pleading requesting remedies).

  a. Extortion

  b. Conversion

**Use or Investment of Proceeds from racketeering enterprise.**

Here, Defendants and operators of both Enterprise S & Enterprise P will need to detail the expenses and the use of funds for student fees.

As discussed earlier, PCL has ignored each and every valid demand for documents or evidence preservation

**Use of proceeds as evidence of conduct mitigators.**

Here, it is PCL's Directors, Officers, and Administrators as well as the Enterprise P operators lack of use of proceeds to improve student outcomes which Plaintiff has personal experience and evidence to support as he was and remains the lawful Secretary of the Corporation.

**Argument for assignment of criminal culpability public official misconduct.**

Those entrusted to act on behalf of the public by sovereign agencies as employees or appointees undertake the highest conduct and duty standards:

The duties of public office demand the absolute loyalty and undivided, uncompromised allegiance of the individual that holds the office. ( Thomson v. Call, supra,38 Cal.3d at p. 648; Stigall v. City of Taft (1962) 58 Cal.2d 565, 569 [ 25 Cal.Rptr. 441, 375 P.2d 289].) Yet it is recognized "'that an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government.'" ( Stigall v. City of Taft, supra,58 Cal.2d at p. 570, quoting United States v. Mississippi Valley Generating Co. (1961) 364 U.S. 520, 549-550 [5 L.Ed.2d 268, 288, 81 S.Ct. 294].) People v. Honig, 48 Cal.App.4th 289, 314 (Cal. Ct. App. 1996)

"In enacting the conflict-of-interest provisions the Legislature was not concerned with the technical terms and rules applicable to the making of contracts, but instead sought to establish rules governing the conduct of governmental officials. ( Stigall v. City of Taft, supra, 58 Cal.2d at p. 569.) Accordingly, those provisions cannot be given a narrow and technical interpretation that would limit their scope and defeat the legislative purpose.") People v. Honig, 48 Cal.App.4th 289, 314 (Cal. Ct. App. 1996)

**Requests for Declaratory Relief or Finding of Fact**

**Are Defendants and operators of  Enterprise P and/or PCL culpable for operating a RICO-qualifying Enterprise?**

Given the factual circumstances described earlier and the corresponding evidence, Plaintiff asserts that it is more probable than not the Defendants are engaged in multiple RICO-qualifying enterprises.

**Are there Individual Defendants of PCL culpable for the conduct of Enterprise S?**

Plaintiff earlier and throughout this document has discussed conspiracy and inchoate operation of horizontal and vertical market participants in unfair and unlawful conduct that has foreseeable injurious consequence to the public and was in fact responsible for Plaintiff's previous and ongoing injuries.

Thus Plaintiff ascribes culpability to all parties through permissive affirmative or omissive acts, where each and every party at varying times had constructive knowledge of the issues and failed to act in a manner consistent with halting the violative conduct or stopping the continuance of the presently tolling injury to the Plaintiff.

This requires showing of a "duty owed" to the Plaintiff.

**Did Defendants owe a duty of "protection" or "intervention" to Plaintiff?**

Here, since time immemorial, failure to act, when there is a known duty to act and the dutybound has the capacity to act, but fails to do so, is a culpable act.

,

Are there any Individual Defendants of State Bar culpable for the conduct of Enterprise P?

**Does Estoppel Lie for the State Bars Anticompetitive or other violative conduct**

Generally, "[e]stoppel will not ordinarily lie against a governmental agency if the result will be the frustration of a strong public policy. (See City of Long Beach v. Mansell (1970) 3 Cal.3d 462, 493 [ 91 Cal.Rptr. 23, 476 P.2d 423]; County of San Diego v. Cal. Water etc. Co. (1947) 30 Cal.2d 817, 829-830 [ 186 P.2d 124, 175 A.L.R. 747]; Pettitt v. City of Fresno (1973) 34 Cal.App.3d 813, 819 [ 110 Cal.Rptr. 262].)

**Plaintiff Petitions for Award of Juris Doctorate Degree**

<u>Plaintiff likely unfairly prejudiced in his pro se representation efforts by not having taken the Bar.</u>

Given the inability to obtain or afford separate counsel or sit for the Bar Exam (offered only twice this year, February 24th 2023 and  places Plaintiff at further disadvantage as the number and nature of defendants and the resources of the Sovereign, this "David v. Goliath" bout makes the original look fair.

Based on the facts presented, the circumstances related to the Plaintiff's ability to secure legal counsel due to both the nature of the issues and the parties, as well as the axiomatic and irrefutable record of the gross negligence, reckless disregard, and contempt for the law is systemic at the head of the organization, as it is here there is consistent and flagrant failure to construct policies mandated by the legislature or ordered by the Judiciary.

<u>Plaintiff has performed.</u>

Here, Plaintiff has clearly completed the requisite work and the totality of the institutions required and offered coursework. PCL has facially breached its statutory and contractual obligations in failing to <u>provide</u> HILL's Juris Doctorate

Here, Plaintiff asserts that he has, in fact, completed a requisite course of study as a full time student at PCL while suffering the insipid and reprehensible harms inflicted by the Defendants STATE BAR and its Enterprise Operators.

Plaintiff asserts Strong and Express Public Policies are Frustrated and Subverted by this conduct and asks for determination of facts:

2. The first Mandate, i.e., The State Bar Acts mandate of "Protection of the Public, no matter the COI". Here, State Bar's conduct appears to the lay person contrary to its statutory mandate and Plaintiff reiterates request for declaratory determination from this Court.

3. The Supreme Court and the State Bar do not share the same structure or legislative imperative, Plaintiff argues and requests declaratory determination if STATE BAR's current construct is inappropriate for "shared"

operations or interests; the State interest in a non-conflicted judiciary is likely a paramount interest of any entity with an interest in the rule of law; was the divestiture of it's former "trade and membership association" duties sufficient to allow for it to now, in fact, "police itself" and restore faith in its function?

4. In none of the cases relied on by petitioner for the proposition that estoppel will lie against a public agency was the frustration of a strong public policy placed in issue. (See CanfiHOLTON v. Prod (1977) 67 Cal.App.3d 722 [ 137 Cal.Rptr. 27]; Hartway v. State Board of Control (1976) 69 Cal.App.3d 502 [ 137 Cal.Rptr. 199]; Advance Medical Diagnostic  Laboratories v. County of Los Angeles (1976) 58 Cal.App.3d 263 [ 129 Cal.Rptr. 723].) **Here, given what appears to be a novel circumstance, Plaintiff asks for special consideration and a specific statement of determination as to the facts.**

**Plaintiff desires to fulfill voluntary service and restore PCL to lawful and compliant operation.**

Plaintiff Hill asserts in good faith and candor that he is the only officer of the Corporation who has not failed in comporting conduct to duty and law, subject to the determination of the finder of fact.

**Are Defendants and operators of  Enterprise S and/or the State Bar culpable for operating a RICO-qualifying Enterprise?**

Here, Plaintiff asks for a declaratory determination as a matter of fact and law.

**Are Enterprise S and P culpable for retaliatory acts under labor law?**

Here, Plaintiff asks for a declaratory determination as a matter of fact and law.

**Are Enterprise S and P culpable for predicate and overt unlawful conduct?**

Here, Plaintiff asks for a declaratory determination as a matter of fact and law.

**Are Enterprise S and P culpable for interoperating separate and symbiotic RICO schemes?**

Here, Plaintiff asks for a declaratory determination as a matter of fact and law.

**Are Enterprise S and P culpable for interoperating separate and symbiotic RICO schemes.**

Here, Plaintiff asks for a declaratory determination as a matter of fact and law.

**Request for Declaratory Relief & Finding of Fact**

Are  Defendants here demonstrated to be "willfully blind" or otherwise culpable due to special relationship doctrine?

Here, Plaintiff asks for a declaratory determination as a matter of fact and law.


**Did People's College of Law or the State Bar have a duty to act?**


Here, Plaintiff asks for a declaratory determination as a matter of fact and law.

## Did Defendants PCL and State Bar have affirmative duty to protect?

The Defendants will likely argue that PCL as a private entity is not capable of violating ones

federal or state constitutional rights, as the California


Failure to enforce a state law, standing alone, is not a federal constitutional violation. "The

Constitution generally does not require the state to 'protect the life, liberty, and property of its

citizens against invasion by private actors.' [Citation.] Consequently, the state's failure to protect an

individual from 'harms inflicted by persons not acting under color of law' will not ordinarily give

rise to § 1983 liability. [Citation.]" (Shanks v. Dressel (9th Cir. 2008) 540 F.3d 1082, 1087, fn.

omitted; see generally Castle Rock v. Gonzales (2005) 545 U.S. 748 [police failure to enforce

protective order did not violate due process]; DeShaney v. Winnebago County Dept. of Social

Services (1989) 489 U.S. 189 [failure to protect child from parent after abuse reports did not

violate due process].)


Prado v. County of Riverside, No. E058796, at *10 (Cal. Ct. App. Nov. 17, 2014)


**Plaintiff pleads IIED but is unclear on the conduct standard to be applied as threshold**
**for egregiousness for purposes of liability assignment and damages mitigator.**

In California, a plaintiff prevailing on a claim of intentional infliction of emotional distress must

establish: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009) (quotations omitted).

Austen v. Cnty. of L.A., No. 15-07372 DDP (FFMx), at *30 (C.D. Cal. Jan. 19, 2018)

Was the conduct willfully and sufficiently outrageous?

Did the conduct satisfy the requirements for a constitutional violation?

Plaintiff HILL answers in the affirmative that the Defendants conduct in violation of the Bane Act also rose to the level of a constitutional rights deprivation in arbitrary retaliation.

**Are  Enterprise S and P culpable for conspiracy?**

Conspiracy is defined as an agreement between a group to perform an unlawful act, where the group is at least one person more than would be required to commit the wrongful act.

Here, through clear and compelling evidence including various exhibits, tables, correspondence including email communications and video, HILL believes he has shown more likely than not the parties were in cahoots in pursuit of unlawful ventures.

**Are Enterprise S and P culpable for conversion?**

Plaintiff alleges PCL and operators of Enterprise P of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.

Plaintiff asserts that this conduct was facilitated under color of law and right by the STATE BAR and operators of Enterprise S in open conspiracy and inchoate fashion.

As Plaintiff has prior demonstrated the likelihood of conspiracy, through pleading, exhibits, and electronic communications both affirmative and inchoate actors in a scheme bear joint and several liability under tort for the reasonably foreseeable consequences of their actions.

Unfortunately for the Defendants, "bad luck" encounters with an "eggshell", i.e., special needs or circumstance victims that result in extraordinary damage to those individuals, are not excluded from recovery.

**Principals, Directors, Officers & Members committed culpable acts against the public interest that shock the conscience.**

Instead of simply correcting an error that could have possibly arisen from mere negligence, the STATE BAR sought to defend itself by frustrating and rendering futile the Plaintiff's efforts to seek relief, "doubling-down on the wrong" in the defense of their respective interoperation of an Enterprise venture or as capricious and arbitrary bullying, harassment, and oppression of their student charge and organizational director.

**Disinformation and defamation are tactics used by both enterprises.**

Defamation is the publication of information constructively or expressly known to be false and likely detrimental to the reputation or social standing of the subject. Verbal expression

is generally slander; if the false statements relate to a person's professional reputation it is slander per se. Written expressions are libel.

Media type can also be the source of distinction; non-recorded media, it generally is defined as defamation slander defamation by slander the use of verbal language in the recorded and Republican format.

The facts here lay out a clear pattern and practice where both operating Enterprises S & P both engaged in unlawful activity and sought to assist each other in a strategic and organized attempt to  "quash" and silence Plaintiff, robbing him of remedy.

**Harassment increased in intensity**.

Plaintiff sent inquiry related to process requirements for change of units including noticing status as Secretary of the Corporation and the inquiry was formal.

PLAINTIFF RECEIVES A RESPONSE FROM THE STATE BAR AUTHORED BY LEONARD, including in cc:  SPIRO and CMG, indicating that his request for information would not be processed after a telephone conversation and a follow-up email exchange with GONZALEZ.

**LEONARD's conflict of interest required her recusal**

The State Bar first adopted an internal Conflict of Interest policy in 2019.

**SPIRO's conflict of interest required his recusal**

Recently, the bar has developed and adopted a strategy for matters where it cannot appropriately offer reasonable defenses to allow the case to proceed through the courts receiving final judgment and adjudication, and then having the case dismissed on Eleventh Amendment grounds. No such maneuver should be allowed here.

After the case has been decided, and the plaintiff has been awarded damages, generally speaking in money, damage is remedying the bar, then uses the appeals process to attack the entire action. As specifically they need to pay money judgment based on 11th amendment sovereignty doctrine.

Here, plaintiff asserts the case is fundamentally different That unlike most other organizations, the California State Bar has its first mandate expressed as a "plain language" imperative; that is, Protection of the public highest priority. No matter the conflict of interest pursuant to section 6001.1 of the State bar act of 1927

001. Legislature has already waived, or is simply not applicable as a matter of law, Eleventh Amendment privilege in these matters congruent with the State Bar Act if the conduct meets the It's additional imperatives and mandates, as well as the rules and regulations in a bit adopted in quasi-legislative fashion by the sole monopoly regulator in a sphere of law school administration in the state of California next line

002. State bar has over the course of more than a decade attempted to obfuscate and abrogate its duties in ultra vires fashion hear the state bar committees, delegates directors officers, and Asians, systematically implemented policy sets that upon any reasonable or rational basis, likely fail to serve any positive or market pro-competitive issue.

**Plaintiff  Requests That the Court Grant Compensatory Damages.**

Damages are the adjudicated measure of the plaintiff's injury generally awarded as currency.

a.     Compensatory damages

"A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations."  Borunda v.  Richmond, 885 F.2d 1384, 1389 (9th Cir. 1988); see also Smith v. Wade, 461 U.S. 30, 52 (1983) ("Compensatory damages … are mandatory."). The Supreme Court has held that "no compensatory damages [may] be awarded for violation of [a constitutional] right absent proof of actual injury."  Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986).

The Supreme Court has held that entitlement to compensatory damages in a civil rights action is not a matter of discretion:

**Plaintiff Asks The Inclusion Of $750,000 To Be Put In Trust For The Same Purpose As The Original Purpose Of The Guild School Of Law.**

Plaintiff asks that a constructive trust be put in place as an equitable remedy to preserve the integrity of the organization and to allow it to recover from the unlawful conduct of enterprise operators.

**Defendants Acts Egregious and Calculated And Causing Emotional Distress**

Words are not sufficient to show cause for a claim of intentional infliction of emotional distress

**Plaintiff asks for punitive damages.**

UNDER ITS FINDINGS IN THE AMOUNT OF $2.95 MILLION DOLLARS TO BE PUT IN TRUST FOR THE SAME PURPOSE AS THE ORIGINAL PURPOSE OF THE GUILD SCHOOL OF LAW.

The acts committed by the Defendants are alarming and meet the criteria for reprehensibility.

Defendants have admitted plans to "sell the building", the school's largest asset, for $3.2 Million Dollars (per PCL representatives during recorded State Bar Examiners Meeting that occurred December 2, 2022. This provides those who have operated in bad faith to benefit financially from their conduct, even if it is in an effort to obtain counsel for further unlawful and frivolous obstruction. (See EXHIBIT

Defendants should not profit nor hold positions of responsibility in the PCL institution and legal education service provision efforts.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

The conduct, performed for profit by Enterprise P under the guise of nonprofit PCL corporation has been ongoing for years; the innumerable breaches of fiduciary and civil duties co-requisite with the tortious acts enumerated here cannot be adequately expressed in the few pages offered by this pleader.

The conduct was performed with the scienter of the parties, as is shown in the many email communications between Plaintiff and Defendants which show actual knowledge and preemptive lack of excuse.

In some cases, you will see that PCL's last known counsel and Dean Emeritus was so certain of the Support of the State Bar, he seemingly WAIVED privilege in the matter in writing.

But it is well established as a matter of professional responsibility and the law; attorney-client privilege does not attach for unlawful schemes performed in concert with counsel for that counsel's benefit, whatever that benefit may be.

 Conduct is malicious if it coincides with ill will, or spite, or if it is for injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.

An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or

abusing authority or power or by exploiting some weakness or disability or misfortune of the plaintiff.

Plaintiff contends the likely criminal activities of the bad actors [a Los Angeles County Sheriff's Detective, Mr. Fletcher, under California Penal Code 932 found probable cause and issued a search warrant; here, where the standard is constructive and the conduct performed by sophisticated actors willfully and continuously with malice….attorneys, those with Juris Doctorates, and students in a legal program designed to confer a Juris Doctorate, licensees are Members of the Bar and not members of the public per of the State Bar Act].

California Penal Code 1528 — Issuance; magistrate satisfied as to grounds; formalities; command; duplicate original warrant. ("(a) If the magistrate is thereupon satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he or she must issue a search warrant, signed by him or her with his or her name of office, to a peace officer in his or her county, commanding him or her forthwith to search the person or place named for the property or things or person or persons specified, and to retain the property or things in his or her custody subject to order of the court as provided by [California Penal Code] Section 1536."

Generally, where one would ordinarily expect to pay for the performance of a job but then the beneficiary of the bargain reneges, or at least "assumed it was out of the kindness of one's heart and cites recent financial woes." In this case, the work performed was garnered under "false pretenses, misrepresentation, and fraud."

The solution proposed here is not only within the mandate and authority of the court, it is all the more appealing because a "de novo" trust and trustee(s) as a "check and balance" for

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Corporate compliance and responsibility without placing "undue burden" on the Court nor the need for long term oversight.

A critical path to this approach is to prevent manifest injustice, cloaked in "the false flag" of social advocacy, from ever recurring at the school while maximizing the support of the wonderful teachers, universally volunteer or solely receiving continuing education credits, and students.

**PLAINTIFF ASKS FOR CONSEQUENTIAL DAMAGES**

SUMMARY OF CLAIMS

The issues before the Bar include, but may not be limited to and thus plaintiff prays for patience to amend if found lacking:

WRIT OF MANDAMUS FOR THE ENFORCEMENT OF THE FINAL AND FULLY QUALIFIED DEMAND FOR PRODUCTION OF DOCUMENTS; PEOPLES COLLEGE OF LAW NEEDS TO PROVIDE MR. TODD HILL WITH THE MINUTES OF THEIR BOARD MEETINGS, THE ZOOM RECORDINGS INITIATED BY FORMER PRESIDENT CHRISTINA GONZALEZ IN HER FORMAL CAPACITY, AND THE ACCOUNTING BOOKS FOR THE ORGANIZATION.

Under

Here Plaintiff has under color of state law, member the college's Community Board and Secretary of the Corporation, issued a Demand for the Production of Documents on October 18, 2021 with all later notices required proffered timely . Generally, ten days is considered

a reasonable time, unless some attempt is made to make alternative arrangements or assert privilege.

Here, neither a suggestion for alternative arrangements nor a claim of privilege nor excuse has been made in response to Plaintiff's request. To date I have received nothing resembling an appropriate response to this demand. No response has been tendered.

**REQUEST FOR RELIEF TO PREVENT FURTHER RETALIATION**

California Code of Civil Procedure ("CCP") §527 governs temporary restraining orders in California. Plaintiff is unaware of what members of Enterprise P or Enterprise S are communicating during PCL's probationary period. Plaintiff has presented evidence suggesting that SPIRO and LEONARD function as the primary nexus between the institutions, although emails from GONZALES to LEONARD and GONZALES to HILL on

Additionally, the rules for ex parte applications, including ex parte TROs, are set out in California Rule of Court ("CRC") 3.1150 and 3.1200–3.1207.

Plaintiff has shown good cause and met the appropriate burden for the issuance of an injunction to prevent the application of PCL Bylaws 16-16.6, PCL Student Handbook rules 1.1.13. & 1.1.14 or any internal processes that PCL may create, adopt, or engage in to subsequently eject, expel, or otherwise remove PLAINTIFF HILL from the institution as a student or PCL Board member.

Plaintiff asserts and presents clear evidence of unlawful ousting at the hands of Enterprise P. [EXHIBITS

PEOPLE'S COLLEGE OF LAW has set up a series of rules designed to punish or prevent Plaintiff from transfer or obtaining his degree.

Lack of timely regulatory intervention has left Plaintiff DEVOID of an educational institution or strategy to graduate.

'Todd Hill from the educational institution. On November 23, 2021,  Student Handbook Rule 1.1.13 & 1.1.14 was created ultra vires by the PEOPLE'S COLLEGE OF LAW Board to retaliate against Todd & prevent him from giving notice to the STATE BAR, the monopoly regulator in the field, about PCL's lack of compliance.

Plaintiff reasonably believes based on personal experience that additional community members, including POPP and GONZALEZ of the PEOPLE'S COLLEGE OF LAW community have attempted to use the internal grievance system, and all have failed to issue a proper response.

Many of these rules plaintiff asserts PEOPLE'S COLLEGE OF LAW, its administrators, agents, officers, and directors have broken in a relentless attempt to harass, discredit and malign him into acquiescence. The rules reference "proper PEOPLE'S COLLEGE OF LAW channels", sham language meant to imply to outsiders that the school is run in accord with California law, the Colleges own student policies and bylaws, or to what would normally be considered by statute "the minimal standards of a postsecondary school."

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

PLAINTIFF SEEKS CRIMINAL REFERRAL AND DIRECT REFERRAL TO STATE BAR FOR DISCIPLINARY ACTION WHERE COURT FINDS SUFFICIENT CAUSE TO DO SO

Plaintiff's, as well as THE PEOPLE'S COLLEGE OF LAW as an entity, rights were criminally violated when, during a contentious Board meeting conducted via Zoom, after multiple prior warnings and a duty to refrain from conduct that raises the specter of liability, without notice or vote, decided to record the meeting.

Plaintiff makes no definitive assertion of motive, although plaintiff believes it was in an attempt to "trigger" the plaintiff to capture him in a false light to discredit Todd and continue the tortious scheme.

Defendants HCP, CMG, SPIRO with the aid and assistance of other Defendants, attempted justified their unlawful conduct with an attempt to "confuse" other Community members by claiming that:

> (ii) Plaintiff "consented by staying on the call" because a "pop-up" announcement lets participants know that a participant has started a recording; that by staying on the call you agree to Zoom's "Terms of Service."

> (iii) Defendants erroneously claim here that a "pop-up" that references consent to the "Terms of Service", even a cursory review of which

reveals a clear clearly prohibition of the Defendants conduct, as viable affirmative defense.

    a. CMG, SPIRO, HCP, civil contract can absolve one of sovereign-imposed criminal culpability.

(iv) The use of defamatory statements and offensive rhetoric calculated to "inform" the Membership that Plaintiff was acting in bad-faith, greed, or that I had a plan to graduate early and thereby I entered the school in Bad-Faith.

(v) and indicating that Plaintiff's behavior justified the act.

(vi) Conspired to interfere with Plaintiff's business relationships, notably his election to the Board, his reputation and relationships amongst his peers, defamation and lies made to the State Bar and the State Superior Court.

For this conduct Defendants cannot offer non frivolous defense because criminal conduct in response to legal conduct is never justified.

**Criminal culpability is non-delegable under the law governing civil contract.**

The gist of the misinformation by SPIRO and CMG, experienced attorneys, and HCP, an individual with a J.D. relates to the separation between civil and criminal doctrine, or that civil contracts with third-parties cannot be used to delegate sovereign-assigned criminal culpability.

In an effort to defend the indefensible, not only did they misrepresent the facts to the Community but to the newly entering 1L cohort. Law school officers have a duty to obey the law and adequately communicate the law; to intentionally misrepresent the facts creates the real possibility that one of our students repeats similar behavior to others.

People's College of Law might argue that it is every individual's responsibility to know the law as circumstance may bring about the need for application and it is reasonably foreseeable that the law may have changed or that the information you received was incorrect.

People's College of Law acted irresponsibly, as did Christina, Ira, and Hector.

ARGUMENT FOR APPROPRIATENESS OF SUMMARY ADJUDICATION

**Plaintiff's required showings for Declaratory Relief.**

The grounds for a cause of action for declaratory relief are codified in Code of Civil Procedure § 1060, which provides in part as follows: Any person interested under a written instrument, . . . or under a contract, or who desires a declaration of his or her rights or duties of another, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court . . . for a declaration of his or her rights . . . He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights and duties, whether further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

effect, and the declaration shall have the force of a final judgment. Code of Civil Procedure § 1060 (emphasis added). Code of Civil Procedure § 1062 specifically provides that declaratory relief is a cumulative remedy, which does not restrict any other remedy to which the party may be entitled, nor preclude any additional relief based on the same facts. Code of Civil Procedure § 1062; see also Venice Town Council, Inc. v. City of Los Angeles, supra, 47 Cal.App.4th at 1565-66 (although cause of action for declaratory relief was potentially cumulative to other relief, allegations were sufficient to entitle plaintiffs to relief); Californians for Native Salmon and Steelhead Association v. Department of Forestry, supra, 221 Cal.App.3d at 1429 (declaratory relief is a cumulative remedy). There is essentially only one element to a declaratory relief cause of action – "the existence of an actual, present controversy over a proper subject." Californians for Native Salmon and Steelhead Association, supra, 221 Cal.App.3d at 1426, citing 5 Witkin, Cal. Procedure (3d ed. 1985), Pleading, §811.

The standard courts apply in determining whether declaratory relief is appropriate was summarized in Redwood Coast Watersheds Alliance v. State Board of Forestry & Fire Prot., 70 Cal.App.4th 962 (1999): The standard for the granting of declaratory relief is well established. '[T]he controversy must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, and not suggest, what the parties may or may not do.' Id. at 968, quoting Zetterberg v. State Dept. of Pub. Health, 43 Cal.App.3d 657, 661-662 (1974).

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

"Declaratory relief must be granted when the facts justifying that course are sufficiently alleged. Any doubt should be resolved in favor of granting declaratory relief." Venice Town Council, Inc., supra, 47 Cal.App.4th at 1565; Californians for Native Salmon, supra, 221 Cal.App.3d at 1427 (declaratory relief must be granted when the facts justifying relief are sufficiently alleged; "any doubt should be resolved in favor of granting declaratory relief").

Declaratory relief is an equitable remedy and is "'unusual in that it may be brought to determine and declare rights before any actual invasion of those rights has occurred.'" Californians for Native Salmon, 221 Cal.App.3d at 1426 (citations omitted).

It is well-established that "[a] controversy over an interpretation of a statute, and the duties that statute imposes, is a proper basis for a declaratory relief claim." Redwood Coast Watersheds Alliance, supra, 70 Cal.App.4th at 969. See also Venice Town Council, 47 Cal.App.4th at 1566 ("The proper interpretation of a statute is a particularly appropriate subject for judicial resolution."); Californians for Native Salmon, 221 Cal.App.3d at 1426 ("Declaratory relief is appropriate to obtain judicial clarification of the parties' rights and obligations under applicable law."). The interpretation of rights and duties under a contract is also a proper subject for declaratory relief. Code Civ. Proc. § 1060; S. California Edison Co. v. Superior Court, 37 Cal.App.4th 839, 846-47 (1995). **A declaratory relief cause of action may be properly resolved on a motion for summary adjudication.** S. California Edison Co. v. Superior Court, supra, 37 Cal.App.4th at 846. That the cause of action raises the same issues that are involved in other causes of action does not bar summary adjudication. Id., at 846-47. (***Emphasis added.***)

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**Plaintiff submits proof of contract and full performance in good faith.**

Plaintiff submits proof $16,800 was paid and credited, sufficient for the entire first 3 years of PLAINTIFF's attendance. [See EXHIBIT PMT 2 - PCL Presented Record All Transactions 031722.pdf]

The above amount does not reflect an additional $1800 for three (3) years of fraudulently obtained service hours, reneged payment in 2022 by PCL for a 2019 labor contract for $600 for brief employment, and nearly 200 hours spent in "volunteer service" for systems installations, including MS Teams Integration and training for all students and faculty apparently reversed in "bad faith" and an attempt to create justification and false defense for reprehensible conduct.

**Plaintiff is entitled to his degree under the *common law right of fair procedure*.[29]**

---

[29] This right has its origin in James v. Marinship Corp., supra, 25 Cal.2d 721, and was developed in what has come to be called the Marinship-Pinsker or Marinship-Pinsker-Ezekial-Potvin line of cases. The cases concern exclusion or expulsion from membership in a gatekeeper organization, such as a labor union, and hold that "the right to practice a lawful trade or profession is sufficiently `fundamental' to require substantial protection against arbitrary administrative interference, either by government [citations] or by a private entity [citation]." ( Ezekial v. Winkley (1977) 20 Cal.3d 267, 272 [ 142 Cal.Rptr. 418, 572 P.2d 32].) When the right applies, "the decisionmaking `must be both substantively rational and procedurally fair.'" ( Potvin v. Metropolitan Life Ins. Co. (2000) 22 Cal.4th 1060, 1066 [ 95 Cal.Rptr.2d 496, 997 P.2d 1153] ( Potvin).)

The Supreme Court has explained: "In Marinship, we held that a labor union, because of its ability to exclude all nonmembers from employment in a particular trade, assumed legal responsibilities beyond those which were applicable to other private organizations such as social clubs [and] concluded that the union's possession of this power entitled applicants for membership, under the common law, to judicial protection against arbitrary exclusion on the basis of race. [Citation.] Since Marinship, California courts, in a variety of circumstances, have recognized the effect which exclusion from member ship in a private organization exerts upon a person's right to pursue a particular profession or calling. Thus, subsequent California decisions have not only expanded judicial review of labor union membership policies [citations], but also have applied the Marinship principle to the admission practices of professional societies, membership in which is practical prerequisite to pursuit of a medical or dental specialty [citations], and to access by practicing physicians to staff privileges in private hospitals [citations]." ( Ezekial v. Winkley, supra, 20 Cal.3d at pp. 271-272.)

Yari v. Producers Guild of America, Inc., 161 Cal.App.4th 172, 176-77 (Cal. Ct. App. 2008)

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

This "right applies only to private decisions which can effectively deprive an individual of the ability to practice a trade or profession. ( Ezekial v. Winkley, supra, 20 Cal.3d at p. 273.)" Yari v. Producers Guild of America, Inc., 161 Cal.App.4th 172 (Cal. Ct. App. 2008)

Plaintiff has completed the requisite four (4) years of coursework in (3) years and PCL repudiated and breached the contract; furthermore in December 2022, STATE BAR placed PCL on probation, ostensibly subsuming PCL's duties and obligations under the direct mandate of the monopoly regulator in the field.

State Bar maintains that, under statute, Plaintiff must complete an additional 270 hours pursuant to the State Bar Acts Legislative mandate; no particular or additional coursework is required.

34 CFR § 668.8 under Title IV of the Higher Education Act defines the eligibility requirements for educational programs to participate in federal student aid programs. In order for a program to be considered eligible, it must be at least an equivalent of a one-year program of study and provide training for gainful employment in a recognized occupation.

However, the regulation in 34 CFR § 600.2 specifies the definition of credit hours and how they must be determined in order to meet the eligibility criteria set forth in 34 CFR § 668.8. The regulation requires that credit hours be determined based on the amount of time a student is expected to spend on coursework, including time spent in class and on course-related activities outside of class.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

If the student fees in question do not comply with the credit hour requirements outlined in 34 CFR § 600.2, they may be considered ultra vires, or outside the scope of authority, as they are not following the federal regulations governing the administration of student aid. This could result in the fees being deemed ineligible for federal student aid and potentially subjecting the educational institution to fines or other penalties.

Plaintiff asserts that both Defendants STATE BAR and operators of <u>Enterprise S</u> have constructive and express knowledge that this position is bankrupt BECAUSE:

1.  Plaintiff has previously asserted that the STATE BAR has not been able to demonstrate that it has complied with due process review requirements per the APA, CAPA, and the common law for any of its decisions in this matter.

    a.  Plaintiff asserts that CBPC §6001.1 heightens the applicable standard of care and HILL ask for consideration as mitigator militate in favor of grant of this and other equitable requests for remedy and relief.

    b.  Because STATE BAR's mandate is protection of the public as the Highest Priority regardless of the conflict of interest, it cannot tenably reconcile that mandate with deprivation of my degree based on a "lower priority" mandate of the same statute.

    c.  STATE BAR acts in continuous and tolling bad faith, has adopted a capricious "refusal to deal" posture supporting the arbitrary and complete abrogation of the duties owed to Plaintiff HILL specifically as an INDIVIDUAL, and has done so as an entity en masse at the

Executive and Board of Trustee levels in excess of two hundred 200 days;

d.   In the alternative, the STATE BAR has yet to demonstrate treatment of another student in same or similar circumstance, i.e., unfair unit award, unfair interference with transfer or attempts to mitigate damages, no assistance even after placement of PCL on probation, et cetera., when the matter mandate related to the school's required length of offering, suppression of complaints, and misrepresentations.

e.   Plaintiff has demonstrated using exhibits including STATE BAR issued documents and email showing prima facie of lack of compliance, e.g., shows the failure of due process as EXHIBIT AD - 3 Antitrust Determination_1.20.23 THILLSPEC.pdf - a true and exact copy of the digital file received from the Office of General Counsel's ("OGC")- **because** it demonstrates that the office of the OGC failed to follow its own conflict of interest protocols, which require the OGC to recuse itself in matters where it is expressly named.

f.   In addition, the response fails the "signature" test for accountability; issued initially by RANDOLPH as the Secretary for the Office, the actual document purportedly sent to the Supreme Court is <u>unsigned</u>.

g.   HERE ALSO ARISES VIOLATION OF CAL. GOV. CODE § 1090; not only did the OGC not voluntarily adopt a position of recusal,

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

neither did WILSON, DURAN, KRAMER, CARDONA, HOLTON, DAVYTYAN, CHEN, or any Enterprise S operator with privity to the facts. Licensees have a duty to avoid the perception of impropriety by not engaging in conduct that reeks of it.[30]

2.  No substantive review means the STATE BAR failed to provide due process.

    a.  As discussed earlier, the STATE BAR has been able to avoid intrusive oversight from the non-Judiciary.

    b.  Plaintiff asserts on reasonable belief and STATE BAR's own third-party report, pending clarification during discovery that STATE BAR staff

Because it has not performed such review considering the circumstances, a complete lack of wrongdoing by the HILL's

---

[30] The duties of public office demand the absolute loyalty and undivided, uncompromised allegiance of the individual that holds the office. ( *Thomson* v. *Call, supra,* 38 Cal.3d at p. 648; *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569 [ 25 Cal.Rptr. 441, 375 P.2d 289].) Yet it is recognized "'that an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government.'" ( *Stigall* v. *City of Taft, supra,* 58 Cal.2d at p. 570, quoting *United States* v. *Mississippi Valley Generating Co.* (1961) 364 U.S. 520, 549-550 [5 L.Ed.2d 268, 288, 81 S.Ct. 294].) Consequently, our conflict-of-interest statutes are concerned with what might have happened rather than merely what actually happened. ( *Ibid.*) They are aimed at eliminating temptation, avoiding the appearance of impropriety, and assuring the government of the officer's undivided and uncompromised allegiance. ( *Thomson* v. *Call, supra,* 38 Cal.3d at p. 648.) Their objective "is to remove or limit the *possibility* of any personal influence, either directly or indirectly which might bear on an official's decision. . . ." ( *Stigall* v. *City of Taft, supra,* 58 Cal.2d at p. 569, italics in original; see also *People* v. *Vallerga* (1977) 67 Cal.App.3d 847, 865 [ 136 Cal.Rptr. 429]; *People* v. *Watson* (1971) 15 Cal.App.3d 28, 39 [ 92 Cal.Rptr. 860].)

*People v. Honig*, 48 Cal.App.4th 289, 314 (Cal. Ct. App. 1996)

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

innocence and good faith in the matter, the integrity required to

pursue the cause, the misconduct of the parties, the COVID 19

operations exemptions that allowed fixed-facility to teach online.

3. conflates a Legislative rational basis application with mandate to the

Judicial Branch that cannot coherently adopt it because it violates the

Federal HEA, which specifically sets the standard for the credit hour.

**Justification for credit hour use as violative of the Takings Clause**

rule under statutory mandate that schools not Accredited by the State Bar or

The Defendants for reasons unknown seek to deprive the Plaintiff of his earned degree.

Defendants are in breach of contract and numerous duties.

PCL's probationary status leaves the State Bar the sole authority to empower PCL's ability to grant degrees.

Plaintiff requests issuance of a writ of mandamus compelling the award of the degree correlating to the date of student's last class taken at PCL in the Summer 2022.

**Did HCP, SPIRO, CMG, and the other members of the Board have a duty?**

Plaintiff asserts the defendants, whether employee or volunteer, were assigned similar duties of the fiduciary.

**All members had a duty to inquire pursuant to statute.**

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**Some members had a duty to inform.**

**Plaintiff has explained that consent was never granted, but if there remains a question it is for the "trier of fact" to resolve.**

Plaintiff argues that under current California statute, Plaintiff 's complaint satisfies all of the requirements for both criminal privacy violation and  the Court's requirement to grant movant the civil remedy(ies) made available to civil plaintiffs, in that, during a meeting of distinct and private membership to join the Board, without asking, Christina Gonzalez elected to record the Boards conversation, without authority or any express request for consent; when Plaintiff objected, he was bullied and unlawfully ejected from the call, a blatant interference with his duties and obligations, as well as exposing him to UNKNOWN liabilities.

**Clear and compelling evidence shows a strong pattern of bad-faith activities.**

Specific actors in this context include, but at this time it is unknown by the plaintiff if they are limited to:

1. HCP, speaking in meetings and conversations to defame the plaintiff, silence the plaintiff, extort and convert the plaintiff's time, directing others to engage in the same or supportive acts and secure labor and technical expertise via bad-faith and predatory business practices.

2. HCP participated in the unlawful ousting of Todd Hill from his duly elected and authorized position on the Board of Directors and Secretary of the Corporation, by libel and trick.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

3. Plaintiff has reasonable cause and evidentiary support to believe that PRS has used the control functions he has access to for Zoom to interrupt and interfere with his class attendance within a week of this pleading. During the Winter and Spring of 2021 and 2022, PRS actively engaged in bullying and harassing behavior.

4. SPIRO has worked in concert with CMG, HCP, CDP, GSBS to marginalize, suppress and silence those students with complaints or questions related to real issues and has apparently worked tacitly and overtly with NL in mutual support of the continued interoperation of Enterprise P and Enterprise S.

   a. NL has in her position as Principal Program Analyst for Admissions has acted as a gatekeeper to both continuance for those required to take the FYLSX as well as those who go on to take the Bar Exam as a prerequisite for licensure.

   b. NL in numerous predicate acts, has buried, altered, destroyed, or otherwise failed to publicate Plaintiff's public commentary and pleas for assistance in excess of twenty (24) months or more the SEVEN HUNDRED AND THIRTY (730) DAYS at time of this writing.  (see EXHIBIT R4)

   c. Plaintiff asserts NL has been permitted, allowed, abetted, and solicited in the above with the assistance of her immediate Supervisor, AUC and higher level executive staff and Board Members.

d.  Plaintiff asserts there is evidence in the State Bar's possession demonstrative that Admissions Staff at the State Bar have engaged in conduct designed to frustrate and mute the publication of student grievances, in this case conduct maintaining the "status quo" for the predatory mill PEOPLE'S COLLEGE OF LAW has now become.

   i.  Here, PCL's former Dean Juan Sarinana ("JMS", SARINANA) has answered no student inquiry, nor has he apparently performed any of his duties related to this matter from Plaintiff's perspective.

   ii.  Here, PCL's Dean selection TORRES "replacing" SARINANA, with a person who was implicated by students Nancy Popp and Scott Bell as improperly attempting to unlawfully influence PCL's election of the Board.

   iii.  The current Dean POMPOSA has not returned a call nor email, although she Plaintiff reasonably believes. POMPOSA is also aware of the "ultra vires" and unlawful comport of the current PCL Board of Directors.

Under the STATE BAR guidelines applicable to PEOPLE'S COLLEGE OF LAW, a competent Dean with sufficient time to deal with issues, including student grievances, is a requirement for compliance. Failure to act when one has a duty to do so remains culpable conduct.

The "new" Dean, Ms. POMPOSO, has apparently engaged in a campaign of "willful blindness"; blocked emails and failure to return Plaintiff's reasonable calls, despite a duty

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

to do so given her position, job function at the school and the timing and requirement for immediate cure.

STATE BAR has openly allowed PCL to breach it's duties to ALL of its former students, yet PCL is still allowed to operate today without even the slightest attempt to cure the breach.

Plaintiff states the above specific claims and acts against Defendants to establish particularity; it is not intended as "complete" list of culpable acts, and Plaintiff reserves the right to amend as additional facts become available.

In addition, and as iterated elsewhere, all Defendants stand in violation of a lawfully issued Demand for the production of documents; if not in their individual possession, Defendants still had a duty to make best effort to provide the documents. There is no evidence before the Plaintiff that conveys any actual, good faith, effort to produce documents, even in the case in which Defendants have a duty to do so.

**Sham Language Used to Conceal Deceit**

Sham language, e.g., "proper channels" or a referral to an ineffectual "committee" with as few as 1 ineffectual member is consistently used to imply that the administration has disciplinary and other protective measures, when as a pattern and practice it has in reality deceptively solicited "work" from students or "underpaid and overworked" registrars (who must by Cal Bar policy have Juris Doctorates) who are inevitably harassed until they are silenced or "run out of town" when they realize that the administration is, in fact, corrupt.

**Pattern And Practice of Harassment Obscures Non-Existent Student Protections**

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

On 3/15/2022, Defendants BOUFFARD, HCP, and PRS worked in unison for unknown motive to impede Plaintiff's efforts to help bring the institution into compliance.

Defendants, counter to law, school policy, and any sense of decency, withheld transcripts requested by the Bar to assess how much "credit" they would give Plaintiff for Plaintiff's education, including for non-payment of tuition and a retroactive change where they would withhold the transcripts waiting for payment, which is also unlawful in this context. so long that the Bar was unable to make a timely decision in "making its determination"

Defendants will likely argue the difficulty of "operating a volunteer organization with only one employee" to deflect from taking a deeper dive into the circumstances of management and operation of the organization itself.

Whatever the excuse, it is inadequate; the conduct here breaches faith, duty, law, and decency.

**A College Without A Student Grievance is Likely Without Students.**

Rule 4.200 authorizes by law The Committee of Bar Examiners ("the Committee") is authorized by law to register, oversee, and regulate unaccredited law schools in California.

adopted effective January 1, 2008.

Rule 4.201 What these rules are

(A) A law school conducting business in California must register with the Committee and comply with these rules and other applicable law unless otherwise exempt.

(B) These rules have been approved by the Committee and adopted by the Board of

Trustees as part of the Rules of the State Bar of California and may be amended

in accordance with State Bar rules.

(C) These rules do not apply to law schools accredited by the Committee, law

schools approved by the American Bar Association, paralegal programs,

undergraduate legal degree programs, or other legal studies programs that do

not lead to a professional degree in law. The appropriate legal entity must

approve such programs, even if they are offered by an accredited, approved, or

registered law school or an institution of which it is a part.

Rule 4.201 adopted effective January 1, 2008; amended effective January 1, 2012.

EVIDENCE PLAUISIBLY SUPPORTS A PATTERN AND PRACTICE OF
HARASSMENT?

For the reasons discussed below, Plaintiff asserts that Defendants, in the interest of

continuing their respective and interoperating Enterprises, engaged in a standard approach

designed to remove and ostracize problem persons.

PEOPLE'S COLLEGE OF LAW has a long history of student grievance, arising to the

level of legal filing; most recently a claim related to election "shenanigans" ended in a

dismissal and settlement. Many defendants of that case in which they supported fair

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

elections conducted in accord with the Bylaws of the Corporation are defendants here culpable for conduct they would likely once claim to abhor.

On May 5, 2021, Kevin Clinton informed Christina Gonzalez upon her request, the President from January 17- November 14, 2021, the root of his conflict with the Dean of PEOPLE'S COLLEGE OF LAW at the time, Ira Spiro. Christina offered mediation, which Kevin knew was an explicit student handbook 2.1 remedy and presumed that she had taken the information and accepted it as a formal grievance. Kevin rejected the remedy and chose student handbook remedy 2.8 (Formal Censure) or 2.11 (Monetary penalty). Upon this request, Christina ceased speaking to Kevin on the matter and told him to file a grievance. Kevin interpreted this action as burying the grievance and that as President she gave an offer to establish a grievance process and upon not getting the answer, she wanted refused to carry it forward to the PEOPLE'S COLLEGE OF LAW Board. This grievance was about ongoing harassment Kevin received after Kevin prevented Ira from fixing and meddling in the PEOPLE'S COLLEGE OF LAW Board election of 2020.

On July 17, 2021, Kevin Clinton filed a grievance against Hector Pena (HCP), the current PEOPLE'S COLLEGE OF LAW president, and to this day has yet to receive response, notice, other affirmative action or follow up. This grievance was related to retaliation faced from Hector Pena after Kevin prevented HCP from fixing the PEOPLE'S COLLEGE OF LAW Board election of 2020, HCP's violation of student privacy where HCP asked about a student's romantic status because her partner transferred out of PEOPLE'S COLLEGE OF LAW, and ongoing harassment by HCP of Kevin Clinton within the PEOPLE'S COLLEGE OF LAW community. Most recently, Kevin was notified by the non-elected PEOPLE'S COLLEGE OF LAW Board member Prem Sarin, that the

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

PEOPLE'S COLLEGE OF LAW board was having conversations about him with student board members in violation of student privacy policy, Student Handbook XVI.

The above performed in execution or support of the following misconduct by the Defendants:

CONSPIRACY; FRAUD; MISREPRESENTATION; UNFAIR BUSINESS PRACTICES AND ACTS IN VIOLATION OF THE UNFAIR COMPETITION LAW (UCL) AND FRAUD; BREACH OF CONTRACT; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; CONVERSION; EXTORTION; BAD-FAITH.

The standard applicable to the Enterprise P Defendants here is constructive, in that they:

1. Knew or should have known that school was out of compliance.

In fact, plaintiff exhibits demonstrate definitive proof of this knowledge and awareness of the Defendants and are further evidenced by the collusion to hide this fact by current and former members of the Administration, including CMG, SPIRO, HCP and JMS.

2. Knew or should have known the school cannot charge fees in non-compliant status.

Defendants also had a duty to report issues re noncompliance to Board Members, students and those entities for which statute imposes a notice or other reporting requirement, including, but not limited to Director's and Officer's Insurance, Mandatory notices to Students and Cal Bar.

Defendants failed to comport their conduct with their Fiduciary and other Statutory obligations, by failing in their duty to inform for deceit, and later to hold captive the students they had a duty to educate and protect; intentionally interfering with Plaintiff's statutory and fiduciary obligations to make inquiry and investigate issues that arise and appear worthy of further investigation; libel and defamation in public communications implying that Plaintiff "does not have the same values as PEOPLE'S COLLEGE OF LAW" or that Plaintiff's behavior in meetings was "out of control" or other "gaslighting" statements , often false, or outright lies.

In addition, Defendants were aware of their duty and chose another path, most likely unlawful, but de minimus deceptive.

3. Created contracts and collected fees anyway. Most recently an additional, factually insupportable, demand for $1866.00. When asked for verification and proof of debt, the organization responded with and executed the threat of blockage from classes.

Here, law students are required to attend 80% of classes, for PCL, which maintains a 10-week quarter system, students by rule must attend 8 of 10 classes to receive credit for the class. Even were one to "ace the final", if they miss three classes in a course they must "retake the course."

PCL's stated mission is to focus on legal access to "underrepresented" communities; members of these communities tend to be at greater risk from even the unsophisticated; here, when a person fell behind on their payments they were offered a "payment contract" under terms defined to give the contract the legal appearance of a "four-corners" de novo contract.

It would be difficult, at best, to fight parol evidence doctrine for any aggrieved plaintiff. Plaintiff asserts this practice was unconscionable. Given the likely higher standard applied to the actors here, as attorneys, juris doctors

But use of the contracts as leverage was key here; a contract was another tool to keep students "locked in", ensuring Board approval required you to be in the good graces of the Defendants.

### a. PEOPLE'S COLLEGE OF LAW barred from **Production of "Account":**

Under California Code of Civil Procedure section 454, "[i]t is not necessary for a party to set forth in a pleading the items of an account alleged, but he must deliver to the adverse party, within ten days after a demand in writing, a copy of the account, or be precluded from giving evidence.

The court or judge may order a new account when the one delivered is too general, or is defective in any particular."

PCL, its Officers, Directors and Defendants made unlawful demand for payment, as a pattern and practice in the course of operating its Enterprise P racket, under extortive circumstances and explicit protest. Plaintiff paid to Defendants the sum of $7,934.00 out of fear and the need to "mitigate" damages by trying to graduate.

5. Installed a "poison pill" to illegally retain students that successfully passed the FYLSX, issuing two units for classes that EVERY OTHER institution in the State awards 3 units for; 1/3 the units results in the net loss of credits they should have earned; in addition, other institutions set a "minimum number of units" for degree qualification; obviously,

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

a PEOPLE'S COLLEGE OF LAW student receiving 2/3rd the units for the "equivalent coursework" is unfair, unconscionable, and illegal.

    a.  Here, LEONARD,  SPIRO, HCP and CMP worked in concert to prevent change in the awards practice;

    b.

5. Recruited students, board members, and officers of the Corporation without disclosing the material differences in the units awarded.

5. Defendants lied, misrepresented, obstructed and otherwise attempted to confuse and confuse those whom they have likely victimized.

6. Defendants targeted, bullied, harassed, threatened, gaslighted, and defamed and other when convenient to the  pursuit of unlawful, and likely criminal, purpose.

7. In abject defiance to Defendant's fiduciary responsibilities and duty of loyalty, Defendant's have filed a fraudulent Statement of Information to the Secretary of State, failed to hold fair elections consistent with the mandates of the Bylaws and the, allowing corporate officers to expel duly elected board members without due process.

8. Then, when students fell behind they had to sign a contract, avoiding some of their rights but, of likely greater import to the Defendants, adding another layer of obfuscation to their unconscionable conduct.

9. The "Administration" of PEOPLE'S COLLEGE OF LAW persists in direct violation of duty and law, knowing they are caught, compounding the lawlessness, lack of remorse and

willingness to attack their own students who bring lawful complaints in good faith to flee in avoidance of further and future damages resulting from consequences of their misconduct.

10. Extorted moneys known to be in dispute, then further attempted to extort moneys they knew or should have known was not due.

College President, Hector Pena, Treasurer David Bouffard and Secretary Prem Sarin, Ira Spiro, Christina Gonzalez, Josh Gillens, and other Community Members and Members of the Community Board had constructive notice of the facts, and worked in determined and concerted fashion,

Because a civil quorum voting to engage in unlawful conduct cannot exculpate the individual from any corporate or personal liability for the foreseeable consequences of such acts conducted in Bad-Faith, Plaintiff re-asserts earlier supposition that all parties named in the complaint bear some culpability for their action or, where duty demanded otherwise, inaction.

A. Cali. Civ. Code 19 states, "Every person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact."

Ca. Civ. Code § 19

PEOPLE'S COLLEGE OF LAW, its agents, directors, and officers were all aware that plaintiffs demand for an accounting went unanswered; no effort was made to give an

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

accounting beyond detailing the "bank balances", which for auditory purpose is useless and fails to meet the statutorily required records production plain language interpretation.

**All Defendant's had duties of good faith, business judgement, and the fiduciary**

**All Named Parties Had A Duty To Inquire**

All parties had a duty to inquire together with any other statutorily assigned obligations attached to their roles. Under the California Corporations Code ("CCC"), the board of directors "exercises, or directs the exercise of, all corporate powers, subject to member approval where required." (Code §§5120, 7210, 9210)

Generally, the authority of the board is tempered by the fact that all decisions are made collectively by all members of the board. In addition, all decisions of the members of the board are made considering four primary fiduciary duties owed by all directors to the organizations they serve. Those duties are as follows: (1) the duty of care; (2) the duty of inquiry; (3) the duty of loyalty; and (4) the duty to follow investment standards.

I. The Duty of Care.

The standard of conduct for directors of nonprofit public benefit corporations is set forth in Code §5231(a), which provides as follows: "A director shall perform the duties of a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best

interests of the corporation, and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances."

## II. Duty of Inquiry Avoids Willful Blindness

California Business & Professions Code §5231 states that a "director must

The director's obligation to make reasonable inquiry comes from California Business & Professions Code §5231. This duty provides that directors cannot "close their eyes "to the activities of the organization and, if they are put on notice by the presence of suspicious circumstances, they may be required to make such reasonable inquiry as an ordinarily prudent person would make under similar circumstances. In fulfilling their duty of inquiry, directors may obtain the services of and rely upon opinions, reports or other information prepared or presented by any of the following:

One or more officers or employees of the corporation whom the directors believe to be reliable and competent in the matters presented;

Counsel, independent accountants, or other persons on matters which the director believes to be within such person's professional or expert competence; and

A committee of the board upon which the director does not serve, as to matters within the committee's designated authority, which committee the director believes to merit confidence. If a director has a reason to doubt information that he/she is being supplied, the director owes a fiduciary duty to inquire further into those matters. Such duty may be

exercised by the board through the retention of experts to assist the directors in verifying the information supplied, obtaining additional information, and analyzing the matters to which the information pertains.

III. Duty of Loyalty.

Directors must act in a manner that they believe to be in the best interest of the corporation. (Code §§5231, 7231, 9241) Where the organization does not have a membership that is served by the organization, the directors must strive to advance the organization's charitable purposes. The duty of loyalty includes a duty to avoid conflicts of interest between the directors individually and the corporation.

IV. Duty to Follow Investment Standards.

This fiduciary duty applies to investment assets held by public benefit corporations, the assets of which are held in charitable trust. Code §5240 sets forth the following applicable standards:

Avoid speculation, looking instead to the permanent disposition of the funds, considering the probable income, as well as the probable safety of the corporation's capital;

Comply with additional standards, if any, imposed by the corporation's articles, bylaws, or the express terms of an instrument or agreement pursuant to which the assets were contributed to the corporation;

V. Duty of Due Care and Reasonable Inquiry

In carrying out their investment duties, a director must comply with the duties of due care and reasonable inquiry, may rely upon others, and may delegate its investment powers as permitted by Code §5210.

Compliance requires:

    4.   The avoidance of speculation

In addition to the duties mentioned above, directors of applicable organizations are obligated to use funds and assets, including but not limited to endowment funds, in accordance with the provisions of the Uniform Prudent Management of Institutional Funds Act ("UPMIFA"). (California Probate Code §§18501-18510)

For example, cases have arisen (Enron) where the majority of the Board was accused of fraud; the duty is so defined that concerted activity by a Board does not relieve any individual Board Member of the individual duties defined below.

As discussed earlier, capricious acts in this circumstance are likely predicate acts in relationship to RICO and antitrust statutes.

Both Enterprise P and S, and the institutions operating them, utilize misrepresentations of fact, capriciously asserted definitions that fail to capture the facts, and simple obtuse obstinacy to a void compliance of their duty and the law.

It was likely here that all parties could have corrected these issues if negligence was the issue; here all Defendants have overtly endeavored to continue the status quo and toll the unlawful conduct.

**Overt Predicate Acts And Actors**

I.  All overt acts meeting the definition of racketeering activity shown from 2015-2022 were overtly in favor of <u>Enterprise P</u>, taking from Plaintiff or others in his suspect class, using <u>Enterprise S</u> combined with deliberate misstatements of material facts about the operational practices of defendants as being bound by oaths of attorneys or as being public protectors and their superior knowledge of the (criminal or civil) statutes, or their lack of applicability due to a statutory immunity grant for non-profit officers, a "grant of powers" only available through an antitrust violative monopoly regulator.

II.  Specifically, some among <u>Enterprise P</u> and <u>Enterprise S</u>, have knowingly permitted and failed to stop ongoing egregious and unlawful conduct for a protracted period, specifically:

    i)   <u>Enterprise P</u>, including PCL actors SPIRO, GONZALES, PENA, BOUFFARD, ANTONIO use reprehensible conduct to misrepresent the law, disrupt, file, compromise, extort, defame, obstruct, and frustrate any attempt to correct or seek remedy for their conduct predicate and in furtherance of a Racket, <u>Enterprise S</u> and State Bar Actors including the office of the CTC, GC, ED, as well as individual staffers LEONARD, WILSON, HOPE, CHING, DAVTYAN, CARDOZO,

KRASILNIKOFF, RANDOLPH, NUNEZ and appointees or non-employee directors and officers including DURAN, WILSON, DAVYTYAN, HAILYN CHEN, Supreme Court Appointee, Attorney Member; JOSÉ CISNEROS, Governor Appointee, Public Member; JUAN DE LA CRUZ, Assembly Appointee, Public Member; GREGORY E. KNOLL, Senate Appointee, Attorney Member; MELANIE M. SHELBY, Governor Appointee, Public Member; ARNOLD SOWELL JR., Senate Appointee, Public Member; MARK W. TONEY, PH.D., Governor Appointee, Public Member.

ii)  Enterprise P conduct includes use of email and electronic funds demands to extort funds from Plaintiff and likely others for conversion and use in their enterprise.

(1) Here,

iii)  Enterprise P has recruited "fee paying" students for Enterprise S, and then relied on Enterprise S to assist it by persisting in unlawful conduct designed to "frustrate" the Plaintiff and leave him aggrieved without substantive recourse or access to his statutory and constitutional rights to seek fair remedy in accord with due process.

**Communications Invoked Under the Duty Of Inquiry Are Official Communications.**

One should not have to argue the statutorily axiomatic: if a Board Member suspects that the information, they are receiving is not correct, they have a duty to inquire.

This would have been easily resolved had Nathalie chosen to confirm your memorialization. Since she has not chosen to do so on more than one occassion, it begs the question, does it not?

Public Comment Policy Infringes Plaintiff's 1st Amendment Rights

Public Comment Policy Infringes on Plaintiff's "Fourth Estate" Opportunity

An unfettered media plural or "free press" is commonly considered to serve the following public interests:

5. It serves as a check on the "balance of powers"; as a public protective to publicly call out "ultra vires" or malfeasant activities as well as publicize information in the "public interest."

6.

Public Comment Policy more likely than not to render "Protection of the Public" less efficient

**Defendant Preys On A Class Individuals**

Here, defendants recruit students to be members of the corporation by fraud and misrepresentation including failure to disclose material facts including, but not limited to, non-standard and unlawful unit awards; claims to operate as a "social justice school" when in reality this sham is used by the administration to obtain free services from students that pay, grants, donations, commercial services and labor.

Cal. Civ. Code 1711: One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is misled by the deceit.

**PCL and state bar successfully conspired to restrain trade and did restrain trade.**

Here, the Defendant's actively facilitated the recruitment and matriculation of students with the express intent to take unlawful advantage of lack of substantive oversight to give students the vast majority of whom (estimated at > 92%) defendants know will never move beyond their first year due to the challenges of the First Year Law School Exam.

Defendants withheld material information from the students, including the unlawful and unconscionable unit award criteria that fundamentally deprives the student of the statutorily mandated "benefit of the bargain", i.e., express requirements for unit awards,

Ca. Civ. Code § 1712

PCL and State Bar are aware that prevention of transfer decreases likelihood of student Bar Transfer, as they have access to, express or constructive knowledge of this information as

metrics tracked by the American Bar Associations mandated use of AB509 as well as the Bar's licensing and proprietary information related to Bar Passage.

In

## Defendant Modus Operandi Violates Core Public Policy

Conduct discussed above and below by the Defendants as they failed to disclose material facts, including an unlawful unit awards standards that violates California law and the Cal Bar guidelines regulating the school, lack of compliance with documentation and reporting requirements, and sham processes laden throughout the student handbook that provide great detail but no actual resources are available for their application.

Cal. Civ. Code § 1770

"From the enactment of the State Bar Act in 1927, this court has made use of the assistance afforded by the State Bar to enable it more effectively to process disciplinary matters-and to handle its additional workload as well. In In re Walker (1948) 32 Cal.2d 488 [196 P.2d 882], we acknowledged that "this court obviously has the same powers which it previously possessed independently to entertain disciplinary proceedings despite possible duplication between such proceedings and others instituted before [t]he State Bar." (Id. at p. 490.) Nevertheless, relying on the existence of the bar's disciplinary system, we explained that "we are of the view that as a matter of policy this court should not exercise those powers unless and until the accuser has followed the normal procedure by first invoking the disciplinary power of [t]he State Bar." (In re Attorney Discipline)

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Plaintiff  believes the "flaw" here lies in the presumption that the "normal procedure" will be appropriately followed without the appropriate level of oversight, which the ruling maintains is an issue due to resources. Plaintiff here refers to his prior requests for determination of antitrust, where policy required recusal by the Office of General Counsel, headed at the time of these incidents by DAVTYAN. Both responses were issued unsigned on the General Counsels masthead.

There appears no evidence that the GC recused nor that the CTC's office, or any Enterprise S operator, made any attempt to aid the Plaintiff or intervene when during this period all Defendants were on notice.

It is clear that "normal procedure" for issues in the sphere are either never adopted or adequately applied. The State Bar has been unable to provide any evidence of Constitutional review being performed on any of its core Statutory Policies or mandates; both <u>Enterprise P</u> and operators still communicate, operate, and enforce unlawful underground rule.

It also fails to fairly consider the corrupt enterprise or what is necessary to maintain integrity not yet earned by the State Bar.

**Request(S) For Equitable Relief**

Plaintiff seeks the following for the circumstances and causes of action discussed throughout, above and below:

**Specific Performance 1: Grant of Juris Doctoral Degree**

Because STATE BAR's and PCL's conduct was not in compliance with professional standards and regulations prior to his matriculation, Plaintiff argues appropriateness of Juris Doctorate degree grant based on quantum meruit.

the plaintiff has completed all coursework and attended as a full-time student, despite the fact that the institution can only offer a four-year program as a part-time educational facility?

The key issue in this case is whether the plaintiff has completed all coursework and attended as a full-time student, despite the fact that the institution can only offer a four-year program as a part-time educational facility.

The fact that the school's grant of units was unlawful is likely a mitigating factor in favor of the plaintiff, as it suggests that the school's conduct was not in compliance with the regulations set forth by the State Bar and the State Bar Act of 1937. However, this alone may not be sufficient to grant the plaintiff's degree.

The plaintiff provides plausible, reliable, and verifiable evidence demonstrating that the school's conduct was fraudulent and that the defendants engaged in illegal conduct, such as violating the California Business and Professions Code, antitrust laws and committing fraud. This would indicate that the defendants' actions were not in compliance with professional standards and regulations, which could support the plaintiff's argument that he should receive his degree.

The State Bar's disregard for its own rules and procedures has resulted in the erosion of the public's trust in the legal profession and its ability to regulate itself

The plaintiff  can demonstrate that the completion of all required coursework and attended as a full-time student, despite the school's unlawful grant of units. Thus the plaintiff has fulfilled all of the requirements necessary to receive the degree, despite the school's noncompliance with regulations.

Another mitigator is the harm done to the Plaintiff in the unnecessary and inequitable delay of the grant, which may also infringe on Plaintiff's rights to due process under the principle of latches, given the axiomatic difficulty of finding counsel willing or able to take on cases of this type and the Plaintiff's likely difficulty in finding an attorney of "equal skill or experience" in this area given the nature of the entities involved.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**Injunction 1: Preliminary Relief To Preserve The Status Quo**

Plaintiff requests the following:

Each defendant be restrained from instituting any action against the plaintiff for the purposes of retaliation, imputation of stain, or as merely "strategic" litigation common to other individual plaintiff, multiple defendants, the majority in possession of advanced legal knowledge or attorney licensure.

The defendants be compelled to disgorge moneys paid to PCL.

Specific performance as the mere disgorgement of moneys would be a true injustice to likely any Plaintiff in similar circumstance, given the time, loss of consortium, the profound nature of the Defendants breaches of conduct, law, ethos, and for many, solemn oath.

The defendants settle among themselves their rights to the property and that the plaintiff be discharged from all liability.

**Injunction 2:**

The court grant any further relief as may be just and proper under the circumstances of this case.

California Code of Civil Procedure ("CCP") §527 governs temporary restraining orders in California.

The rules for ex parte applications, including ex parte TROs, are set out in California Rule of Court ("CRC") 3.1150 and 3.1200–3.1207. The California Code and California Rules of

Court are available at the Law Library in several annotated (includes summaries of cases interpreting the laws) print versions and on the Internet at the California State Legislature's website in unannotated form.

An injunction restraining Defendants, its members, agents and any and all confederates from continuing any strike or personal attack against plaintiff, from interfering in any manner, directly or indirectly, with plaintiffs studies or engaging in the business of plaintiff, from causing or permitting its members, officers, or others acting in concert or part with them, including any and all persons, unions, associations, groups or bodies, teachers and/or students from interfering in any manner, directly or indirectly, with the business, goodwill, name or reputation of plaintiff, from attempting to take any action which may negatively influence and/or impede any efforts to transfer or otherwise resolve academic issues of the plaintiff resulting from the conduct stated in the cause, from attempting to coerce, threaten or intimidate any colleagues or peer students of plaintiff (1) employer or member of plaintiff organizations (2) the California State Bar, association, or to attempt to persuade said employees or members or any of them, to join defendant or any other in non-meritorious cause of action.

Plaintiff requests that Defendants are prohibited from intitiating or continuing unlawful conduct to the Plaintiff's detriment but even those which, either by statute or otherwise, have come to be recognized as "lawful" activities now suspect due to the consequents of the Defendants conduct.

As indicated above, PEOPLE'S COLLEGE OF LAW "Board Members" and administrators have acted in hoc modo ultra vires.

The legislative history for section 527.6 states that, under prior law, " 'a victim of harassment [could] bring a tort action based either on invasion of privacy or on intentional infliction of emotional distress. Where great or irreparable injury [was] threatened, such victim [could] obtain an injunction under procedures detailed in [section] 527(a).' " ( Smith v. Silvey (1983) 149 Cal.App.3d 400, 405, 197 Cal.Rptr. 15.) In comparison, section 527.6 " 'would establish an expedited procedure for enjoining acts of "harassment," as defined, including the use of temporary restraining  orders . [ Section 527.6 ] would make it a misdemeanor to violate the injunction and ... provide[s] for the transmittal of information on the TRO or injunction to law enforcement agencies. [¶] The purpose of the [statute] is to provide quick relief to harassed persons.' " ( Smith, supra , at p. 405, 197 Cal.Rptr. 15.)

Plaintiff petitions here for injunction until final disposition of this matter.

**Prohibition Against Encumbering Or Disposition Of Assets**

Under

Plaintiff petitions here for injunction until final disposition of this matter the transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the plaintiff, a court-appointed trustee or an order of the court, except in the usual course of business or for the basic necessities of daily operation.

Plaintiff is the legally authorized Secretary of the Corporation. Even if Plaintiff lawfully ousted, plaintiff claims interests to protect.

**Injunctive Relief Requests Strictly Limited To Future Harms.**

The quick, injunctive relief provided by section 527.6 "lies only to prevent threatened injury"—that is, future wrongs. ( Scripps Health v. Marin (1999) 72 Cal.App.4th 324, 332, 85 Cal.Rptr.2d 86 ( Scripps Health ).) The injunctive relief is not intended to punish the restrained party for past acts of harassment. ( Ibid. ; see Russell v. Douvan (2003) 112 Cal.App.4th 399, 403, 5 Cal.Rptr.3d 137.)

Here, Plaintiff will suffer from not being provided the services that not only have been paid for but were paid for under false pretenses. Plaintiff should not suffer any delays in his studies due to the Defendant's misdeeds;  the loss of time and family companionship that repetition entails could not otherwise be remedied by monetary damages.

Plaintiff will also suffer loss of time, money, emotional distress, the advantages to memory that proximity of learning material to the date of examination provides. Given the circumstances here the plea for order and "preservation of the status quo" is both reasonable and justified.

To provide quick relief, "[a] request for the issuance of a temporary restraining order without notice under this section shall be granted or denied on the same day that the petition is submitted to the court." (  § 527.6, subd. (e).) If a request is submitted too late in the day for effective review, the temporary restraining order must be granted or denied the next business day. (Ibid. ) Subject to the provisions governing continuances, a hearing on the petition shall be held "[w]ithin 21 days, or, if good cause appears to the court, 25 days from

the date that a petition for a temporary order is granted or denied." ( § 527.6, subd. (g) ; see § 527.6, subds. (o ), (p) [continuances].)

Here

It is important that the following special circumstances be illuminated for the court; criminal complaint made by petitioner as to the following conduct, attributable specifically to the parties indicated:

**Plaintiff's Burden Of Proof Standard Is "Clear And Convincing Evidence."**

Plaintiff presents overwhelming evidence to meet the required standard of proof.

A " '[b]urden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." ( Evid. Code, § 115.) "The burden of proof may require a  party to ... establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt." (Ibid .) The standard of proof that applies to a particular determination serves "to instruct the fact finder concerning the degree of confidence our society deems necessary in the correctness of factual conclusions for a particular type of adjudication, to allocate the risk of error between the litigants, and to indicate the relative importance attached to the ultimate decision."

(  Conservatorship of Wendland (2001) 26 Cal.4th 519, 546, 110 Cal.Rptr.2d 412, 28 P.3d 151 ( Wendland ); see also In re Winship (1970) 397 U.S. 358, 369-373, 90 S.Ct. 1068, 25 L.Ed.2d 368 (conc. opn. of Harlan, J.).)

"   Measured by the certainty each demands, the standard of proof known as clear and convincing evidence — which requires proof making the existence of a fact highly probable  — falls between the "more likely than not" standard commonly referred to as a preponderance of the evidence and the more rigorous standard of proof beyond a reasonable doubt."

**Plaintiff further asks that any acts that are clearly designed to shield assets of the corporation for the purposes of  evasion be declared *void ab initio* as well.**

T.B. v. O.B. (In re O.B. ), 9 Cal.5th 989 (Cal. 2020)

T.B. v. O.B. (In re O.B. ), 9 Cal.5th 989, 998-99 (Cal. 2020) ("The standard of proof known as clear and convincing evidence demands a degree of certainty greater than that involved with the preponderance standard, but less than what is required by the standard of proof beyond a reasonable doubt. This intermediate standard "requires a finding of high probability." ( In re Angelia P. , supra , 28 Cal.3d at p. 919, 171 Cal.Rptr. 637, 623 P.2d 198 ; see also CACI No. 201 ["Certain facts must be proved by clear and convincing evidence .... This means the party must persuade you that it is highly probable that the fact is true"].) One commentator has explicated, "The precise meaning of 'clear and convincing proof' does not lend itself readily to definition. It is, in reality, a question of how strongly the minds of the trier or triers of fact must be convinced that the facts are as contended by the proponent. ... Where clear and convincing proof is required, the proponent must

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

convince the jury or judge, as the case may be, that it is highly probable that the facts which he asserts are true. He must do more than show that the facts are probably true." (Comment, Evidence: Clear and Convincing Proof: Appellate Review (1944) 32 Cal . L.Rev. 74, 75.) ")

**Treatment of action as filing of lis pendens.**

Plaintiff's assertions and cause of action involve damage claims requesting specific performance, money damages, and restitution.

Defendants have noticed intent of land and property sale, specifically the sale of the building at 660 Bonnie Brae, Los Angeles, CA.

Here, Plaintiff asserts that this sale would simply allow the Defendants to profit from their unlawful contract and "performance" practices.

Plaintiffs also record lis pendens in connection with claims for money, when the money is ostensibly tied up in real estate.  These claims ask the court to avoid fraudulent transfers or impose a constructive trust on real property to effect restitution.

When the complaint alone provided constructive notice to third parties, lis pendens disputes were between a successful plaintiff and a third-party purchaser.  See, e.g., Hoyt v. Am. Traders, Inc., 301 Or 599 (1986); Land Assocs., Inc. v. Becker, 294 Or 308 (1982).  Now that plaintiffs must record a separate notice, the paradigm has shifted.  Title searches reveal lis pendens and potential buyers walk away.  A lis pendens "effectively renders title unmarketable" until the litigation is resolved.  Pierce v. Francis, 194 P3d 505 (Colo App 2008).  Plaintiffs therefore may use lis pendens to pressure defendants to settle simply to remove the cloud of title on their property.

**Defendants should not be allowed execute any changes in ownership until the case has been adjudicated on the merits.**

**Preliminary Relief To Preserve The Status Quo Not Deterministic Of Prevailing Party**

Per Smith v. Thomas, 687 F.2d 113 (5th Cir. 1982), granting of preliminary relief for the purposes of maintaining the status quo rejects "any notion that prevailing party  status is indexed by the label of the order . Instead, the answer to the question of who has prevailed is best obtained by focus upon the achievements of the suit's prosecution juxtaposed to its central purpose, at whatever stage of the suit the inquiry is made. A three-judge court of this circuit, convened in a voting rights case, has plowed similar terrain. We are persuaded by its reasoning:

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

It is necessary to distinguish between two forms of interim or preliminary relief. On the one hand, interim relief can serve as, or be predicated upon, an adjudication on the merits. Thus, in Williams v. Alioto, [ 625 F.2d 845, 847-8 (9th Cir. 1980), cert denied, [450] U.S. [1012], 101 S.Ct. 1723 [ 68 L.Ed.2d 213] (1981)], the district court entered a preliminary injunction enjoining certain police investigative procedures. Although defendants never had the opportunity to appeal the injunction because the case was mooted by the investigation's completion, see [450] U.S. [1012], 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981) (dissent by Justices Rehnquist and White to denial of certiorari), the Court of Appeals, in awarding attorney's fees, noted that the district court had found the investigative procedures to be unconstitutional; plaintiffs had obtained a determination on the merits. 625 F.2d at 847-48. On the other hand, interim relief may be no more than a means for a court to mitigate or forestall injury until it can rule on the merits. This distinction was made plain in Bly v. McLeod, [ 605 F.2d 134 (4th Cir. 1979), cert. denied, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980)], in which the district court entered a temporary restraining order allowing plaintiffs to vote in a primary election. The case was soon thereafter mooted by legislative amendment. In denying plaintiffs their attorney's fees, the Court of Appeals observed that the TRO "was in no way a determination on the merits," but merely prevented irreparable harm. 605 F.2d at 137.

In Hanrahan v. Hampton, 446 U.S. 754, 759, 100 S.Ct. 1987, 1990, 64 L.Ed.2d 670 (1979), the Supreme Court in referring to ". . . determinations [that] may affect the disposition on the merits, but were themselves not matters on which a party could `prevail' for purposes of shifting his counsel fees to the opposing party under § 1988 . . ." cited Bly v. McLeod, 605 F.2d 134, 137 (4th Cir. 1979).

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Davis v. City of Ennis, 520 F. Supp. 262, 265-66 (N.D.Tex. 1981).

**Perpetual Relief To Prevent Future Harm From Prior Bad-Faith Activities**

Here, Plaintiff asserts that the court can offer judgments that bestow perpetual relief for this, and any other party, who finds themselves in similar position and circumstance.

To wit, under this category Plaintiff requests the court to:

**Void Ab Initio Ultra Vires Acts Of The Board Taken After Plaintiff's Unlawful Treatment And Ousting**

- Election violation failure to adhere duties: CPC §5231 Director duty to serve in good faith and best interest of org.

- Hector Pena files or causes to be filed factually incorrect information on or about 12/3/2021.

- **<u>Violation of PC 115 (Felony)</u>:** against the law to publish false info to the Sovereign.

- Board members are duty bound to faithful execution of the Bylaws per CPC §5210, §7210,§ 7213,§9210.

- Unlawful acts by Enterprise P includes (unfair business practice) failure to adhere to the Corporate Bylaws; failure to

- Filing of false "Statement of Information" to the California Secretary of States office, supported by the "Board of Directors", executed by HCP, PMS, and BOUFFARD.

**Void Ab Initio The Statement Of Information Filed On Or About 12/3/21**

Here, on or about 12/3/21, Hector Pena, Prem Sarin, and David Bouffard, along with DOES 1-100, filed a fraudulent Statement of Information with the Secretary of State indicating that Hector was CEO, Prem was Secretary, and David was Treasurer; as iterated supra, no such action was authorized by statue nor Bylaws.

**INTENTIONAL WRONGDOING**

Generally, intentional wrongdoing is defined as means an act or omission taken or omitted by a Party with knowledge or intent that injury or damage could reasonably be expected to result.

Here, Defendants knew the damage was inevitable and executed policies and performed acts in furtherance of their unlawful conduct.

How easy would it have been to simply correct the course unit awards? Why allow that to lead to this cause of action?

It matters not the motive n this case; the conduct outlined throughout this pleader is sufficient to show intentionality.

**Plaintiff Has Made Best Effort To Resolve  This Matter Amicably**

California State Bar (including direct communications with Leah Wilson, the Bar's current Executive Director) , Bureau of Post-Secondary Education, the Los Angeles County Sherriff's Department ("LASD")(which issued a search warrant under a matter described infra) and the Department of Justice (informally via AG Matt Rodriguez).

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Except for the warrant issued by LASD, all have declined to act based on statutory or interest conflict of interest ("COI") grounds.

**Discussion Of Statutory Grant Of Immunity For Non-Profit Directors**

Generally, pursuant to the California Corporations Code Article 3, "Standards of Conduct" 5239, directors and officers of non-profit corporations enjoy the privilege of complete and total immunity for their "good faith" activities.

In its response to petitioner jurisdiction, PEOPLE'S COLLEGE OF LAW will likely contend that (1) it enjoys statutory immunity from plaintiff's causes of action; this is not the case.

Unfortunately for the Defendants, common-law and the California Tort Claims Act (CTCA) does not waive immunity for acts conducted in Bad-Faith.; as a matter of statute and common law precede, tortious breach, i.e., breach of conract

Plaintiff's ultra vires claim against PEOPLE'S COLLEGE OF LAW and its Directors and Officers is viable because Plaintiff claims acts, including statutory or other liability criminal violations, which fall outside the exercise of the official discretion of <u>any</u> private corporation or joint venture.

**Did PCL or <u>Enterprise P</u> engage in unlawful recording as defined in CPC § 632.7?**

HILL argues that Defendants conduct likely violated law and Plaintiff's rights.

As earlier discussed and referenced in EXHIBIT A-1 Summary Timeline, CMG on or about 6/202 began to engage in unlawful conduct.

Because CMG is a licensee and member of the Bar, under CRPC Rule 1.7, CMG is required to obey the law and is barred and estopped from claiming ignorance as defense or mitigation.

Plaintiff asserts that CMG engaged in this conduct on multiple occasions after being formally noticed and informally advised.

Summary of the timeline of events:

• 7/2021. Todd gives verbal notice at board meetings about the rules around recordings of boards.

• 09/06/21 – Robert Skeels, Esq., volunteer Contracts instructor and school alum issues via email [EXHIBIT UI -1 units issue memo to PCL Board RDS .pdf]

• 10/19/2021: Todd emails Christina about the violation of recording of PCL Board meeting [See Exhibit C]

• 10/24/2021: Todd's email PCL board his 2nd request for video recordings

• 11/5/2021: Todd emails PCL Board his request for video recordings,

• 11/15/2021: Todd emails PCL Board his final demand for video recordings, financial records, & PCL Board minutes [See Exhibit D]

• 12/31/21: PCL Administration and Operators of Enterprise P still award 2 units.; the State Bar and Operators of Enterprise S continue refusal to substantively respond or intervene

April 21, 2021 decision in California's Supreme Court ruled unanimously that the state's prohibition on recording calls without consent applies to parties on the call and not just third-party eavesdroppers. Writing for the Court, Chief Justice Tani G. Cantil-Sakauye wrote that California's penal code "prohibits parties as well as nonparties from intentionally recording a communication transmitted between a cellular or cordless phone and another device without the consent of all parties to the communication."

For reference, the relevant language of the statute:

Penal Code § 632.7 (2017)

(b) This section shall not apply to any of the following:

(1) Any public utility engaged in the business of providing communications services and facilities, or to the officers, employees, or agents thereof, where the acts otherwise prohibited are for the purpose of construction, maintenance, conduct, or operation of the services and facilities of the public utility.

(2) The use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of the public utility.

(3) Any telephonic communication system used for communication exclusively within a state, county, city and county, or city correctional facility.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

(c) As used in this section, each of the following terms have the following meaning:

(1) "Cellular radio telephone" means a wireless telephone authorized by the Federal Communications Commission to operate in the frequency bandwidth reserved for cellular radio telephones.

(2) "Cordless telephone" means a two-way, low power communication system consisting of two parts, a "base" unit which connects to the public switched telephone network and a handset or "remote" unit, that are connected by a radio link and authorized by the Federal Communications Commission to operate in the frequency bandwidths reserved for cordless telephones.

(3) "Communication" includes, but is not limited to, communications transmitted by voice, data, or image, including facsimile.

(Amended by Stats. 1993, Ch. 536, Sec. 1. Effective September 27, 1993.)

A Person Cannot Waive (Via Consent) a Right They Do Not Possess in rem

There are three ways consent WAS NOT GRANTED in this case:

1. California is an all-party consent state. A nonprofit corporation must get board approval -- and sometimes member approval as well -- before taking important actions or making key decisions. No vote or express written unanimous consent in this context means no consent.

Thus, I maintain that the issues here are criminal and not civil; corporations are not afforded criminal protection and the conduct here is egregious. Not once. Not twice. Three times, at least two of which she explicitly knew or was told it was culpable conduct.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Please understand; I did not report it the first or second time, although we discussed the issue to no avail. I am reporting for the third time. I believe that is far more than statute requires for patience and indulgence.

It is common knowledge if not sense; members of the public cannot waive nor impede the performance of the statutorily imposed duties or obligations of sovereign agents.

***A crime committed against the unwitting is still a crime!***

Privacy violation does not require the knowledge of the injured party

Every victim need not be aware. PC 632 does not require physical or economic "injury" for civil liability or criminal culpability.

**NO PRIOR CONSENT REQUESTED OR GAINED FROM ANY PARTY ON THE VIDEO CALL**

The meeting was in session for a long period of time, and no one asked or thought to record until there was contention.

GONZALEZ did not ask or inquire PRIOR to hitting the record button. She also did not, in disregard of her roles as President and fiduciary, call for a vote to gain consent of the corporation, a person and third party with interests the Board was there to inherently protect.

**Elements of PC § 632 appear satisfied**

The additional elements, including the use of an electronic device (computer), intent to record (specific act) reasonable expectation of confidentiality (Board Meeting with specific members; not public, not government).

**Prohibited Uses Per Zoom's "Terms of Service" supports "Impossibility of Consent":**

Plaintiff here demonstrates that Zoom's express prohibition of the alleged conduct rendered any implication that the conduct could be consented to impossible to non-frivolously argue; thus no consent can be implied as coverage by the appearance of a consent box.[31]

At the time of the alleged misconduct, the online terms of service for Zoom used broad language in sections (iii) and (iv) of the clauses enumerating "Prohibited Use" and how clearly the intent is to cover both criminal and civil conduct that may give rise to criminal culpability or civil liability.

Prohibited Use. You agree that You will not use, and will not permit any End User to use, the Services to: (i) modify, disassemble, decompile, prepare derivative works of, reverse engineer or otherwise attempt to gain access to the source code of the Services; (ii) knowingly or negligently use the Services in a way that abuses, interferes with, or disrupts Zoom's networks, Your accounts, or the Services; (iii) engage in activity that is illegal, fraudulent, false, or misleading, (iv) transmit through the Services any material that may infringe the intellectual property or other rights of third parties; (v) build or benchmark a competitive product or service, or copy any features, functions or graphics of the Services; or (vi) use the Services to communicate any message or material that is harassing, libelous, threatening, obscene, indecent, would violate the intellectual property rights of any party or is otherwise unlawful, that would give rise to civil liability, or that constitutes or encourages conduct that could constitute a criminal offense, under any applicable law or regulation; (vii) upload or transmit any software, Content or code that does or is intended to harm, disable, destroy or adversely affect performance of the Services in any way or which does or is intended to harm or extract information or data from other hardware, software or networks of Zoom or other users of Services; (viii) engage in any activity or use the Services in any manner that could damage, disable, overburden, impair or otherwise interfere with or disrupt the Services, or any servers or networks connected to the Services or Zoom's security systems. (ix) use the Services in violation of any Zoom policy or in a manner that violates applicable law, including but not limited to anti-spam, export control, privacy, and anti-terrorism laws and regulations and laws requiring the consent of subjects of audio and video recordings, and You agree that You are solely responsible for compliance with all such laws and regulations.

---

[31] Plaintiff here notes that the axiomatic is not in and of itself a defense for a matter at bar and has included the above given Defendants claims to the contrary and likely re-use in frivolous attempt to cloud and obscure the absence of viable defense.

Consent cannot be given for what is EXPLICIT AND EXPRESSLY prohibited by the contract.

A contract may define what it does not control.

Zoom can identify categories of conduct that are prohibited but it has no control over what elements are required to be satisfied to prove culpability.

Zoom also CANNOT MAKE CHARGE NOR BRING ACTION for any criminal matter without the Sovereigns approval directly or through its agents. The same applies to Plaintiff's cause.

1. Nonprofit Board Members have complete civil liability immunity for acts done in conformance to duty and in good faith. I believe I have that protection because I AM MAKING THESE CLAIMS IN COMPLETE AND TOTAL GOOD FAITH; I AM TELLING THE TRUTH AND I HAVE COMPELLING DOCUMENTED SUPPORT COMMUNICATED OPENLY WITH A REGULATORY AUTHORITY!!!!!

**Eleventh Amendment Applications at Courts Discretion but facially disfavor Plaintiff's position.**

Plaintiff asserts novel Federal Questions Require Declaratory Address

Plaintiff asserts that the Eleventh Amendment should not be applicable here as a Bar to recovery from the State of California as appropriate guarantor for the allowance of the continuation of the same "Client Services Fund" (CSF or other damage remedy) unjust enrichment scheme, whereby application to the fund limits recovery to "actual damages" when the State Bar should understand the public interest in attorney discipline is not solely to force the attorney to change her livelihood; the remedy of the Courts is usually monetary

damages, oftentimes dictated by statute for civil and criminal wrongs involving "moral turpitude".

**What public interest is rationally served in  treating the violation of "public trust, privilege, and privacy" as appropriate and acceptable conduct in the legal services marketplace?**

Here, Defendants will likely be forced into silence, the reasons axiomatic: It is impossible to coherently argue that the violation of "public trust, privilege, and privacy" serves any rational public interest in the attorney practice or legal education services marketplace.

The legal profession is built on a cornerstone and foundation of trust. Attorneys, as sworn and licensed statutory members of the profession, are expected to uphold the highest ethical standards in their conduct and interactions with clients.

The violation of these principles undermines the integrity of the legal profession and erodes public trust in the legal system in the micro, as is evidenced by the STATE BAR's pursuit of individual attorney's accused or reported to be in likely violation.

Protection of the right of privacy and the integrity of attorney-client privilege is essential to ensure that clients feel secure in their rights and ability to seek counsel when sharing sensitive and potentially inculpating information with their attorney.

Many, including the Plaintiff, believe that the attorney-client relationship cannot function effectively without these protections because:

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

1. Clients may be less willing to seek legal representation, which could negatively impact access to justice for all individuals.

2. In addition, the violation of public trust, privilege, and privacy does not serve any rational public interest and should not be tolerated in the legal services marketplace.

Here, Plaintiff likely argues what is modernly axiomatic.

Plaintiff seeks relief under nuisance doctrine under California Civil Code § 3491

But here, the plain language as interpreted by a reasonable lay person of the "first mandate", i.e., protection of the public is the highest priority no matter the conflict of interest

Pennhurst State School Hosp. v. Halderman, 465 U.S. 89, 158-59 (1984) ("The sovereign could not and would not authorize its officers to violate its own law; hence an action against a state officer seeking redress for conduct not permitted by state law is a suit against the officer, not the sovereign. Ex parte Young concluded in as explicit a fashion as possible that unconstitutional action by state officials is not action by the State even if it purports to be authorized by state law, because the Federal Constitution strikes down the state-law shield. In the tort cases, if the plaintiff proves his case, there is by definition no state-law defense to shield the defendant. Similarly, when the state officer violates a state statute, the sovereign has by definition erected no shield against liability. These precedents make clear that there is no foundation for the contention that the majority embraces — that Ex parte Young

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

authorizes injunctive relief against state officials only on the basis of federal law. To the contrary, Young is as clear as a bell: the Eleventh Amendment does not apply where there is no state-law shield. That simple principle should control this case.")

**The State Bar Act offers express grant for Plaintiff to bring claims directly against the State Bar.**

Generally, entities and institutions created and instantiated by sovereign constitutional authority and/or expressed through legislative intent are immune from suit and liability unless express consent is given by the sovereign.

Basic tenets of sovereign immunity teach that courts may not ordinarily hear a suit brought by any person against a nonconsenting State. ... States still remain subject to suit in certain circumstances. States may, of course, consent to suit. ... Congress may also enact laws abrogating their immunity under the Fourteenth Amendment.... [and] States may be sued if they agreed their sovereignty would yield as part of the "plan of the Convention."[3]

Here, express consent "to sue or be sued by" Defendant State Bar due to an express grant of the right "to sue or be sued" by aggrieved members of the public.

**Statutory immunity grant for bad-faith conduct.**

**Were the activities of the board ultra vires?**

Ultra Vires Activity is a "question of law."

Holding that "the definition of an ultra vires act" is a "question of law".

**Acts in Light of the Business Judgement Rule (Wind River)**

The Business Judgement Rule is a fundamental principle of corporate law, which generally protects the decisions made by corporate directors and officers from judicial review as long as they are made in good faith and in the best interests of the corporation. This rule is based on the principle that the individuals running a corporation are in the best position to make informed decisions about the corporation's business operations.

**Court may reverse or aver arbitrary and capricious decision-making.**

Here, given the allegations of unlawful conduct and gross negligence meeting the standard of malice, Plaintiff asks if these acts meet the standard of "arbitrary and capricious" under the Administrative Procedures Act.

This court may reverse under the arbitrary and capricious standard only if the agency has relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. See Greater Yellowstone Coalition v. Lewis, 628 F.3d 1143, 1148 (9th Cir. 2010) (as amended) (relying on The Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en banc), overruled on other grounds by Winter v. Natural Res. Def. Council, 555 U.S. 7 (2008)); Envtl. Def. Ctr., 344 F.3d at 858 n.36; Brower, 257 F.3d at 1065. Finally, an agency's decision can be upheld only on the basis of the reasoning in that decision. See California Energy Comm'n v. Dep't of Energy, 585 F.3d 1143, 1150 (9th Cir. 2009); Snoqualmie Indian Tribe v. F.E.R.C., 545

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

F.3d 1207, 1212 (9th Cir. 2008); Anaheim Mem'l Hosp. v. Shalala, 130 F.3d 845, 849 (9th Cir. 1997).

. Wind River is challenging the determination made by BLM, claiming that it is inconsistent with the BLM Manual. While this argument may not necessarily demonstrate a lack of statutory authority vested in BLM, it raises questions about the decision-making process and whether or not BLM's exercise of authority was arbitrary or capricious. In such a case, the court may be more inclined to review the decision and potentially overrule it if it is found to be inconsistent with the BLM Manual or not in the best interest of the corporation.

On the other hand, when it comes to the conduct of PCL and the State Bar, the Business Judgement Rule may be even less applicable. The conduct of these entities in relation to the matriculation scheme and the award of units is not only inconsistent with the regulations and laws, but also involves fraud and misconduct, which are clearly violative of ethical and professional responsibilities. The State Bar, as the vertical and sole monopoly regulator of law schools, has a legal and ethical duty to ensure that its policies and practices do not propagate systemic bias and discrimination, and that any reported misconduct is thoroughly investigated and addressed.

In this case, it is clear that the conduct of PCL and the State Bar does not meet the standard of good faith and best interest of the corporation or the students. The actions of these entities in relation to the matriculation scheme and the award of units are substantively violative of ethical and professional responsibilities, as well as various laws and regulations. This conduct, therefore, does

not fall under the protection of the Business Judgement Rule and may be subject to disciplinary action or sanctions.

Moreover, the fact that the conduct of PCL and the State Bar disproportionately affects certain groups of students, such as African American students and attorneys, further undermines their actions as falling under the protection of the Business Judgement Rule. As previously discussed, the State Bar has a legal and ethical duty to ensure that its policies and practices do not propagate systemic bias and discrimination. The data and evidence showing that African American students are disproportionately affected by the conduct of PCL and the State Bar, highlights the need for a more thorough investigation and addressing of this misconduct.

Here, both students and graduates of PCL are likely impacted; just as having it be ten times (10x) more likely that an African American attorney is reported upon, a school that has an express mission to serve underrepresented communities can reasonably foresee inequitable and disparate impact from institutions allowed to act as scofflaws and in violation of law and duty.

Furthermore, the fact that the conduct of PCL and the State Bar may have resulted in the denial of educational opportunities and financial aid for the affected students, further supports the argument that the Business Judgement Rule does not apply. Such conduct does not align with the principle of acting in the best interest of the corporation or its stakeholders, as it has resulted in significant harm to the students.

Thus, although the Business Judgement Rule is a principle that generally protects the decisions made by corporate directors and officers when they are made in good faith and in the best interests of the corporation, this principle likely does not apply given the circumstances here; in cases where the conduct of the entity is violative of ethical and professional responsibilities, laws, and regulations, and results in significant harm to the stakeholders, the conduct of PCL and the State Bar in relation to the matriculation scheme and the award of units simply does not meet the standard, and is therefore subject to disciplinary action or sanctions.

Acts in Light of the Business Judgement Rule

Wind River contests this determination, claiming that it is inconsistent with the BLM Manual. Even if this claim is accepted at face value, it does not demonstrate an absence of statutory authority vested in BLM. Instead, it merely shows that BLM's exercise of its authority was ill-considered or, at worst, arbitrary and capricious. The authority to determine which areas are roadless clearly belongs to BLM, and Wind River merely challenges how that authority has been exercised. See Students of the California School for the Blind v. Honig, 736 F.2d 538, 546 (9th Cir. 1984) (agency charged with defining statutory language does not exceed statutory authority unless definition is not even reasonably related to statute), vacated as moot 471 U.S. 148, 105 S.Ct. 1820, 85 L.Ed.2d 114 (198

**Regulatory Landscape and Prior Determinations**

**State Bar has a long history of intentional neglect of its duties.**

The Office of California State Auditor has published reports since 2014 that demonstrate the long history, indicative of a "pattern and practice" that remains unchanged after nearly a decade.

In this situation, where the STATE BAR has shown flagrant disregard for established procedures and has failed to enforce the rules and regulations related to the regulation of unaccredited fixed facility law schools, including credible reports of unfair collection practices, extortion, conversion, harassment, defamation, interference with business relationships, and conspiracy to deprive individuals of their constitutional First Amendment privilege and Fourth Amendment protections, it is difficult to trust that such an organization has the best interests of the public at heart. Such blatant disregard for the law and for individuals' rights is unacceptable, and it is important that we hold organizations like the State Bar accountable for their actions.

**Duty imposed by State Bar Guidelines for Registered, Fixed Facility Law Schools**

PCL, its Directors, Officers, and Agents, as a law school, must follow the rule of law; the same is required of the State Bar.

Here, although the use of the word "Guidelines" implies it's use as a term of art in our legal framework, here the term should, and in fact likely is, intended to be read in the context of the regulator providing "bright line" guidance on the requirements. In essence, these "Guidelines" can be wiHOLTONed by the Bar in its enforcement operations, and therefore have the strength of rule.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

It is a blatant misrepresentation that the use of the term here is strictly limited to an "unenforceable" guideline; the guidelines are in fact, examples of bright line violations.

- o **Rule 4.200**

  - ▪ authorizes and makes express under the statute the State Bar's sole authority to register, oversee, and regulate "unaccredited" law schools in California**.**

- o **Rule 4.201**

  - ▪ makes explicit that, unless regulated by another professional licensing organization or otherwise exempt, law schools operating in California must register with the Committee and comply with its rules. [Rule 4.201 adopted effective January 1, 2008; amended effective January 1, 2012.]

**State Bar Guidelines synonymous with Rule**

A law school conducting business in California must register with the Committee and comply with these rules and other applicable law unless otherwise exempt.

These rules have been approved by the Committee and adopted by the Board of Trustees as part of the Rules of the State Bar of California and may be amended in accordance with State Bar rules.

These rules do not apply to law schools accredited by the Committee, law schools approved by the American Bar Association, paralegal programs, undergraduate legal degree programs, or other legal studies programs that do not lead to a professional degree in law. The appropriate legal entity must approve such programs, even if they are offered by an accredited, approved, or registered law school or an institution of which it is a part.

There is an open question as to whether the "deemed accredited" ABA schools violates the provision of the State Bar Act that implies an "active" accreditation schema of State origin be utilized. Although there may be a rational basis in deeming an accredited ABA school as equivalent to one accredited by the adopted State process has likely had two negative market impacts:

3. Although the ABA is a respected organization, it has no formal regulatory or enforcement role; consequently how is this action by the State Bar not a case of inappropriate "entwinement" if both accredited and non-accredited institutions can produce students ready and capable to sit for the Bar?

**California is the only state that has not adopted the ABA model rules.**

Paradoxically, Southwest School of Law is allowed to operate a 2 year program, which is essentially in direct conflict to the established terms in the State Bar Act.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**State Bar Act Mandates Regulatory Oversight of Law Schools**

As was earlier stated, the State Bar is the MONOPOLY designated entity for purposes of law school education leading to licensure.

Section § 6060.7 Approval, Regulation and Oversight of Degree-Granting Law Schools by Examining Committee in relevant part explicitly states:

(b) On and after January 1, 2008, law schools and law study degree programs shall be subject to the following:

(1)The examining committee shall be responsible for the approval, regulation, and oversight of degree-granting law schools that (A) exclusively offer bachelor's, master's, or doctorate degrees in law, such as juris doctor, and (B) do not meet the criteria set forth in Section 94750 of the Education Code.

**Duty breaches: fiduciary, loyalty, inquiry and candor!**

In the alternative, even if it was determined by the trier of fact that the unit award was lawful, Plaintiff asserts negligence, breaches of contractual and fiduciary duties related to PCL's failure to protect its students and treat them fairly; PCL had a duty to:

1. Be prepared to explain how the credit is translated from their systems to the credit system used on other campuses.

This should have been an express statement developed for specific programs or by program type (direct enrollment, faculty-led, third-party provider, etc.).

2.  Have a standard process for deciding how credit is defined and who is authorized to do so.

3.  Be able to demonstrate that credit hours are determined in an equitable way from program to program.

4.  Compare or obtain guidance on policies at other institutions in the marketplace, particularly ones considered likely peers.

**The Federal Office of Postsecondary Education**

**Private Postsecondary Education Act (California)**

The Private Postsecondary Education Act establishes the minimum standards for the operation of entities with graduate (post "undergraduate" or bachelors) degree granting authority.

Pertinent here are California Education Code Sections 94874, 94875, and 94878 as they apply to postsecondary fixed facility law schools, such as PCL, as they outline the requirements and standards for the operation of such institutions.

**Section 94874** specifies that unaccredited fixed facility law schools must be registered with the Committee of Bar Examiners (CBE) and meet certain standards in order to operate.

There is no dispute that PCL has been registered during the period of violative activities.

**Section 94875** requires that the CBE periodically inspect and evaluate the law school to ensure compliance with these standards.

CBE has been negligent in its duties here, by its own admission in its issuance of a "Notice of Noncompliance to PCL in the Summer of 2022 that was retroactive two (2) years. Please see attached notice of "Non-Compliance".

**Section 94878**

The Private Postsecondary Education Act (in accord with the State Bar Act of 1937) allows the CBE to take disciplinary action against the law school for failure to comply with these standards. As the CBE is the monopoly regulator for unaccredited fixed facility law schools in California, it is responsible for enforcing these Education Code sections and ensuring that PCL adheres to the established standards.

The act also created an eponymous regulatory authority, the Bureau of Private Postsecondary Education.

Similarly to other "professional services" or "professional licensure" organizations that are regulated and have a standards body, there is at least one professional association for operators of fixed facility, online or hybrid programs. Commonly referred to by the acronym "CAPPS", a truncation of the California Association of Private Postsecondary Schools.

CAPPS self-reports "over 200" accredited or member organizations.

According to the California Association of Private Postsecondary organization's website (click here to open the CAPPS website):

PPSS schools are created and designed to be student/customer focused.

Generally, a Private Postsecondary School ("PPSS") is designed to provide an alternative to a long-term degree program at a traditional university and offer more focused educational training at a faster pace, often without the optional general education courses that may not be occupationally related to the career goal of the student.

PPSS Schools are characterized by curriculum-driven educational programs that are created to respond to the demands of the business sector. While tenured professors are the stars of the public university systems and are given the freedom to create their courses, instructors in the PPSS system must teach according to the competencies that are contained in the curriculum. Students in a PPSS school must master the curriculum or they will fail to advance. There can be no "courtesy graduations." Employers will not hire graduates who cannot perform on the job and students will not attend a school that does not have a successful placement with employers.

Prior to 2008 PCL was regulated in hybrid fashion in California, which ceased effective 2008, when the State Bar Act rendered the California State Bar the monopoly supervisory regulator for compliant organizations.

There is an open question as to whether or not, given  that the organization has been deemed "non-compliant" and therefore not meeting the de minimus standards,it is currently subject to oversight in the hybrid format, until the State Bar once again deems the school "compliant".

**Legislature has defined the scope of authority and priorities of State Bar activities.**

The State Bar Act of 1927 defines the scope of authority, manner of performance, and priorities for the execution of its mandated duties. Although nearly a century old, the State Bar did not adopt a Conflict-of-Interest policy separate from the ABA Model Rules until January 1, 2019.

**Statute of limitations 6 years for ultra vires policy applications to Plaintiff.**

We hold that a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger. In Wind River's case, its September 1989 filing of a complaint for review was easily within the six-year period. The right to bring a civil suit challenging an agency action accrues "upon the completion of the administrative proceedings."

Here, plaintiff began the recruitment process Summer 2018. It is December 2022, approximately 18 months away from the 6-year requirement.

Therefore, it appears the Plaintiffs claims satisfy the required elements to as live and viable controversy, an open question viable for purposes of adjudication.

**Statute of limitations and ripeness for federal rights violation(s).**

**Ultra Vires Conduct is not Granted Governmental Immunity**

"Because governmental immunity extends 'as far as the state's [immunity] but no further,' no immunity exists for acts performed in a proprietary, non-governmental capacity." Rosenberg Dev., 571 S.W.3d at 746–47 (quoting Wasson, 489 S.W.3d at 433–34).

"Like ultra vires acts, acts performed as part of a city's proprietary function do not implicate the state's immunity for the simple reason that they are not performed under the authority, or for the benefit, of the sovereign." Wasson, 489 S.W.3d at 434.

By implementing policies that allow those Directors and Officers under its authority to operate unlawfully, in essence allowing predation to occur in broad daylight while they look on from a distance, sets STATE BAR policy in direct conflict to its mandate for no rational, justifiable or necessary purpose or benefit to the sovereign, i.e., the State of California.

**Ultra Vires Acts Cannot be Approved by the Board**

> To the sovereign, no rationale justifies unlawful purpose.

There is no, zero, none, null nor any rational and lawfully justifiable purpose in violating statute and duty that sets units awards to unit hours or requires that an accounting be presented upon the request of corporate officers.

**Sovereign Does Not Grant Privilege To Disobey The Law,**

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Sovereign does not grant to persons, corporate or otherwise, the privilege to wantonly violate the law.

Therefore, the circumstances here clearly support a determination of ultra vires action.

**Sovereign Holds Its Licensees to Higher Standards**

**Licensees and employees under the Rules and Guideleins used by the Bar to manage**

**Bad-faith Activity Voids Immunity**

Plaintiff asserts that the nature of the activities here are inherently considered Bad-Faith and demonstrative of "moral turpitude" as discussed above and below.

**Attorney Violations of Law Presumptively Bad-Faith**

The California Legislature codifies in BPC § 6068 the specific Duties of an Attorney. Specifically it is the duty of an attorney to do "all of the following", including:

(b) To support the Constitution and laws of the United States and of this state.

- Here, Licensees were involved in concerted and unlawful efforts, including violations of federal Law in an ongoing

(b) To maintain the respect due to the courts of justice and judicial officers.

(c) To counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense.

(d) To employ, for the purpose of maintaining the

causes confided to him or her those means only as are

consistent with truth, and never to seek to mislead the

judge or any judicial officer by an artifice or false

statement of fact or law.

**Defendants "Unclean Hands"**

Here, Defendants have willfully failed to answer a duly issued "Demand for Documents", as well as earlier inquiries related to the presentation of books and effects.

Plausible Denial Doctrine Defense Avoidable in this Circumstance

The doctor in on Plaza denial is essential to the continued operation of the scheme.

All the plaintive asserts that NL was the bridge intermediary in many cases directly interfacing with the operators of Enterprise P in conspiracy related to managing the complaints code and "managing the complaints" of students for whom Enterprise S as a component of the conduction of its own scheme had in Morrow ultra vires and without statutory authority, but under the color of law and generally enforced, universally as quasi-legislative rules are in the regulatory context.

The combination and interoperation of Enterprise P, and Enterprise S created multiple levels of apparent bureaucracy, engaged in what it claimed with lawful conduct, but which

was not lawful conduct. In fact, it was conduct that per se is anti-competitive; a kin to the cheating banker in the family monopoly game although the breach of trust is far less consequential, no one is truly helped by the conduct

Here enterprise P reports and advertises to the general public the availability of a low cost competitive legal education.

In fact, Enterprise P enters into fraudulent adhesion contracts with the goal of legitimizing the unlawful practice of awarding fewer credits than lotta man's. It's a circumstance.

The goal was clearly to maintain the appearance of a track record of success, sufficient success, at least to accomplish two goals:

       a.   One continuous racket, a "1L" mill, where clearly underqualified students were recruited for the purpose of tuition generation, where the funds were not spent on the provision of educational or support services for the students.

          i.   Here, Board Members were "recruited" via volunteer election, the majority of whom appeared to have had very little experience serving on a Board and were not informed of their statutory duties and obligations by their licensee peers, solely that they were "immune from suit" as members operating in "good faith" at a not-for-profit.

ii. his assertion, made often in writing by SPIRO, was a misrepresentation of fact, for co-conspirators and actors in the commission of an unlawful act are precluded from a defense of "good faith" when they knew or should have known.

iii.

iv. Plaintiff asserts that "good faith" requires more than "closing ones eyes while muttering a prayer and

v. Plaintiff asserts that, in fact,

vi. until it became viable to cash out that is still the assets and put them in a new form where the complexities of managing the institution bylaws would not preclude them from for the graft: and,

b. two insure that no one raise clouds sufficient to threaten their skin, using mechanisms like extortion harassment and other intentional conflict intentional conduct architected to cause and successfully causing emotional distress.

Harassing activities, included items X through the Inc. here

**Plaintiff brings viable ultra vires claim against entity and its administration.**

"The term ultra vires is most commonly used to refer to acts that are beyond the scope of a corporation's purposes, as set forth in their articles of incorporation or bylaws. However,

the term also has a broader meaning, implicating all actions that are 'performed without any

authority to act on the subject.'"

See Parramore v. Tru-Pak Moving Sys., 286 F. Supp. 2d 643, 650 (M.D.N.C2003) (quoting

Black's Law Dictionary 1522 (6th ed. 1990))

The Plaintiff asserts facts demonstrating acts taken by the officer outside his legal authority and

discretion; these alleged acts that fall far outside the principles of "good faith and fair dealing"

and thusly are statutorily anathema to immunity in this context.

**Test to determine whether a government policy lies outside the agency's legal authority.**

To determine if a plaintiff has plead a viable ultra vires action, the court must construe relevant

statutory provisions that define the scope of the governmental body's legal authority, apply

those statutes to the facts as pleaded by the plaintiff, and ascertain whether those facts

constitute acts beyond the agency's legal authority. City of New Braunfels v. Tovar, 463

S.W.3d 913, 919 (Tex. App.—Austin 2015, no pet.).

> When, as here, the plea to the jurisdiction challenges the
>
> sufficiency of the pleadings rather than the existence of any of the
>
> jurisdictional facts alleged by the plaintiff, the court should make
>
> the jurisdictional determination as a matter of law based solely on
>
> the facts alleged by the plaintiff, which are taken as true and
>
> construed liberally in favor of jurisdiction. **Prewett v. Canyon**
>
> **Lake Island Prop. Owners Ass'n, No. 03-18-00665-CV, 2019**

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**WL 6974993, at \*1 (Tex. App.—Austin Dec. 20, 2019, no pet.)**

(mem. op.) (citing Miranda, 133 S.W.3d at 225, 227).

**California Office of Administrative Law**

The California Office of Administrative Law is the organization that is responsible for verifying that a policy meets the legal requirements.

5. Underground Rules – An underground rule is one that has been implemented without following the required approach under California's Administrative Law Act.

6. Plaintiff asserts on reasonable information that either the State Bar has failed to submit its policies to the Office of Administrative Law for proper evaluation under that agency's review schema or it has failed to properly acknowledge and incorporate the agencies feedback.

7. Underground rules are essentially unenforceable because they do not meet the requirements of the Act.

8. Several issues exist within the Act itself as well as with the policies of the Bar, e.g., in "deeming" ABA accredited law schools as state accredited, even though California is the ONLY state in the nation not to adopt the entirety of the ABA model rules.

   1. State Bar will likely argue that this is an efficient approach to regulating and maintaining a running the marketplace.

9. Unfortunately for the State, breaking the law is never deemed

an appropriate solution for market optimization.

10. Allowing an institution to operate without fear of legal reprisal is beyond negligence and a culpable act under the constructive standard of "knew or should have known."

Here, State Bar regulatory policies are by law subject to review by the California State Office of Administrative Law. In addition, the State Bar Act authorizes and mandates the Bar to devise and maintain "the detailed regulatory ruleset" that must be implemented but is beyond the scope of the Legislator's to determine.

**Defendants offer no denials nor acts in mitigation.**

For more than two hundred (200) days, no defendant has substantively publicated a denial or rebuttal to the facts asserted by plaintiff in numerous email or telephonic communications.

**The Board is "subject" to the Bylaws and must follow them faithfully.**

California Business and Professions Code is clear that, unless exigent circumstances exist necessitating the performance of duty by an individual officer, the Board is "subject" to the Bylaws, and must follow them faithfully or amend them in accord with statute and the Bylaws themselves.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**Exigent Circumstance "Exemption" under Enron**

The statute empowering Boards and their members is also clear California Business and Professions Code is clear that,  exigent circumstances exist necessitating the performance of duty by an individual officer, the Board is "subject" to the Bylaws, and must follow them faithfully or amend them in accord with statute and the Bylaws themselves.

Here, the Directors and Officers of the Corporation have "invalidated" a valid election result, unlawfully since the required process was not even attempted, then, without asking for nor obtaining written resignations as required by the Bylaws in the case that the election was fairly and faithfully held. Plaintiff submits correspondence in demonstration.

**Fraud and misrepresentation.**

Fraud encompasses a broad range of human behavior, including " ' * * * anything calculated to deceive, * * * whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth or by look or gesture.' " (Regenold v. Baby Fold, Inc.(1977), 68 Ill.2d 419, 435, 12 Ill.Dec. 151, 369 N.E.2d 858, citing People ex rel.Chicago Bar Association v. Gilmore (1931), 345 Ill. 28, 46, 177 N.E. 710; In re Alschuler (1944), 388 Ill. 492, 503-04; Black's Law Dictionary 594 (5th ed. 1979).)

**Fraud includes suppression of the truth.**

Courts have previously disciplined lawyers even though their fraudulent misconduct did not harm [99 Ill.2d 252] any particular individual. In re Lamberis (1982), 93 Ill.2d 222, 229, 66

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Ill.Dec. 623, 443 N.E.2d 549.""The Court has broadly defined fraud as any conduct calculated to deceive, whether it be by direct falsehood or by innuendo, by speech or silence, by word of mouth, by look, or by gesture. Fraud includes the suppression of the truth, as well as the presentation of false information.

In re Frederick Edward Strufe, Disciplinary case no. 93 SH 100 where the Court stated that "Fraud has been broadly defined as anything calculated to deceive, "It is clear and well-established Illinois law that any attempt by any officer of the court, whether attorney or judge, to deceive is considered fraud, and when the attempt to deceive occurs in a judicial proceeding, it is "fraud upon the court".

Here, Defendants sought to prevent Plaintiff from understanding that what initially appeared "innocent error" was in fact a concerted effort to preserve the "unfair and unlawful" practices prevalent.

**Defendants Ultra Vires Acts Are Presumptively Bad-Faith**

The term 'Bad-Faith' implies that the actor 'intentionally committed acts which [s]he knew or should have known were beyond h[er] lawful power.' (Citation.) As so used, 'Bad-Faith' entails actual malice as the motivation for […] acting ultra vires. The requisite intent must exceed mere volition; negligence alone, if not so gross as to call its genuineness into question, falls short of 'Bad-Faith.' 'Bad-Faith' also encompasses acts within the lawful power of a judge which nevertheless are committed for a corrupt purpose, i.e., for any purpose other than the faithful discharge of judicial duties. In sum, 'Bad-Faith' is quintessentially a concept of specific intent, requiring consciousness of purpose as an antecedent to a judge's acting maliciously or corruptly.'

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

(Spruance v. Commission on Judicial Qualifications, supra , 13 Cal.3d 778,795--796, 119 Cal.Rptr. 841, 853, 532 P.2d 1209, 1221.)

Here, PCL's conduction of <u>Enterprise P</u> compels the conclusion in the instant case that Defendant's primary concerns were first to stop Plaintiff's inquiries and inflict "punishment" before Plaintiff could be afforded a due process determination that no moneys were owed and that the school is and was in a state of non-compliance, a material fact potentially impacting transfers as well as admissions to other schools to pursue alternate programs. such that it is questionable under what circumstances punishment was warranted and, second, to accomplish her objectives in a manner to ensure that such conduct would be insulated from judicial review and collateral attack.

State Bar is aware in real time of the occurrences, as is the California DOJ and the LA County Sherrify's Department as evidenced by the copious email record.

Request for declaratory relief related to the following questions:

**What would be a reasonable response to such circumstance if "Protection of the Public" regardless of the conflict of interest is the imperative to the regulator?**

"The duties of public office demand the absolute loyalty and undivided, uncompromised allegiance of the individual that holds the office. ( Thomson v. Call, supra, 38 Cal.3d at p.

648; Stigall v. City of Taft (1962) 58 Cal.2d 565, 569 [ 25 Cal.Rptr. 441, 375 P.2d 289].)

Yet it is recognized "'that an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government.'" ( Stigall v. City of Taft, supra, 58 Cal.2d at p. 570, quoting United States v. Mississippi Valley Generating Co. (1961) 364 U.S. 520, 549-550 [5 L.Ed.2d 268, 288, 81 S.Ct. 294].) Consequently, our conflict-of-interest statutes are concerned with what might have happened rather than merely what actually happened. ( Ibid.) They are aimed at eliminating temptation, avoiding the appearance of impropriety, and assuring the government of the officer's undivided and uncompromised allegiance. ( Thomson v. Call, supra, 38 Cal.3d at p. 648.) Their objective "is to remove or limit the possibility of any personal influence, either directly or indirectly which might bear on an official's decision. . . ." ( Stigall v. City of Taft, supra, 58 Cal.2d at p. 569, italics in original; see also People v. Vallerga (1977) 67 Cal.App.3d 847, 865 [ 136 Cal.Rptr. 429]; People v. Watson (1971) 15 Cal.App.3d 28, 39 [ 92 Cal.Rptr. 860].)"

[People v. Honig, 48 Cal.App.4th 289 (Cal. Ct. App. 1996)]

What would be the duty of the reasonable employee who was not also a Member of the Bar?

What would be the duty of the reasonable employee who was also a Member of the Bar?

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

What would be the duty of the employee who was also a Member of the Bar who had COI where they can legitimately invoke their rights under the 5th or 6th Amendment?

What would be a reasonable response time in such circumstance when all of the parties have acknowledged "time is of the essence"?

Why should the regulator allow the school to persist in the willful dereliction of its duties when it knows that many of the issues, including loss of time and the correspondent issues that are not easily remedied in traditional damages?

What duty does it have to those it has negligently, but actively, "put in peril" through lax oversight and complicit conduct?

Is it reasonable to expect change when lack of actual will, if not the ability, of the State Bar to comport its conduct to its mandate?

To Plaintiff's knowledge, State Bar did not send inquiry or admonishment until May of 2022.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Here, State Bar's Enterprise S, operated by the sole monopoly designated regulator and enforcement agency in the sphere, was noticed and knew of the conduct of Enterprise P in real time, and in fact stayed silent until Plaintiff's filing for a restraining order, determination of facts and suit.

**Circumstances predetermine cause to issue remedy and rule against defendant.**

Making false statements of law, by falsely attributing statements by an author is engaging in Bad-Faith, willful misconduct due to intentional disregard of the law, and as demonstrated in this pleading weighs heavy against the defendant.

**Board members aid and abet the continuance of criminal harassment.**

Civil harassment and retaliation are standard tactics used to suppress those requesting lawful and substantive change.

**Did the conduct of Enterprise P and Enterprise S meet the threshold for criminal referral? As individual Enterprises; As individual persons?**

Here, retaliation is the act of using official resources to unduly influence, "punish", or otherwise coerce students into comportment with the school administration's desired behavior.

"As noted, some cases suggest that a plaintiff also must plead specific intent to facilitate the underlying tort. We need not decide whether specific intent is a required element because, read liberally, the fifth amended complaint alleges that[defendant] intended to assist the

– 334 –

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Association in breaching its fiduciary duties. In particular, plaintiffs allege that, with knowledge of the Association's breaches,[defendant] 'gave substantial encouragement and assistance to [the Association]to breach its fiduciary duties.' Fairly read, that allegation indicates intent to participate in tortious activity." (Nasrawi, supra, 231 Cal.App.4th at p. 345,original italics, internal citations omitted.)

**Conspiracy**

Unlawful conduct agreed upon by more than the number of individuals required to carry out the tort or crime is Conspiracy.

Here, Plaintiff has clearly alleged concerted action amongst the Defendants. Plaintiff asserts that communications between the parties, as well as the coordinated conduct makes plain conspiracy in this case.

"[W]e consider whether the complaint states a claim based upon 'concert of action' among defendants. The elements of this doctrine are prescribed in section876 of the Restatement Second of Torts. The section provides, 'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other soto conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.' With respect to this doctrine, Prosser states that 'those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by HOLTONation or request, or who lend aid or encouragement to the

– 335 –

wrongdoer, or ratify and adopt this acts done for their benefit, are equally liable with him. [para.] Express agreement is not necessary, and all that is required is that there be a tacit understanding . . . .' " (Sindell v. Abbott Laboratories (1980) 26 Cal.3d 588, 604[163 Cal.Rptr. 132, 607 P.2d 924], internal citations omitted.

**Board members had duty to prevent tortious act.**

The State Bar's actions betray a fundamental lapse in ethical and moral integrity, and a wholesale disregard for the values and principles that undergird the legal profession

While plaintiff accepts that it is well established that 'Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting. "As a general rule, one owes no duty to control the conduct of another . . . ." (Austin B. v. Escondido Union School Dist. (2007) 149 Cal.App.4th 860, 879 [57 Cal.Rptr.3d 454],internal citations omitted.)

Here, corporate "officers" including Hector Pena, David Bouffard, and Prem Sarin have filed (or caused to be filed) false statements to the state of California (see SOI's filed), made intentional misstatements and representations of law (specifically licensed attorney's and former Dean Ira Spiro and former College President Christina Gonzalez).

RICO Civil Tort Remedy Provisions Apply to All Defendants either by engaging in conduct that satisfies the overt and predicate acts RICO requirements. and willful unlawful conduct, e.g., offering fewer units to students under color of law and the authority of the regulator to performance, tortious conduct in support of unlawful scheme.

The civil remedy provision requires a plaintiff to prove: (1) a violation of a § 1962 prohibited act; (2) injury to business or property; and (3) that the defendant's violation caused the injury

**R.I.C.O. Defendants**

With its charge of "racketeering" and its threat of treble damages and attorney's fees, RICO may seem like the blunt instrument of civil litigation. RICO's requirements of a culpable "person" who conducts the affairs of a distinct "enterprise" through a "pattern" of "racketeering" in a way that proximately causes injury can make RICO seem abnormally difficult to codify. Adding to the complexity inconsistent holdings among courts on how to interpret several key provisions of the broadly drafted RICO statute depending on the circumstances. S

Here, because the core facts are irrefutable and easily understood, a great deal of complexity can be avoided.

XXIII.  Plaintiff's moving papers, and the responses from the Racket in email and court filings, which are not subject to any form of privilege, show how the fraudulent schemes involve more than one overt act of extortion, and the ongoing threat of harm that exists from the Racket (officially and unofficially) to collect fees, or avoid damages, to the detriment and deprivation of right of the Plaintiff under "color of law and right."

XXIV.  PCL nor Enterprise P should be rewarded for using Enterprise S protection.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

XXV.  The State Bar nor Enterprise S should not be rewarded or unjustly enriched for the provision of protection and assistance to an unlawful scheme.

XXVI.  Plaintiff should not be deprived of "benefit of the bargain" especially given the inequities of these facts.

XXVII. There exists an acute threat of continuing schemes to defraud non-active market participants like Plaintiff; even DURAN, HOLTON, RANDOLPH, HOLTON, LTW, NL, AUC, and SPIRO, HCP, GONZALEZ, BOUFFARD, ANTONIO, GILLENS, DUPREE, FRANCO, SARINANA as well as other members of  Enterprise P and Enterprise S, as actors seeking to harm Plaintiff or conceal culpable conduct, and thus continue in Enterprise P and Enterprise S, now likely under state action under vertical merger, for corrupt motives and undisclosed interests.

i)   The Racket serves to restrain and control trade among the markets affecting interstate commerce:

XXVIII.  **The Restraint on Upward Mobility is a per se restraint of trade.**

Plaintiff cannot locate a strictly legal definition for "upward mobility" as a term of art.

Generally, the concept of upward mobility refers to the ability of an individual to improve their social and economic status through education and career opportunities. This may include gaining access to higher paying jobs, better working conditions, and greater opportunities for advancement.

The rights or privileges to "upward mobility" are often protected through laws and policies that promote equal access to education and employment opportunities, and that protect individuals from discrimination based on race, gender, age, and other protected characteristics. Other rights, including explicit state constitutional grants of privacy[32] and public access to government records

XXIX. The Racket's monopoly uses artificial state law or rule "interpretations" as an enforcement and deterrence mechanism. At times PCL invoked the name or solicited direct participation from Bar Staff and likely other Directors and Officers of the State Bar.

i) Plaintiff asserts the Racket's rely on the protection of <u>Enterprise S</u>, in deliberate complacency and disregard for public members or their clearly foreseeable and inevitable injuries. Given the failure of the State Bar to comport its conduct to its mandates.

XXX. There exists an acute and continuing threat of schemes to defraud or conceal from the Federal and State Legislature, students, law enforcement agencies, or other stakeholders, including parents, ordinary citizens and corporations, including insurance companies like ANV, as no substantive enforcement action has been adopted by the monopoly regulator in respect to the operation or interoperation of <u>Enterprise P</u> or associated <u>Enterprise S.</u>

XXXI. STATE BAR, using its "discretion" and "lack of resources" treats unknown sums as being "de minimis" and "not worth" STATE BAR time or resource. DURAN,

---

[32] Privacy is of paramount importance to the citizens of the state as it is I's Constitutions first grant; the California Constitution, Article 1, section 1: "The state Constitution gives each citizen an "inalienable right" to pursue and obtain "privacy"".

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

WILSON, and various operators of both <u>Enterprise P</u> and <u>S</u> partake in conduct designed to conceal the nature of these acts.

XXXII. Other parallel schemes available to the defendant <u>Enterprise P</u> and <u>Enterprise S</u> operators to support fraud and other venture exist through "Attorney Misconduct Complaint in 200+ Languages," constructive knowledge through affidavit and record likely distributed in the files and archives of the "Complaint Review Unit," "In RE: Walker,"-tactics, the anecdotally impervious "Client Security Fund" and arguably capricious and ill-considered, if not wasteful and reckless funds distributions to "Legal Aid" entities of limited impact from IOLTA "income" to active market participants.

XXXIII. Plaintiff asserts that the notion of diversity, equity, and inclusion is fundamentally based in the notion of equity and "fair" distribution among groups mot based on a protected class. Upward mobility is implicit, frankly because it is pointless to say that there is "equal numerical representation by percentage of population" if populations share unfair and targeted distribution of burden.

(1) Here, Plaintiff argues that State Bar conduct, including targeting African American / Black attorneys capriciously and repeatedly may illustrate that increasing the "diversity base" with the same practice simply increases the likelihood of further abuse of the class.

(2) Here, State Bar and Enterprise Defendants may argue that the state interest in a diverse field of attorneys is greater than both the rights of attorneys, who by statutory definition, Members of the Bar (which see, State Bar Act of 1937) and **not** " members of the public" in any case.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

(3) Here, Plaintiff argues that most students enter the field for two reasons: a desire to help others and a desire to, at least in part, create or partake in the opportunity of the United States, to enjoy the pursuits of the "middle" class or whatever "class" of lawful interests one desires to engage in. Few enter the field with the desire to "commingle IOLTA funds." That does not mean that the commingling is difficult to accomplish or acceptable, but if the application of the rule and castigation are unjust, that is simply the case and should be averred.

(4) Perhaps most glaringly, since December 2, 2022, PCL has been on "probationary" status, with enhanced reporting and compliance requirements to the STATE BAR.

    *i.*    Why is its tolling and breach of contract under including breaches of duties and acts likely indicative of moral turpitude, considered compliant and fair business conduct? On what basis can the operators of Enterprise S defend their conduct? Plaintiff asserts it is more likely than not the conduct is both reprehensible and indefensible.

    It is for the finder of fact to determine.

XXXIV. Plaintiff demonstrates the Courts and the State Bars constructive knowledge of the predicate and parallel patterns of racketeering activity have similar beneficiaries (Enterprise P and Enterprise S), similar methods of non-judicial fraud and fabrication of evidence followed by or supporting judicial fraud; cases or defenses that seek, prioritize, or pay only legal fees that are filed frivolously without standing or probable cause.

i) This strategy is similar to SLAPP, but functions also in part by the request and imposition of Statutory Attorney's Fees, for which the vast majority of pro se plaintiffs are not eligible to receive or equipped to adequately defend against when they in fact may have very good cause.

(1) This specific approach was used by SPIRO in his defense of his co-defendants, the Enterprise P, the method is fraudulent cases or defenses used to extort the public and with contempt abuse the authority of the Court(s) via protection of the Racket.

XXXV. For Plaintiff and public the risk of irreparable acute harms from misconduct and attorney malfeasance more likely lies in a State Bar unchecked free to determine its own prerogatives and rule structure regardless of legislative intent or statutory mandate.

XXXVI. As stated earlier, the imbalance of power between the plaintiff victim and the Enterprise operators and collaborators, e.g., PCL and the STATE BAR, is profound.

XXXVII. Plaintiff shows all schemes are advanced by electronic Court transmission of fraudulent documents sometimes across state lines supported by email or cellular communication; where Racket members are required in most instances to file electronically, although Enterprise S and Enterprise P may upon design use both or neither, to induce fear or conceal evidence, to meet dependent goals and circumstance).

**Jurisdiction and Venue.**

**The Parties:**

**Culpable Defendants in this action under RICO.**

Ⅰ. Defendant THE STATE BAR OF CALIFORNIA is a culpable person and bad actor who can't operate distinctly of DURAN, WILSON, AREPYTYAN, DAVYTAN, nor WILSON here, who each use and direct <u>Enterprise S</u> as conduit to acquire, directly or indirectly, <u>Enterprise P</u> and <u>Enterprise S</u> interests or monies and affecting interstate commerce through a pattern of racketeering activity with at least legal malice, fraudulent concealment, ratification, and judicial fraud. <u>Enterprise S</u> also acts as its own purported supervisor for IOLTAs, governance by its majority active market participants among Board of Trustees from <u>the active market</u> and <u>Enterprise S</u>.

Ⅱ. Plaintiff's business and property were directly and proximately injured by reason of defendant THE STATE BAR OF CALIFORNIA's violation of § 1962(a)-(b), and by its official actors bad acts under § 1962(c)-(d) and Cal. Gov. § 815.6. Defendant THE STATE BAR OF CALIFORNIA had a negative duty under Cal. Gov. Cod. § 815.6 not to engage in conduct listed under 18 U.S.C. § 1961. STATE BAR and DURAN are both named defendants. Cal. Gov. Cod. § 815.3(b). This entity is used for protection, is not sovereign, and must be liable. Official acts of DURAN are subject to 42. U.S.C. § 1983 claims, here, too, for which STATE OF CALIFORNIA is liable under Cal. Gov. Cod. § 815.3(b).

Ⅲ. Defendant THE STATE BAR OF CALIFORNIA is a culpable party and bad actor who can't operate distinctly of DURAN, HOLTON, DAVYTAN, nor WILSON

here, who each use and direct <u>Enterprise S</u> as conduit to acquire, directly or indirectly, <u>Enterprise P</u> and <u>Enterprise S</u> interests or monies and affecting interstate commerce through a pattern of racketeering activity with at least legal malice, fraudulent concealment, false ratification, and judicial fraud. <u>Enterprise S</u> also acts as its own purported supervisor for public IOLTA protection, governance by its majority active market participants among Board of Trustees from <u>Enterprise P</u> and <u>Enterprise S</u>.

( 1 )

**PLAINTIFF**

I.   Plaintiff TODD R. G. HILL ("HILL" or "Hill" or "Plaintiff") is a United States citizen, member of the public, individual entrepreneur, and person, with his principal place of business in Quartz Hill, California. Plaintiff is in the business of specialty chemical services. Plaintiff is a member of the public not previously admitted to any Bar.

DEFENDANTS

I.   Defendant PEOPLE'S COLLEGE OF LAW ("PCL") is a California law corporation and culpable person with its principal place of business in Los Angeles, CA. PCL is subject to fee-based registration and annual licensing  by THE STATE BAR OF CALIFORNIA to provide legal education services through its associated persons including SPIRO, POMPOSA, SARINANA, GONZALEZ, PENA, BOUFFARD, ANTONIO, GILLENS, FRANCO and others to be determined; who then act as duly authorized court officials, e.g., as registrar and other compliance functions like attendance, (bound to Cal. Bus. and

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Prof. Code §§ 6068, 6077) on behalf of other persons controlled by THE STATE BAR OF CALIFORNIA (in operational practice, and at law). PCL fraudulently schemes through the judiciary's "administrative arm", presenting U.S. citizens and judicial officers a danger of imminent lawless action through its associated actors.

II. Defendant THE STATE BAR OF CALIFORNIA ("STATE BAR" and/or Enterprise S operating here through DURAN, WILSON, MAZER, and DAVTYAN) is a public corporation that can be sued, and is non-sovereign or sovereign culpable person, whose principal places of business are San Francisco and Los Angeles, California respectively. According to its state agency website, "The State Bar [of California] licenses more than 250,000 attorneys, investigates approximately 16,000 complaints of attorney misconduct annually, and distributes over $78 million in grants to legal aid organizations. We serve the people of California through careful oversight of the legal profession." https://www.calbar.ca.gov/About-Us/Our-Mission

III. Defendant STATE OF CALIFORNIA ("STATE" or "State") is a sovereign public entity among the United States of America ("U.S. or "United States") and subject to Plaintiff's denied claim, and culpable person, whose agents or assigns may claim immunity or indemnification as codified explicitly to meet causes of action, or acts, when clearly articulated policy backs statutorily codified immunities, only upon showing operational or ministerial decisions of state actors accord with the same, and that active supervision of State exists after 2015.

IV. HECTOR CANDELARIO PEÑA RAMIREZ aka HECTOR P. RAMIREZ, aka HECTOR C. PEÑA, ("HCP") is an individual and culpable person residing in Los Angeles County,

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

California. HCP is in the business of defrauding others and presenting it as legal education services as a "court official" under fee-based license and the authority of the STATE BAR. HCP is also in the business of immigration legal assistance and uses his credentials and control of Enterprise P to fraudulently scheme through the People's College of Law ("PCL"). HCP poses a clear and present danger to U.S. citizens and volunteer faculty officers by presenting them with the danger of imminent lawless action.

V.   CHRISTINA MARIN GONZALEZ, ESQ. ("CMG") is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). CMG is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

VI.   ROBERT IRA SPIRO, ESQ. ("SPIRO") is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). SPIRO is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

VII.   JUAN MANUEL SARIÑANA, ESQ. ("JMS") is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). JMS is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

VIII.   PREM SARIN ("PRS", "SARIN") is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). SARIN is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

IX.   DAVID TYLER BOUFFARD ("BFD", BOUFFARD) is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). BOUFFARD is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

X.   JOSHUA GILLENS, ESQ. ("GLN") is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). GLN is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

XI.

XII.   CLEMENTE FRANCO, ESQ. is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). FRANCO is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services. College of Law ("PCL"). SANCHEZ is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

XIII.   PASCUAL TORRES, ESQ. ("PST") is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). PST is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

XIV.   CAROL DUPREE, ESQ. is an individual who has not been explicitly mentioned in the previous paragraphs. However, it is possible that CAROL DUPREE is associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"), and may be involved in fraudulent activities related to PCL.

XV.   GARY SILBIGER, ESQ. is an individual who has not been explicitly mentioned in the previous paragraphs. However, it is possible that GARY SILBIGER is associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"), and may be involved in fraudulent activities related to PCL.

XVI.   JESSICA "CHUYITA" VIRAMONTES, ESQ. ("JCV") is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). JCV is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

XVII.   EDITH POMPOSO ("EPP") is an individual who has not been explicitly mentioned in the previous paragraphs. However, it is possible that EDITH POMPOSO is associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"), and may be involved in fraudulent activities related to PCL.

XVIII.   ADRIANA ZUÑIGA NUÑEZ is an individual who has not been explicitly mentioned in the previous paragraphs. However, it is possible that ADRIANA ZUÑIGA NUÑEZ is associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"), and may be involved in fraudulent activities related to PCL.

XIX.   Defendant ALFREDO HERNANDEZ ("ALH") is an individual, and culpable person believed residing in Orange County, California or Los Angeles County, California in the business of providing legal services as a court official under fee-based license and authority of STATE BAR is listed as the primary point of contact on the press release for one fraudulent derivative action filed by PCL, which shows an acute threat of continuing based on a parallel series of fraudulent, overt acts using the color of official right from Enterprise S. He appears on Racket communications.

XX.   Defendant JOAN RANDOLPH. ("RANDOLPH") is an individual, and culpable person, in the business of providing legal services as a court official secretary in the Office of the GC, as an employee, agent, and authority of STATE BAR, providing protection for PCL, HCP, LEONARD, NUNEZ, CARDONA, WILSON, PST and RUBEN DURAN, ESQ. through "Office of General Counsel," and for "Complaint Review Unit," and for STATE BAR's public insurance Client Security Fund ("CSF") scheme to recover damages paid by CSF to victims on behalf of a disbarred STATE BAR attorney in federal

bankruptcy proceedings, concurrently defending individual, non-sovereign state actors Enterprise S, STATE BAR, DAVYTYAN, DURAN against claims of misrepresentation, fraud, breah of duty, contempt of Administrative Orders, corruption where DURAN is defended by DAVYTYAN, WILSON, HOLTON, CARDONA, KRISILNIKOFF, RANDOLPH  and various others in his capacity as Board of Trustees Chairman for law firm STATE BAR with consubstantial protection of DURAN's partnership in law firm Best Best & Krieger ("BBK"), and individual defendant, DURAN, and as Enterprise S.

   XXI. Defendant RUBEN DURAN, ESQ. ("DURAN") an inculpated individual, appears to be in the business of concealing the function and existence of Enterprise S.

i)   College of Law ("PCL"). SANCHEZ is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

ii)

iii) PASCUAL TORRES, ESQ. ("PST") is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). PST is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

iv)

v)   CAROL DUPREE, ESQ. is an individual who has not been explicitly mentioned in the previous paragraphs. However, it is possible that CAROL DUPREE is associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"), and may be involved in fraudulent activities related to PCL.

vi)

vii) GARY SILBIGER, ESQ. is an individual who has not been explicitly mentioned in the previous paragraphs. However, it is possible that GARY SILBIGER is associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"), and may be involved in fraudulent activities related to PCL.

viii)

ix) JESSICA "CHUYITA" VIRAMONTES, ESQ. ("JCV") is an individual who has been associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"). JCV is believed to be involved in fraudulent activities related to PCL, as well as being involved in HCP's schemes to defraud others and present it as legal education services.

x)

xi) EDITH POMPOSO ("EPP") is an individual who has not been explicitly mentioned in the previous paragraphs. However, it is possible that EDITH POMPOSO is associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"), and may be involved in fraudulent activities related to PCL.

xii)

xiii) ADRIANA ZUÑIGA NUÑEZ is an individual who has not been explicitly mentioned in the previous paragraphs. However, it is possible that ADRIANA ZUÑIGA NUÑEZ is associated with HECTOR CANDELARIO PENA ("HCP") and the People's College of Law ("PCL"), and may be involved in fraudulent activities related to PCL.

**Duran is an active licensee and market participant.**

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Defendant DURAN provides legal services as a court official under fee-based licensure and grant of authority of the STATE BAR, such license optionally renewed annually. DURAN, also provides legal services as a corporate officer and Chairman of the Board of the STATE BAR, providing legal services as Chairman to its Board of Trustees, and providing legal services concurrently controlling the conduct of STATE BAR, PCL, HCP, NMC, CLF, DURAN, GRANDT, CSF, BW, while STATE BAR and STATE each prosecute and defend or fail to prosecute and defend the same (administratively, criminally, or civilly) while being paid indirectly or directly or through IOLTAs, by the conduct at issue, also represented by GRANDT directly and derivatively for Board of Trustees in a unity of interests to conceal or commit overt acts together or as part of Complaint Review Unit separately regulating the conduct at issue, and for OCTC, OGC, CARDONA, DAVYTYAN, WILSON, NUNEZ, and DURAN currently control Enterprise S through the operations of the STATE BAR. DURAN fraudulently benefits from or controls the Racket and judiciary, an as such is responsible for numerous tolling violations of law to the detriment of U.S. citizens and judicial officers, in clear violation of both duty and law, for reasons detailed above and below.

LEAH WILSON, ESQ. ("WILSON") is an individual who, along with DURAN, AYRAPETYAN, DAVYTYAN, and others, uses and directs Enterprise S as a conduit to acquire interests or monies related to Enterprise P and Enterprise S. They are accused of engaging in a pattern of racketeering activity with legal malice, fraudulent concealment, ratification, and judicial fraud, which affects interstate commerce. Enterprise S also acts as its own supervisor for IOLTAs and is governed by its majority active market participants on the Board of Trustees from the active market.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

SUZANNE CELIA GRANDT, ESQ. ("GRANDT") is an individual who, like WILSON and other accused parties, allegedly uses and directs Enterprise S to acquire interests or monies related to Enterprise P and Enterprise S. They are accused of engaging in a pattern of racketeering activity with legal malice, fraudulent concealment, ratification, and judicial fraud, which affects interstate commerce. Enterprise S also acts as its own supervisor for IOLTAs and is governed by its majority active market participants on the Board of Trustees from the active market.

VANESSA HOLTON, ESQ. ("HOLTON") is an individual who, along with DURAN, AYRAPETYAN, DAVYTYAN, and others, uses and directs Enterprise S as a conduit to acquire interests or monies related to Enterprise P and Enterprise S. They are accused of engaging in a pattern of racketeering activity with legal malice, fraudulent concealment, ratification, and judicial fraud, which affects interstate commerce. Enterprise S also acts as its own supervisor for IOLTAs and is governed by its majority active market participants on the Board of Trustees from the active market.

ELLIN DAVYTYAN ("DAVYTYAN") is an individual and General Counsel of the State Bar of California who, along with other accused parties, allegedly uses and directs Enterprise S to acquire interests or monies related to Enterprise P and Enterprise S. They are accused of engaging in a pattern of racketeering activity with legal malice, fraudulent concealment,

ratification, and judicial fraud, which affects interstate commerce. Enterprise S also acts as its own supervisor for IOLTAs and is governed by its majority active market participants on the Board of Trustees from the active market.

LOUISA AYRAPETYAN, , JUAN DE LA CRUZ, , DONNA HERSHKOWITZ, ESQ. ("HERSHKOWITZ"), CARMEN NUNEZ, ELIZABETH HOM, JAY FRYKBERG, GINA CRAWFORD, LARRY KAPLAN, DAVID LAWRENCE, HON. JAMES HERMAN, PAUL A. KRAMER, CAROLINE HOLMES, IMELDA SANTIAGO, NATALIE HOPE, STEVE MAZER, YUN XIANG, JOAN RANDOLPH, JEAN KRISILNIKOFF, and ENRIQUE ZUNIGA, ROBERT S. BRODY are individuals who may also be associated with the accused parties mentioned above and allegedly involved in the same pattern of racketeering activity with legal malice, fraudulent concealment, ratification, and judicial fraud that affects interstate commerce. They may also use and direct Enterprise S to acquire interests or monies related to Enterprise P and Enterprise S, and are governed by its majority active market participants on the Board of Trustees from the active market.

XXII. Defendant VANNESSA HOLTON ("HOLTON" OR "VAH") resides in, California. HOLTON is in the business of founding or starting companies, mergers, acquisitions, and venture capital. HOLTON is the daughter of Bay Area venture capitalist CLIFF KRISNIKOFF, investing in interstate securities. HOLTON is among the pawns extorted by HCP for the Racket with DURAN and GRANDT, also protected by the Racket, in pursuit of corrupt motives and interests unrelated to HOLTON claims or defenses.

XXIII. Defendant PASCUAL TORRES, ESQ. ("PST") is an individual, and culpable person, with a principal business address in Los Angeles, California. PST is in the business of providing legal services as a court official under license and authority of STATE BAR annually in exchange of a fee under SBN# . PST was also the Dean of the College for a brief period, overlapping the events here, in 2022. PST is in the parallel business of providing services to the STATE BAR and PCL through likely participation in their fraudulent scheme, including PST's inchoate attempts with SPIRO, GONZALES, and PENA to "rig" the election which Plaintiff lawfully and rightfully won. Plaintiff has reasonable belief and evidence to support PST's deliberate disregarding or concealing Plaintiff's severe injuries, emotional harm, and damages to his business and property. PST knowingly allows and freely permits fraudulent use of the State Bar's Rules for Unaccredited Fixed Facility Schools against Plaintiff so he can profit from the scheme. PST had a duty to inquire as to the circumstances surrounding Plaintiff's issues, but failed to respond to each and every inquiry or reasonable request for help.PST will likely claim he worked  without remuneration, and civil rights violations known and adjudicated, with PST thereby presenting U.S. citizens and judicial officers danger of imminent lawless

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

action, and thereby posing a clear and present danger in the U.S... Unfortunately for the Defendant, the nature of the violations and his constructive knowledge will likely estop the attempted use of a defense on that basis.

XXIV. Defendant IRA SPIRO.("SPIRO") is an individual, and culpable person, with a principal place of business address in Los Angeles County, California. SPIRO is in the business of providing legal and services as a court official and attorney under fee-based license and authority of STATE BAR annually under. SPIRO specializes in assuming the role of "counsel" within the fraudulent schemes commenced by HCP, GONZALES, and other participants in the Racket, often after HCP or another Enterprise P or Enterprise S operator has been disqualified or exhausted of frivolous argument. SPIRO uses pugnacious and reprehensible tactics to attempt to dissuade aggrieved parties from seeking money damages and prevent the aggrieved party from achieving justice. Here SPIRO has demonstrated proclivity for procedural extortion, misrepresentation, perjury, slander, libel, and fraud. SPIRO does this through his purported sole practice role, but he is a proxy for HCP and the other culpable Defendants in fact and law.

XXV. Defendant PREM ANTONIO SARIN ("PRS") is an individual, and culpable person, with a principal place of business address in the United States. PRS has engaged in fraud, and acted for improper purposes to harm Plaintiff, and in conspiracy through overt acts in furtherance of the schemes, he has also knowingly threatened to "kick [plaintiff] off" of calls or Zoom video meetings in further interference to Plaintiff's relationships, stressors, and class performance.

Here, Plaintiff reiterates his reasonable belief supported by the corroborating evidence of his transcript, which "tells the tale"as Plaintiff's average grades ranged from A+ to B-; as a consequence and additional proof of harm, Plaintiff's average course grades went from excellence to disaster in the ; a 'D'.

 XXVI. Defendant LEAH TAMU WILSON, ESQ. ("WILSON") is an individual, and person, with principal place of business address at 1147 Keith Ave, Berkeley, CA 94708 in Alameda County California, and is currently employed under contract as Executive Director of STATE BAR.



Plaintiff believes based on brief inquiry that WILSON prior to her current position was a Supervising Analyst and Manager of the Administrative Office of the Courts, where, according to  she administered a statewide juvenile court improvement program and oversaw the allocation of nearly $300 million in state, federal and private funding to the courts, and managed state, federal, Stimulus, and private funding streams.

XXVII.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**Factual allegations common to all counts.**

XXVIII. Plaintiff incorporates his exhibit list as being set forth here fully, including the operative complaint in State Action 1, the operative complaint in State Action 2, and the associated moving papers supporting his motion for summary judgment [ROA #733] or in the alternative summary adjudication of 14 issues or both [ROA #729] in State Action 1 scheduled for hearing on January 6, 2023, and his moving papers supporting his motion for summary judgment [ROA #107] or in the alternative for summary adjudication [ROA #103] of 22 issues in State Action 2 scheduled for hearing on March 14, 2023.

XXIX. The following are incorporated as if set forth fully, and thereby binding under California Rules of Court 8.1115(b)(1)-(2) for 18 U.S.C. § 1964(a)-(d) claims in this case via direct, indirect roles of Defendants and each of them:

    *i.* https://www.tvmix.com/the-state-bar-of-california-desperately-wants-ronald-gottschalk-to-shut-up-go-away/123

**Enterprise Descriptions**

III. Enterprise S. The first association-in-fact enterprise consists of "more than 250,000 [STATE BAR licensed] attorneys…[including subject active market participants detailed within] 16,000 complaints of attorney misconduct annually…[and the same active market participants who receive, or who] distribute[] over $78 million in [annual] grants to legal aid organizations [operated by active market participants in the same vertical or horizontal

trade or profession, all of whom are regulated by the same active market participant and monopoly regulatory entity, the State Bar of California.

IV. <u>Enterprise S</u>. The enterprise operates via DURAN through non-sovereign public entity corporation THE STATE BAR OF CALIFORNIA with active market participants furthering their own interests; commencing on or before June 20, 2020 State Bar Admissions Office under NUNEZ for <u>Enterprise S</u>, in special relationship to Plaintiff victim, ratified fraudulent transcripts and other schemes, some that continue to the present day.

V. <u>Enterprise S</u>, Directly controlled by active market participants falsely purporting to regulate, THE STATE BAR OF CALIFORNIA operates several shown, deliberate schemes to defraud members of the public in favor of active market participants that damaged Plaintiff. <u>Enterprise S</u> generally asserts likely inapplicable immunities, state codified privileges, or otherwise to influence judicial officers – in each case backed by their monopoly and ability to threaten, coerce, or take from anyone at any time for any reason under "sovereign privilege" or political clout.

VI. <u>Enterprise S</u>. Parallel or subsidiary enterprises consist of non-sovereign associations-in-fact or association-in-acts, control, or unity of interest law firms and legal services firms (public and private), entities they create or control together to move assets and monetary instruments such as property owners' associations, LLCs, other "trusts," and the bank accounts associated therewith including but not limited to IOLTAs (all without supervision of State, or US).

i ) Here plaintiff asserts that regulated law schools offer legal education, compliance and proctoring services, and therefore meet the definition of "law firm" under the business and professions code and the State Bar Act of 1937.

VII. Enterprise S ostensibly regulates PCL, and other fixed facility law schools. Interests in Enterprise S were owned, operated, licensed, regulated, disciplined, and controlled for all matters including corporate governance, administrative, management, criminal prosecution and defense of the same conduct, administrative prosecution and defense of the same conduct, civil prosecution or defense of the same conduct, and even judicial officers among Enterprise S's "more than 250,000 attorneys…[including the subject active market participants detailed within] 16,000 complaints of attorney misconduct annually…[and those active market participants who receive, or who] distribute[] over $78 million in [annual] grants to legal aid organizations [operated by active market participants in the same horizontal trade or profession, all of whom are regulated by the same active market participants without supervision of STATE]."

VIII. Enterprise S is factually operated to the ongoing mutual benefit of Enterprise P and Enterprise S via STATE BAR and its present and historical operators over the last decade. Plaintiff incorporates 2012 to 2022 State Auditor reports here, including "money laundering" (2+ acts).

i ) Here Plaintiff asserts that given the length, number and gravity of the violations, an entity not under the express protection of the regulator would more likely than not have been closed by the reasonable regulator.

ⅠⅩ.  Active market participants also operate Enterprise S postal mail and wire schemes overtly to dismiss, diminish, label students and non-active public market participant losses as "de minimis," delay, conceal, estop, limit, disclaim responsibility for, oppress and obscure severe injuries, loss of money, and damages inflicted upon non-active market participants like Plaintiff using artifice of State law. At the same time, each defendant shown deliberately, and unjustly enriches Enterprise P and Enterprise S in exercising daily licensing, regulatory, and discipline functions of Enterprise S without any form of applicable sovereignty, while citing irrelevant immunities and non-existent discretion to take from Plaintiff what is unlawful in the United States and the Great State of California.

Ⅹ.  Enterprise S is funded by active market participant, including student, fees paid at various times in various amounts for activities such as records review and test taking, which are paid back to their own horizontal profession,.

ⅰ)  Additional funds are at times made available  by Legislature or even the federal government for "legal aid" for "homelessness" which funds Plaintiff did not see to aid him in preventing his own threatened homelessness.

ⅩⅠ.  Funds are distributed unequally, as they are generally used by or sent back to its horizontal profession. Converse with public statements of its operations falsely claiming compliance or "good faith" attempt to comply with the STATE BAR mandate to protect the public, Enterprise S makes or ensures parallel payments to Enterprise P and Enterprise S which are added to the Admissions Budget in a scheme executed by wire and postal mail.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

XII. Enterprise P includes some combination directly or indirectly among, among them persons HCP, PCL, STATE BAR, CLF, NMC , ANTONIO, BOUFFARD, GONZALES,SPIRO, and DURAN. WILSON, DAVYTYAN, and HOLTON using STATE BAR authority to engage in racketeering activity shown directly or indirectly by control, or to use the proceeds, and to re-invest them back among Enterprise P and Enterprise S as needed.

XIII. The nature of the schemes, the timing of specific circumstances, and the lack of the State Bar's substantive intervention all support the regulatory and conduct entwinement of both PCL and the STATE BAR , the entanglement and interoperation of Enterprise P and Enterprise S, where Enterprise S gave the semblance of legitimacy to an otherwise unlawful practice, which is likely per se anticompetitive .

(1) Here the conduct is flagrant and sufficiently egregious, as easy to discern as verify; but here, the STAT BAR willfully disregarded and through flagrant participation violated under color of  state law as recently as January 20, 2023, judicially noticed and mandatory procedure for dealing with procedure, evidence, and maintenance of due process and the perception of integrity in the State Bar's antitrust determination policy.

(2) THE STATE BAR OF CALIFORNIA is operated much like a protection racket for Enterprise P, Enterprise S and "more powerful or influential" attorneys like the infamous Tom Girardi or Dunn, and the other named Defendants qualifying as "Persons" (for example, the Board of Trustees acting with Office of General Counsel in prosecution, regulation, defense, discipline, and failure to make any

good faith attempt at student redress) are involved with and in sufficient privity to parties culpable for the conduct at issue as a matter of law.

XIV. STATE BAR and PCL's joint and separate operational decisions and overt acts communicated by wire to in support of PCL's unlawful extortion and conversion violative of State Bar enforceable policy.

XV. The following fraudulent schemes were used to advance the interests of active market participants at every stage by mail, wire, violative of RICO 1961 hundreds of times each year through Enterprise S by Enterprise S and Enterprise P, and in perpetuity, continuing, and severely causing injury to public persons under artifice of state authority, discretion, and sovereignty:

A) Attorney Discipline Complaint in 200+ Languages (Notice of Public Injury)

B) Office of Chief Trial Counsel ("Intake," "Abatement" [Selective Concealment])

C) Complaint Review Unit (Office of General Counsel, Defending Tort Claims)

D) "*In RE: Walker*" ([Active Concealment] + [Artificial Authority and § 1962(d)])

E) "Client Security Fund" (Fraudulent* Public Insurance Scheme) CRPC 1.01[4].

F) Government Claims Act Form (After Which Enterprise S Conceals, Oppresses)

G) Office of General Counsel as Defense Law Firm (also Complaint Review Unit)

H) Schemes "Recommend" Retention of More (Fearful) Active Market Participants

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Enterprise P and Enterprise S actors are shown to take or convert money, business interests, property, capital stocks, insurance policies, funds HOLTON on behalf of clients for which STATE BAR via Enterprise S which is engaged in the conduct at issue, as evidenced by the simple fact that even deliberately fraudulent cases and claims maintained under self-purported California Supreme Court-granted sovereignty are ratified in favor of active market participants. Here, there exists "clear and compelling evidence, reasonable suspicion, and demonstration of predicate, parallel, and ongoing acts of serial compulsory racketeering.(Which see: CACI 430. CRPC 8.4).

The gravamen of the holding is ultra vires abrogation of duty.

Plaintiff asserts that the argument used appears reasonable for one in ordinary circumstance is capricious in application here because it rationalizes the continued and persistent abrogation of duty.

"Actual injury is not the principle the law proceeds on. Fidelity in the agent is what is aimed at, and as a means of securing it the law will not permit him to place himself in a position in which he may be tempted by his own private interests to disregard those of his principal. This doctrine is generally applicable to private agents and trustees, but to public officers it applies with greater force, and sound policy requires that there be no relaxation of its stringency in any case that comes within its reason [citation].

"There is neither a more wholesome nor a sounder rule of law than that which requires public officers to keep themselves in such a position as that nothing shall tempt them to swerve from the straight line of official duty. Officers ought not to be allowed to place themselves in a

position in which personal interest may come into conflict with the duty which they owe to the public. The rule which has so long prevailed is eminently just [citation]."

[THIS PAGE INTENTIONALLUY BLANK]

XVI.  As a matter of public policy and precedent, judicial fraud, racketeering through the judiciary, money laundering, and anti-competitive behavior has no place in democracy, per *Thompson v. Clark*, 596 U.S. (2022).

## **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

XVII.  Based on this Court's holding in In re Kramer, 193 Fed.3d 1131, 1132-1333, Mr. Doe is entitled an examination of the record in the State Bar proceeding, which denied him federal constitutional – due process.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

XVIII.  In *Selling v. Radford*, 243 U.S. 46, 50-51, 37 S.Ct. 377, 61 L.Ed. 585 (1917), the Court held that a federal court could impose reciprocal discipline on a member of its bar based on a state's disciplinary adjudication, if an independent review of the record reveals: (1) no deprivation of due process; (2) sufficient proof of misconduct; and (3) no grave injustice would result from the imposition of such discipline. Thus, while federal courts generally lack subject matter jurisdiction to review the state court decisions, see D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923), a federal court may "examine a state court disciplinary proceeding if the state court's order is offered as the basis for suspending or disbarring an attorney from practice before a federal court." *MacKay v. Nesbett*, 412 F.2d 846, 847 (9th Cir.1969) (citing *Theard v. United States*, 354 U.S. at 281-82, 77 S.Ct. 1274). (Id.)

XIX.  State Bar Court Hearing Department (Hearing Department**)** conducts evidentiary hearings on the merits in disciplinary matters. (Rules Proc. of State Bar (hereafter, Rules of Procedure), Rules 2.60, 3.16.) An attorney charged with misconduct is entitled to receive reasonable notice, to conduct discovery, to have a reasonable opportunity to defend against the charge by the introduction of evidence, to be represented by counsel, and to examine and cross-examine witnesses. (§ 6085.) The Hearing Department renders a written decision recommending whether the attorney should be disciplined. (Rules Proc., rule 220.) Any disciplinary decision of the Hearing Department is reviewable by the State Bar Court Review Department (Review Department) at the request of the attorney or the State Bar. (Id., Rule 301(a).) In such a review proceeding, the matter is fully briefed, and the parties are given an opportunity for oral argument. (Id., Rules 302-304.) The Review

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Department independently reviews the record, files a written opinion, and may adopt findings, conclusions, and a decision or recommendation at variance with those of the Hearing Department. (Id., Rule 305.) A recommendation of suspension or disbarment, and the accompanying record, is transmitted to this court after the State Bar Court's decision becomes final. (§ 6081; Rules Proc., rule 250.)

XX. The CSC is not a trial court and cannot determine facts regarding federal constitutional claims. The State Bar cannot determine these facts under Cal. Const. Art. III, sec. 3.5. (See Hirsh v. Justices of Supreme Court of California, 67 Fed.3d 708, 712-713 (1995).

**California State Auditor provides evidentiary support for predicate, parallel and ongoing violation.**

Here Plaintiff asserts judicial notice and public record of the California State Auditor's published reports, which copiously detail numerous predicate acts of racketeering activity, protectionist behavior, and breach of duty. The State Auditor produces an annual list of "High Risk Agencies".

XXI.  Specifically, AB 3249 section (2)The act [amending BPC 6001.1, BPC 6094, and other statutes} **requires protection of the public to be the highest priority for the State Bar and the board of trustees in exercising their licensing, regulatory, and disciplinary functions.**  Assembly Bill 3249, Ch. 659, p.2.

**Is the State Bar the "MOVING FORCE" for constitutional violations?**

Plaintiff argues that for reasons detailed above and below, the State Bar has engaged in conduct  the requirements for being the "moving force" and substantial factor in the violations and injuries resulting from the violations of Plaintiff's rights.

Richard v. Stanley, 477 U.S. 131 (1986) applies to the STATE BAR actors in this scenario in the sense that it deals with the liability of state actors under 42 U.S.C. § 1983 for violating an individual's constitutional rights.

In Richard v. Stanley, the Supreme Court held that a state actor can be held liable under 42 U.S.C § 1983 for violating an individual's constitutional rights only if the state actor's conduct was the "moving force" behind the violation.

In Richards v. Stanley, 43 Cal.2d 60, 62, 271 P.2d 23, 25 (Cal. 1954), the plaintiff was injured after a collision with an automobile owned by the defendants but which had been stolen and was being driven by the thief.

Here the State Bar actors, as the monopoly regulator and market participant, have a duty to ensure that the People's College of Law (PCL) is in compliance with federal and state laws and regulations, including the California State Bar Act of 1937, the California Private Postsecondary Education Act, and the Business and Professions Code Section 17200 (Unfair Competition Law). If the State Bar actors have knowledge or information that PCL is engaging in fraudulent or unlawful conduct, and they fail to take appropriate action to address or prevent the conduct, they could be held liable under § 1983 for violating the constitutional rights of the Plaintiff and other students.

The fact that the State Bar has failed to follow its own antitrust policy on multiple occasions, acting in permissive and affirmative support of the school's unlawful issue of 2 units for postsecondary law school classes instead of the required 3, as quarter units are federally defined for financial aid purposes, and consequently preventing students from transferring, a per se naked restraint of trade, would be considered as a violation of the students constitutional rights, as **the State Bar actors are both the proximate and actual "moving force" behind the violation and the failure to provide the lawful quantity of units is not only breach of contract, but breach of law under "color of law".**

XXII. Aliens to the state in the conduct of interstate commerce and California citizens in pursuit of a legal education have been put at risk or injured by Defendants conduct that is capricious, arbitrary, and per se unlawful, for reasons discussed above and below.

XXIII. There are several parallel and subsidiary enterprises within the horizontal profession of providing legal services in California which uniquely affect interstate commerce in the United States, controlling an estimated $3.4 trillion gross state product annually.

XXIV. The enterprises are either associated-in-fact or associated-in-acts or associated-in-interests or associated-in-control. Together, they hold $5 billion or more at any given point in client funds held in interest only lawyer trust accounts (IOLTA). They distribute and receive $250M+ yearly from themselves or from the government to themselves in their

horizontal profession, among them 700 lawyers who received 4+ "private letters" according to Report 2022-030.

ＸＸＶ. In restraint of trade, non-licensees of STATE BAR seeking to provide legal services within California (e.g., to sue The State Bar of California or its official agents) from inside or outside of California must obtain Enterprise S (and Court) authorization under Rule 9.40. When viewed with the misuse of STATE BAR by its private actors, 15 U.S.C. § 1 violations are *per se*.

ＸＸＶＩ. In restraint of trade, STATE BAR is controlled at every level of its operations by majority of active market participants purporting to regulate themselves without state supervision, where the Racket exists, and similar rackets exist using Enterprise S to further interests of Enterprise S under the presumption of competence associated with Enterprise P, and the schemes to delay, oppress, and render victim persons like Plaintiff mute. For Enterprise P, if you fail to play by the rules, Enterprise S will get you, or Enterprise S will help you, depending on what skin in the game exists undisclosed to the public or Legislature without clearly articulated state policy to the general detriment of the Plaintiff and members of the public in similar circumstance or conflict.

ＸＸＶＩＩ. The nature and reputation of the STATE BAR as the statutory investigator, administrator, prosecutor and overseer of the State of California's attorney discipline system has likely impeded Plaintiffs ability to secure counsel.

i) Here, Plaintiff sought assistance from law firms, e.g., Rex Parris and his law firm in Lancaster, CA and a variety of others who all declined the case given the nature of the parties.

ⅰⅰ) The Plaintiff found it impossible to negotiate representation or limited support for case management and review.

(1) Plaintiff was likely impacted here as he was personally unable to secure assistance to seek remedy from multiple attorneys in Arizona. California, or New Mexico primarily due to the nature of the parties.

(2) Plaintiff communicated with dozens of firms repeatedly and at various stages of the development of the cause of action.

XXVIII. Specifically, all functions of STATE BAR from Board of Trustees, Executive Director, Office of General Counsel (Complaint Review Unit), Office of Chief Trial Counsel, Complaint Review Unit (Office of General Counsel), State Bar Court, Client Security Fund, intake, investigation, prosecution, defense, licensing, regulatory, disciplinary functions, and antitrust determinations in California are used to advance private interests of bad actors in both Enterprise P and Enterprise S , including benefits in career (where State Bar Employees receive union benefits under the SEIU), money, business, and property, while taking away from  or failing to appropriately proactively protect legitimate public interests.

XXIX. In this case, it took from Plaintiff's business, property, and freedom by enabling deliberate schemes to defraud those it had a duty to serve, its students, of which Plaintiff was one.

XXX. State Bar Defendants with PCL will likely argue that they are allowed to do it to Plaintiff because they are  Enterprise P operating under the "color of law" as designated

entities and market participants in their conduct as court officials, now "privileged" or "protected activity" due to Plaintiff's prior "consent" or negligence". The Defendants know or should know this position is fraudulent and false.

XXXI. As to <u>Enterprise S</u> operatives including, but not limited to, DURAN, WILSON, NUNEZ, CHING, LEONARD, KRISNIKOFF, RANDOLPH, DAVYTYAN, MAZER, HOPE, CARDONA and <u>Enterprise P</u> operatives SPIRO, GONZALES, PENA, BOUFFARD, SARIN, TORRES, SANCHEZ, DUPREE, SILBERGER, GILLENS, and others the evidence here: <u>Enterprise S</u> will not do anything because STATE BAR didn't do anything before and The State  suggests that the State Bar of California, as a matter of de facto policy disregard Court of Appeal rulings from California or the United States Circuits.

XXXII. DAVYTYAN, as General Counsel bears buckhead he objective interpretation of any (state or federal) law comes from the Office of General Counsel; these "interpretations" have been used in Plaintiff's case and thereby becomes rule or the essence of the legal strategy used to address public complaints,

i) Defendants will argue that their antitrust determinations follow a process that meets the requirements of law; unfortunately, because the State's Highest Court issued an Administrative Order and Enterprise S operators failed to follow ALL of the requirements of the order, "partial compliance" remains "noncompliance";

ii) Failing to follow the law is noncompliance;

iii)    the issue here is that the preclusion on conflicts of interests undermining the public interest renders "defensive" conduct on behalf of the Enterprise S operators ultra vires and in direct opposition to the actors statutory charge.

iv)    Here, incomplete, frivolously assembled,

XXXIII.  In restraint of trade and federally protected rights, STATE BAR continues the active suppression of the rights of State and United States citizens, not limited to but including Plaintiff, under artifice of colorable right through the threat of Enterprise S and in accounted and unaccounted interests of Enterprise P and Enterprise S, even using Cal. Cod. Civ. Proc. § 425.16 which Legislature codified citing 1st Amendment of the United States Constitution rights to protect free speech and the right of petition.

XXXIV.  Cal. Cod. Civ. Proc. § 425.16 was converted to legal fees by Enterprise S in favor of Enterprise P, while *restricting* the right of free speech and petition for United States citizens and other active and non-active market participants, among them Plaintiff and ROES 1-150,000, by delaying unnecessarily their rights to life, liberty, and equal protection under state law under color of sovereign action.

i)  Here, State Bar requires payment of a student registration fee for

XXXV.  The conduct at issue for Defendants PCL and Enterprise P is stealing from Plaintiff under color of right, when they and their vertical regulator had constructive notice, followed by multiple notices otherwise, using fictitious names ( a dba ), flagrant non-compliance with Federal and State statutes as well as State Bar rules and regulations (discussed throughout this document, above and below)web sites, and Plaintiff's school

account or alternatively "guardian" positions where Plaintiff must race to document the fraud he identifies. "clients" will thus never ask for an accounting of an IOLTA account, especially where Enterprise S decides what goes to "abatement," or how "Complaint Review Unit" decisions might influence the imposition of "discipline" or "regulation."

XXXVI.  As to the Enterprise S and its likely CSF scheme… "The Fund does not reimburse interest, expenses or incidental or consequential losses caused by the attorney, such as fees paid to another attorney or damages caused by the attorney's malpractice, negligence or incompetence. You must show that the attorney received the money or property."

i) Here, the public interest is to be made "whole" as a baseline and to punish the conduct if it is violative of law or privilege. The State Bar will likely argue limited reserves, but the reality is that it utilizes this money in ways that are likely ultra vires or in conflict with its statutory mandate.

XXXVII.  "The Client Security Fund Commission administers the Client Security Fund and is supported by legal counsel who issue decisions on behalf of the Commission. The Commission is made up of five volunteers – three lawyers and two nonlawyer public members – appointed by the State Bar's Board of Trustees. The Fund determines if an application qualifies for reimbursement and whether all or part of the application will be paid."

i) What process is used to determine where and how much liability lies?

ii) Why doesn't the fund cover punitive damages and seek recompense from the violative party?

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

XXXVIII. "If you have not already done so, you need to file a discipline complaint against the lawyer. The online complaint form is available on the State Bar website in English, Spanish, Vietnamese, Korean, Russian, and Chinese. You may also write or call toll-free: The State Bar of California, Intake Unit, 845 South Figueroa Street, Los Angeles, CA 90017-2515

800-843-9053." [noting how STATE BAR links discipline to damages here, and the gaps shown].

XXXIX. "This fund was designed to [conceal, selectively pay] attorney theft or an act equivalent to theft.  In order for your request to be considered, you must establish that the money or property you are seeking to have reimbursed actually was received by the attorney and was wrongfully retained by the attorney.  You may not request and will not be paid interest on any money you state that you have lost.  You also may not request and will not be paid any incidental or consequential losses or expenses caused by the attorney. Examples of incidental or consequential losses would include fees you paid another

4.  a.  What did you hire the attorney to do?
☐ Criminal Matter          ☐ Probate               ☐ Other: _____
☐ Marriage Dissolution     ☐ Workers' Compensation
☐ Personal Injury          ☐ Loan Mod/Foreclosure

    b.  **VERY IMPORTANT** Describe in chronological order, **on a separate piece of paper**, the attorney's conduct that led to the loss.  Please be as detailed as possible and specify amounts and dates.  You **MUST provide copies of documents** which support your loss–such as **retainer agreements, the front and back of cancelled checks, receipts and other documents** that show the attorney received money or property.

5.  a.  **AMOUNT YOU ARE REQUESTING FROM THIS FUND (Reminder: You may only request an amount that was received by the attorney.  Other types of losses are not covered. See front of application for explanation.):**  $ _____

    b.  How would you describe your loss?
☐ Advanced fees and costs   ☐ Loan
☐ Entrusted funds           ☐ Settlement funds
☐ Investment                ☐ Other: _____

6.  a.  Date loss occurred _____
                            month              day              year
    b.  Date loss was discovered _____
                            month              day              year

7.  a.  Did any family or other personal relationship exist between you and the attorney at any time?
☐ Yes    ☐ No
    b.  If yes, explain the relationship _____

**ASSIGNMENT OF APPLICANT'S RIGHTS AND SUBROGATION:**

Upon payment of all or any portion of the sums requested, you, the undersigned, to the extent of such payment, hereby assign to The State Bar of California your claims, lawsuits and judgments against any and all persons who are primarily and or secondarily liable arising out of the above described dishonest acts, including lawsuits against banks, insurance companies, etc. You authorize The State Bar of California to prosecute all claims, lawsuits and judgments either in your name, that of the State Bar of California or its Client Security Fund, or in the names of both as the State Bar of California alone shall decide.

In the event that the amount paid to you by the Client Security Fund is not payment in full for all losses which you have suffered, then any amounts recovered by the State Bar in excess of the amount paid to you plus its costs of collection, shall be paid to you.

You agree that following any payment to you by the State Bar, you will cooperate with it in prosecuting any claim, lawsuit or judgment.  You also agree that all civil actions be taken or continued will be taken or continued under the full control of the State Bar upon payment to you in any amount by the Client Security Fund.  You also agree that the State Bar may, as it alone decides, prosecute or fail to prosecute, or abandon the claim, lawsuit or judgment without obtaining your consent.

You agree to cooperate in the investigation of this reimbursement request and any related disciplinary proceedings against the lawyer in question.  You agree to provide any additional information and sign and deliver to the State Bar of California such documents as may be required related to any matter pertaining to the application.

You waive any rights that you may have against the Client Security Fund, State Bar of California, any of their officers, employees, members of the Board of Trustees, and all other committees regarding the payment or denial of this reimbursement request; or for failure of any of them to pursue or achieve any particular outcome regarding any claim, lawsuit, or judgment. Applicant shall inform the State Bar of California of the status of any proceeding against any person or party who is liable for the losses which are the basis of this application.  In the event applicant receives any recovery while this application is pending, applicant shall inform the Client Security Fund and the State Bar of California.

Your rights and remedies are subject to the Client Security Fund rules, which may be amended from time to time.

NOTICE  TO  APPLICANT

THE STATE BAR OF CALIFORNIA HAS NO LEGAL RESPONSIBILITY FOR THE ACTS OF ATTORNEYS. PAYMENTS FROM THE CLIENT SECURITY FUND ARE SOLELY WITHIN THE DISCRETION OF THE STATE BAR.  BY APPLYING TO THE CLIENT SECURITY FUND, THE APPLICANT ACKNOWLEDGES THAT HE OR SHE MAY BE GIVING UP THE RIGHT TO PURSUE A CIVIL ACTION FOR THE SAME RECOVERY AGAINST A THIRD PARTY.

attorney or damages caused by malpractice, negligence or incompetence."

XL.  https://www.calbar.ca.gov/Portals/0/documents/forms/csf/CSF_Reimbursement_

Application.pdf

XLI.  This is a public insurance scheme, misrepresented to the public and but a de

minimis line item for Racket, although it is also designed to bring everything back to

Enterprise S.

XLII.  Where less than 5% of cases saw "discipline" for the last decade or so according

to the California Staet Auditor, CSF Rule 3.432 Required status of attorney [to request

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

reimbursement from the Client Security Fund scheme] (A) To qualify for reimbursement, an application must establish that the attorney whose dishonest conduct is alleged has (1) been disbarred, disciplined, or voluntarily resigned from the State Bar; (2) died or been adjudicated mentally incompetent; or (3) because of the dishonest conduct become a judgment debtor of the applicant in a contested proceeding or been convicted of a crime. (B) The Commission or Fund Counsel may waive provision (A) of this rule Pursuant to guidelines set by the Commission. Rule 3.432 adopted effective January 1, 2010; amended effective May 17, 2019.

XLIII.   Thus, for the reasons discussed above, current CFS mamangement likely operates to the benefit of the bold abuser, whose intent is to convert and not necesarrily embezzle; although the conduct yields the same result, the conduct differs in substantive ways that will likely mitigate in favor of the aggrieved Plaintiff for, in some cases, treble damages or more, but the client security fund is designed to "pacify the Plaintiff", and not truly "protect them" in proactive fashion.

**Enterprise Descriptions**

XLIV.   Enterprise S. The first association-in-fact enterprise consists of "more than 250,000 [STATE BAR licensed] attorneys…[including subject active market participants detailed within] 16,000 complaints of attorney misconduct annually…[and the same active market participants who receive, or who] distribute[] over $78 million in [annual] grants to

legal aid organizations [operated by active market participants in the same horizontal trade or profession, all of whom are regulated by the same active market participants without supervision of STATE, now necessarily U.S.]."

X L V .  Enterprise S. operators include DURAN, WILSON, LEONARD, DAVYTYAN, AREPTYAN, and others, conducted through a statutory constructive corporation delegated as the public entity corporation THE STATE BAR OF CALIFORNIA with legal monopoly regulatory oversight of active market participants furthering their own interests in the legal services profession, before June 20, 2020. Board of Trustees for Enterprise S, in special relationship to Plaintiff victim, with tolling and injurious conduct continuing through the present day.

X L V I .  Enterprise S, Directly controlled by active market participants falsely purporting to regulate in the context where the majority of enforcement duties have been abrogated, THE STATE BAR OF CALIFORNIA operates several demonstrated and deliberate schemes to defraud members of the public in favor of active market participants, including the scheme that damaged Plaintiff.

X L V I I .  Enterprise S is likely relies on inappropriate and unlawful assertion of immunities, state codified privileges, or otherwise to influence judicial officers – in each case backed by their monopoly and "color of right" and prestige  - in implicit and express support of their ability to intimidate, coerce, or take without recourse from anyone at any time for any reason under "sovereign" or Eleventh Amendment principles, misrepresented.

i )  Misrepresentations of fact for this purpose likely qualify as abuses of discretion and violative of the statutory duties of Candor to the Tribunal.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

XLVIII. Enterprise S. Parallel or subsidiary enterprises consist of non-sovereign associations-in-fact or association-in-acts, control, or unity of interest law firms* (public and private), entities they create or control together to move assets and monetary instruments such as property owners' associations, LLCs, other "trusts," and the bank accounts associated therewith including but not limited to IOLTAs (all without supervision of State, or US).

XLIX. Interests in Enterprise P were owned, operated, licensed, regulated, disciplined, and controlled for all matters including corporate governance, administrative, management, criminal prosecution and defense of the same conduct, administrative prosecution and defense of the same conduct, civil prosecution or defense of the same conduct, and even judicial officers, as well as the licensee operators among Enterprise P as members of a group of "more than 250,000 attorneys…[including the subject active market participants detailed within]. State Bar has indicated that it fields approximately 16,000 complaints of attorney misconduct annually and distributes over $78 million annually in grants to legal aid organizations [operated by active market participants in the same horizontal trade or profession, all of whom are regulated by the same active market participants apparently without substantive supervision from the STATE BAR."

L.

LI. Behind Enterprise P is PCL, including operators SPIRO, GONZALEZ, PENA, BOUFFARD, SARIN, GILLENS, DUPREE, SILBERGER, FRANCO, SARINANA, POMPOSO, TORRES and others.

LII. Enterprise S is factually operated to the ongoing benefit of Enterprise P and Enterprise S via STATE BAR's assumption of direct supervision of PCL for probationary purposes December 2022. Plaintiff incorporates 2012 to 2022 State Auditor reports here.

LIII. Active market participants also operate Enterprise S postal mail and wire schemes overtly to dismiss, diminish, label non-active market participant losses as "de minimis," delay, conceal, estop, limit, disclaim responsibility for, oppress and obscure severe injuries, loss of money, and damages inflicted upon non-active market participants like Plaintiff using artifice of State law. At the same time, each defendant shown deliberately, and unjustly enriches Enterprise P and/or Enterprise S in exercising daily licensing, regulatory, and discipline functions of Enterprise S without any form of applicable qualified immunity, while citing irrelevant immunities and non-existent discretion to take from Plaintiff that is unlawful in the United States.

LIV. Enterprise S is funded by active market participant fees paid annually, which are paid back to their own horizontal profession, sometimes funded by Legislature or even the federal government for "legal aid" for "homelessness" which funds Plaintiff did not see to aid him in preventing his own threatened homelessness.

LV. Unequally, the funds are instead sent back to its horizontal profession. Converse with public statements of its operations falsely claiming STATE BAR protects the public (or tries to), Enterprise S makes parallel payments to Enterprise P and Enterprise S which exceed annual payouts from the "Client Security Fund" public insurance scheme executed by wire and postal mail by a magnitude of approximately **25X or greater**. Client Security Fund was converted by Enterprise S and the attorney needs to be disciplined for an

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

application to conclude. In other words, the actual liabilities are probably 1,000X greater than what is disclosed from this scheme, where not even the facts underlying the instant action were disclosed to the auditors in 2022 before publications in April and May.

LVI. Enterprise P includes some combination directly or indirectly among, among them OF persons HCP, PCL, GONZALEZ, DUPREE, SILBERGER, and others. STATE BAR, LEONARD, with, under, entrusted, in trust, or managed among them by DURAN, HCP, HOLTON, WILSON, and others associated with the operation utilized STATE BAR authority to engage in racketeering activity shown directly or indirectly by control, or to use the proceeds, and to support and protect Enterprise P and Enterprise S as needed.

LVII. The nature of the schemes, the timing of specific circumstances, and the lack of the State Bar's substantive intervention all support the regulatory entwinement of both PCL and the STATE BAR  , the entanglement and interoperation of Enterprise P and Enterprise S, where Enterprise S gave the semblance of legitimacy to an otherwise unlawful practice, which is likely per se anticompetitive .

(1) Here the conduct is flagrant and sufficiently egregious, Plaintiff  believes and prays the Court concurs shown but is not at all difficult to discern; but willfully disregarded, and flagrantly violated under color of  state law as recently as October 4, 2022. Judicially noticed evidence in State Action 1 and State Action 2 show beyond reasonable doubt for the twenty-year period 2002-2022: THE STATE BAR OF CALIFORNIA is operated much like a protection racket for Enterprise P, Enterprise S and "more powerful or influential" attorneys like WILSON, MAZER, DURAN, LEONARD, HOLTON, and the other named Defendants qualifying as

"Persons" (for example, the Board of Trustees acting with Office of General Counsel in prosecution, regulation, defense, discipline, and failure to make any good faith attempt at student redress) are involved with and in sufficient privity to parties culpable for the conduct at issue as a matter of law.

LVIII. The following fraudulent schemes are used to advance the interests of active market participants at every stage by mail, wire, violative of RICO 1961 thousands of times each year through <u>Enterprise S</u> by <u>Enterprise S</u> and <u>Enterprise P</u>, and clearly other active market participants, as demonstrated and reported annually by the State Bar and various State Audit or compliance agencies, none with any right of enforcement action against the State Bar to assist with oversight and compliance.

(1) The current regulatory framework clearly invites misconduct in perpetuity, an inevitable cycle of underreported and STATE BAR derived public injury, any lay victim egregiously injured as a member of the public seeking regulatory relief more often than not subjected to additional injury under artifice of state authority, discretion, and sovereignty:

(2) Areas of likely relevant discovery here include, but are not limited to:

A) Attorney Discipline Complaint in 200+ Languages (Notice of Public Injury)

B) Office of Chief Trial Counsel ("Intake," "Abatement" [Selective Concealment])

C) Complaint Review Unit (Office of General Counsel, Defending Tort Claims)

D) "*In RE: Walker*" ([Active Concealment] + [Artificial Authority and § 1962(d)])

E) "Client Security Fund" (Fraudulent* Public Insurance Scheme) CRPC 1.01[4].

F) Government Claims Act Form (After Which <u>Enterprise S</u> Conceals, Oppresses)

G) Office of General Counsel as Defense Law Firm (also Complaint Review Unit)

H) LEONARD, CHING, NUNEZ, WILSON, AND DURAN willfully conspired to oppress Plaintiff via CCP § 425.16, *Pro Se* Legal Fees and other unlawful or abusive scheme.

I) Schemes "Recommend" Retention of More (Fearful) Active Market Participants, as they are considered likely more readily suppressed and controlled.

LIX. <u>Enterprise P</u> and <u>Enterprise S</u> operators have been demonstrated, in their own express statements and emails, to take and convert money, intentionally business interests, property or future interest in property, engage insurance policies for preservation of the fraudulent scheme, ignore requirements to issue order to disgorge or comport conduct to the requirements of the rule of law. Funds should be returned to Plaintiff.

LX. Defendants PCL and the State Bar are culpable persons, who conduct or have merged and acquired one or more aspects of <u>Enterprise S</u> among <u>Enterprise P</u> constituents affecting interstate commerce through a pattern of racketeering activity through overt acts of judicial fraud, legal malice, actual malice, wire fraud, mail fraud, extortion, coercion, securities fraud, larceny, insurance fraud, with ongoing intent to defraud litigants, judicial officers, insurance companies, regulators, and issuers using similar methods with similar victims as being non-active market participants.  Plaintiff's business and property were

directly and proximately injured by reason of defendant PCL's violation of RICO § 1962(a)-(b).

LXI. **Defendants THE STATE BAR OF CALIFORNIA, LEONARD, DURAN, and WILSON are each a substantial factor in the conduct** and the damages reasonably foreseeable and in fact caused by the conduct of fraud and racketeering activity. Actors among <u>Enterprise P</u>, as Plaintiff has clear and compellingly demonstrated a reasonable person would agree that each contributed to the damages to Plaintiff's business/property, where control is a substantial factor and substantial factor is the test. CACI 430. CRPC 8.4.

LXII. Defendant MAZER, a licensee and culpable person who conducts or directs one or more aspects of <u>Enterprise S</u> entwined or entangled in coordinated and negotiated venture with PCL, <u>Enterprise P</u>, or other active market participants in horizontal or vertical privity.

LXIII. <u>Enterprise S</u>, among <u>Enterprise P</u> affecting interstate commerce through a pattern of racketeering activity through overt acts of non-judicial fraud, judicial fraud predicated upon nonjudicial fraud, legal malice, actual malice, wire fraud, mail fraud, extortion, coercion, securities fraud, larceny, insurance fraud, with ongoing intent to defraud litigants, judicial officers, insurance companies, regulators, and issuers. Plaintiff's business and property were directly and proximately injured by defendants violation of RICO § 1962(a)-(d).

LXIV. Defendant ELLIN DAVYTYAN, ESQ. is a culpable person who conducts, operates and directs one or more aspects of <u>Enterprise S</u> providing interference and

protection for same as well as for "entwined, entangled, or otherwise interoperating market participants including PCL and operators of Enterprise P affecting interstate commerce through a pattern of racketeering activity through overt acts of contempt of judicial orders related to antitrust determinations[33], appellate fraud, legal malice, actual malice, via wire fraud, mail fraud, extortion, coercion, securities fraud, larceny, insurance fraud, ultra vires representations with ongoing intent to defraud litigants, judicial officers, appellate justices, insurance companies, regulators, and issuers. DAVYTYAN's specialty among Enterprise P is pettifoggery and misleading responses, but usually advancing or maintaining fraudulent schemes through California Court of Appeal. Plaintiff's business and property were directly and proximately injured by reason of defendant LEONARD's and others violations of RICO § 1962(a)-(d).

LXV. Plaintiff asks for grant maximum allowable under the law. If not to him, then to ROES 1-150,000 – administered by neutrals.

LXVI. Public damages require federal intervention for knowing violations of U.S.C. §§ 1956-1957, and federal receivership over THE STATE BAR OF CALIFORNIA and PEOPLE'S COLLEGE OF LAW for the reasons shown and to ensure payment of Plaintiff's damages as well as restitution for other victims. Plaintiff seeks federal receivership to impose damages upon other defendants protected by the Racket, or to impose or cause to imposed liabilities upon State where subordinate, nonsovereign actors fail to pay despite the ongoing timeliness of their horizontal distributions or probability of their continued prioritization overall.

---

[33] Please see "EXHIBIT AO-1 State Bar Antitrust Policy.pdf",

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

## STATUTE OF LIMITATIONS

LXVII. Plaintiff has suffered from a series of distinct damages to his business and property from the conduct constituting the violations of § 1962, commencing September 14, 2018, but unknown as to their likely criminal, single-scheme nature until January 28, 2019, upon receipt of a threatening letter, sent without standing or authority by email to Plaintiff by HCP.

LXVIII.  Plaintiff did not identify, nor could he have possibly identify previously as shown by his reasonable diligence, binding federal law for regulators from United States Supreme Court until September 2022. As soon as he understood the laws, he filed, and has already filed State Action 1 and State Action 2. Plaintiff could not have acted faster, under the circumstances.

 LXIX. Plaintiff could not have and did not know of the pattern of racketeering activity, nor the multi-scheme nature with similar actors, participants, and methods of judicial fraud and active concealment by nonsovereign actors, and where he has further been denied discovery by nonsovereign actors on a claim of sovereignty for the conduct at issue despite his timely filing of all claims pending now in State and Federal Court as appropriate.

 LXX. Plaintiff mistakenly assumed that STATE BAR licensees in good standing would not be allowed to commit serial fraud and racketeering that injured him, so he could not have possibly filed this action on September 14, 2022 (as being within 4-years under even the most rigorous standards that would not apply here, the date when the Racket caused to

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

be filed the first fraudulent case and derivative action which was not entirely understood at that time by Plaintiff).

LXXI. Upon learning of the various schemes used by the Racket overall, Plaintiff promptly filed this action. Defendants fraudulently concealed information needed to bring a RICO claim before now, and the Plaintiff could not have discovered all of the foregoing facts or overt acts despite his exercise of reasonable diligence before 2021 after he commenced prosecution of State Action 2 and uncovered the patterns of predicate and parallel conduct involving the Racket and ties to State Action 1.

LXXII. Plaintiff claims to have proven that The State Bar of California is engaged in intentional acts of fraud, oppression, corruption, legal malice without regard for injury, and/or corruption subject to GOV § 815.3 and GOV § 815.6 that causes serious injury to members of the public.

LXXIII. Plaintiff claims, as a matter of law, that The State Bar of California has a duty to protect him and the public codified by enactments and according to the express intent of Legislature and if not then the United States Supreme Court in 2015.

LXXIV. Plaintiff claims to have evidence that The State Bar of California, through its licensees including public employees or elected officials and persons acting in a managerial capacity for them, have engaged in and/or enabled conduct that meets the definition of "racketeering activity" and have used the proceeds of such activity to make investments that further the interests or control of persons unknown to the public as to the use of those funds except that they are going to other lawyers, while members of the

public are oppressed and disregarded as "de minimis" by the Chairman himself as to Plaintiff specifically on July 20, 2022 with GRANDT.

LXXV. Plaintiff claims to have evidenced that there are predicate and parallel acts meeting the definition of racketeering activity, thereby constituting a pattern.

LXXVI. Plaintiff claims that the licensing, regulatory, and disciplinary functions of State Bar are injurious (not "protective") of the public, courts, and legal profession because the pattern of results, victims, and methods to cause injury continue and are an acute threat to continue to any person acting reasonably.

LXXVII. Plaintiff claims that persons generally injured by State Bar or its public employees will not or cannot reasonably obtain counsel because the lawyers licensed by the State Bar are subject to acts of fraud, oppression, legal malice without regard for injury, and corruption, too. Put simply, Plaintiff claims that few, if any licensee will sue State Bar, even though it is expressly subject to the liability sections of Government Claims Act and lacks any form of statutory immunity for the conduct at issue.

LXXVIII. Plaintiff shows The State Bar of California's deliberate, selective use of its licensing, regulatory, and disciplinary functions evidence an acute risk that does indeed exist to any attorney that takes cases such as this, previously oppressed under color of state law.

LXXIX. HILL seeks licensure from the Court and the ability to present in federal district court cases for ROES 1-150,000.

LXXX. Plaintiff seeks to restrain <u>Enterprise S</u> federally.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

LXXXI.  HILL claims the Court can and should reasonably grant him licensure to practice law under its inherent powers because of the clear and compelling evidence his fitness and preparedness.

i)   Pragmatism indicates that few will take cases like these against the STAT BAR in the interest of justice; consequently Plaintiff believe it appropriate because he can demonstrate both immediate availability and preparedness to undertake the matter ;HILL will represent ROES 1-150,000 against The State Bar of California or State of California because of the conduct shown, and the threats and implications it implies, are of a nature best served by the pursuit of redress.

LXXXII.  Plaintiff reserves all rights to pursue rights claims.

LXXXIII.  Ratification of the conduct did not occur, or was not occurring with complete actual knowledge, until it was communicated on July 20, 2022, by HOLTON, DURAN, STATE BAR, and its Board of Trustees – also showing the improper purposes and concealment existing here.

LXXXIV.  This lawsuit is being filed to assert the plaintiff's right to all claims and damages, and to seek federal intervention due to the threat of continued misconduct and the need to establish the veracity of evidence without the benefit of discovery. The lawsuit is also being filed on behalf of ROES 1-150,000, who are unable to protect themselves, and is within the statute of limitations established by the Racketeer Influenced and Corrupt Organizations (RICO) Act.

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

1

## [COUNT I]

2

### *RICO § 1962(c)*

3

4

5

6    LXXXV.  The allegations of ¶ 1 through ¶ 476 are incorporated here by reference.

7

8    LXXXVI. Plaintiff did suffer injuries under § 1962(c) arising from the predicate acts

9    detailed.This Count is against Defendants PEOPLE'S COLLEGE OF LAW ("PCL");

10    HECTOR CANDELARIO PEÑA RAMIREZ aka HECTOR P. RAMIREZ, aka HECTOR

11    C. PEÑA, ("HCP"); CHRISTINA MARIN GONZALEZ, ESQ., ("CMG"); ROBERT IRA

12    SPIRO, ESQ.,("SPIRO"); JUAN MANUEL SARIÑANA, ESQ. ("JMS"); PREM SARIN,

13    ("PRS", "SARIN"); DAVID TYLER BOUFFARD, ("BFD", BOUFFARD); JOSHUA

14    GILLENS, ESQ., ("GLN"); CLEMENTE FRANCO, ESQ.; HECTOR SANCHEZ, ESQ.;

15    PASCUAL TORRES, ESQ.("PST")[; CAROL DUPREE, ESQ., GARY SILBIGER, ESQ.;

16    JESSICA "CHUYITA" VIRAMONTES, ESQ., ("JCV"); EDITH POMPOSO, ("EPP");

17    ADRIANA ZUÑIGA NUÑEZ.; ALFREDO HERNANDEZ; AUDREY CHING ESQ.,

18    DIRECTOR I, ADMISSIONS, ("AUC"); CARMEN NUNEZ; CELIA GRANDT, ESQ.

19    SUZANNE; DAVYTYAN, ELLIN, INDIVIDUALLY AND AS GENERAL COUNSEL,

20    STATE BAR OF CALIFORNIA; DE LA CRUZ, JUAN; DONNA.HERSHKOWITZ,

21    ESQ.; ELIZABETH HOM; GEORGE CARDONA; GINA CRAWFORD; HERMAN,

22    HON. JAMES; HOLMES, CAROLINE; HOLTON, VANESSA, ESQ.; HOPE, NATALIE;

23    JEAN KRISILNIKOFF; JAY FRYKBERG; KAPLAN, LARRY; KRAMER, PAUL A.;

24    LEONARD, NATALIE, ESQ. ("LEONARD", "NLE"); MAZER, STEVE; MARK

25    TONEY; NATALIE XIANG, YUN; NUNEZ, ANA, DIRECTOR III, ADMISSIONS,

26

27

28

STATE BAR OF CALIFORNIA; RANDOLPH, JOAN; ROBERT S. BRODY; SANTIAGO, IMELDA. and DOES 1-2 (the "Count I Defendant(s)").

LXXXVII.  THE STATE BAR OF CALIFORNIA is an association-in-fact enterprise engaged in and whose activities affect interstate commerce.  The Count I Defendant(s) are employed by or associated with the enterprise.

LXXXVIII.  With similar methods and victims, the pendant and in process prosecution of Mr. Thomas Girardi is another constructive and intentional failure, as the attorney discipline system is designed to "predate" on the "weakest members" of the organization and public market participants, akin to a pack of wolves isolating the old or infirm for purposes of harvesting, while protecting the "Pack".

The scheme is designed to allow for plausible denial of the *ad momentum* Enterprise operators by "shielding them" in plain sight  but making it very difficult for the public to know or reliably verify that any issues have been communicated much less resolved.

i)   An example of the tactic at work is the operation of the State Bar Court, which may bring up charges but has no ability to enforce decisions without court approval. Consequently, the Enterprise can "announce" results in a fashion like Lincoln's "Emancipation Proclamation", which did not free a single slave, and in fact preserved slavery in certain Confederate States who ceded to the Union early.

ii)  STATE BAR initiates AD HOC committees to address new issues that meet and meet but rarely yield significant or substantive results.

LXXXIX. From September 14, 2018-January 28, 2022, as to Plaintiff, the predicate pattern of racketeering activity with similar methods culminated in a series of acts by HCP, SPIRO, GONZALES, and SARINANA.,

XC. The scheme in January 2019 was powered by the predicate acts of the STATE BAR and PCL Defendant(s) and they did damage Plaintiff.

XCI. The Count I Defendant(s) agreed to and did conduct and participate in the conduct of one or more of the affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

XCII. For those among Count I Defendant(s) that didn't understand what SPIRO, GONZALES, and HCP were doing, they had their own improper purposes concurrent with

XCIII.  the new unit hours policy that was implemented.

XCIV. None of the foregoing activity by defendants was an expression of any right of petition or free speech.

XCV. None of the foregoing activity was subject to litigation privilege in the United States where it gave context to the deliberate schemes to defraud.

XCVI. DURAN, STATE BAR, LEONARD, WILSON, and HOLTON each acted with malice to conceal in furtherance of their own motives, likely including the distribution of funds and the location of records derived from the unlawful activity and other predicate schemes.

XCVII.  Pursuant to and in furtherance of their fraudulent scheme, Defendant(s) committed multiple related acts violative of § 1962(c) that were enabled or furthered by their predicated activity shown, specifically [**OVERT ACTSs #1-7].**

XCVIII. Through **OVERT ACTs #1-7**, HCP, SPIRO, GONZALEZ and LEONARD designed, conspired, executed and enforced schemes, repeatedly  that were *ultra vires* in nature and with malice as the activities are unlawful, in conflict with the Rules of Professional Responsibility, and anathemas to the statutory purpose of the State Bar. Defendants volitionally or inchoately and all did knowingly file or publicated false direct and misleading claims or statements of law, frivolously in bad faith and without standing. Each did so know they could rely on SPIRO, STATE BAR, DURAN, the "Office of Chief Trial Counsel" under LEONARD, DAVYTYAN for protection or the "Complaint Review Unit" (Office of General Counsel) under HOLTON, DAVYTYAN, WILSON and DURAN for protection in the alternative.

**Requirements of 18 U.S.C. § 1961(5) Appear Satisfied.**

Thus given the above, the preceding acts, and the Overt Acts 1-7 set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

XCIX. The Count I Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

C.  As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business and property:

$8,888,888    Total Past & Future Lost Earnings to Business and Property given;

$150,000      Racketeering Damages; and

$888,888 in good will and punitive damages.

CI.  THUS, Plaintiff requests that this Court enter judgment against the Count I Defendant(s) as follows:

i)   JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count I Defendant(s)
     Violation of 18 U.S.C. 1962(c)

ii)  JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count I Defendant(s)
     $15,000,000 monetary judgment jointly and severally for damages

iii) JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count I Defendant(s)

     State to Guarantee All Judgments Awarded Plaintiff in State/Federal Actions

iv)  JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count II Defendant(s)

     $10,888,888 monetary judgment jointly and severally for treble damages

v)   JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count II Defendant(s)

     Attorney's fees and costs to be submitted and approved by Court

vi) ASSIGNMENT OF RACKETEERING INVESTIGATOR, OTHER RELIEF

42 U.S.C. § 1956 Requires Federal Receivership, Restitution, Investigations

Federal Receivership Over STATE BAR with Audits of IOLTA Income

Federal Receivership of the GUILD LAW SCHOOL dba PEOPLES COLLEGE OF LAW

HILL's appointment as Trustee as the sole legitimate officer of the Corporation (Guild Law School)

Federal Disbarment Proceedings for STATE BAR, PCL Actors

Federal or State criminal referral

Payment by STATE to Federally Determined Victims of STATE BAR

Permanent Federal Injunction as Court Deems Reasonable and Just

**COUNT II**

**RICO § 1962(a)**

CII.  All previous allegations incorporated herein.

CIII.  This Count is against Defendant(s) THE STATE BAR OF CALIFORNIA;; RUBEN DURAN, ESQ.;.; LEAH WILSON, ESQ.; NATALIE LEONARD, JOAN RANDOLPH, WOODWARD, ESQ.; and THE PEOPLE'C COLLEGE OF LAW (the "Count II Defendant(s)").

CIV.  THE STATE BAR OF CALIFORNIA is an enterprise engaged in and whose activities affect interstate commerce.  The Count II Defendant(s) are employed by or associated with the Enterprise S.

CV.  PEOPLES COLLEGE OF LAW is an enterprise engaged in and whose activities affect interstate commerce.  The Count II Defendant(s) are employed by or associated with the Enterprise P.

CVI.  Enterprise P and Enterprise S have operated in entangled and entwined fashion in unlawful conduct injurious to the Plaintiff.

CVII.  The Count II Defendant(s) used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise.

CVIII.  PCL invested income that was derived from a pattern of racketeering activity in an interstate enterprise through prohibited "legal fees" charged to resident and non-resident students in Arizona and to pay fees to <u>Enterprise S</u>.

CIX. PCL used THE STATE BAR OF CALIFORNIA'S ongoing authority to engage in the patterns of racketeering activity and invest the income derived therefrom to conceal the nature of its origins, and for the Enterprise and its operators to avoid the payment of taxes.

CX. THE STATE BAR OF CALIFORNIA distributed approximately $78 million horizontally in 2020-2021 to other active market participants through WILSON and DURAN.

CXI. THE STATE BAR OF CALIFORNIA will distribute an estimated $155.5 million horizontally to other active market participants through WILSON and DURAN in 2022-2023.

CXII. While PCL and STATE BAR make these investments, members of the public like Plaintiff are suffering due to the unequal use of the protection Racket in favor of active market participants, severely injuring members of the public knowingly.

CXIII. The racketeering activity detailed in the preceding paragraphs is demonstrative of what per se constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

CXIV. As direct and proximate result of the Count II Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in his business and property in that the money to protect the public all goes to lawyers who are selectively protecting Count II Defendant(s) in furtherance of their own interests and protection, so no money is left to help others.

CXV.  As direct and proximate result of the Count II Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in his business and property because STATE BAR refuses to impose costs or regulate their involved horizontal or vertical market participant "peers", instead demanding that the public subsidize racketeering activity through loss and lack of recourse.

CXVI.  As direct and proximate result of the Count II Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff  has been injured in their business and property interests, including but not limited to:

Credit Score, Benefits, Etc. and Special Value of IRA, Other Assets

Lost Earnings Capacity to Business and Property

Expectation Damages of Income as Legal Professional and Likely Practicing Attorney

Loss of Consortium

CXVII. THUS, Plaintiff requests that this Court enter judgment against the Count II Defendant(s) as follows:

i)  JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count II Defendant(s)

Violation of 18 U.S.C. § 1962(a)

ii)  JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count II Defendant(s)

$10,875,000 monetary judgment jointly and severally for damages

iii) JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count II Defendants

State to Guarantee All Judgments Awarded Plaintiff in State/Federal Actions

iv) JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count II Defendants

$888,888 monetary judgment jointly and severally for treble damages

v) JUDGMENT IN FAVOR OF TODD R. G. HILL AGAINST Count II Defendants

Attorney's fees and costs as submitted by cost memo and approved by Court

vi) ASSIGNMENT OF RACKETEERING INVESTIGATOR, OTHER RELIEF

42 U.S.C. § 1956 Requires Federal Receivership, Restitution, Investigations

Federal Receivership Over STATE BAR with Audits of IOLTA Income

Federal Receivership of PEOPLES COLLEGE OF Law for Restitution and Reclamation

Lien establishment pursuant to 18 U.S.C. 3664(m)(1)(B).

in guarantee and support of Plaintiff's lawful claims of right and privilege for defendants properties held until full settlement of what is joint and severally ordered as due.

Federal Disbarment Proceedings for STATE BAR, PCL Actors

Payment by STATE to Federally Determined Victims of STATE BAR

Permanent Federal Injunction as Court Deems Reasonable and Just

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

Referral for Criminal Charge

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

CXVIII.  For these reasons, Plaintiff request that the Court order judgment in his favor.

 CXIX.  CERTIFICATION AND CLOSING. Under Fed. Rule of Civ. Proc. 11, by signing below, I certify to the best of Plaintiff's knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11, Thursday, December 8, 2022 and certifies this complaint.

TODD R. G. HILL,

Plaintiff, *In Propria Persona*

**APPENDIX A – Additional Extended Rule or Case Summaries**

Rule 8.4 Misconduct (Rule Approved by the Supreme Court, Effective November 1, 2018) It is professional misconduct for a lawyer to: (a) violate these rules or the State Bar Act, knowingly* assist, solicit, or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud,* deceit, or reckless or intentional misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice; (e) state or imply an ability to influence improperly a government agency or official, or to achieve results by means that violate these rules, the State Bar Act, or other law; or (f) knowingly* assist, solicit, or induce a judge or judicial officer in conduct that is a violation of an applicable code of judicial ethics or code of judicial conduct, or other law. For purposes of this rule, "judge" and "judicial officer" have the same meaning as in rule 3.5(c). Comment [1] A violation of this rule can occur when a lawyer is acting in propria persona or when a lawyer is not practicing law or acting in a professional capacity. [2] Paragraph (a) does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take. [3] A lawyer may be disciplined for criminal acts as stated in Business and Professions Code sections 6101 et seq., or if the criminal act constitutes "other misconduct warranting discipline" as defined by California Supreme Court case law. (See In re Kelley (1990) 52 Cal.3d 487 [276 Cal.Rptr. 375].) [4] A lawyer may be disciplined under Business and Professions Code section 6106 for acts involving moral turpitude, dishonesty, or corruption, whether intentional, reckless, or grossly negligent. [5] Paragraph (c) does not apply where a lawyer advises clients or others about, or supervises, lawful covert activity in the investigation of violations of civil or criminal law or constitutional rights, provided the lawyer's conduct is otherwise in

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

compliance with these rules and the State Bar Act.

In re Rousso (1988) 45 Cal.3d 929, 933: In this case, the California Supreme Court held that the State Bar has the authority to discipline attorneys for misconduct that is not related to the practice of law, but that is indicative of moral turpitude. The court found that an attorney's involvement in a fraudulent investment scheme, which resulted in the attorney's disbarment, was conduct that reflected adversely on the attorney's honesty, trustworthiness, and fitness as a member of the legal profession.

Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 107: In this case, the California Supreme Court held that the UCL prohibits any unlawful, unfair or fraudulent business act or practice, as well as unfair, deceptive, untrue or misleading advertising. The court found that a collection agency's practice of falsely threatening to file suit against consumers in order to collect debts was an unlawful, unfair and fraudulent business practice.

People v. Superior Court (Myers) (1997) 59 Cal.App.4th 1514, 1525: In this case, the court held that the crime of illegal recording of a confidential communication under Penal Code section 632 is a serious crime that is indicative of moral turpitude. The court found that an attorney's involvement in illegally recording a confidential communication was conduct that reflected adversely on the attorney's honesty, trustworthiness, and fitness as a member of the legal profession.

People v. Superior Court (Cedars-Sinai Medical Center) (1998) 18 Cal.4th 1, 11: In this case, the

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

court held that the crime of extortion under Penal Code section 518 is a serious crime that is indicative of moral turpitude. The court found that an attorney's involvement in extorting money from a hospital was conduct that reflected adversely on the attorney's honesty, trustworthiness, and fitness as a member of the legal profession.

California State Bar v. Superior Court (Ginsburg) (1990) 50 Cal.3d 515: In this case, the California Supreme Court held that the State Bar has the authority to discipline attorneys for violating the rules of professional conduct, which include provisions related to dishonesty, fraud, deceit or misrepresentation. The court found that an attorney's involvement in a fraudulent scheme to defraud clients was conduct that reflected adversely on the attorney's honesty, trustworthiness, and fitness as a member of the legal profession.

FTC v. Indiana Federation of Dentists (1984) 476 U.S. 447: In this case, the United States Supreme Court held that a professional association's agreement to fix prices charged by its members is a per se violation of the Sherman Act, 15 U.S.C. § 1, which prohibits any contract, combination, or conspiracy in restraint of trade or commerce. The court found that the Indiana Federation of Dentists' agreement to fix prices for dental services was a violation of antitrust laws. This case is applicable to the fact pattern as it shows how restraint of trade is illegal under antitrust laws and how it can be applied to a professional association's agreement.

## Cases

); Dayton Bar Ass'n v. Marzocco, 79 Ohio St.3d 186, 680 N.E.2d 970, 971 (1997) ......................... 34

. Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rasmussen, 823 N.W.2d 404, 410 (Iowa 2012) .... 34

[Purdy Fitzpatrick v. State of California, 71 Cal.2d 566 (Cal. 1969)] ............................................. 120

"CAPA" Title 2, Division 3, Part 1, Chapters 3.5, 4, 4.5 and 5 of the Government Code of California
    ("GCC") ............................................................................................................................................... 193

**42 U.S.C. § 1983 Judicial Deception** ...................................................................................................... 9

Advance Medical Diagnostic  Laboratories v. County of Los Angeles (1976) 58 Cal.App.3d 263 [
    129 Cal.Rptr. 723] ............................................................................................................................. 200

Att'y Grievance Comm'n v. Culver, 381 Md. 241, 849 A.2d 423, 444 (2004) .................................... 34

Austen v. Cnty. of L.A., No. 15-07372 DDP (FFMx), at *30 (C.D. Cal. Jan. 19, 2018) ................. 202

Bane Act (Civ. Code, § 52.1) ....................................................................................................................... 9

Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 107: ..................................................... 351

**Brentwood Academy v. Tennessee Secondary School Athletic Association (2001) 531 U.S. 288**
    ............................................................................................................................................................ 110

Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209 (1993) ......................... 113

Brower, 257 F.3d at 1065 ......................................................................................................................... 261

Brown v. U.S. Taekwondo, 11 Cal.5th 204, 213 (Cal. 2021) .................................................................. 30

**Cal. Pen. Code, § 115 Procuring Filing of False Document or Offering False Information To
    State Agency** ...................................................................................................................................... 9

California Energy Comm'n v. Dep't of Energy, 585 F.3d 1143, 1150 (9th Cir. 2009); Snoqualmie
    Indian Tribe v. F.E.R.C., 545 F.3d 1207, 1212 (9th Cir. 2008); Anaheim Mem'l Hosp. v. Shalala,
    130 F.3d 845, 849 (9th Cir. 1997). ................................................................................................... 261

California State Bar v. Superior Court (Ginsburg) (1990) 50 Cal.3d 515 ........................................ 352

CanfiHOLTON v. Prod (1977) 67 Cal.App.3d 722 [ 137 Cal.Rptr. 27] ............................................ 200

CBPC 6001.1 ........................................................................................................................................ 46, 316

Chapman v. Gerard (3d Cir. 1972) 456 F.2d 577 ................................................................................. 120

Clayworth v. Pfizer, Inc., 49 Cal.4th 758 (Cal. 2010), ........................................................................... 27

**Consumer Financial Protection Bureau v. ITT Educational Services, Inc. (S.D. Ind. 2017) No.
    1:14-cv-01764-TWP-DKL** ............................................................................................................. 112

D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) ..... 315

Densmore v. Manzarek, Nos. B186036, B186037, B188708, 2008 WL 2209993, at *27 (Cal. Ct.
    App. May 29, 2008) (unpublished) .................................................................................................... 33

Dougall v. Sugarman (S.D.N.Y. 1971) 330 F. Supp. 265 (subsequent opn. by three-judge court
    (S.D.N.Y. 1971) 339 F. Supp. 906, prob. juris. noted 407 U.S. 908 [32 L.Ed.2d 682, 92 S.Ct. 2434]
    ............................................................................................................................................................ 120

Fla. Bar v. Rood, 620 So.2d 1252, 1255 (Fla.1993) ............................................................................... 34

Flanagan v. Flanagan, 27 Cal.4th 766 (Cal. 2002) ............................................................................... 26

Friddle v. Epstein, 16 Cal.App.4th 1649 (Cal. Ct. App. 1993 ............................................................... 26

FTC v. Indiana Federation of Dentists (1984) 476 U.S. 447 ...................................................... 143, 352

FTC v. Indiana Federation of Dentists, 476 U.S. 447 (1984) ............................................................ 101

FTC v. Sperry Hutchinson Co. (1972) 405 U.S. 233, 244 [ 31 L.Ed.2d 170, 179, 92 S.Ct. 898 ........ 35

Gas Leak Cases , supra , 7 Cal.5th at p. 397, 247 Cal.Rptr.3d 632, 441 P.3d 881 ............................ 30

Greater Yellowstone Coalition v. Lewis, 628 F.3d 1143, 1148 (9th Cir. 2010) .............................. 261

Hartway v. State Board of Control (1976) 69 Cal.App.3d 502 [ 137 Cal.Rptr. 199] ...................... 200

Hirsh v. Justices of Supreme Court of California, 67 Fed.3d 708, 712-713 (1995) ........................ 316

Hodsdon v. Mars, Inc., 162 F. Supp. 3d 1016, 1022 (N.D. Cal. 2016), aff'd, No. 16-15444 (9th Cir. June 4, 2018)............................................................................................................................. 28

Hosier v. Evans (D. Virgin Islands 1970) 314 F. Supp. 316 ............................................... 121

Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009)................................................................... 202

In FTC v. Indiana Federation of Dentists (1984) 476 U.S. 447............................................ 105

In Graham v. Richardson (1971) supra, 403 U.S. 365 [29 L.Ed.2d 534, 91 S.Ct. 1848]................. 120

In People v. Casa Blanca Convalescent Homes, Inc. (1984) 159 Cal.App.3d 509........................... 35

In re Conduct of Hockett, 303 Or. 150, 734 P.2d 877, 883–84 (1987) .................................... 34

In re Rousso (1988) 45 Cal.3d 929, 933................................................................................. 351

In Re Rutter (1932) 214 Cal. 724 ........................................................................................ 143

In *Selling v. Radford*, 243 U.S. 46, 50-51, 37 S.Ct. 377, 61 L.Ed. 585 (1917) ................................ 315

Interstate Commerce Act of 1887 ...................................................................................... 181

Kwikset Corp. v. Superior Court, 51 Cal.4th 310 (Cal. 2011) ............................................... 28

**Legal Aid Soc'y v. Legal Servs. Corp., 961 F. Supp. 1402, 1421** .......................................... 111

Lexin v. Superior Court (People), 47 Cal.4th 1050, 1060 (Cal. 2010) ......................................... 123

*MacKay v. Nesbett*, 412 F.2d 846, 847 (9th Cir.1969).............................................................. 315

**McDonald v. Aps (N.D. Cal. 2019) 385 F. Supp. 3d 1022, 1037** ............................................ 110

Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986) ....................................... 206

Nally v. Grace Community Church (1988) 47 Cal.3d 278, 292, 253 Cal.Rptr. 97, 763 P.2d 948 ...... 30

Parker v. Brown (1943) 317 U.S. 341 .................................................................................... 181

Penal Code § 632.7 (2017).................................................................................................. 253

People ex rel. Harris v. Sarpas, 225 Cal. App. 4th 1539, 1562 (2014) ...................................... 33

People v. Honig, 48 Cal.App.4th 289, 314 (Cal. Ct. App. 1996) ............................................... 196

People v. Superior Court (Cedars-Sinai Medical Center) (1998) 18 Cal.4th 1, 11:..................... 351

People v. Superior Court (Myers) (1997) 59 Cal.App.4th 1514, 1525 ....................................... 351

People v. Toomey, 157 Cal. App. 3d 1, 15 (1984)..................................................................... 33

Pinsker II, supra, 12 Cal.3d at p. 550..................................................................................... 43

Potvin v. Metropolitan Life Ins. Co., 22 Cal.4th 1060, 1066 (Cal. 2000) .................................. 43

Purdy Fitzpatrick v. State of California (1969) 71 Cal.2d 566, 578-579 [ 79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]....................................................................................................... 119

**Regents of the Univ. of California v. American Broad. Companies, Inc., 747 F.2d 511 (9th Cir. 1984):** ......................................................................................................................... 110

Regents of the University of California v. Bakke (1978) 438 U.S. 265...................................... 168

Rogers v. Cal. State Mortg. Co. Inc .................................................................................... 33

Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923)................. 315

Rules Proc. of State Bar ...................................................................................................... 315

Sei Fujii v. State of California (1952) 38 Cal.2d 718, 730-731 [ 242 P.2d 617]............................ 119

Sheen v. Wells Fargo Bank, 12 Cal.5th 905 (Cal. 2022): ........................................................ 31

Sherman Act............................................................................................................... 87, 180

Takahashi v. Fish Game Comm'n (1948) supra, 334 U.S. 410 [92 L.Ed. 1134, 68 S.Ct. 731] ........ 120

The Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en banc), ................................ 261

*Theard v. United States*, 354 U.S. at 281-82, 77 S.Ct. 1274 .............................................. 315

*Thompson v. Clark*, 596 U.S. (2022)................................................................................. 314

Truax v. Raich (1915) supra, 239 U.S. 33 [60 L.Ed. 131, 36 S.Ct. 7] ..................................... 120

**U.S. v. Hill, 563 F.3d 572 (7th Cir. 2009)** ............................................................................ 110

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**United States v. Kaplan Higher Education Corp. (D.D.C. 2018) No. 1:14-cv-01137-CKK** ...... 112
**United States v. University of Phoenix (9th Cir. 2016) 817 F.3d 1153, 1160:** ........................... 111
Williams v. Wheeler, 23 Cal.App. 619, 622 (Cal. Ct. App. 1913) ................................................. 189
<u>Wind River</u> ........................................................................................................................................ 260
Winter v. Natural Res. Def. Council, 555 U.S. 7 (2008)); Envtl. Def. Ctr., 344 F.3d at 858 n.36 .... 261
Yick Wo v. Hopkins (1886) supra, 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064]............................... 120

**Statutes**

15 U.S.C. § 15(a). 1 ............................................................................................................................ 21
**18 U.S.C. § 1341** ............................................................................................................................. 111
**18 U.S.C. § 1343** ............................................................................................................................. 110
**18 U.S.C. § 1956** ............................................................................................................................... 10
18 U.S.C. § 1961(5).......................................................................................................................... 342
18 U.S.C. § 1964 ................................................................................................................................ 21
18 U.S.C. § 1964(c)............................................................................................................................ 21
18 U.S.C. § 1965(a)............................................................................................................................ 24
18 U.S.C. §1961 ................................................................................................................................. 21
18 U.S.C. §1962 ................................................................................................................................. 21
18 U.S.C. 1964 ................................................................................................................................... 23
18 U.S.C. 1965(a).............................................................................................................................. 23
28 U.S.C. § 1654 ................................................................................................................................ 11
42 U.S.C. § 1956 ................................................................................................................................. 1
**42 U.S.C. § 1981** ............................................................................................................................... 11
**42 U.S.C. § 1983** ...................................................................................................................9, 205, 317
AB 3249 section (2)........................................................................................................................... 316
BPC 6094 .......................................................................................................................................... 316
Business and Professions Code Section 17200.................................................................................. 168
Cal. Bus. & Prof. Code §17535........................................................................................................... 28
Cal. Const. Art. III, sec. 3.5 .............................................................................................................. 316
Cal. Pen. Code §637.2 ........................................................................................................................ 26
**California Business and Professions Code** ..................................................................................... 112
**California Invasion of Privacy Act** ................................................................................................ 110
California's Unfair Competition Law ("UCL") ............................................................................. passim
CLAYTON ACT .......................................................................................................................... 21, 87
CLRA ................................................................................................................................................. 28
**Consumer Legal Remedies Act.** ..................................................................................................... 112
Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 ............................................... 202
FAL .................................................................................................................................................... 28
Mass. Gen. Laws ch. 223A § 5 .......................................................................................................... 24
Private Postsecondary Education Act......................................................................................... 92, 270
Proposition 64 ................................................................................................................................... 28
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) ............... 21, 86
Section 94874 specifies that unaccredited fixed facility law schools must be registered with the
    Committee of Bar Examiners ..................................................................................................... 269
Section 94875 requires that the CBE periodically inspect and evaluate the law school to ensure
    compliance with these standards.............................................................................................. 270

Section 94878 allows the CBE to take disciplinary action against the law school for failure to comply with these standards. ................................................................................................................ 270
State Bar Act of 1937 ................................................................................................ 92, 270
**the Higher Education Act** ............................................................................................. 111
the Organic Act ............................................................................................................. 189

**Other Authorities**

1.1.14 ............................................................................................................................. 210
Assembly Bill 3249, Ch. 659, p.2. ................................................................................ 316
CACI 430. CRPC 8.4 ..................................................................................................... 311
CACI 430. CRPC 8.4. .................................................................................................... 332
Cal. Cod. Civ. Proc. § 425.16 ....................................................................................... 321
EXHIBIT PCL-1 thill acceptance 08132019.pdf ......................................................... 124
PCL Bylaws 16-16.6 ..................................................................................................... 210
PCL Student Handbook rules 1.1.13 ............................................................................. 210
Richard v. Stanley ......................................................................................................... 317
Richard v. Stanley, 477 U.S. 131 (1986) ....................................................................... 317

**Rules**

§ 7213 ............................................................................................................................. 26
§7210 .............................................................................................................................. 26
§9210 .............................................................................................................................. 26
Business Judgement Rule .............................................................................................. 261
Bylaw 12.2 ...................................................................................................................... 25
California Rule of Professional Conduct 3-700(A ........................................................ 160
California Rule of Professional Conduct 3-700(A). ...................................................... 160
California Rule of Professional Conduct 3-700(D) ....................................................... 161
CPC §5210 ...................................................................................................................... 26
Rule 301(a) .................................................................................................................... 316
Rule 305 ........................................................................................................................ 316
Rules 2.60, 3.16 ............................................................................................................ 315
Rules 302-304 ............................................................................................................... 316
Rules Proc., rule 220 .................................................................................................... 316
Rules Proc., rule 250 .................................................................................................... 316
**Unfair Business Practice** ............................................................................................. 35

**Regulations**

( Code Civ. Proc., § 382 ................................................................................................. 25
§17204 ............................................................................................................................ 28
**Business and Professions Code (BPC) § 6068** ........................................................... 4
California Code of Civil Procedure Section 382 ............................................................. 25
CCC 52.1 ........................................................................................................................ 70
Code Civ. Proc., § 382 ................................................................................................... 25
TOM BANE CIVIL RIGHTS ACT ............................................................................. 70

**Constitutional Provisions**

Due Process Clause ................................................................................................................ 94

COMPLAINT FOR FRAUD, CONVERSION, UNFAIR BUSINESS PRACTICES

**The State Bar of California**

180 Howard Street, San Francisco, CA 94105

**REGULATION AND DISCIPLINE COMMITTEE CHARTER**

The Regulation and Discipline Committee is a performance-monitoring and oversight committee. It is accountable for monitoring the operational performance of the State Bar's work related to attorney discipline including the Office of Chief Trial Counsel, Office of Probation, State Bar Court, Client Security Fund, and Office of Professional Competence. Pursuant to California Rule of Court 9.11(a)(2) any Board member appointed and serving on the Supreme Court's Applicant and Nomination Committee may not sit on this committee.

The Regulation and Discipline Committee shall:

- Establish the key elements of a programmatic reporting process, including the content, format, and frequency of performance reports to the Board, and oversee implementation of the process.
- Oversee (as directed by Bus. & Prof. Code, § 6079.5), the work of the chief trial counsel, who reports to and serves under the Regulation and Discipline Committee.
- Chief Trial Counsel Evaluation: Ensure that the chief trial counsel position description is updated as necessary to reflect changing State Bar needs and, priorities, and conduct the annual performance evaluation with the Board Executive Committee. An annual performance evaluation of the chief trial counsel will be conducted by the Regulation and Discipline Committee and Executive Committee and will be presented to the Board for review within 90 days of the anniversary date of the chief trial counsel's appointment. The Regulation and Discipline Committee will conduct its evaluation using a performance plan established in conjunction with the Office of Human Resources and executive director. The performance plan will be provided to the chief trial counsel within 90 days of appointment. The State Bar may meet in closed session to discuss the annual performance evaluation of the chief trial counsel.
- Approve changes to high-level quality-control policies that apply to the functioning of the State Bar Program Areas under the Regulation and Discipline Committee's performance-monitoring and oversight authority.
- Review performance reports in Regulation and Discipline Committee meetings and report program performance to the full Board.
- Identify and oversee the implementation of needed corrective actions. Oversee the preparation of in-depth assessments of program/function effectiveness for presentation at the annual strategic planning session.
- Review internal and external audit reports as they relate to the functions of the State Bar under the Regulation and Discipline Committee's performance monitoring and oversight authority and oversee implementation of recommendations identified therein.
- Monitor the work of the Special Deputy Trial Counsel Administrator assigned to the management of cases from which the Chief Trial Counsel's Office is recused under Rule 2201 of the Rules of Procedure of the State Bar.
- Oversee the Annual Discipline Report process and underlying discipline statistics.
- Develop and adopt a Regulation and Discipline Committee Work Plan for approval by the Board Executive Committee; for each Regulation and Discipline Committee project listed on the Work Plan, the Work Plan shall include a description of the project, the

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

Strategic Plan Goal(s) and Objective(s) that are furthered by the project, and an estimated timeline for completion and presentation to the Regulation and Discipline Committee and/or the Board.

- Perform such other functions relevant to the Regulation and Discipline Committee's subject area as the Board of Trustees may from time-to-time assign.

M Gmail

Todd Hill <toddryangregoryhill@gmail.com>

---

# FW: Next Steps as to Denial of Exception Under 5.6

**Ira Spiro** <ira@spirolawcorp.com>                                                   Thu, Sep 15, 2022 at 9:43 AM
To: "Todd Hill (toddryangregoryhill@gmail.com)" <toddryangregoryhill@gmail.com>
Cc: "Hector PENA (hectorpena@ucla.edu)" <hectorpena@ucla.edu>, "ADRIANA ZUNIGA -
ADMINISTRATORadministrator@peoplescollegeoflaw.edu" <administrator@peoplescollegeoflaw.edu>, "Natalie Leonard
(Natalie.Leonard@calbar.ca.gov)" <natalie.leonard@calbar.ca.gov>

Mr. Hill

As you can see below, this morning, at the request of PCL, the State Bar wrote us that **if you consent**, PCL is permitted right now to change your status in your previous Property and Remedies courses from credit to audit, which would enable you this academic year to take those same two courses for credit. It appears to me that if, this academic year, you pass all the 4th year courses PCL offers, and satisfy the 80% attendance requirement in each course each quarter, your problem with the 270 hour requirement for your 4th year will be solved.

**Please email back to me stating whether you consent to PCL changing your status in the Property and Remedies courses you previously took at PCL from credit to audit.**

**You need only answer "YES" OR "NO".**

**You should email me your decision right away, I would say today,** because the change from credit to audit can solve your 270 hour problem only if you attend 4th year classes at PCL starting next week, the week of September 19, and attend all classes the rest of the quarter, because if you do not, you will not be able to meet the State Bar's requirement to attend 80% of all class sessions for each course each quarter. (Next week is the third week of the quarter.)

Of course, like all people who wish to attend PCL classes, in order to attend the classes, you will first have to sign a tuition agreement required by PCL and pay the required tuition.

*Ira Spiro, Attorney at Law*

*310-235-2350 **NO TEXTS -- phone is a land line***

***Please Correspond by Email Only***

***I do NOT promptly see U.S. Mail, Fed Ex, UPS, etc.***

*Los Angeles, Cal.*

*ira@spirolawcorp.com*

*website: spirolawcorp.com*

*pronouns: he*

**From:** Ira Spiro
**Sent:** Thursday, September 15, 2022 9:22 AM
**To:** 'Leonard, Natalie' <Natalie.Leonard@calbar.ca.gov>
**Cc:** Adriana Zuniga (administrator@peoplescollegeoflaw.edu) <administrator@peoplescollegeoflaw.edu>; hpena@peoplescollegeoflaw.edu; Ching, Audrey <Audrey.Ching@calbar.ca.gov>; Dean, PCL <dean@peoplescollegeoflaw.edu>
**Subject:** RE: Next Steps as to Denial of Exception Under 5.6
**Importance:** High

Thank you. Yes, we did submit this identical proposal to eligibility. Attached to this email are the emails showing our submissions and plans that were attached to those emails.

We will now ask the student, Mr. Hill, for his consent to proceed with that switch.

*Ira Spiro, Attorney at Law*

*310-235-2350* **NO TEXTS -- phone is a land line**

---

**From:** Leonard, Natalie <Natalie.Leonard@calbar.ca.gov>
**Sent:** Thursday, September 15, 2022 9:04 AM
**To:** Ira Spiro <ira@spirolawcorp.com>
**Cc:** Adriana Zuniga (administrator@peoplescollegeoflaw.edu) <administrator@peoplescollegeoflaw.edu>; hpena@peoplescollegeoflaw.edu; Ching, Audrey <Audrey.Ching@calbar.ca.gov>; Dean, PCL <dean@peoplescollegeoflaw.edu>
**Subject:** RE: Next Steps as to Denial of Exception Under 5.6

Dear Ira,

Yes, that switch can be done with the student's consent.

I believe the Peoples team has submitted to eligibility the law school's proposed plan of study (and perhaps other proposals) to confirm whether the full plan would be approved for a full year of study, or, if not, please do ASAP today.

Natalie

---

**From:** Ira Spiro <ira@spirolawcorp.com>
**Sent:** Thursday, September 15, 2022 8:39 AM
**To:** Leonard, Natalie <Natalie.Leonard@calbar.ca.gov>
**Cc:** Adriana Zuniga (administrator@peoplescollegeoflaw.edu) <administrator@peoplescollegeoflaw.edu>; hpena@peoplescollegeoflaw.edu; Ching, Audrey <Audrey.Ching@calbar.ca.gov>; Dean, PCL <dean@peoplescollegeoflaw.edu>
**Subject:** RE: Next Steps as to Denial of Exception Under 5.6
**Importance:** High

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Natalie

As you say, the courses previously offered for credit could be adjust to audit status, and those courses repeated this year. Those courses are Property and Remedies, which he took for credit in his 2nd and 3rd years. I suggested that to Mr. Hill months ago and to you in a conversation  very recently. I believe that would immediately solve his problem if by next week he registers at the school, pays the required tuition, and begins classes. (Next week is important because it's the third week of the quarter, and if he misses that week he will not meet the 80% attendance requirement.)

**As far as the State Bar is concerned, may Peoples College of Law right now change his status in those previous courses, Property and Remedies, from credit to audit and then this academic year allow him to take those same courses for credit?**

Ira

*Ira Spiro, Attorney at Law*

*310-235-2350 **NO TEXTS -- phone is a land line***

**Please Correspond by Email Only**

**I do NOT promptly see U.S. Mail, Fed Ex, UPS, etc.**

*Los Angeles, Cal.*

*ira@spirolawcorp.com*

*website: spirolawcorp.com*

*pronouns: he*

---

**From:** Leonard, Natalie <Natalie.Leonard@calbar.ca.gov>
**Sent:** Thursday, September 15, 2022 8:23 AM
**To:** Juan Manuel Sarinana <dean@peoplescollegeoflaw.edu>
**Cc:** Adriana Zuniga (administrator@peoplescollegeoflaw.edu) <administrator@peoplescollegeoflaw.edu>; hpena@peoplescollegeoflaw.edu; Ira Spiro <ira@spirolawcorp.com>; Ching, Audrey <Audrey.Ching@calbar.ca.gov>
**Subject:** Next Steps as to Denial of Exception Under 5.6

To the Leadership Team at Peoples College of Law:

I am writing to confirm whether the law school plans to submit the denial of exception to the Committee of Bar Examiners, or to take another course of action. I understand the law school has considered several options and submitted some to eligibility for evaluation. Possibilities mentioned included:

The student had originally indicated that in exchange for taking 4th year courses early, he would create several independent study courses

An internship could be added in combination with classes and, if necessary one or more visiting classes

The student could visit in full or in part at another law school so long as those courses fulfilled the degree requirement at Peoples College of Law

The student has requested that the decision be submitted for review and does have interest that it be reviewed to the Supreme Court and urged that time is of the essence. He asked that I forward that information directly to you. I understand you were copied on prior communications as to this, but wanted to be sure that I conveyed the information as requested.

Thank you,

Natalie Leonard (she/her/hers)

Principal Program Analyst, Educational Standards

The State Bar of California | 180 Howard Street | San Francisco, CA 94105

Office: 415-538-2118 | Fax: 415-538-2304 | natalie.leonard@calbar.ca.gov

***Working to protect the public in support of the mission of the State Bar of California.***

Please consider the environment before printing this email.

LinkedIn | Twitter | Facebook | Instagram

*This message may contain confidential information. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose the message in whole or in part. If you have received this message in error, please advise the sender by reply email and delete all copies of the message. Thank you.*

---------- Forwarded message ----------
From: Ira Spiro <ira@spirolawcorp.com>
To: "nathalie.hope@calbar.ca.gov" <nathalie.hope@calbar.ca.gov>
Cc: "Hector PENA (hectorpena@ucla.edu)" <hectorpena@ucla.edu>
Bcc:
Date: Fri, 2 Sep 2022 18:01:08 +0000
Subject: Application for Evaluation of Law Study re Todd Ryan Gregory Hill

Dear Nathalie …Thanks again for the info this morning and yesterday.

Attached is Peoples College of Law's Application for Evaluation of Law Study. It is regarding student Todd Ryan Gregory Hill. I am copying the chair of our board of directors/president, Héctor Peña. This morning he and made the decision to submit this application. I will send  the application to the student by separate email.

Also attached are:

● My payment authorization for the charge for this application.

● The electronic image of his official transcript. I plan to get the original paper version of the official transcript to you on Tuesday.

Ira

*Ira Spiro, Attorney at Law*

*310-235-2350 **NO TEXTS -- phone is a land line***

**Please Correspond by Email Only**

**I do NOT promptly see U.S. Mail, Fed Ex, UPS, etc.**

*Los Angeles, Cal.*

*ira@spirolawcorp.com*

*website: spirolawcorp.com*

*pronouns: he*

---------- Forwarded message ----------
From: Ira Spiro <ira@spirolawcorp.com>
To: State Bar of California - Eligibility <eligibility@calbar.ca.gov>
Cc: "toddryangregoryhill@gmail.com" <toddryangregoryhill@gmail.com>, "hpena@peoplescollegeoflaw.edu"
<hpena@peoplescollegeoflaw.edu>, "administrator@peoplescollegeoflaw.edu" <administrator@peoplescollegeoflaw.edu>,
"dean@peoplescollegeoflaw.edu" <dean@peoplescollegeoflaw.edu>
Bcc:
Date: Sat, 3 Sep 2022 01:07:40 +0000
Subject: RE: Results for Evaluation of Law Study Completed [ ref:_00Dt0TZax._500t012TKU3:ref ]

Dear Ms. Hope

Thank you for the very, very prompt response to the application for review, and for sending the form for a proposed plan of study.

**The proposed plan of study has been completed and is attached to this email, in both MS Word and pdf formats.**

*Ira Spiro, Attorney at Law*

*310-235-2350 **NO TEXTS -- phone is a land line***

**Please Correspond by Email Only**

**I do NOT promptly see U.S. Mail, Fed Ex, UPS, etc.**

*Los Angeles, Cal.*

*ira@spirolawcorp.com*

*website: spirolawcorp.com*

*pronouns: he*

**Sent:** Friday, September 2, 2022 3:38 PM
**To:** Ira Spiro <ira@spirolawcorp.com>
**Cc:** toddryangregoryhill@gmail.com; hpena@peoplescollegeoflaw.edu; administrator@peoplescollegeoflaw.edu;
dean@peoplescollegeoflaw.edu
**Subject:** Results for Evaluation of Law Study Completed [ ref:_00Dt0TZax._500t012TKU3:ref ]



OFFICE OF ADMISSIONS

**File #:** 498729

Dear Ira Spiro,

The record of law study for Todd Hill has been reviewed.

Pursuant to Rule 4.26 of the ***Admissions Rules (Rules)***, four years of law study
are required to qualify for the California Bar Examination (CBX). An evaluation
of your student's eligibility file, and the transcripts you have provided from
Peoples College of Law, indicate that your student has met the First-Year Law
Students' Examination requirement and according to the transcripts we have
received, they have completed 3 years of law study. In order to establish academic
eligibility to take the CBX under this section, they will need to complete 1 year of
additional law study, in strict compliance with the ***Rules,*** which must consist of
270 classroom hours.

If the student plans to earn a Juris Doctor degree, p????lease note that it must
consist of courses to fulfill all the law school's requirements to award a Juris
Doctor degree.

You are strongly encouraged to submit one or more proposed plans of study for
review to Nathalie Hope by email at nathaliel.hope@calbar.ca.gov before
undertaking any additional law study and you will be advised accordingly.

Sincerely,

Nathalie Hope
Program Specialist
Office of Admissions
State Bar of California
(213) 765-1547

ref:_00Dt0TZax._500t012TKU3:ref

**7 attachments**

**Application for For Evaluation of Law Study - 9-2-22 SIGNED.pdf**
144K

**Payment Authorization Form for App for Eval of Study 9-2-22 SIGNED.pdf**
63K

**TRANSCRIPT OFFICIAL 08-29-22.pdf**
96K

**Application for Evaluation of Law Study re Todd Ryan Gregory Hill.eml**
425K

**Proposed Plan of Law Study-Legal Evaluation - Todd Hill - 9-2-22.pdf**
103K

**Proposed Plan of Law Study-Legal Evaluation - Todd Hill - 9-2-22.docx**
24K

**RE: Results for Evaluation of Law Study Completed   [ ref:_00Dt0TZax._500t012TKU3:ref ].eml**
189K

M Gmail                                                            Todd Hill <toddryangregoryhill@gmail.com>

**your voicemail**
1 message

**Ching, Audrey** <Audrey.Ching@calbar.ca.gov>                           Tue, Jan 4, 2022 at 1:57 PM
To: "toddryangregoryhill@gmail.com" <toddryangregoryhill@gmail.com>

Dear Mr. Hill:

I write in response to your voicemail message of January 4, 2022.

On December 10, 2021, the State Bar explained to you by letter that it does not intervene in disputes of the type you have raised.

Therefore, the State Bar will not be providing you any further response.

Audrey Ching (she/her/hers)

Assistant Director, Admissions

The State Bar of California | 180 Howard Street | San Francisco, CA 94105

Office: 415-538-2313 |Cell: 213-503-9308 | Fax: 415-538-2304 | audrey.ching@calbar.ca.gov

*Working to protect the public in support of the mission of the State Bar of California.*

Please consider the environment before printing this email.

LinkedIn | Twitter | Facebook | Instagram

*This message may contain confidential information. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose the message in whole or in part. If you have received this message in error, please advise the sender by reply email and delete all copies of the message. Thank you.*



# announcement of the
# SCHOOL OF LAW
## 1969-1970

*University of California, Los Angeles*

January 20, 1969



UNIVERSITY
OF CALIFORNIA
LOS ANGELES

LAW LIBRARY

## RESERVATION OF RIGHTS

The right is reserved to modify the requirements for admission or graduation; to change the arrangement or content of courses or the course materials used; to alter any regulation affecting the student body; to refuse admission or readmission to any student at any time, or to dismiss any student at any time, should it be deemed in the interest of the School of Law to do so.

# Contents

**CALENDAR** . . . . . . . . . . . . . . . . . 4

**CAMPUS OFFICERS** . . . . . . . . . . . . . 5

**THE SCHOOL OF LAW** . . . . . . . . . . . 6
Officers of Administration and Faculty, 6.   The Law Library, 8.

**ADMISSION TO THE SCHOOL** . . . . . . . . 10
Preparation for the Study of Law, 10.   Requirements for Admission to the First Year Class, 10.   Law School Admission Test, 10.

**APPLICATION PROCEDURE** . . . . . . . . . 11
Admission to Advanced Standing, 12.   Fees and Expenses, 12. Medical and Physical Examination, 13.

**PROGRAM OF STUDY** . . . . . . . . . . . . 14
Juris Doctor Degree, 14.   Residence and Unit Requirements, 14.   Study in Other Departments, 14.   Scholarship and Attendance Requirements, 15.   Attendance and Grades, 15.   Unsatisfactory Performance, 15.   Honor System, 15.   Outside Employment, 16.   Faculty Right to Require Withdrawal or Refuse Degree, 16.   Five-Year Rule, 16.   Graduate Study, 17.

**STUDENT HONORS ORGANIZATIONS** . . . . . 18
UCLA Law Review, 18.   Roscoe Pound Competition, 18. Order of the Coif, 18.

**STUDENT ACTIVITIES** . . . . . . . . . . . 20

**STUDENT SERVICES** . . . . . . . . . . . . 21
Student Privileges, 21.   Student Health Service, 21.   Living Accommodations, 21.   Office of Special Services, 21.   Placement, 21.   Scholarships, Loans, Prizes and Awards, 22.

**COURSES OF INSTRUCTION** . . . . . . . . . 28

# Calendar

**FALL QUARTER/1969**

| | |
|---|---|
| September 22, Monday | Fall quarter begins |
| September 25, Thursday | Instruction begins |
| November 27, Thursday | Thanksgiving vacation |
| November 28, Friday | |
| December 5, Friday | Instruction ends |
| December 10, Wednesday | Examination period |
| December 19, Friday | |
| December 19, Friday | Fall quarter ends |

**WINTER QUARTER/1970**

| | |
|---|---|
| January 5, Monday | Instruction begins |
| March 13, Friday | Instruction ends |
| March 18, Wednesday | Examination period |
| March 25, Wednesday | |
| March 25, Wednesday | Winter quarter ends |

**SPRING QUARTER/1970**

| | |
|---|---|
| March 30, Monday | Instruction begins |
| June 5, Friday | Instruction ends |
| June 10, Wednesday | Examination period |
| June 18, Thursday | |
| June 18, Thursday | Spring quarter ends |

4

---

# UCLA

## CAMPUS OFFICERS

Charles J. Hitch, Ph.D, *President of the University.*

Charles E. Young, Ph.D, *Chancellor.*

Vern O. Knudsen, Ph.D, LL.D, *Chancellor Emeritus.*

James W. Hobson, M.A, *Vice-Chancellor—Administration.*

Rosemary Park, Ph.D, *Vice-Chancellor—Student and Curricular Affairs.*

Paul O. Proehl, J.D, *Vice-Chancellor—University Relations and Public Affairs.*

David Saxon, Ph.D, *The Vice-Chancellor.*

Foster H. Sherwood, Ph.D, LL.D, *Vice-Chancellor—Academic Affairs.*

William G. Young, Ph.D, D.Sc, *Vice-Chancellor—Physical Planning and Construction.*

Stafford L. Warren, M.D, LL.D, *Vice-Chancellor, Emeritus, Health Sciences.*

Carl M. York, Ph.D, *Assistant Chancellor—Research.*

Robert A. Rogers, A.B, *Assistant Vice-Chancellor—Finance.*

C. Z. Wilson, Jr, Ph.D, *Assistant Vice-Chancellor—Educational Planning and Programs.*

J. Wesley Robson, Ph.D, *Admissions Officer.*

William T. Puckett, Ph.D, *Registrar.*

Robert Vosper, M.A, *University Librarian.*

Charles Speroni, Ph.D, *Director of the Summer Session.*

Andrew Hamilton, A.B, *Public Affairs Officer.*

Byron H. Atkinson, Ed.D, *Dean of Students.*

William R. Locklear, M.A, *Dean of Student Housing.*

Donald MacKinnon, M.D, *Director, Student Health Services.*

Charles McClure, J.D, *Dean of Student Activities.*

Norman P. Miller, Ed.D, *Coordinator of Cultural and Recreational Affairs.*

David W. Palmer, Ph.D, *Manager, Counseling Center.*

H. Carroll Parish, Jr, Ph.D, *Dean of Financial Aids.*

Thomas J. Scully, J.D, *Dean of Foreign Students.*

Edward A. Shaw, M.B.A, *Manager, Placement and Career Planning Center.*

Nola Stark, Ed.D, *Dean of Women.*

William G. Thomas, Ed.D, *Dean, Educational Career Services.*

Donald L. Reidhaar, J.D, *Campus Attorney.*

5

# The School of Law

## OFFICERS OF ADMINISTRATION

Richard C. Maxwell, B.S.L., LL.B., *Dean of the School of Law and Professor of Law.*

Robert L. Jordan, A.B., LL.B., *Associate Dean of the School of Law and Professor of Law.*

Roger L. Cossack, B.A., J.D., *Assistant Dean.*

Frederick E. Smith, B.A., LL.B., M.A.L.S., *Law Librarian.*

Frances McQuade, A.B., *Assistant to the Dean.*

## FACULTY

Benjamin Aaron, A.B., LL.B., *Professor of Law and Director of the Institute of Industrial Relations.*

[1]Norman Abrams, A.B., J.D., *Professor of Law.*

Michael R. Asimow, B.S., LL.B., *Acting Professor of Law.*

John A. Bauman, B.S.L., LL.B., LL.M., Jur. Sc.D. *Professor of Law.*

[1]L. Dale Coffman, A.B., J.D., LL.M., S.J.D., *Professor of Law.*

William Cohen, A.B., LL.B., *Professor of Law.*

Jesse J. Dukeminier, Jr., A.B., LL.B., *Professor of Law.*

Kenneth W. Graham, Jr., B.A., J.D., *Professor of Law.*

Donald G. Hagman, B.S., LL.B., LL.M., *Professor of Law and Associate Director of the Institute of Government and Public Affairs.*

Harold W. Horowitz, A.B., LL.B., LL.M., S.J.D., *Professor of Law.*

Edgar A. Jones, Jr., A.B., LL.B., *Professor of Law.*

Robert L. Jordan, A.B., LL.B., *Professor of Law.*

Kenneth L. Karst, A.B., LL.B., *Professor of Law.*

Leon Letwin, Ph.B., LL.B., *Professor of Law.*

Wesley J. Liebeler, B.A., J.D., *Acting Professor of Law.*

Harold Marsh, Jr., A.B., LL.B., LL.M., Jur.Sc.D., *Professor of Law.*

Richard C. Maxwell, B.S.L., LL.B., *Professor of Law and Dean.*

David Mellinkoff, A.B., LL.B., *Professor of Law.*

Herbert Morris, A.B., LL.B., D.Phil (Oxon.) *Professor of Law and Professor of Philosophy.*

Addison Mueller, A.B., LL.B., *Professor of Law.*

Melville B. Nimmer, A.B., LL.B., *Professor of Law.*

[1]James C. N. Paul, A.B., LL.B., *Professor of Law in Residence.*

Paul O. Proehl, A.B., J.D., M.A., *Professor of Law.*

Ralph S. Rice, B.S., LL.B., LL.M., *Cornell Professor of Law.*

Arthur I. Rosett, B.A., LL.B., *Acting Professor of Law.*

[1]Herbert E. Schwartz, B.S., LL.B., *Professor of Law.*

Murray L. Schwartz, B.S., LL.B., LL.M., J.S.D., *Professor of Law.*

James D. Sumner, Jr., A.B., LL.B., LL.M., J.S.D., *Professor of Law.*

Harold E. Verrall, A.B., M.A., LL.B., J.S.D., *Professor of Law.*

William D. Warren, A.B., J.D., J.S.D., *Professor of Law.*

Richard A. Wasserstrom, B.A., M.A., Ph.D., LL.B., *Professor of Law and Professor of Philosophy.*

6

Kenneth H. York, A.B., LL.B., *Professor of Law.*

Rollin M. Perkins, A.B., J.D., S.J.D., *Cornell Professor of Law, Emeritus.*

Monroe E. Price, B.A., LL.B., *Acting Associate Professor of Law.*

Barbara B. Rintala, B.A., M.A., J.D., *Assistant Professor of Law.*

Lawrence C. Sager, B.A., LL.B., *Assistant Professor of Law.*

Luis Schuchinski, B.A., LL.B., *Acting Associate Professor of Law.*

John M. Suarez, M.D., *Assistant Professor of Psychiatry.*

Edward J. Owen, A.B., LL.B., *Lecturer in Charge of Legal Aid Instruction.*

### Members of Other Faculties Participating in Law School Offerings

Donald R. Cressey, B.S., Ph.D., *Professor of Sociology.*

Frederic Meyers, Ph.D., *Professor of Industrial Relations.*

R. Bruce Ricks, B.S., M.B.A., Ph.D., *Associate Professor of Finance.*

### Library Staff

Frederick E. Smith, B.A., LL.B., M.A.L.S., *Law Librarian.*

Frances K. Holbrook, A.B., B.S., M.S., *Assistant Law Librarian.*

Helen S. Alexander, B.S., M.L.S., *Chief Reference-Circulation Librarian.*

Robert J. Faris, B.A., M.S.L.S., *Chief Cataloger.*

A. Paul Harris, B.A., M.L.S., *Cataloger.*

Gwendolin V. Heard, B.A., B.S. in L.Sc., *Cataloger.*

Sylvia S. Merritt, B.S.L., LL.B., M.A.L.S., *Reference Librarian.*

Momoko Murakami, B.A., M.L., *Chief Acquisitions Librarian.*

Helen Carey, A.A., *Administrative Assistant.*

### Law School Staff

Gail S. Wells, B.B.A., *Office Manager.*

Rita Ball, B.S., *Supervisor of Admission and Student Records.*

Mildred Johnson, *Administrator, Placement and Alumni Office.*

Grace Black, *Administrative Assistant, Law Review.*

In 1947 the Regents of the University of California authorized the establishment of a School of Law on the Los Angeles campus and the Legislature of the State appropriated funds for the construction of a Law School building. The first class was accepted in 1949 while the School was located in temporary quarters on the campus. The building was completed in 1951, and in 1966 a new wing was added, giving the School modern and spacious study facilities. The School is a member of the Association of American Law Schools and is on the approved list of the American Bar Association. Members of the student body are drawn from all over the country, and graduates of the school are qualified to become applicants for admission to practice in any state of the United States.

The School of Law is designed to produce lawyers well prepared for the various private and public roles which are assigned to members of the legal profession. An understanding of the rules and forms of law is primary and essential. But more than that is required. Effective participation in the legal profession has always demanded an appreciation of the social context in which legal institutions are made and shaped, and of the uses of law as the instrument of guided change. The School of Law is committed to these goals, first in carrying out its instructional program, and also in serving as a center for legal-social

---

[1] Absent on leave, F-W 1969–70.

[*] Absent on leave, 1969–70.



A hearing of the Roscoe Pound Competition in the UCLA Courtroom

8 / UNIVERSITY OF CALIFORNIA

research. Legal institutions throughout the community—and in our time the community is world-wide—are subjected to continued scrutiny both by the School's faculty and by its students. In teaching as well as research, the School of Law draws upon the resources of scholars in the social sciences and other disciplines. UCLA seeks to produce lawyers alive to their unique and weighty responsibilities as members of an old and learned profession, dedicated as much to the protection of individual freedom as to "those wise restraints that make men free."

## THE LAW LIBRARY

The Law Library is a growing collection of more than 200,000 volumes, selected to further the course of instruction, familiarity with the use of source materials needed in the practice, and general legal research. Central to the Library's collection—as to our common law system—are reports of decided cases in the fifty states, the Federal Courts, and the British Commonwealth, together with the digests which give access to those decisions. Next in number as well as importance are statutes of these jurisdictions, along with the administrative rulings and interpretation of daily concern in specialized fields such as taxation. The Library's substantial collection of legal treatises covers the period from Medieval England through the latest commentaries on uniform laws, supplemented by current periodical literature. Some materials are available to promote the widest range of the student's inquiry, whether in legal history, Roman law, or the philosophy of law.

# Admission to the School

## PREPARATION FOR THE STUDY OF LAW

The School does not prescribe any fixed pre-law course. Successful study of law is more often related to an acquired habit of disciplined work with difficult intellectual problems than to the possession of any special body of facts. Certain general objectives of a pre-legal education can, however, be given. The Association of American Law Schools has stated these objectives under three broad headings: education for comprehension and expression in words, education for critical understanding of human institutions and values, and education for creative power and thinking. The skills, understanding and cultural foundation encompassed in these statements can be gained from many fields of study. The law is peculiarly a discipline where every branch of knowledge will prove useful to the student and the practitioner. The best courses for pre-law study vary with the school at which the pre-law degree is taken, and students are urged to seek local advice.

## REQUIREMENTS FOR ADMISSION TO THE FIRST-YEAR CLASS

Applicants for admission to the professional curriculum of the School of Law, leading to the degree of Juris Doctor, must have received the baccalaureate degree from a university or college of approved standing prior to the time at which they begin their work in the School of Law. Such college work must have been of superior quality and must indicate that the applicant is qualified for the study of law. The School of Law receives more applications from qualified applicants than it can accept and admission is on a competitive basis. Applications for admission in September 1969 must be filed no later than May 1, 1969.

Applicants must have achieved a satisfactory score on the Law School Admission Test.

*Students beginning their professional work are admitted only in September.*

## LAW SCHOOL ADMISSION TEST

The School of Law cooperates with the Educational Testing Service and with other law schools in the development and administration of a uniform Law School Admission Test. The test is designed to measure aptitude for professional study and to enable the School of Law to learn something of the writing ability and general liberal arts background of the applicant. No special preparation for the test is necessary. Centers where the test may be taken have been established for the convenience of applicants in all parts of the country. *The test is required of all applicants for admission to this School and should be taken during the academic year preceding the one for which admission is sought.*

The Educational Testing Service will supply each applicant with a bulletin of information giving details with respect to application and including practice questions. All questions concerning the Law School Admission Test should be addressed to the Educational Testing Service, Box 944, Princeton, New Jersey 08540.

10

# Application Procedure

## Application and Official Transcripts

The application for admission to the School of Law should be made on a form supplied by the School. Official transcripts of all college, university, and professional school records, including all work which may have been done at the University of California, Los Angeles, should be sent to the Admissions and Records Office, School of Law, University of California, 405 Hilgard Avenue, Los Angeles, California 90024. Actual receipt by the School of Law not later than May 1, 1969, of the application, the Law School Admission Test score, and official transcripts through the fall semester or winter quarter, as applicable, is the applicant's responsibility. Applicants will be notified when all the records necessary for a decision on admission have been received. Admission is granted on a competitive basis with the principal emphasis being placed on the score in the Law School Admission Test and the last two years of undergraduate study.

## Application Fee

Each candidate for admission to the School of Law must pay an application fee of $10. Remittance by bank draft or money order should be made payable to The Regents of the University of California, and should accompany the application. Applicants who submit evidence of having paid an application fee at the graduate level elsewhere in the University need not pay this fee.

## Law School Admission Test

Applicants may receive forms and information concerning the Law School Admission Test from the Educational Testing Service, Box 944, Princeton, New Jersey 08540. The Law School Admission Test will be given on the following dates: February 8, 1969; April 12, 1969; August 2, 1969.

Applications, together with the examination fee of $12, must be received in Princeton at least two weeks prior to the date of the test. The applicant should request on his application that his score be reported to this School. Applicants are urged to take the November test in order to expedite the decision on their admission to the School.

## English Language Test

Applicants for admission whose collegiate education has been undertaken in countries where English is not the language usually spoken may be required to submit evidence of competence in English. In appropriate instances the Test of English as a Foreign Language administered by TOEFL, 1755 Massachusetts Avenue, Washington, D.C. 20036 or the "Examination for the Certificate of Proficiency in English" administered by the English Language Institute, University of Michigan, North University Building, Ann Arbor, Michigan, will be employed.

Applicants will be advised by the Law School if testing is deemed necessary.

11

## Honor System

Any person admitted to the UCLA School of Law is required to abide by the Honor System as set below.

## ADMISSION TO ADVANCED STANDING

Applicants who have completed at least one year (30 semester units or 45 quarter hours) of satisfactory work in another law school may be candidates for admission with advanced standing, with credit for not more than one year (30 semester units or 45 quarter hours) of professional work if:

(1) The applicant has received his baccalaureate degree from a university or college of approved standing;

(2) Two semesters or three quarters of professional work in regular session, or their equivalent, have been undertaken in a school which is a member of the Association of American Law Schools; and

(3) He received no credit toward his baccalaureate degree for the professional work for which he seeks credit for advanced standing in this School.

The acceptance of a candidate for advanced standing and the amount of credit to be allowed for his previous professional work are discretionary. Credit will not be given for unsatisfactory though passing work. Candidates must furnish this School with official transcripts of their college as well as all their law school work. Application for admission to advanced standing may be made at any time, subject to the dates noted below, but a decision on these applications can be made only after the receipt of these official transcripts. In general, a B average is required for admission with advanced standing.

No applicant will be admitted as a candidate for a degree who has attended another law school and who is ineligible to return to that school in good standing. A letter is required from the dean of the law school previously attended, stating that the applicant is eligible for readmission.

No application for admission to advanced standing in 1969 will be accepted after August 15, 1969.

## FEES AND EXPENSES

Each student in the School of Law pays each quarter, when registering, a Registration fee of $109 charged all graduate students in all departments of the University, plus a Student Union fee of $4 and a fee of $1.50 for membership in the Graduate Students Association.

A nonresident of the State of California pays a fee of $505 per quarter in addition to the fees listed in the above paragraph.

Refund of a part of the Registration fee (and of the nonresident tuition fee, if paid) is made to a student who withdraws from the University within four weeks from the first day of classes.

No claim for refund of fees will be considered unless such claim is presented during the fiscal year to which the fee is applicable. No student will be en-

titled to a refund except upon surrender to the Registrar of his registration card and receipt. Each student provides his own books and supplies. The annual cost varies from $150 to $200.

## MEDICAL AND PHYSICAL EXAMINATION

All new students must appear at the Student Health Service and either take a physical examination or present a report, on the UCLA physical examination form, of a recent examination performed elsewhere. This requirement applies to former UCLA undergraduate students entering graduate status for the first time and to students who are returning to the Law School after an official withdrawal as well as to students entering the University.

# Program of Study

## THE JURIS DOCTOR DEGREE

### Residence and Unit Requirements

The candidate for the degree of Juris Doctor must have pursued resident law school study for nine quarters. The residence requirements may be satisfied as follows:

(1) Nine quarters in regular session in this School, or

(2) Three quarters in regular session, or their equivalent, in a school which is a member of the Association of American Law Schools; coupled with six quarters in regular session, or their equivalent, in this School.

The candidate for the degree must have completed satisfactorily at least 127 units (quarter hours) of work with an average grade of not less than 65 on all work undertaken in this School. In order to receive unit credit for summer session work undertaken in another law school, a student must have a grade average of 70 or better in all work undertaken in this School. In no event may a candidate for the degree be credited with more than 45 units (quarter hours) of credit for work undertaken in another law school.

Every first-year student is required to take the full schedule of required courses; every second- and third-year student is required to take a minimum of twelve hours and may not take more than sixteen hours each quarter. These rules apply to all students whether or not they have attended Summer Session.

Satisfactory completion of the First Year Moot Court program is required for graduation. Satisfactory completion of the program shall be determined by the Moot Court Honor Board with the concurrence of the Faculty Advisor to the Moot Court. This requirement does not apply to transfer students, but such students may enroll in the First Year Moot Court program if they wish to do so.

### Study in Other Departments

Candidates for the J.D. degree are permitted to take two upper-division or graduate level courses in UCLA departments other than the School of Law for which Law School credit will be allowed provided that:

(1) The student has not already taken the same or a similar course;

(2) The course is not similar in content to courses offered in the Law School; and

(3) The course if offered in UCLA regular session.

They will usually be taken on a pass-fail basis. The grade actually received will be recorded on the student's Law School permanent record card but not included in the computation of the law school average.

The opportunity to take non-law courses for credit makes it possible for some students to be awarded both the J.D. and the M.A. degrees at the end of four years combined study in the School of Law and another department.

## Scholarship and Attendance Requirements

### ATTENDANCE AND GRADES

The right to take examinations, as well as the privilege of continuing as a student in the School of Law, is conditioned upon regular attendance at the exercises of the School and adherence to the Honor System.

Following is the grading scale of the School of Law:

85 and above—A, or excellent and definitely superior

75 to 84 incl.—B, or good and above average

65 to 74 incl.—C, or average and satisfactory

55 to 64 incl.—D, or poor

Below 55—Failure

### UNSATISFACTORY PERFORMANCE

A student must maintain a minimum average grade of 65 during each year of law school. In addition he must maintain a cumulative average of 65 to be computed at the end of his fifth quarter and at the end of each succeeding quarter.

Failure to maintain the minimum average grade will result in dismissal. However, a student who has finished his first year with an average between 64 and 65 will be permitted to continue on probation. A student on probation must raise his cumulative average to 65 or above at the end of his fifth quarter, and must otherwise comply with the requirements of the preceding paragraph.

For the above purposes, "year" means the first three quarters and each successive three quarters of work. "Quarter" means any quarter including a summer quarter in which the student takes a sufficient number of units to meet the residency requirements.

## Honor System

An Honor Code has been established by the Student Bar Association of the University of California, Los Angeles, School of Law to promote among its membership a sense of individual responsibility, integrity and honor worthy of the high standards of conduct and morals which govern the legal profession. Its intent is to confirm and foster during the period of law school training the same standards of conduct, where relevant, that will pertain in future professional life.

Each student enrolling in the School of Law is required to indicate (in writing) his willingness to abide by the Honor Code expressed in terms of the following pledge:

Mindful that, as students preparing to enter the profession of law, we are governed in our educational activities by the same high standards of conduct and morals which govern our future profession, I hereby agree to abide by the spirit of Canon 29 of the American Bar Association, which states:

Lawyers should expose without fear or favor before the proper tribunals corrupt or dishonest conduct in the profession . . . The lawyer should aid in guarding the Bar

against the admission to the profession of candidates unfit or unqualified because deficient in either moral character or education. He should at all times strive to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice.

Breaches of the conduct prescribed by the Honor Code are considered serious professional infractions and are dealt with accordingly. A Student Honor Committee administers the Honor Code and conducts all necessary proceedings attendant thereto with a view to effective operation of the Code. (Copies of the Honor Code are available in the office of the Assistant Dean, School of Law, University of California, 405 Hilgard Avenue, Los Angeles, California 90024.)

## Outside Employment

The faculty of the School of Law affirms as fundamental educational policy that outside employment of students either of a legal or any other nature is discouraged. The curriculum of the School requires the full time of students. Outside work can never be pleaded to seek an adjustment in a student's schedule of classes or to justify inadequate academic performance.

## Faculty Right to Require Withdrawal or Refuse Degree

Whenever the faculty is informed of facts which, in its opinion, indicate that a student's continuance in the School would not be in the School's best interests or that he is not a person of such character or integrity as to be qualified for admission to the legal profession, it may require the student to withdraw at any time or refuse to award him a degree even though in all other respects he is in good standing.

## Five-Year Rule

The maximum amount of elapsed time permitted between first admission to this School of Law, or to any law school from which advanced standing is sought, and graduation shall be five (5) years.

## GRADUATE STUDY

A two-year program leading to the degree of Master of Laws (LL.M.) and a one-year program leading to the degree of Master of Comparative Law (M.C.L.) are available. The focus of both programs is the study of the role of law and legal institutions in development problems with particular reference to the developing countries of Africa and Latin America.

Candidates for the LL.M. degree are limited to those who have already received the J.D. or equivalent degree. Preference will be given to those who have a career interest in the field of law and development. The program of study typically involves two quarters in residence at UCLA, followed by four quarters

in an African or Latin American country during which the candidates are attached to an institution in the host country such as a university or government office, and concludes with two more quarters in residence at UCLA.

Candidates for the M.C.L. degree are limited to foreign-trained lawyers from Africa or Latin America. This program requires three quarters in residence at UCLA and the satisfactory completion of 36 quarter units (including thesis).

Further information concerning the LL.M. and M.C.L. programs is available upon request from the Office of the Associate Dean, University of California School of Law, 405 Hilgard Avenue, Los Angeles, California 90024.

Conference of editors of the UCLA Law Review

# Student Honors Organizations

## THE UCLA LAW REVIEW

Membership on the *UCLA Law Review* is one of the most coveted honors available to exceptionally qualified students. The work of the *UCLA Law Review* presents an opportunity for experience in legal research and writing on a par with that which is done in the better legal offices in the practice of law. The caliber of the work done by the first-year law student determines his eligibility for invitation to participate in the *UCLA Law Review* work in his second and third years. However, students who have transferred to UCLA from other law schools as well as those whose first year was spent at UCLA will also be considered for invitations to become candidates on the *Review* after receipt of grades for the Winter Quarter of their second year.

The regular subscription rate is $10.50 per year, and it is recommended that all students subscribe. Further information may be obtained by addressing the Administrative Assistant, *UCLA Law Review*, School of Law, University of California, Los Angeles, California 90024.

## ROSCOE POUND COMPETITION

The Roscoe Pound Moot Court Honors Program is a student organization that strives to foster the ideal of the scholar-advocate typified by the jurist whose name it bears. Each year a select group of students from the second- and third-year classes who combine academic achievement with demonstrated ability in oral and written argumentation are invited to join in a series of appellate arguments as counsel and judge.

All first-year students compete in the preparation and argument of one appellate case before a bench consisting of present members of the program. Those who achieve the highest standing in the first-year competition and who meet the academic requirements of the program are invited to membership. In their second and third years, members compete in further hearings to select the UCLA representatives for state and national competition.

Second- and third-year hearings are judged by distinguished members of the bench and bar. Membership in Moot Court, therefore, affords a unique opportunity for contact with the practicing profession in an atmosphere simulating actual appellate practice.

## ORDER OF THE COIF

A chapter of the Order of the Coif, a national law school honor society, has been established in the School of Law. Election to membership in the Order of the Coif is limited to those graduating members of the senior class who rank in the highest 10 per cent of the class in scholarship.

18

# Student Activities

A variety of programs which involve the entire student body of the School of Law are conducted under the sponsorship of the Student Bar Association. This Association is composed of all students registered in the School of Law. The governing and policy making body of the Association, the Executive Committee, is composed of 13 members, elected or appointed, who represent a broad spectrum of student activities.

The Community Participation Center is a student organization which provides law students with an effective means whereby they can express their concern with the problems of contemporary society in terms of active participation in areas of particularly urgent social need. The Center operates as an umbrella-like organization which supports a variety of community oriented law student involvement programs and as such functions much like a program servicing unit. The Center actively encourages the initiation of imaginative new problems and strives to ensure their viability.

The UCLA Docket, published by the Association, is the newspaper of the students of the School of Law. It draws its membership from all three classes. Staff membership offers experience in writing, reporting and editing for a legal publication. The Docket is published monthly during the academic year and has been awarded the highest recognition among law school newspapers. Circulation is to all students, faculty and alumni, as well as to prominent members of the legal community. Articles range from coverage of significant events within the School of Law to interviews with local jurists and practitioners. Advancement to responsible editorial positions is based primarily on performance of staff assignments and duties.

A vital activity sponsored by the Student Bar Association is the Legal Forum. Under the auspices of the Forum, outstanding speakers in a variety of legal and law related areas are invited to the School of Law to speak and to participate with students in seminars and conferences.

The Student Bar Association performs other important roles in integrating a student into the legal community at the School of Law. The Association's efforts are felt from the outset of a student's legal education when he attends the Association-conducted orientation program until completion of his education three years later when he attends his commencement exercises. During that time he will have attended Association-sponsored picnics and dinner-dances, faculty-student coffee hours and other informal get-togethers or taken part in one of the many Association-sponsored programs.

There are three law fraternities represented at the School of Law, Phi Alpha Delta, Phi Delta Delta, and Phi Delta Phi. They serve to promote student fellowship and an understanding and dedication to the tradition of the legal profession.

# Student Services

## STUDENT PRIVILEGES

Payment of the regular fees entitles the student at the School of Law to Student Health Service, and to the use of the libraries, gymnasiums, tennis courts, swimming pools, and other University facilities. It also makes such a student eligible to membership in the Associated Students of the University, subject to the payment of that organization's dues. Such dues give him the right to admission to certain athletic contests and to other student activities.

## STUDENT HEALTH SERVICE

The purpose of the Student Health Service is to conserve the time of students for their classwork and studies, by preventing and treating acute illnesses. Each registered UCLA student may, at need, have such consultations and medical care or dispensary treatment on the campus as the Student Health Service is staffed and equipped to provide, from the time of payment of his registration fee to the last day of the current semester.

The Health Service does not take responsibility for certain chronic physical defects or illnesses present at the time of entrance to the University.

## LIVING ACCOMMODATIONS

Information concerning available accommodations for both married and single students (including, for single students, accommodations in University dormitories) may be obtained at the Housing Office, Room 161 Kerckhoff Hall, 405 Hilgard Avenue, Los Angeles, California 90024.

## OFFICE OF SPECIAL SERVICES

The Office of Special Services functions administratively in matters pertaining to veterans' and veterans' dependents' educational benefits, selective service obligation, and assistance to physically disabled students. The Office also provides guidance counselling to students in the many complexities and technical problems related to veterans benefits and to their service obligations and rights.

The Office aids law students subject to the Selective Service law in dealing with local draft boards and processes the requests of student reservists for verification of Law School registration. Special advice and assistance are extended to veterans in securing applicable benefits.

The Special Services Office is located in Room A-253, Administration Building.

## PLACEMENT

The Placement Office of the School of Law brings many professional opportunities to the attention of its students and graduates. Through the office arrangements are made for interviews with representatives of local and national law firms, business firms, government agencies and others. Although the school

cannot guarantee a position for each graduate, ample employment opportunities are available.

## STUDENT COUNSELING SERVICES

The University Counseling Services are designed primarily for the voluntary use of any regularly enrolled student. They offer the student the opportunity, on his own initiative, to consider with a counselor any questions, concerns, skill needs, hopes, dilemmas, crises, or choices that may occur during his course of study. There is no charge for these services. The Services are found in three locations:

*The Counseling Center* (Administration 3334) offers individual and group counseling to assist students in coping with any concerns or difficulties that may be interfering with their effectiveness at the University or may be involved in their continued growth. Marriage and premarital counseling is available. Counseling is private and confidential; no records of interviews are kept.

*The Reading and Study Service* (Social Welfare 271) offers individual and group programs designed to assist students in the development of reading and study skills, and habits appropriate to the demands of their University studies. Counseling and instructional staff is available.

*The Educational and Career Information Service* (Administration 3337) maintains an extensive collection of current materials concerning occupations, colleges, universities and professional schools. There materials are for use by students as an aid in better informing themselves when making educational and career decisions.

## SCHOLARSHIPS, LOANS, PRIZES AND AWARDS

### Scholarships

Applications for School of Law scholarships for second and third year students for the academic year 1969–1970 must be filed by August 15, 1969. Application forms may be obtained from the Office of the Assistant Dean, School of Law, University of California, Los Angeles, California 90024. The selection of Wilson Foundation Scholarship recipients will be based on the applications for admission of entering students.

### HENRY AND EMMA DE GARMO SCHOLARSHIP

In 1948 Mr. C. C. De Garmo of Los Angeles contributed $20,000 to establish and support a scholarship as a memorial to his parents, Henry and Emma De Garmo, for a student or students in the School of Law of the University of California, Los Angeles. Second- and third-year students in the School of Law are eligible for this scholarship.

### GRAY, CARY, AMES AND FRYE SCHOLARSHIP

A gift from the law firm of Gray, Cary, Ames and Frye of San Diego has made it possible to award a scholarship of $500 to a law student selected on the basis

of his academic performance and potential contributions to the School of Law and the profession.

### NAT AND EVA GREENBERG SCHOLARSHIP

In 1963 Mr. Arthur Greenberg of the class of 1952 established a scholarship in honor of his parents Nat and Eva Greenberg. The scholarship is awarded annually to a student of outstanding ability in need of funds to continue his education.

### JEROME AND FLORA REGENSBURG FOUNDATION SCHOLARSHIP

A gift from the Jerome and Flora Regensburg Foundation has made it possible to award three scholarships each year to students entering the third year on the basis of distinguished scholarship and financial need.

### ANN ROSENTHAL STEIN SCHOLARSHIP

A scholarship fund established by Mrs. Ann Rosenthal Stein of Beverly Hills provides one or more annual scholarships for law students who have completed the first year of law school. Preference is given to those persons who have demonstrated their qualifications for the study of law and have attributes of character and intellect that will enable them to perform with distinction as attorneys. Women applicants who meet the above qualifications are given first preference.

### MARTIN S. STOLZOFF SCHOLARSHIP

This scholarship will be awarded each year to a third-year student based upon excellence of performance during the first two years of law school. Special consideration to students who have taken courses, beyond those required, in Property, Land Planning, and Income Taxation is given.

### THE MABEL WILSON RICHARDS SCHOLARSHIP FUND

An annual scholarship award is available from this fund to a woman student in the School of Law who is a resident of the greater Los Angeles area.

### BLANCHE H. LYLE AWARD

Through a gift to the UCLA Alumni Association establishing the Blanche H. Lyle Special Dean's Fund an award of $100 is made each year to a worthy student in the School of Law.

### CHINESE-AMERICAN ALLIANCE SCHOLARSHIP FUND

Scholarship funds have been made available by the Chinese-American Alliance Scholarship Fund of Los Angeles for award to deserving students at the UCLA Law School at the discretion of the Dean of the Law School.

### THE FLORENCE-VIRGINIA K. WILSON SCHOLARSHIPS

By virtue of a gift to the School of Law from the Florence-Virginia K. Wilson Scholarship Foundation, scholarships are awarded to thirty applicants who show

promise of outstanding academic achievement. These scholarships cover the registration fees required of all first-year students, but do not cover the tuition required of out-of-state residents.

## LAWYERS' WIVES OF PASADENA, SAN GABRIEL VALLEY, SAN FERNANDO VALLEY, SANTA CLARA COUNTY, HUMBOLDT-DEL NORTE COUNTY

The Lawyers' Wives of Pasadena, San Gabriel Valley, San Fernando Valley, Santa Clara County, and Humboldt-Del Norte County make available scholarship assistance to worthy students from their respective areas.

## MONOGRAM INDUSTRIES SCHOLARSHIP

A gift of Monogram Industries, a Los Angeles based manufacturer, which provides for the full support of two students of a disadvantaged background during their first year of law school.

## RABINOWITZ FOUNDATION SCHOLARSHIP

A gift of the Rabinowitz Foundation of New York City to provide for the full support of one student of a disadvantaged background for the three years of the study of law.

## THE McCARTHY FOUNDATION SCHOLARSHIP

The McCarthy Foundation Scholarship provides for the full support of two students of a disadvantaged background during their first year of law school.

## BEVERLY HILLS BAR ASSOCIATION SCHOLARSHIP

The Beverly Hills Bar Association Scholarship provides for the full support of one student of a disadvantaged background for the three years of the study of law.

## BEVERLY HILLS BAR ASSOCIATION FELLOWSHIP FOR AFRICAN LAWYERS

The Beverly Hills Bar Association has established a fellowship which enables one outstanding African law school graduate to attend this law school each year as a candidate for the degree of Master of Comparative Law.

## Loans

Various organizations and individuals have contributed toward the building up of several student loan funds, such as The American Bar Association Fund for Legal Education, Susan Kwan Memorial Loan Fund, Carl Laemmle Memorial Loan Fund, Lawyers' Wives of Los Angeles Loan Fund, and the Phi Alpha Delta Law Fraternity Endowment Fund.

The gifts for this purpose are administered by the University in accordance with the conditions laid down by the donors.

Loans, with certain exceptions, are repayable as soon as possible without defeating the purpose of the loan or seriously inconveniencing the students.

Applications should be filed at least ten days in advance of loan need. For further information, apply to the Dean of Students, 2224 Administration Building.

## Prizes and Awards

## LUBIN SCHOLARSHIP

Mr. Alfred Lubin has established a tuition scholarship of $200 to be awarded to a member of the graduating class selected by the faculty to participate in Goldstein's Trial Techniques and Trial Practice Clinic conducted annually in Los Angeles. The award will be based upon scholastic standing and an aptitude for trial practice.

## THE NATHAN BURKAN PRIZES

A first prize of $250 and a second prize of $100 are offered each year by The American Society of Composers, Authors and Publishers (ASCAP) for the two best papers on any phase of Copyright Law submitted by students in their second or third year in the UCLA Law School. The prize-winning papers are subsequently entered in a National Competition in which further awards of $1000, $500, $200 and Honorable Mentions are made. The papers winning these national awards are published by ASCAP in an annual Copyright Law Symposium.

## RICHARD T. DRUKKER PRIZE

The will of Jewell Udell provided for the contribution of funds to be invested and the proceeds therefrom to be awarded annually to a student of the University of California, Los Angeles, School of Law in honor of Richard T. Drukker, attorney, of Los Angeles. By virtue of this gift approximately $100 is awarded annually to the student of the University of California, Los Angeles, School of Law who is selected as the editor-in-chief of the UCLA Law Review for the ensuing academic year.

## THE THOMAS JEFFERSON SOCIETY PRIZE

The Thomas Jefferson Society of the United States has established an annual prize of $100 which is open to all UCLA law students. The basis of the award is the best work submitted by any student as an individual research project, law review comment or casenote, or seminar paper relating to or discussing Jeffersonian precepts and principles as they bear on the public problems of the present era.

## BANCROFT-WHITNEY PRIZES

Awards of specially bound American Jurisprudence titles are made by the Joint Publishers of American Jurisprudence, Bancroft-Whitney Company of San Francisco, California, and The Lawyers Co-operative Publishing Company of Rochester, New York, to those students achieving the highest mark in the examinations in selected subjects.

## WEST PUBLISHING COMPANY PRIZE

An award of law books is made each year by the West Publishing Company to the student most proficient in Practice Court.



The UCLA Law Library reading room

26 / UNIVERSITY OF CALIFORNIA

### INSURANCE COUNSEL JOURNAL PRIZE

A year's subscription to the *Insurance Counsel Journal* is awarded as a prize to the student writing the best paper in a field related to the responsibilities and interests of attorneys representing insurance companies published in the *UCLA Law Review* each year.

### LAW WEEK AWARD

The publishers of *Law Week* award a year's complimentary subscription to the graduating student who has made the most satisfactory scholastic progress in his final year.

### PRENTICE HALL TAX AWARD

Prentice Hall, Inc. awards its Federal Tax Guide, Edition "A" together with weekly supplements to the student who most distinguishes himself in the basic tax courses each year.

### SPECIAL FUNDS

**Oscar Lawler Memorial Fund**

This is a permanent fund established in memory of Oscar Lawler, the founder of the law firm, Lawler, Felix & Hall.

The funds are to be used as the needs of the Law School dictate. At present they are being utilized to aid in the building of special Library materials which cannot be financed from any other sources.

**Fund for the Library of the Advocates**

A committee of lawyers has been formed to support the acquisition of a collection of books on the legal profession and trial practice. This collection will be maintained on open shelves in a room open to law students and other interested persons.

# Courses of Instruction

In the following list the credit value of each course is indicated in quarter hours by a number in parenthesis after the title.

## FIRST YEAR (ALL REQUIRED)

**100. Contracts (8)**
The structure of the law of private agreement. A broad survey of the criteria used by courts to determine such questions as whether or not a contract has been entered into and, if so, whether the benefit of a contractual relationship of various types of subsequent conduct by the contracting parties, and what are the remedies available for breach.

**105. Law, Lawyers and Social Change (3)**
An introduction to the American legal process, through the study of its history and present day operation as the legal system has shaped (and has been shaped by) the movement toward racial equality. The course concentrates on the institutional problems that have tested the ability of the legal profession to achieve equality of educational opportunity. Topics studied include the lawmaking roles of court and legislatures, statutory interpretation, and some aspects of the role of the legal profession in the legal system.

**110. Legal Research and Writing (2)**
Basic legal research and writing. Preparation of an appellate brief for the first year Moot Court Competition and participation in the Moot Court arguments.

**120. Criminal Law I (4)**
A study of the general principles of liability to punishment and the characteristics of particular crimes.

**121. Criminal Law II (3)**
Problems in the administration of criminal justice including constitutional doctrines and the responsibilities of the legal profession.

**130. Property (9)**
Development of the law of property in personalty and in land. Consideration of the concept of possession and its importance to our legal system and the acquisition and transfer of interests and their creation, transfer, protection; conveyancing problems; public and private control of land use.

**140. Torts (6)**
Legal liability for wrongful interference with tangible property, real and personal, intangible interests, and advantageous relations.

**145. Procedure (6)**
An introduction to federal and state court organization, jurisdiction and procedure; the historical development of common law actions; an introduction to the study of law and the legal profession. Pleading and procedure in civil actions under modern codes, state and federal.

**148. Constitutional Law I (3)**
A study of those aspects of constitutional law dealing with the doctrine of judicial review, and the division of powers as between the states and national government, as well as within the national government.

## ADVANCED COURSES

Students who have completed the first year may select any of the following courses. Before graduation they must have taken the courses marked by †. Since all courses are not offered every academic year, students should consult with the Assistant Dean concerning their programs.

**200. Law and Accounting (3)**
Brief introduction to bookkeeping and accounting concepts, followed by critical examination of generally accepted accounting principles as applied to problems arising in legal contexts. Recommended for students without previous accounting training; permission of the instructor to enroll is required for those having more than three undergraduate accounting courses.

**201. Remedies I (4)**
A comparative analysis of remedial devices. Includes the theory and application of damages, restitution, and equitable relief. The course will cover the substantive law elements of restitution and the principles of equitable jurisdiction.

**202. Remedies II (4)**
See Remedies I.

**204. Family Wealth Transactions (4)**
A study of donative transfers of property. Particular attention is paid to the law of wills, trusts, and future interests, and an intensive study is made of various powers of use and disposition, such as the rules against perpetuities.

**206. Constitutional Law II (3)**
A study of those aspects of constitutional law covering the protection of civil rights and liberties as they pertain to state and national governments dealing with matters pertaining to life, liberty, and property.

**207. Community Property (3)**
Community property defined; nature of the interests of the husband and wife; management and control; disposition on dissolution of the marriage.

**208. Commercial Transactions (5)**
A study of the law of negotiable instruments, bank collections, the sale of goods, documents of title and suretyship, with emphasis on the application of the Uniform Commercial Code and other statutes to these areas.

**208. Business Associations (5 or 6)**
A study of the basic principles of business organizations including partnerships, corporations, and corporate finance.

**211. Evidence (5)**
The law of evidence in trials at common law and in equity, including examination, competency and privileges of witnesses, judicial notice, burden of proof and presumptions, functions of judge and jury, common law and statutory rules and principles of admissibility, exclusion, and selection.

**†212. The Legal Profession (1 or 2)**
Limited to 3rd year students. Consideration of the history, structure, and dynamics of the legal profession; selected ethical problems; examination of concepts of professional responsibility.

**213. Conflict of Laws (4)**
A study of the special problems which arise when the significant facts of a case are connected with more than one jurisdiction. Considerations of foreign judgments; choice of law; federal courts and conflict of laws; the United States Constitution and conflict of laws.

**214. Administrative Law (4)**
Characteristics of administrative tribunals, procedure before them and judicial control of their actions.

**215. Oil and Gas (3)**
The oil and gas leas; conveyancing of oil and gas interests; conservation of petroleum resources; taxation of oil and gas transactions.

**216. International Law (4)**
The law applicable to the relations among nations; sources and development of international law; recognition and nonrecognition of governments, nations and their territory; treaties and agreements; the effect of war and peace; international organizations and courts. Nationality and immigration. Claims involving other countries.

**217. Family Law (3)**
The creation and dissolution of the marital status; the relations of husband and wife, parent and child; legitimacy; custody; and adoption.

**218. Insurance (3)**
Risks covered by the insurance contract, their selection and control; making, construction and enforcement of the contract; governmental supervision.

**219. Federal Courts (4)**
Selected problems in federal jurisdiction.

**220. Introduction to Labor Law (4)**
A study of the evolution of the various doctrines of allowability of economic pressures by labor unions and employers; constitutional and legislative protection of the right to organize, join or not join unions; selection of representatives and determination of the appropriate unit for collective bargaining; rights and obligations of the employer and of both to nonunion employees and employees; allocation of jurisdiction among state and federal governments, and among judicial, administrative and arbitral decision makers.

**221. Legislation (3)**
The methods of the legislative process; lobbying, the investigative and enactment process; problems of legislative drafting.

**223. Local Government Law (4)**
Legal problems involving local governmental entities; sources and extent of powers and duties with respect to personnel, finance, public works, community development, and related topics.

**224. Land Planning (4)**
Analysis of the legal and administrative aspects of the regulation of land use and development, and the problems and techniques of urban planning; dwelling legislation, building codes, zoning, subdivision controls, public acquisition of land, tax controls, and urban redevelopment.

**225. Legal Services Programs (1)**
Training, under supervision of neighborhood legal office attorneys, in interviewing clients and witnesses, analysis of material legal problems, drafting legal documents, and preparing cases for trial.

**226. Creditors' Rights (4)**
Recommended for students of third-year standing only. A study of the remedies and procedures available to the unsecured creditor under California law for collection of his debt, the remedies of the secured creditor, and the mechanics of a bankruptcy proceeding for the liquidation of a debtor's estate and distribution of the proceeds among his creditors, the problems arising out of conflicting claims between secured and unsecured creditors and among secured creditors.

**227. State and Local Taxation (3)**
Comparison of California tax structures with those of other jurisdictions; problems of assessment, classification, levy and collection of taxes; direct personal property and intangibles; survey of excise (including sales, use and corporation franchise) taxes and legal problems relating thereto.

**228. Federal Antitrust Law (3)**
The federal antitrust laws including the Robinson-Patman Act.

**229. Wills and Administration of Estates (3)**
Intestate succession (descent and distribution); testamentary disposition of property; probate proceedings; and the administration, distribution and settlements of decedents' estates.

**230. Trial and Appellate Practice (4)**
Prerequisite: course 211. Selected problems of procedure in trial and appellate litigation, with emphasis upon strategy, tactics, and practical considerations.

**231. Security Transactions (3)**
Consideration of California statutory and case law concerning real estate security devices and transactions.

## 232. Copyright Law (3)

A study of the Federal Copyright Statute—present and proposed; interference with abstract ideas; regulating privacy; business methods and industrial practices as are also intended to encourage, regulate, and protect literary and artistic creations.

## 233. Comparative Law (4)

A comparative study of selected aspects of Latin-American and Anglo-American law. Significant similarities and differences in the Civil Law and Common Law systems will be explored through examination of concrete legal problems which the systems share. An attempt will be made to relate such similarities and differences as may bear on their causes in history and in present social needs.

## 234. Securities Regulation (3)

Prerequisite: Law 209. A study of the Federal and state regulation of the distribution of and trading in securities and of investment companies. Includes consideration of state Blue-Sky Laws, the Federal Securities Act of 1933, the Federal Securities Exchange Act of 1934, and the Federal Investment Company Act of 1940.

## 235. The Employment Relation and the Law (4)

Analysis of the legal protection furnished individual employees through workmen's compensation, unemployment compensation, social security, fair labor standards, and similar legislation.

## 236. International Business Transactions (3)

The interaction of law, economics, and policy in business transactions which cross international boundaries. Controls on foreign trade and investment, forms and methods of doing business abroad, tax consequences, jurisdictional problems, foreign antitrust, international judicial procedure, settlement of disputes, etc.

## 237. The Law of the Collective Agreement (4)

Prerequisite: course 209. Problems involved in the negotiation of the collective agreement; election and postelections; effects of impasse; subjects of bargaining, grievance procedures, including arbitration; legal problems of union and non-union discrimination; discipline; promotions; demotions; wages; hours, conditions of employment; compulsory arbitration and other suggested solutions for ameliorating the economic impact of labor-management disputes.

## 238. Practice Court (5)

Not open to students taking course 249. The preparation and trial of cases.

## 239. Individual Research

Credit to be arranged. No student may receive more than 3 units of credit under this category. Comprehensive research project under the supervision of a faculty member resulting in the production of a scholarly paper.

## 240. Admiralty Law (3)

A survey of admiralty jurisdiction and remedies.

## 241. Unfair Competition (3)

Trademarks and trade names; appropriation of competitor's ideas, trade information, designs and other trade values; false advertising; disparagement of goods or products; interference with contractual relations.

## 242. Torts II: Interference with Intangibles (3)

Misrepresentation; defamation; interference with advantageous relationships; privacy, business and economic relations; and unjustifiable litigation.

## 243. Corporate Reorganization (3)

Prerequisites: Law 209; Law 251. A study of corporate combinations and acquisitions using equities as the medium of exchange, including mergers, sales of assets and stock-for-stock exchanges, and readjustments of the internal capital structure of distressed corporations, including recapitalizations, reorganizations under Chapter X, and arrangements under Chapter XI of the Bankruptcy Act. These subjects will be viewed from a transactional point of view, combining consideration of corporation, securities regulation, taxation, accounting, creditors' rights and other problems.

## 244. Patent Law (3)

The rights of inventors to special enjoyment of their inventions. Analysis of the nature of the rights created and protected under the procedure for obtaining patents for inventions.

## 245. Western Water Law (3)

The riparian and appropriative approaches, the pueblo right; water rights and small projects, including common mechanisms for private development and protection of waters; large projects, including interstate, national, and international problems related to water quality control.

## 246. Law and Psychiatry (3)

Introduction to the orientation, premises, functioning and potential contributions of psychiatry; review of the practical and theoretical aspects of collaboration between law and psychiatry.

## 247. Legal Problems of International Agencies (3)

Prerequisite: course 211. Not open to students taking course 211 in any situation. This course will be examined to illustrate characteristic problems of techniques (e.g., identifying and challenging trial practice, ranging from mechanical questions of trial tactics. Assignments will involve: the direct and cross-examination of ordinary and expert witnesses, either at trial or at deposition; the preparation of pleadings and instructions; opening statements and closing arguments; and the like.

## 248. Islamic Law (3)

## 249. Trial Tactics and Technique (3)

Prerequisite: course 211. Not open to students taking course 249. In this situation will be examined to illustrate characteristic problems of techniques (e.g., identifying and challenging trial practice, ranging from mechanical questions of trial tactics. Assignments will involve: the direct and cross-examination of ordinary and expert witnesses, either at trial or at deposition; the preparation of pleadings and instructions; opening statements and closing arguments; and the like.

## 250. Federal Taxation I (4)

Fundamentals of federal income taxation, particularly as they apply to individuals, including: the nature of taxable income; income tax deductions and credits; capital gains and losses; and the income tax accounting. Federal tax procedure.

## 251. Federal Taxation II (2)

Principles of income-splitting; introduction to federal income taxation of trusts and estates and corporations and the corporate-shareholder relationship. Brief survey of federal estate and gift taxation.

institutions and agencies, e.g., the Department of Justice or the President, in defining the nature of the problems and the nature of permissible solutions.

## *252. Federal Taxation III (4)

Prerequisite: Federal Taxation I. The operation and use of federal tax provisions applicable to inter vivos and testamentary dispositions of property, with particular emphasis upon coverage, in depth, of matters of federal estate and gift taxation.

## 253. Reception of Civil Law in Developing Countries

Advanced study of corporations and federal taxation through a series of problems focused on the planning of such critical events in the life of the corporation as formation, distributions, reorganization, and dissolution.

## 254. Business Planning (4)

Advanced study of corporations and federal taxation through a series of problems focused on the planning of such critical events in the life of the corporation as formation, distributions, reorganization, and dissolution.

## 255. Civil Rights

## 256. Legal Philosophy: The Nature of Law (3)

An examination of selected topics regarding the nature of law and the relationship of law to morals.

## 257. Legal Philosophy: The Nature of Justice

An examination of the nature of justice in its procedural, penal, compensatory, social, and political aspects.

## 258. Law and Social Welfare (3)

Old-age, survivors', disability, and health care insurance under the Social Security Act; unemployment insurance; workmen's compensation; public assistance programs (including problems related to bilateral relationships); current policy issues related to governmental income maintenance programs.

## 259. Legal Process (3)

Study of the process by which law is made and applied, with emphasis on the legislative and judicial process. Topics considered include stare decisis, types of issues appropriate and not appropriate for judicial resolution, statutory interpretation, and the relationships between the law-making functions of courts and legislatures.

## 260. Tax Legislation and Policy (3)

Analysis of current laws and proposed amendments in legal and economic terms to see how they fit into the tax structure, the inconsistencies created, and the social effects. Attention is paid to the relationship between the response of the legal system to the problem of racial minorities and broader social and political aspects of these problems. Special consideration will be given, too, to the roles played by various in-

## 261. Race Relations and the Law (3)

A study of various substantive areas such as the franchise, employment, education, public accommodation, racial discrimination and the administration of justice, and racial discrimination in employment. Particular attention will be paid to the relationship between the response of the legal system to the problem of racial minorities and broader social and political aspects of these problems. Special consideration will be given, too, to the roles played by various in-

## 262. Control of Crime and Justice Administration (4)

This course will examine crime as a social phenomenon and as a legally defined concept, studying both the extent and incidence of criminal behavior and the costs and limitations associated with the application of criminal sanctions to socially undesired behavior. The course will also undertake an overview of the processes and institutions of criminal justice, including the police, courts, and corrections with emphasis on the informal and discretionary decision points in the process. The third major division of study will deal with the substantive criminal law, associated with the alcoholic offender, the youthful offender, organized crime, and the violent offender.

## 263. Civil Law (4)

An introduction to the modern European legal systems that received the Roman law, emphasizing methods of analysis and the institutions of judicial decision-making. Some comparative study of common-law methods and institutions will be included.

## 264. Criminal Procedure (3)

An examination of state and federal procedural rules which govern the apprehension, adjudication of guilt or innocence, and sanctioning, upon those accused of violating the criminal law, including common law and statutory powers of arrest, judicial supervision of the decision to prosecute, jurisdiction of criminal courts over persons and offenses, venue, criminal pleading, joinder of offenses and defendants, initial steps of criminal procedure, evidence, division of authority between judge and jury, sentencing, appeals, extraordinary writs and post-conviction problems and remedies.

## 265. Taxation of Foreign Income (3)

United States taxation of both foreign income of U.S. persons and U.S. income of foreign persons and the effect of tax treaties and tax considerations involved in the Foreign Direct Investment Program of the Department of Commerce. Planning aspects of, e.g., organizational alternatives for doing business abroad are also considered.

## 267. War and Revolution (3)

A study of the nature and morality of war and of revolution and the effects upon the internal law of a nation at war.

## 268. Clinical Programs

Credit to be arranged. Students may receive a maximum of 15 units from a combination of courses 239, 268, and 269.

## 269. Individual Projects

Credit to be arranged. Students may receive a maximum of three units under this category.

## 301. Damages.

## 302. Advanced Problems in Torts.

## 303. Advanced Copyright Law.

## 304. Advanced Problems in Taxation.

## Seminars

The credit value of each seminar is two quarter units unless otherwise noted.

## 300. Arbitration.

32  /  UNIVERSITY OF CALIFORNIA

305. Commercial Law.
306. Corporate Law and Practice.
307. Nature of Legal Responsibility.
308. Uniform Rules of Evidence.
309. Constitutional Litigation.
310. Administration of Criminal Justice.
311. Selected Problems in Labor Law.
312. Property.
313. Taxation of Foreign Income.
314. Labor Relations and Industrial Organization.
315. Legal Aspects of National Security Problems.
316. Land Planning.
317. Language of the Law.
318. Estate Planning.
319. Legal Process.
320. Development Financing Problems.
321. Legislation.
322. Legal Control of the Devolution of Property.
323. African Customary Law.
324. Poverty and the Law.
325. Public Regulation of Business.
326. Medical Witness.
327. Entertainment Law.
328. International Business Transactions.
329. Administrative Law in French West Africa
330. Legal Problems of California Indians (2 or 3)
331. Civil Rights
332. Urban Affairs (3)
333. Behavioral Sciences and the Law
334. Comparative Contract Law
335. Tax Legislation and Policy
336. Conflict of Laws.
337. Education and the Law.
338. Internal Law of Academic Institutions.
339. Land Tenure and Economic Problems in Africa.
340. Poverty Litigation.
341. Administration of Decedents' Estates.



Public Entrances to Campus

## LEGEND

Ackerman Union, 1
Administration, 2
Architecture, 3
Art (Dickson Art Center), 4

Boelter Hall, 5
Botany, 6
Bunche Hall, 7

Campbell Hall, 8
Chancellor's Residence, 9
Chemistry, 10
Cyclotron, 11

Dentistry, 12
Dykstra Hall, 13

Engineering I, 14
Environmental Health & Safety, 15

Faculty Center, 16
Fernald School (Psychology Clinic), 17
Franz Hall, 18

Garage, 19
Geology, 20
Graduate Business Administration, 21

Haines Hall, 22
Health Sciences, 23
Hedrick Hall, 24
Humanities, 25

Jules Stein Eye Institute, 26

Kerckhoff Hall (Student Center), 27
Kinsey Hall, 28
Knudsen Hall, 29

Laundry, 30
Law, 31
Life Sciences, 32

Macgowan Hall, 33
Marion Davies Children's Clinic, 34
Mathematical Sciences, 35
Memorial Activities Center—B, 36
Men's Gym, 37
Melnitz Hall, 38
Mira Hershey Hall, 39
Moore Hall, 40
Murphy Hall, 2

Neuropsychiatric Institute, 41
North Campus Computing Network, 42

Ornamental Horticulture, 43

Pauley Pavilion, 44
Physical Plant Building, 45
Physical Plant Building B, 46

Placement & Career Planning
  Center, 47
Plant Physiology, 48
Powell Library, 49
Public Health, 50

Rehabilitation, 51
Rieber Hall, 52
Royce Hall, 53

Schoenberg Hall, 54
Slichter Hall, 55
Social Welfare, 56
Sproul Hall, 57
Steam Plant, 58
Storehouse & Receiving, 59
Subtropical Horticulture, 60
Sunset Canyon Recreation Center, 61

Track & Field Facilities, 62

University Elementary School, 63
University Guest House, 64
University Nursery School, 65
University Research Library, 66

Warren Hall, 67
West Medical Steam Plant, 68
Women's Gym, 69

Athletic Fields, 71
Spaulding Field (Football), 72
Sunset Canyon Recreation Center, 73
Tennis Courts, 74
Track & Field Facility, 75

Botanical Garden, 76
Court of Sciences, 77
Dickson Court, 78
Dickson Plaza, 79
Janss Steps, 80
Humanities Court, 81
Franklin D. Murphy Sculpture
  Garden, 82
UCLA Japanese Garden (Bel Air), 83
Westwood Plaza, 84

Parking Structures
  "3"—Hilgard-Sunset, 85
  "5"—Sunset-Westwood, 86
  "2"—Hilgard-Westholme, 87
  "8"—Gayley-Strathmore, 88
  "8"—Westwood-Buenos Ayres, 89
  "14"—Gayley-Landfair, 90

Parking Information
  Kiosks, 91

Temporary Site 1, S1
Temporary Site 2, S2
Temporary Site 5, S5

**Regarding Peoples College of Law Awarding of Course Units and Students Transferring Out**

I. **Introduction**

Peoples College of Law ("PCL") has been awarding the wrong number of units for courses for a number of years, and this practice harms students that want to transfer to other law schools. All of PCL's courses are currently on the quarter system.

II. **Rule Governing Awarding of Units**

The *Guidelines for Unaccredited Law School Rules (GULSR)* Division 5.9(A)(2) states in pertinent part:

> "One quarter unit is defined as ten (10) hours of classroom instruction. Generally, one hour of instruction per week for ten (10) weeks equals one quarter unit of credit."

PCL courses are three hours per week, for ten weeks. Under *GULSR* Div. 5.9(A)(2), they should yield three (3) units for a one quarter course.

III. **Discussion**

 **A. PCL is currently only awarding two units for one quarter courses**

A number of students have raised this issue, and they are correct that it is PCL's current practice.

 **B. Historical reasons why PCL had this practice**

Prior to 2017 PCL had an odd system in which 1L courses were offered under a semester system, while all upper division courses were offered on a quarter system. This "hybrid" calendar caused a number of problems. One, inter alia, was students having their exams held and grades due at different times. Another major problem was that it meant transcripts reflected two systems. It seems that PCL tried to harmonize these two systems by making all its calculations result in semester units regardless if the course was held on the quarter system. The school converted all quarter units to semester units using the standard formula of dividing quarter units by 1.5 [1]. This meant that a 3-unit quarter course was recorded as 2-units. When the school changed leadership there was *no one was around to pass on that institutional knowledge*. Since the intent was to report all units as semester units, a graduating student would typically finish with 75-units.

In 2017, PCL brought the 1Ls onto the same schedule as the rest of the school. This resolved the disparate schedules and other logistical problems of running a school on two different calendars. The school was still recording all quarter-long courses as 2-units since that was the practice the new administration had inherited.

 **C. Why the practice has become an issue and why it is harmful**

PCL's incorrect recording of units would likely have never come to the fore had there not been a recent increase in students transferring to other schools. A confluence of several issues, not the least of which was (and is) the COVID-19 pandemic, saw a number of students sending their transcripts to other institutions for evaluation for

possible transfer. It was through this that the problem was discovered.

Because other schools see our students are on the quarter system, and that they are only being awarded 2-units per quarter, they are not crediting our students the same credit had they taken the course at the other school. Using a hypothetical to illustrate this, let's say a PCL student takes a year-long course such as Torts. If PCL followed *GULSR* Division 5.9(A)(2), a student would earn 9-units for that course. Instead, PCL awards them 6-units. When a student attempts to transfer to another school with a comparable course on the quarter system, they are now three units short. If the school is on the semester system, it would typically want to convert quarter units to semester units, but since PCL's units already have that calculation built-in, a student risks only being awarded half credit if the transfer school applies a second additional conversion. In any event, students are often not being offered the correct amount of credit when attempting to transfer, through no fault of their own.

### D. Some possible solutions

Since PCL's system is to record everything as semester units, our transcripts either need to:

 1) Expressly state on all PCL transcripts that all units are measured in semester units

 2) Fix the conversion by multiplying units by 1.5 prior to recording them on individual student transcripts.

Because the school has apparently been recording all Quarter Classes in Semester Units for a long time, it's probably best to choose a means that doesn't require changing all the historical transcripts.

In practice this means our transcripts either need to expressly state that a 1L's 22 units are **semester** units (which is 33 quarter units), or record them as 33 quarter units. Likewise, our transcripts either need to expressly state that upper division students' annual 18 units are **semester** units (which is 27 quarter units), or record them as 27 quarter units.

This is an urgent issue that needs to be taken up by the Registrar and the Board. Ultimately, we need to do right by our students.

---
[1] https://www.cpp.edu/semester/unit-converter-tool.shtml